HULETT HARPER STEWART LLP
BLAKE MUIR HARPER, SBN: 115756
SARAH P. WEBER, SBN: 239979
550 West C Street, Suite 1600
San Diego, CA 92101
Telephone: (619) 338-1133
Facsimile: (619) 338-1139
e-mail: blake@hulettharper.com
sweber@hulettharper.com

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANNETTE KAHALY and KATHLEEN O'BRIEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> DIRECTV, INC.; DIRECTV MERCHANDISING, INC.; DIRECTV ENTERPRISES, LLC; DIRECTV HOLDINGS LLC; DIRECTV OPERATIONS LLC; and THE DIRECTV GROUP, INC., <br><br> Defendants. | Case No. S A C V 0 8 - 7 4 1 AG (ANx <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR:** <br><br> **(1) VIOLATION OF CALIFORNIA CIVIL CODE SECTION 1770, *ET. SEQ.*;** <br><br> **(2) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, *ET. SEQ.*;** <br><br> **(3) UNJUST ENRICHMENT; and** <br><br> **(4) UNLAWFUL ASSESSMENT OF LIQUIDATED DAMAGES UNDER CIVIL CODE SECTION 1671(a)** <br><br> **JURY DEMAND** |

Plaintiffs Annette Kahaly and Kathleen O'Brien (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant DirecTV Group, Inc. and certain of its subsidiaries (hereinafter referred to as "DirecTV" or "Defendants") for violations of California's Consumer Legal Remedies Act, Unfair Competition Law, for unjust enrichment, and to void Defendants' unlawful assessment of liquidated damages. Plaintiffs hereby complain and allege, on information and belief, the following:

## **INTRODUCTION**

1. This is a proposed nationwide class action arising out of the Defendants' deceptive and unlawful business acts and practices concerning the sale of satellite television service plans and related equipment. These practices include failing to disclose adequately that by purchasing DirecTV, consumers are entering into a two-year "programming commitment," and that canceling DirecTV's service before the two-year commitment expires will cause consumers to incur excessive and unreasonable cancellation fees.

2. At all relevant times, the Defendants offered for sale and sold satellite television service plans and related equipment. The Defendants failed to disclose to consumers who called by telephone for service to be initiated or changed that they were entering a two-year programming contract that could not be canceled without paying an excessive fee that is automatically charged to the consumer's credit or debit card. Defendants also failed to adequately disclose to such consumers at the time the satellite dish necessary to receive its service is installed that the consumer is entering into a two-year programming contract that prevents the consumer from canceling the service without incurring excessive fees.

3. Additionally, Defendants have engaged, and continue to engage, in the deceptive business practice of providing installation documentation in connection with such transactions that is designed to and does mislead consumers concerning the existence of and term of the service they have purchased and the associated

1

1 | cancellation charge.

2 | **PARTIES**

3 |     4. Plaintiff Annette Kahaly, at all relevant times resided in Orange
4 | County, California. On or about March 30, 2008 Kahaly had DirecTV installed in
5 | her apartment. On or about April 9, 2008 after several unsuccessful attempts to
6 | obtain the correct programming Kahaly had orally requested in her initial order with
7 | Defendants she canceled the service. On or about April 23, 2008, Kahaly received
8 | her first billing statement from the Defendants, which notified her for the first time
9 | of an "Early Cancellation Fee" and that her credit card had already been charged
10 | $460.00 as a cancellation fee.

11 |     5. Plaintiff Kathleen O'Brien, at all relevant times resided in the State of
12 | Florida, County of Pasco. On or about December 10, 2007, O'Brien's husband
13 | called DirecTV to upgrade their existing DirecTV services to high definition ("HD")
14 | to accommodate a new HD television he purchased. On this call, DirecTV did not
15 | disclose that by upgrading the account, the O'Briens were entering into a
16 | "programming commitment." The next day, December 11, 2007, O'Brien's
17 | husband returned the new television. On or about December 17, 2007, O'Brien
18 | called to cancel DirecTV's service. At this time O'Brien was notified for the first
19 | time that she was under a two-year agreement and that if she cancelled the services
20 | she would be charged an early cancellation fee of $440.00. On May 14, 2008, after
21 | O'Brien's attempts to dispute the fee, DirecTV deducted $440.00 from her checking
22 | account without permission.

23 |     6. Defendant DirecTV Group, Inc., directly and through its subsidiaries,
24 | provides satellite-based television service in the United States and provides receivers
25 | and other equipment needed to access that service. Some or all of the subsidiaries
26 | who engaged in the conduct described in this Complaint are Defendant DirecTV,
27 | Inc., a corporation incorporated under the laws of the state of California; Defendant
28 | DirecTV Merchandising, Inc., a corporation incorporated under the laws of the state

2

of Delaware; Defendant DirecTV Enterprises, LLC, a limited liability company organized under the laws of the state of Delaware; and Defendant DirecTV Operations LLC, a limited liability company organized under the laws of the state of California. Defendant and all of its subsidiaries have their principal places of business in El Segundo, California. All Defendants shall hereinafter be referred to collectively as "DirecTV" or "Defendants."

## JURISDICTION AND VENUE

7.     Jurisdiction and venue are appropriate because DirecTV is headquartered in this District. Furthermore, Defendants, at all times herein relevant conducted, and continue to conduct, business in this District and throughout the state of California and engage in the unfair and deceptive business practices alleged in this Complaint in this district and throughout California. The Defendants have sufficient minimum contacts with California and intentionally availed themselves of the laws of California by advertising and conducting transactions therein. Specifically, based on information and belief, Defendants' adoption and enforcement of the policies described herein, was conceived in, orchestrated from, initiated in, and emanated from El Segundo, California.

8.     Plaintiff is informed and believes that she and the Class she seeks to represent are entitled to restitution in an amount greater than five-million dollars ($5,000,000), the Class is larger than 100, and Defendants are citizens of a different state than one or more members of the Class of Plaintiffs, conferring jurisdiction on this Court over this action pursuant to the Class Action Fairness Act of 2005. 28 U.S.C. § 1332.

## FACTUAL ALLEGATIONS

9.     DirecTV is a provider of satellite television service in the United States.

10.     In early March 2008 Kahaly contacted DirecTV by phone to obtain satellite television services for her new residence. She requested basic channels,

3

1    HBO and Showtime, one regular receiver and one DVR receiver. Kahaly was told
2    that the total monthly costs would be $61.98 for the first three months of service,
3    and $74.98 per month thereafter. During the telephone call, Kahaly was not
4    informed of any contractual requirement to subscribe to the programming for a
5    specified period of time.

6        11.    On March 24, 2008, Kahaly contacted DirecTV, again by phone, to
7    confirm that installation would occur on March 30, 2008. During this call, she was
8    informed her order did not include the services she originally requested and that the
9    cost for the services she wanted would be different than that originally quoted to her.
10    The new quote was $55.99 for the first 12 months, and $67.99 per month thereafter.
11    During this second telephone call, Kahaly was not informed of any long-term
12    programming commitment.

13        12.    On March 30, 2008, a third-party contractor of DirecTV installed the
14    DirecTV equipment at Kahaly's home. After the satellite dish and receivers were
15    installed in her home she was given (1) an invoice for installation services from the
16    contractor, "Connect Television, Inc." and (2) an "Installation/Service Satisfaction
17    Checklist." The contractor handed Kahaly the back of the Installation/Service
18    Satisfaction Checklist to sign, which was a document called the "DirecTV
19    Equipment Lease Addendum." The Installation/Service Satisfaction Checklist and
20    DirecTV Equipment Lease Addendum is attached hereto as Exhibit A.

21        13.    Notwithstanding the facts that the Equipment Lease Addendum was
22    presented on the back of an Installation/Service Satisfaction Checklist and that by its
23    title and the context in which it was presented to Kahaly it appeared to be related to
24    the equipment installation, half-way down the Equipment Lease Addendum page's
25    small print appeared a clause purporting to bind the consumer to a minimum
26    "programming commitment" of 18-months for standard receivers and 24-months for
27    advanced receivers. The clause states: "The programming package(s) must be
28    maintained for a period of not less than (a) eighteen (18) consecutive months for

4

accounts with only standard receiver(s), or (b) twenty-four (24) consecutive months for accounts with advanced product(s)/receiver(s) . . . ." A second small print clause in the Equipment Lease Addendum two-thirds down the page further states that if you "fail to maintain your minimum programming commitment . . . you agree that DIRECTV may charge you a prorated fee of up to $360 for standard receivers and up to $480 for advanced products/receivers . . . ." Kahaly did not notice this language and prior to receiving this misleading document, had never been informed of any "programming commitment."

14. In addition, the Equipment Lease Addendum states that it "must be read together with the DirecTV customer agreement (a copy of which is provided to you with your first bill and available at www.directv.com) for all the terms and conditions regarding the provision of the services and your right to use the DirectTV equipment." Kahaly did not even receive these terms and conditions until she received her first bill on April 23, 2008, almost a full month after signing the Equipment Lease Addendum, and after she had already cancelled the service

15. Within one week of having DirecTV installed at her residence, Kahaly again contacted DirecTV to inform them she was not receiving HBO as she had twice previously requested. The DirecTV representative informed Kahaly that the order entered on March 24, 2008 was not correct and that her actual monthly costs would be $84.89 per month for the first three months, and $96.98 per month for the next nine months for the programming she wanted. As before, Kahaly was not informed of any long-term obligation or applicable cancellation fee.

16. On April 9, 2008 Kahaly discovered that she still was not receiving HBO as she had now requested three times. The following day, April 10, 2008, Kahaly called DirecTV and was told that HBO had never been ordered. Frustrated with her inability to obtain the television programming that she wanted, Kahaly immediately cancelled the service. Again, the DirecTV representative did not inform Kahaly of any long-term commitment or cancellation fee.

17. On April 23, 2008 Kahaly received her first billing statement. The statement showed a charge for $460.00 for an "Early Cancellation Fee" that had been automatically charged to Kahaly's credit card. Enclosed with the billing statement was the DirecTV customer agreement, attached hereto as Exhibit B. The convoluted customer agreement contains only two instances of the words "programming commitment" and completely fails to describe the terms of this purported commitment. The first time the words appear comes at page 3 of the fine-print agreement in a section titled "Changes in Contract Terms," which purports to give DirecTV the option to change its contract terms at any time. The provision states, "You always have the right to cancel your Service, in whole or in part at any time, and you may do so if you do not accept any such changed terms or conditions. If you do cancel, you may be charged an early cancellation fee if you entered into a separate *programming commitment* or a deactivation fee." (Emphasis added.) The second time is further down the same page of the agreement in the section titled "Cancellation": "You may cancel Service by notifying us. . . . In addition to any deactivation or change of service fees provided in Section 2 [which *does not include* a description of the Early Cancellation Fee], if you cancel Service or change your Service package, you may be subject to an early cancellation fee if you entered into a separate *programming commitment* with DIRECTV in connection with obtaining Receiving Equipment, and have failed to maintain the required programming package for the required period of time." (Emphasis added.) A third reference to a commitment agreement is found further down in the cancellation section under subsection (e) "Payment Upon Cancellation." There the document states, "You acknowledge that you have provided your credit or debit card account information to us. You understand that you will incur fees and charges as a result of your receipt and use of Service and/or Receiving Equipment, and may incur early cancellation fees and/or equipment non-return fees (as specified in any lease, *programming or other service commitment* agreement you entered into in connection with obtaining

6

Receiving Equipment) . . . ." (Emphasis added.) Nowhere in the customer agreement are the terms of the programming commitment directly described.

18.     Therefore, the only explanation ever given to Kahaly of the programming commitment that purports to bind her to continue to purchase DirecTV's services for two-years is found in the Equipment Lease Addendum that was provided, in Kahaly's case, weeks after signing up for the service and after the satellite equipment was already installed in her home. Likewise the excessive early cancellation fee is described only once, in the Equipment Lease Addendum, and does not even appear in the Customer Agreement, which does include a list of 12 other administrative fees DirecTV authorized itself to automatically deduct from their customers' credit and debit cards.

19.     Additionally, the customer agreement contains an arbitration clause which purports to preclude the consumer from arbitrating his or her claim "as a representative member of a class or in a private attorney general capacity . . ." that is unenforceable under California law.

20.     The same day Kahaly received the billing statement and Customer Agreement, April 23, 2008, she called DirecTV and informed the representative that she was never notified of the cancellation fee. In response, Kahaly was told that she had entered into a two-year contract when she signed-up for DirecTV. When Kahaly reiterated that she was never informed of the fee, she was told the information was located on the first billing statement, the statement that had prompted her call. Similarly, the representative informed Kahaly that while DirecTV may have neglected to inform her of the two-year contract when she signed up for the service it was her responsibility to know this information since it is available on the company's website, a website Kahaly had never seen. Thereafter, and at this DirecTV representative's direction, on April 28, 2008 Kahaly wrote to DirecTV to dispute the cancellation fee already charged to her credit card.

21.     As described in the preceding paragraphs, the lengthy programming

7

commitment and early cancellation fee were never meaningfully disclosed to Kahaly at any point in her course of dealing with the Defendants until after she received the first billing statement and after the fee was already charged to her. Had Kahaly been notified of the existence and/or requirement of a two-year contract she would not have ordered services from the Defendants. In fact, the residence she ordered services for was a leased apartment that she intended to stay at for only one year.

22. Like Kahaly, Plaintiff Kathleen O'Brien was also unlawfully charged an undisclosed cancellation fee. After purchasing a new HD television, on December 10, 2007 O'Brien's husband, Edmund, called DirecTV and upgraded their existing DirecTV service to HD service. He was not informed that by ordering HD service he was entering O'Brien into a two-year contract for services. The next day, December 11, 2007, Edmund returned the new HD television, leaving no HD television in O'Brien's home and making HD services unnecessary.

23. On or about December 17, 2007, O'Brien called DirecTV to cancel the HD service and also to terminate her DirecTV services entirely. At this time, and for the first time, O'Brien was informed that by upgrading her DirecTV service to HD, she had committed to a new two-year agreement with DirecTV. She was also informed that if she were to cancel the service, she would be charged an early cancellation fee of $440.00. O'Brien was never informed of this information, nor was she provided with any written material disclosing either the new two-year commitment or the potential for an early cancellation fee to be charged.

24. On the December 17, 2007 telephone call O'Brien informed the DirecTV customer service representative that she was financially unable to continue the DirecTV service. The representative suggested a four-month suspension of service, which O'Brien accepted.

25. On or about April 9, 2008 O'Brien received the first statement from DirecTV post the four-month suspension. On or about May 12, 2008, O'Brien called DirecTV seeking to cancel the service. She was again informed that she could

8

1   not cancel without incurring the $440.00 early cancellation fee. The representative,
2   however, said she would "escalate" the issue and call O'Brien once she had
3   determined how to resolve the problem.

4       26.    Before O'Brien received a return call, she found out that $607.25 was
5   deducted from her checking account without her permission for the remaining
6   balance on the DirecTV account ($109.30 for service and $57.96 for
7   "Communications Service Tax") and for the $440.00 early cancellation fee.

8   **CLASS ALLEGATIONS**

9       27.    Plaintiffs bring this Complaint as a class action pursuant to Rule 23 of
10   the Federal Rules of Civil Procedure on behalf of a class of all consumers in the
11   United States between June 4, 2004 and the present who ordered programming from
12   Defendants, other than through their website, and were charged an "Early
13   Cancellation Fee" that was not adequately disclosed to the consumer at the time of
14   the order (the "Class").

15       28.    This action is properly brought as a class action for the following
16   reasons. The members of the Class are so numerous that separate joinder of each
17   member is impractical. It is estimated that the number of class members is in the
18   thousands. In their report on Form 10-Q filed with the SEC for the quarter ending
19   March 31, 2008, DirecTV represents it has approximately 17 million subscribers.
20   The disposition of their claims in a class action will provide substantial benefits to
21   the parties and the Court. Furthermore, the prosecution of separate actions by
22   individual members of the Class would create a risk of inconsistent or varying
23   adjudications and would necessarily be dispositive of claims owned by non-party
24   class members.

25       29.    The questions of law or fact common to the claims of the
26   representative Plaintiffs and the claims of each member of the Class predominate
27   over any questions of law or fact affecting individual members of the Class. Class
28   representation is superior to other available methods for the fair and efficient

1 adjudication of this controversy.

2     30.    Questions of law and/or fact that are common to the claims include,
3 but are not limited to:

4       a.    Whether the Defendants failed to adequately disclose the
5 programming commitment and early cancellation fee.

6       b.    Whether the early cancellation fee is unconscionable.

7       c.    Whether the early cancellation fee is an illegal assessment of
8 liquidated damages.

9       d.    Whether the Defendants' actions constitute unfair or deceptive
10 business practices and/or violations of the Consumer Legal Remedies Act.

11       e.    The amount of restitution and any other applicable relief to
12 which the Class may be entitled.

13       f.    Whether injunctive relief is appropriate and the appropriate
14 terms of such injunctive relief.

15     31.    Plaintiffs' claims are typical of the claims of the Class in that the
16 claims of all members of the Class result from the Defendants' practice of
17 concealing the terms of the services it offers consumers and failing to disclose the
18 relevant program commitment and early cancellation fee. Plaintiffs will fairly and
19 adequately protect the interests of the Class in that they have no interest antagonistic
20 to those of the other class members, and Plaintiffs have retained attorneys
21 experienced in class action and complex litigation.

22                 **FIRST CAUSE OF ACTION**

23    **(For Violation of the Consumers Legal Remedies Act – Injunctive Relief Only)**

24     32.    Plaintiffs reallege and incorporate by reference the allegations set forth
25 in the preceding paragraphs.

26     33.    Plaintiffs bring this claim individually and on behalf of the class.

27     34.    The Consumer Legal Remedies Act ("CLRA"), California Civil Code
28 §§ 1770, *et seq.*, defines certain unfair methods of competition and unfair or

deceptive acts or practices which, if undertaken by a person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer, are unlawful. The CLRA provides for, among other remedies, injunctive relief.

35. The policies, acts and practices engaged in by Defendants and alleged in this Complaint were intended to, and did, result in the payment of *undisclosed*, excessive and unreasonable fees by members of the class, and violated and/or continue to violate the CLRA in at least the following respects:

a. Section 1770(a)(5) – representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he or she does not have;

b. Section 1770(a)(7) – representing that goods or services are of a particular standard, quality or grade if they are of another;

c. Section 1770(a)(9) – advertising goods or services with intent not to sell them as advertised; and

d. Section 1770(a)(19) – inserting an unconscionable provision in the contract.

36. By reason of the foregoing, Plaintiffs and members of the Class have been harmed. Pursuant to § 1782 of the CLRA, Plaintiffs notified Defendants in writing of the particular violations of the CLRA and demanded Defendants rectify the actions described above by providing complete monetary relief to the Class and agreeing to cease the unlawful business practices alleged in this Complaint. Plaintiff sent this notice by certified mail, return receipt requested, to DirecTV's principal place of business.

37. If Defendants fail to adequately respond to Plaintiffs' demand within 30 days of the letter pursuant to § 1782 of the CLRA, Class Plaintiffs will amend this Complaint to add additional claims for relief under the CLRA, including claims for compensatory and exemplary damages.

## SECOND CAUSE OF ACTION

### (For Violation of Business & Professions Code Sections 17200, *et seq.*)

38.     Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs.

39.     Plaintiffs bring this claim individually and on behalf of the Class.

40.     The Unfair Competition Law, California Business & Profession Code §§ 17200, *et seq.* ("UCL"), defines unfair competition to include any "unlawful," "fraudulent" or "unfair" business act or practice.  The Defendants need only violate one of the three provisions to be liable under the UCL.  Unlawful business acts are those which violate any federal, state, county, or municipal statute, code or regulation or the common law.   The UCL provides for injunctive relief and restitution for violations.

41.     In the course of conducting business, Defendants charged Plaintiffs an improperly disclosed and excessive fee for cancellation of satellite television services pursuant to the terms of a contract that the Plaintiffs never knew they agreed to and that was not adequately disclosed.  There is no justification for such acts and practices.  Defendants' actions constitute "unlawful" business acts and practices because they violate the CLRA and constitute illegal assessment of liquidated damages under California Civil Code § 1671.

42.     Defendants' actions constitute "fraudulent" business acts and practices under the UCL because they are likely to deceive and have deceived members of the public.  The Defendants failed to disclose to consumers that by having satellite television installed in their homes or by upgrading their service with Defendants they were entering a two-year contract that cannot be canceled without paying an excessive fine.

43.     By engaging in the above-described conduct, the Defendants perpetrate "unfair" business acts and practices in that any business justification for failing to adequately disclose a two-year commitment and for excessive cancellation

12

1  fees is outweighed by the gravity of the resulting harm and/or offends public policy,
2  is immoral, unscrupulous, unethical and offensive, and causes substantial injury to
3  consumers.

## THIRD CAUSE OF ACTION

### (For Unjust Enrichment)

6  44.  Plaintiffs reallege and incorporate by reference the allegations set forth
7  in the preceding paragraphs.

8  45.  Plaintiffs bring this claim individually and on behalf of the Class.

9  46.  DirecTV has been unjustly enriched because it knowingly gained and
10 retained money in an inequitable manner at the expense of its customers and is thus
11 accountable to the Plaintiffs and the members of the class to restore such money.
12 The Defendants may not in good conscience and equity retain the benefits from its
13 wrongful conduct and those profits belong instead to Plaintiffs and members of the
14 class.  Defendants must disgorge all amounts so wrongfully and unjustly obtained
15 and be enjoined from continuing its deceptive acts and practices.

## FOURTH CAUSE OF ACTION

### (Unlawful Assessment of Liquidated Damages Under California Civil Code Section 1671(d))

19 47.  Plaintiffs reallege and incorporate by reference the allegations set forth
20 in the preceding paragraphs.

21 48.  Plaintiffs bring this claim individually and on behalf of the Class.

22 49.  California Civil Code §1671 declares that a liquidated damages
23 provision in a consumer contract of adhesion is void unless the parties agree on an
24 amount and it would be impractical or extremely difficult to fix the actual amount of
25 damages.

26 50.  DirecTV's Equipment Lease Addendum and customer agreement
27 purport to be a contract for the retail purchase or rental of services primarily for the
28 consumer's personal, family or household purpose.

13

1    51.    The early cancellation fee described in the Equipment Lease
2    Addendum is a liquidated damage provision intending to compensate DirecTV for a
3    customer's breach (early cancellation) of the purported contract.

4    52.    The early cancellation fee bears no reasonable relationship to the
5    actual cost to the Defendant when a customer terminates its services and, further, it
6    is not impractical or extremely difficult for the Defendant to determine the actual
7    amount of damages caused by the termination of the contract.

8    53.    Based on the foregoing, the Early Cancellation Fee is void as an
9    unlawful assessment of liquidated damages under Civil Code §1671(d).

10                              **PRAYER FOR RELIEF**

11    WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

12    A.    For an order declaring this a class action;

13    B.    For declaratory relief finding that Defendants have engaged in unfair,
14    unlawful, or fraudulent business acts or practices in violation of California Business
15    & Professions Code §§ 17200, *et seq.*

16    C.    For declaratory relief finding Defendants' early cancellation fee is void
17    under California Civil Code § 1671(d);

18    D.    For a temporary restraining order and a preliminary and permanent
19    injunction enjoining Defendant and its officers, directors, agents, distributors,
20    servants, employees, attorneys, and all others in active concert or participation with
21    Defendants during the pendency of this action and permanently thereafter from four
22    years ago;

23    E.    For restitution to all persons from whom Defendants unlawfully,
24    unfairly, or fraudulently took money, including a full refund of all fees improperly
25    charged and accrued interest, in addition to other unjust enrichment of Defendants,
26    in an amount to be proven at trial (**not in relation to the First Cause of Action for**
27    **violation of the Consumer Legal Remedies Act**);

28    F.    For actual damages suffered by Plaintiffs and members of the Class

1  (**not in relation to the First Cause of Action for violation of the Consumer Legal**

2  **Remedies Act**);

3       G.    For punitive damages, to be awarded to Plaintiffs and each class

4  member (**not in relation to the First Cause of Action for violation of the**

5  **Consumer Legal Remedies Act**);

6       H.    For interest at the maximum rate allowed by law;

7       I.    For costs of suit;

8       J.    For Plaintiffs to be awarded attorneys' fees and all litigation expenses

9  pursuant to the California Civil Code § 1780(d) and California Code of Civil

10  Procedure § 1021.5. Alternatively, for all attorneys' fees and all litigation expenses

11  to be awarded pursuant to the substantial benefit doctrine, the common fund

12  doctrine, or any other provision of law; and

13       K.    For such other and further relief as the Court may deem just and proper.

14  **<u>JURY DEMAND</u>**

15      Plaintiffs demand a trial by jury.

16  DATED: July 7, 2008          HULETT HARPER STEWART LLP

17                               BLAKE MUIR HARPER

                             SARAH P. WEBER

20                               BLAKE MUIR HARPER

21                               550 West C Street, Suite 1600

22                               San Diego, CA 92101

23                               Telephone: (619) 338-1133

                             Facsimile: (619) 338-1139

24                               e-mail:     blake@hulettharper.com

25                                           sweber@hulettharper.com

26                               Attorneys for Plaintiffs

27

28

# EXHIBIT A



# DIRECTV

## INSTALLATION/SERVICE SATISFACTION CHECKLIST

Welcome to DIRECTV! We want to ensure we meet your service and installation expectations. Please take a moment to examine the lists below and place your initials in the space provided to indicate that each item has been fulfilled. If you find an item in the DIRECTV System Education Checklist that has not been explained, please prompt the installer to provide a thorough explanation. Enter "N/A" (not applicable) for any items that are not relevant to your installation/service call.

**Please check one:**   Installation _____   Service Call _____   Upgrade _____

To be completed by technician:   Job #: _____   Tech ID #: _____

## DIRECTV Installation/Service Checklist

The installer who completed my installation/service call:

____ Called to confirm my appointment the day before the scheduled installation/service call
____ Called the day of the installation/service call to advise he was en route to my home
____ Was on time (arrived within scheduled appointment window)
____ Had proper identification and uniform
____ Performed a site survey with me, indicating where the satellite dish would be positioned
____ Explained the installation process prior to starting any work
____ Explained any additional installation/service call charges before starting work
____ Called a DIRECTV representative and confirmed that programming was active
____ Explained the importance of the telephone hook-up and that I must maintain a working telephone line connected to all my DIRECTV System receivers
____ Ensured installation or service area was clean and orderly upon completion of work
____ Resolved all problems related to service call issue
____ Provided company name and telephone number to contact if there are any problems with the installation/service call
____ Left a copy of the owner's manual and/or Welcome Kit and explained what it covers
____ Conducted a final walk-through showing where all devices/equipment are located

## DIRECTV System Education Checklist

The installer thoroughly explained how to operate my DIRECTV System and remote control including how to:

____ Access and to locate Customer Education channels and local channels
____ Turn the DIRECTV System, television and co-located devices on and off using the remote control
____ Change channels and turn the volume up and down on the DIRECTV System and the remote control
____ Set up parental controls ("Locks and Limits") and Favorite channels lists
____ Access and navigate the on-screen programming guide and how to check on-screen signal strength
____ Purchase Pay Per View programming with the remote control
____ Switch between my DIRECTV programming and off-air antenna/cable channels (if applicable)
____ Record DIRECTV programming with the VCR and record and use the DVR features (if applicable)
____ Reset the DIRECTV receiver
____ Use the input settings for all devices now connected to the TV
____ Compare the picture quality and settings for SD and HD channels (if HD installed)
____ Navigate and use interactive features (if applicable)

**Were you completely satisfied with your installation/service call (Please initial one)?   YES _____   NO _____**

**Thank you for taking the time to complete this checklist. This information is essential for DIRECTV to monitor our customers' installation/service call experience and enables us to continually improve the quality of**

# DIRECTV EQUIPMENT LEASE ADDENDUM



DIRECTV

☑ Check here if you are a new DIRECTV customer

☐ Check here if you are a current DIRECTV customer obtaining one or more additional DIRECTV receiver(s)

☐ Check here if this is a Service Call. Note: Lease Addendum is not applicable for Service Calls.

Thank you for choosing DIRECTV. By signing this Equipment Lease Addendum, you agree to abide by the following terms and conditions. You wish to lease from DIRECTV, and DIRECTV is willing to lease to you, one or more DIRECTV new or reconditioned receivers, hereinafter collectively referred to as the "equipment," necessary to access DIRECTV's services. The term "equipment" does not include the dish and cabling. **THIS EQUIPMENT LEASE ADDENDUM SHOULD BE READ TOGETHER WITH THE TERMS AND CONDITIONS FOR DIRECTV® EQUIPMENT LEASE ("LEASE AGREEMENT"), WHICH IS PROVIDED TO YOU. YOU MUST BE READ TOGETHER WITH THE TERMS AND CONDITIONS FOR DIRECTV® EQUIPMENT LEASE ("LEASE AGREEMENT"), WHICH IS PROVIDED TO YOU. FIRST BILL AND IS AVAILABLE AT WWW.DIRECTV.COM) FOR ALL OF THE TERMS AND CONDITIONS REGARDING THE PROVISION OF THE SERVICES AND YOUR RIGHT TO USE THE DIRECTV EQUIPMENT. YOU UNDERSTAND AND AGREE THAT YOU HAVE NOT PURCHASED THE DIRECTV EQUIPMENT. YOU DO NOT OWN THE DIRECTV EQUIPMENT AND THE DIRECTV EQUIPMENT MUST BE USED AND RETURNED TO DIRECTV STRICTLY IN ACCORDANCE WITH THE TERMS OF THIS EQUIPMENT LEASE ADDENDUM AND THE DIRECTV CUSTOMER AGREEMENT.**

**PROGRAMMING AGREEMENT.** Within 30 days of provision of DIRECTV equipment to you, or on the date that the professional installer has installed or provided to you with any DIRECTV equipment, whichever is sooner, you agree to activate each and every DIRECTV Receiver ordered by you or provided to you with any DIRECTV® base programming package (valued at $29.99 per mo. or above); Jadeworld; or any of the DIRECTV PREFERRED CHOICE™ programming package (valued at $52.99 per mo.) together with any WorldDirect™ International-language service. DVR service activation ($5.99/mo.) required for DVR leases; HD Access fee ($9.99/mo.) required for HD DVR leases; and, both DVR service and HD Access fee payment required for HD DVR leases.

**PROGRAMMING COMMITMENT.** The programming package(s) must be maintained for a period of not less than (a) eighteen (18) consecutive months for accounts with only standard receiver(s), or (b) twenty-four (24) consecutive months for accounts with advanced product(s)/receiver(s) (DVR, HD, or HD DVR, including additional DIRECTV receiver(s)). After you have fulfilled your agreement to the required programming package(s), you will not be obligated to maintain your subscription to any specific programming or any programming tier. **THIS PROGRAMMING COMMITMENT IS SEPARATE AND DIFFERENT FROM ANY OTHER PROGRAMMING COMMITMENT YOU MAY HAVE MADE WITH DIRECTV AND IS FULLY ENFORCEABLE UNDER THESE TERMS.**

**MONTHLY LEASE FEE.** For a new DIRECTV customer, you will be charged a monthly lease fee in the amount of $4.99 per 2nd and each additional receiver leased by you in your household. For a current customer, you will be charged a monthly fee in the amount of $4.99 for each receiver leased by you in your household, unless you replace all of your owned equipment with leased equipment, in which case, the monthly lease fee will be waived for the 1st receiver. Applicable taxes will apply. **LEASE FEE SUBJECT TO CHANGE AT ANY TIME.**

**CARE OF EQUIPMENT.** You are responsible for the loss of or any damage to the DIRECTV equipment that you have leased from DIRECTV. You shall have no right to sell, give away, transfer, pledge, mortgage, remove, relocate, alter or tamper with the DIRECTV equipment at any time. **DIRECTV PROVIDES YOU THE DIRECTV EQUIPMENT "AS IS," AND MAKES NO WARRANTY, EITHER EXPRESSED OR IMPLIED, REGARDING THE DIRECTV EQUIPMENT PROVIDED TO YOU. ALL SUCH WARRANTIES INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE EXPRESSLY EXCLUDED. DIRECTV IS NOT RESPONSIBLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RELATING TO THE DIRECTV EQUIPMENT PROVIDED TO YOU.** In the event the DIRECTV equipment you have leased from DIRECTV does not operate, contact DIRECTV at 1-800-531-5000.

**CONSEQUENCES OF YOUR FAILURE TO ACTIVATE PROGRAMMING OR SATISFY YOUR PROGRAMMING COMMITMENT.** If you fail to activate all of your DIRECTV equipment in accordance with this Equipment Lease Addendum, you agree that DIRECTV or an authorized DIRECTV retailer may charge you $150 for each receiver that is not activated. If you fail to maintain your programming commitment, in your minimum programming commitment of 18 months for standard receivers and 24 months for advanced receivers (e.g. DVR, HD, HD DVR, etc.) DIRECTV may charge you a prorated fee of up to $360 for standard receivers and up to $480 for advanced products/receivers (e.g. DVR, HD, HD DVR, etc.).

**RETURN OF DIRECTV EQUIPMENT.** If you cease to be DIRECTV's customer for any reason (whether voluntarily or involuntarily) or if you decide to disconnect/cancel/terminate your DVR service or HD Access fee (if you are leasing a DVR or HD Receiver, respectively) you must call DIRECTV within seven (7) days after the termination of your DIRECTV programming services, DVR service or HD Access fee, as applicable, to obtain information from DIRECTV necessary to arrange for a ground or air freight service to pick up and deliver all of your DIRECTV equipment to DIRECTV. You acknowledge that the DIRECTV equipment belongs to DIRECTV and the DIRECTV equipment, including the access card installed in each receiver, must be returned to DIRECTV in good working order, normal wear and tear excepted. In the event that all of the DIRECTV equipment is not returned to DIRECTV within thirty (30) days of the termination of your DIRECTV programming services or is damaged when it is returned to DIRECTV, you agree to pay DIRECTV the sum of $55 per each DIRECTV standard receiver, $200 for each DIRECTV DVR Receiver, $240 for each DIRECTV HD Receiver, or $470 for each DIRECTV HD DVR Receiver that is not returned to DIRECTV or that is damaged when it is returned to DIRECTV as compensation for a portion of the expenses incurred by DIRECTV in establishing your account and providing you the DIRECTV equipment for your use. Visit DIRECTV.com or call 1-800-531-5000 for details.

**ARBITRATION.** You and DIRECTV agree that both parties will resolve any dispute arising under this Equipment Lease Addendum, the DIRECTV Customer Agreement or any other addendum thereto, or regarding your DIRECTV programming service, through binding arbitration as fully set forth in the DIRECTV Customer Agreement.

**BY SIGNING BELOW, I HEREBY AUTHORIZE AND AGREE THAT DIRECTV MAY, AT ITS SOLE OPTION, CHARGE THE FEES DESCRIBED HEREIN. I WARRANT THAT I AM 18 YEARS OLD OR OLDER AND THAT ALL INFORMATION SUPPLIED BY OR ABOUT ME IS ACCURATE. I HAVE READ AND AGREE TO THE ABOVE TERMS AND CONDITIONS.**

# EXHIBIT B



# CUSTOMER AGREEMENT

Effective as of April 24, 2007, until replaced

THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT AND PAYMENT OF DIRECTV SERVICE AND IS SUBJECT TO ARBITRATION (SECTION 9). IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE. IF YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND THEY WILL BE LEGALLY BINDING. TO VIEW THIS AGREEMENT IN SPANISH VISIT DIRECTV.COM/ ACUERDO OR CALL 1-888-388-6922 TO REQUEST A PRINTED COPY. (VISITE A DIRECTV.COM/ACUERDO O LLAME AL 1-888-388-6922 PARA SOLICITAR ESTE DOCUMENTO.)

## CONTACTING DIRECTV:

You may contact us 24 hours a day, any day of the year by sending us an e-mail at directv.com/email or by writing to:

DIRECTV, Inc.
Customer Service
P.O. Box 6550
Greenwood Village, CO 80155-6550

You can also call us at 1-800-531-5000 and speak your request into our Automated Phone System, e.g., for technical issues – say "technical," for on-screen messages – say the extension or message you see on your TV screen; to pay your bill – say "pay my bill," for programming questions – say the name of the package or service, etc.

If your bill for DIRECTV Service comes from a party other than DIRECTV, please use the contact information provided on your bill for any questions about your DIRECTV Service.

Thank you for choosing DIRECTV. DIRECTV provides digital satellite entertainment programming and services (referred to collectively as "Service") to residents of the United States. We do not provide Service to addresses outside of the United States.

## CUSTOMER AGREEMENT

### 1. OUR SERVICE

These are the terms on which we will provide you Service:

(a) Program Choices. You must subscribe to a base package in order to receive additional programming and services such as premium movies or sports subscriptions. All programming selections have their own rates, terms and conditions. Information about them is at directv.com.

(b) Ordering Pay Per View. You may order Pay Per View Services by using your on-screen guide and remote control, by ordering at directv.com, or by calling us and speaking the name of your own into our Automated

Phone System, or by ordering through an agent. If you call an agent to order, the maximum fee may apply (described in section 2). A reduced fee is available for Pay Per View orders placed at directv.com or through the Automated Phone System. To use your remote control to place your order, your receiver must be continuously connected to a land-based telephone line. Your order is transmitted via the telephone line, and your short transmission period, you may not be able to use the line for other purposes. Repeated cancellation of previously ordered Pay Per View Services may result in cancellation of your account, restrictions on your ability to order Pay Per View Services, or imposition of additional fees for Pay Per View Services.

(c) Your Programming Choices. You may change your programming selection by notifying us. A fee may apply to such changes (described in Sections 2 & 5(b)). Some programming may be purchased in minimum blocks of one month or multiples of one month.

(d) Our Programming Changes. Many changing considerations affect the availability, cost and quality of programming and customer demand for it. Accordingly, we must reserve the unrestricted right to change, rearrange, add or delete our programming packages, the selections in those packages, our prices, and any other programming that is within our good standing. A programming package may have the right to cancel your Service, in whole or in part. If you do not accept the change (see Section 2.5), the change may result in a price change for your Service. If you always have the right to cancel your Service, you may always have the right to cancel your Service, a determination is described in Section 5. If you do not cancel, your account will be posted as described in Section 5. If you do not cancel, your continued receipt of our Service will constitute acceptance.

(e) Access Card. You have received a conditional access card (referred to as the "Access Card") and a License Agreement governing your use of the Access Card and a License Agreement governing your use of that the original Access Card is the exclusive property of DIRECTV. If you tell us that the original Access Card and/or your account is the exclusive property of DIRECTV. Access Cards are nontransferable and are not receiving your Service. Access Cards are we will replace it, as long as there is no evidence of unauthorized tampering with or modification of the Access Card and your account is in good standing. Access Cards or tampering with the Access Card (described in Section 2). Tampering with or altering any device into your receiver other than an authorized unmodified Access Card is prohibited. DIRECTV reserves the right to cancel or replace the Access Card. Upon request, the card must be returned to DIRECTV. If you do not return the Access Card to DIRECTV when you cancel your Service, you may be charged a fee as described in Section 2. Requesting Access Cards on behalf of other persons or for purposes other than lawful viewing of DIRECTV Service is prohibited.

(f) Phone Connections. For optimal performance of your Receiving Equipment, including ordering with your remote control or receiving Equipment, with or without your permission, must be directly connected to a land-based telephone line. If you add Service on additional TVs, you may purchase a separate subscription for each additional TV, or, if all your receivers are continuously connected to the same land-based telephone line, we can "mirror" programming to your additional based telephone line, we can "mirror" programming to your additional TVs and charge you only the fee amount described in Section 2. You agree to provide true and accurate information about the location of your receivers. If we detect that any receiver is not regularly connected to a land-based telephone line, we may investigate and, if it is determined that the receiver is not at the location identified on your account, we may disconnect the receiver or charge you the full programming subscription price for the receiver.

(g) Mobile Units. We provide Service to Receiving Equipment installed in mobile units such as campers, boats and recreational vehicles. However, this Receiving Equipment is not eligible for the additional TV authorization described in 1(f).

(h) Private Viewing. We provide Service only for your private non-commercial use, enjoyment and home viewing. The programming may not be retransmitted, and may not be viewed in areas open to the public or in commercial establishments. You may not rebroadcast, transmit or perform the programming, charge admission for its viewing, or transmit or distribute it. You may not use any of our trademarks. Notwithstanding the provisions of Section 9, we or any programming provider may prosecute violations of the foregoing against you and other responsible parties in any court of competent jurisdiction, under the rules and procedures of the Federal Communications Commission and other applicable laws.

(i) Blackouts. Certain programming, including sports events, may be blacked out in your local reception area. Blackout restrictions are decided by the sports leagues and the other entities that own the local broadcast rights. You may visit directv.com for more blackout information. If you circumvent or attempt to circumvent any of these blackouts, you may be subject to legal action.

(j) Loss of Programming. You should notify us immediately if you receive, remote control or receiving antenna dish (referred to collectively as "Receiving Equipment") is lost or stolen. You may notify us simply by notifying us that you must notify us for unauthorized use. In each case, we will not charge you for unauthorized use occurring after we receive your notice. For leased Receiving Equipment, non-return fees as specified in the Equipment Lease Addendum will apply.

(k) Transfer of Receiving Equipment. We consider you to be responsible for, and the recipient of programming on, any Receiving Equipment you own. You are liable for charges incurred in the use of your Receiving Equipment. If you fail to notify us of a transfer or otherwise Receiving Equipment may not be transferred.

(l) Your Viewing Restrictions. It is your responsibility to impose any viewing restrictions on other family members or guests as you think appropriate. We are not responsible for your anyone else based on the content of our programming. Please visit directv.com for information on parental controls, locks and limits and password protection on your account.

### 2. PAYMENT

In return for receiving our Service, you promise to pay us as follows:

(a) Programming. You will pay in advance, at our rates in effect at the time, for all Service ordered by you or anyone who uses your Receiving Equipment, with or without your permission, until the Service is canceled. The outstanding balance is due in full each month. We promptly apply payments we receive to the oldest charges. Amounts not paid by the billing due date will be considered past due. No "payment in full" notation or other restrictive endorsement written on your payments will restrict our ability to collect all amounts owing to us. We may reduce your service to a minimum service level, at our rates in effect at the time, or deactivate your Service entirely if you notify us of your statements on time, after any applicable grace period.

(b) Taxes. You will pay all taxes or other governmental fees and charges, if any, which are assessed...

(c) Administration Fees. In order to control the basic charges, which apply to all customers, we charge fees that arise in specific circumstances

only in those customers responsible for them. This list is not exclusive, and DIRECTV reserves the right to modify. Please note or charge additional fees. Accordingly, you will pay the following fees when they are applicable.

(1) *Account Activation Fee.* We may charge you a fee of (i) up to $19.95 or (ii) the maximum amount permitted under applicable law prior to or upon activation of your Service account, whichever is less.

(2) *Access Card Replacement Fee.* If you do not return the Access Card when required to do so, or if we have to replace the Access Card, we may charge a replacement fee of up to $300.00. If you return the old Access Card to us, we may waive the charge to your account. If you requested overnight delivery of the replacement Access Card, you must pay a shipping and handling fee of up to $19.95.

(3) *Additional TV Authorization Fee.* If you meet the qualifications described in Section 1(f), we may charge you a monthly fee of up to $4.99 for each separate Service that is activated (in other than a self-subscription fee for Services are located at your residence).

(4) *Administration Fee.* If we do not receive your payment by the due date on your bill, we may charge you an administration fee of (i) $5.00; or (ii) the maximum amount permitted under and subject to applicable law per month or partial month until the delinquent amount is paid in full. This late fee is set an interest charge, finance charge, time-price differential or other such charge or payment of a similar nature. You acknowledge that the fee is reasonably related to the actual expense we incur due to late payment and may be subject to limitations set forth by law in your state.

(5) *Change of Service Fee.* If you change your Service package to a lower-priced package, we may charge you a fee the lesser of (i) up to $10.00 or (ii) the maximum amount permitted by applicable law.

(6) *Phone Payment Fee.* If you elect to pay any outstanding balance over the telephone with an agent, we may charge you the lesser of (i) up to $5.00; or (ii) the maximum amount permitted by applicable law. To avoid this fee, you can pay your bill through our Automated Phone System by saying "Pay my bill" or at directv.com.

(7) *Deposits.* We may require that you provide a deposit prior to or after the activation of your Service, which we may apply against any unpaid amounts at any time. Deposits will appear on your bills as credits, from which we will collect our charges. Deposits will not earn interest.

(8) *Order Assistance Fee.* If you order a Pay Per View Service by calling and speaking with an agent, we may charge you a fee of up to $5.00; or up to $1.50 if you order via our Automated Phone System, for each separate movie, event or other program so ordered, even if it is later canceled. There is no order assistance fee for orders placed at directv.com.

(9) *Reactivation Fee.* If you cancel your Service or we deactivate your Service because of your failure to pay or for some other breach on your part, we may charge you a fee the lesser of (i) up to $10.00; or (ii) the maximum amount permitted by applicable law.

(10) *Duplicate Statement Fee.* If you request a duplicate statement, we may charge you a fee the lesser of (i) up to $1.75; or (ii) the maximum amount permitted by applicable law for each statement copy.

(11). **Ledger Request Fee:** If you request a payment ledger itemizing past payments on your account, we may charge you a fee the lesser of (i) **up to $2.75,** or (ii) the maximum amount permitted by applicable law.

(12). **Returned Payment Fee:** If any bank or other financial institution refuses to honor any payment, draft or instrument submitted for payment to your account, we may charge you a fee the lesser of (i) **up to $20.00,** or (ii) the maximum amount permitted by applicable law. We acknowledge that this fee is not an interest charge, finance charge, time price differential or other such charge or payment of a similar nature and it is reasonably related to the actual expense we incur due to unsatisfied payment.

(e) **Billing Statements.** We will send you a statement for each billing cycle (usually once every 30 days) unless you have a zero or nominal balance due, or a nominal credit balance, on your account at the end of a billing cycle. Statements will post your payments, credits, charges and any other charges to your account (2) the amount you owe us and (3) the payment due date. If you elect to make automatic credit or debit card payments, you will not receive monthly statements unless you request that they be sent.

(f) **Questions About Your Statement.** If you think your statement is incorrect or if you need more information about it, contact us immediately. We will try to resolve any complaints you have as promptly as we can.

**Undisputed portions of the statement must be paid by the due date to avoid a late fee and possible reduction of deactivation of Service.**

Remember, if your bill for DIRECTV Service comes from a party other than DIRECTV, please use the contact information for that party.

(g) **Consents Regarding Credit.** In order to establish an account with us, you agree that we may establish your creditworthiness (as described in Section 6), by checking with credit reporting agencies. If you are delinquent in any payment to us, you also authorize us to report any late payment or nonpayment to credit reporting agencies. Due to the subjective nature of creditworthiness, we reserve the right to require prepayment for any Receiving Equipment, and query credit card, notwithstanding any satisfactory credit history or rating.

(h) **Collection Costs.** To the extent permitted by law, you will pay us costs and fees we reasonably incur to collect amounts you owe us.

**3. CUSTOMER INFORMATION**

(a) **Representations.** You represent that you are at least 18 years of age and a resident of the United States.

(b) **Contact Information.** You agree to provide true, accurate, current and complete information about yourself, and to maintain and promptly update your contact information to keep it true, accurate and complete.

(c) **Online Access.** You are responsible for maintaining the confidentiality of the password and account username used for online billing and account maintenance at directv.com, and are fully responsible for all activities that occur under your password and account. You agree to: (i) Keep your username and password confidential and not share them with anyone else; (ii) Immediately notify DIRECTV of any unauthorized use of your password and account or other breach of security and (iii) use only your username and password and to log into directv.com.

**4. CHANGES IN CONTRACT TERMS**

We reserve the right to change the terms and conditions on which we offer Service. If we make any such changes, we will send you a copy of your new Customer Agreement containing its effective date. You always have the right to cancel your Service, in whole or in part at any time, and you may do so if you do not accept any term or changed terms or conditions. If you do cancel, you may be charged an early cancellation fee if you entered into a separate programming commitment or a deactivation fee. You will be issued a credit, if any, in accordance with Section 5. If you elect not to cancel your Service after receiving a new Customer Agreement and the changed terms and conditions, then we may cancel your Service as provided in Section 5, as we cannot offer Service to different customers on different terms, among other reasons.

**5. CANCELLATION**

(a) **Term.** The term of this Agreement is indefinite and Service will continue until canceled as provided herein. UNLESS YOU NOTIFY US THAT YOU WISH TO CANCEL IT, WE WILL AUTOMATICALLY RENEW SERVICE THAT YOU SUBSCRIBE TO ON A PERIODIC BASIS, INCLUDING ANY MONTHLY OR ANNUAL SUBSCRIPTIONS AND SEASONAL SPORTS SUBSCRIPTIONS, AS LONG AS WE CONTINUE TO CARRY THE SERVICE.

(b) **Your Cancellation.** You may cancel Service by notifying us. You may be charged a deactivation fee as described in Section 2 and issued a credit as described below. Your notice is effective on the day we receive it. You will be liable for payment of all outstanding balances accrued through that effective date. In addition to any deactivation fee, if you cancel Service or change Service package, you may be subject to an early cancellation fee if you entered into a separate programming commitment with DIRECTV in connection with obtaining Receiving Equipment, and have failed to maintain the required period of time.

For Services sold only in blocks of one month or multiples of one month, if you subscribe for payment of a full month, if you cancel Service, we will credit you only for full months. If you subscribe for a Service from January through December but cancel on March 10, we will credit you for the subscription fees for April through December. However, we will not credit any fees for January through March. Additionally, we will not credit seasonal sports subscriptions until the season starts.

(c) **Our Cancellation.** We may cancel your Service at any time if you fail to pay amounts owing to us, such as, for example, if you fail to pay amounts owing to us when due, breach any other material provision of this Agreement, or act abusively toward our staff. In such case, you will still be responsible for payment of all outstanding balances accrued through that effective date, including the cancellation fee described in Section 2. In addition, we may cancel your Service if you do not accept any changed terms.

(d) **Credit Balances.** If you have a credit balance after the close of your account and issuance of the final bill, we will automatically issue you a refund unless you make a written request for the refund. If we close your account, you forfeit any credit balance remaining on your account and your account balance will be reset to zero.

(e) **Payment Upon Cancellation.** You acknowledge that you have provided your credit or debit card account information to us. You understand that you will incur fees and charges as a result of your receipt and use of Service and/or Receiving Equipment, and may incur early cancellation fees and/or equipment non-return fees (as specified in any lease, programming or other service commitment agreement you entered into in connection with obtaining Receiving Equipment). By giving us your credit or debit card account information, you authorize us to apply this method of payment, in accordance with applicable law, to satisfy any and all amounts due upon cancellation. You further acknowledge that you are required to maintain current credit card information with us and agree to notify us whenever there is a change in such information, such as a change in the card number or the expiration date.

**6. PERSONAL DATA**

We collect Personally Identifiable Information about our customers ("Personal Data"). The use and disclosure of this Personal Data is governed by our Privacy Policy, which is incorporated into this Agreement. A copy of the Privacy Policy is available at directv.com. We will also send you a copy if you make a written request to this address: DIRECTV Privacy Policy, P.O. Box 6550, Greenwood Village, CO 80155-6550.

**7. DIRECTV DVR SERVICE**

DIRECTV DVR Service is a separately sold service, at our rates in effect at the time, available to customers with DVR-enabled Receiving Equipment. DIRECTV DVR Service gives you the ability to see and record televised programs ("Third Party Content"). You understand that DIRECTV does not control and is not responsible for any particular program that may be available for viewing. You also understand that Third Party Content is the copyrighted material of the third party that supplies it, is protected by copyright and other applicable laws, and may not be reproduced, published, broadcast, rewritten or redistributed without the written permission of the copyright owner. DIRECTV will have no liability to you, or anyone else who uses your DIRECTV DVR Service, with regard to any Third Party Content. Many, at its discretion, from time to time change, add or remove features of the DIRECTV DVR Service, or change the service rates for DIRECTV DVR Service.

We generally use local telephone calls to provide the DIRECTV DVR Service. If you make such telephone charges and acknowledge and agree that you that be solely responsible for all disputes with any telephone company related to the same.

If you paid a "lifetime service fee," you will not be charged a fee for your DIRECTV DVR Service as long as you maintain television programming service from DIRECTV on the same account. If you disconnect your DIRECTV television programming service and later reconnect on the same account, your DIRECTV DVR Service and/or DIRECTV from time to time the a fee for DIRECTV DVR Service.

The term "Software" shall mean the documentation and licensing to you of any Software materials provided. The term "End User Documentation" shall mean the documentation and explanatory written materials provided by DIRECTV from time to time. The term "Software" shall include any updates, modified versions, additions and copies of certain software or the DIRECTV DVR Service (or your DIRECTV DVR Service). DIRECTV grants to you a non-exclusive license to use the Software, provided that you agree to the following:

(a) **License Grant.** You may use the Software solely in executable code form and solely in conjunction with your Receiving Equipment.

(b) **Restrictions.** You may not copy, modify, transfer, disseminate transfer the Software, or decompile, decode or reverse engineer, disassemble, decompile or in part. You may not reverse engineer, disassemble, decompile or otherwise attempt to derive the source code of the Software, except to the extent allowed under any applicable law. Any attempt to transfer any of the rights, duties

or obligations of this license agreement is void. You may not rent, lease, load, resell for profit or distribute the Software, or any part thereof.

(c) **Ownership.** The Software is licensed, not sold, to you solely for your use under the terms of this license agreement, and DIRECTV and its suppliers reserve all rights not expressly granted to you. You shall own the media, if any, on which Software or End User Documentation is recorded, but DIRECTV and its suppliers retain ownership of all copies of the Software itself.

(d) **Reservation of Rights.** Except as stated above, this license agreement does not grant to you any intellectual property rights in the Software.

(e) **Term.** If you breach any term or condition of this license agreement, this license agreement will terminate immediately upon notice to you.

(f) **Warranty Disclaimer.** NEITHER DIRECTV NOR ANY OF ITS REPRESENTATIVES MAKES OR PASSES ON TO YOU OR OTHER THIRD PARTIES ANY WARRANTY OR REPRESENTATION ON BEHALF OF DIRECTV OR ITS SUPPLIERS (INCLUDING TIVO) WITH RESPECT TO THE SOFTWARE, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE OR NON-INFRINGEMENT OF THIRD PARTY RIGHTS.

(g) **Limitation of Liability.** IN NO EVENT WILL DIRECTV OR ITS SUPPLIERS BE LIABLE TO YOU WITH RESPECT TO THE SOFTWARE FOR ANY CONSEQUENTIAL, INCIDENTAL OR SPECIAL DAMAGES, INCLUDING LOST PROFITS OR LOST SAVINGS, EVEN IF DIRECTV OR ITS SUPPLIERS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, OR FOR ANY CLAIM BY ANY THIRD PARTY. Some states or jurisdictions do not allow the exclusion or limitation of incidental, consequential or special damages, so the above limitations may not apply to you.

(h) **Third-Party Beneficiary.** DIRECTV and you expressly acknowledge and agree that TiVo, Inc., a Delaware corporation with its principal place of business at 2160 Gold Street, Alviso, CA 95002, is an intended third-party beneficiary of this license agreement as it relates to TiVo software that may be contained in the Receiving Equipment. These license provisions are made expressly for the benefit of TiVo and are enforceable by TiVo in addition to DIRECTV.

### 8. LIMITS ON OUR RESPONSIBILITY

(a) **Service Interruptions.** Service may be interrupted from time to time for a variety of reasons. We are not responsible for any interruptions of Service that occur due to acts of God, power failure or any other cause beyond our reasonable control. However, because we value our customers, for an interruption of a significant length of time that is within our reasonable control, upon your request we will provide what we reasonably determine to be a fair and equitable adjustment to your account to make up for such Service interruption. THIS WILL BE YOUR SOLE REMEDY AND OUR SOLE DUTY IN SUCH CASES.

(b) **Disclaimers.** EXCEPT AS EXPRESSLY PROVIDED HEREIN, WE MAKE NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, REGARDING ANY SERVICE OR YOUR RECEIVING EQUIPMENT. ALL SUCH WARRANTIES OR REPRESENTATIONS, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NON-INFRINGEMENT ARE DISCLAIMED.

(c) **Limitations of Liability.** WE ARE NOT RESPONSIBLE FOR ANY CONSEQUENTIAL DAMAGES OR LOSSES RELATING TO THE RECEIVING EQUIPMENT OR ANY SERVICE, WHETHER BASED ON NEGLIGENCE OR OTHERWISE. REGARDLESS OF THE CAUSE, OUR TOTAL LIABILITY FOR DAMAGES OR LOSSES TO YOU AND ANY OTHER PERSONS RECEIVING OUR SERVICE, WILL IN NO EVENT EXCEED THE AMOUNT THAT YOU HAVE PAID TO US FOR THE SERVICE THAT YOU RECEIVED DURING THE SIX (6) MONTH PERIOD IMMEDIATELY PRIOR TO THE SPECIFIC EVENT THAT GAVE RISE TO THE APPLICABLE DAMAGE OR LOSS. THIS ALLOCATION OF RISK IS REFLECTED IN OUR PRICES. You may have greater rights than described above under your state's laws. You should consult them.

(d) **Warranty Services.** You agree that this Agreement does not provide for, and the Service does not include, any warranty services or other services that we might provide separately, including, without limitation, any fee-based or other warranty programs.

### 9. RESOLVING DISPUTES

In order to expedite and control the cost of disputes, you and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows:

(a) **Informal Resolution.** We will first try to resolve any Claim informally. Accordingly, neither of us may start a formal proceeding (except for Claims described in Section 9(d) below) for at least 60 days after one of us notifies the other of a Claim in writing. You will send your notice to the address on the first page of this Agreement, and we will send our notice to your billing address.

(b) **Formal Resolution.** Except as provided in Section 9(d), if we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration. The arbitration will be conducted under the rules of JAMS that are in effect at the time the arbitration is initiated (referred to as the "JAMS Rules") and under the rules set forth in this Agreement. If there is a conflict between JAMS Rules and the rules set forth in this Agreement, the rules set forth in this Agreement will govern. **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL.** You may, in arbitration, seek any and all remedies otherwise available to you pursuant to your state's law. If you decide to initiate arbitration, you agree to tell us in writing the amount that you would pay to file a lawsuit against us in the appropriate court of law in your state. Unless we agree to pay your fee for you, you only need to pay an arbitration initiation fee equal to such court filing fee, not to exceed $125; we agree to pay any additional fee or deposit required by JAMS to initiate your arbitration. We also agree to pay the costs of the arbitration proceeding. Other fees, such as attorney's fees and expenses of travel to the arbitration will be paid in accordance with JAMS Rules. The arbitration will be held at a location in your hometown area unless you and we both agree to another location or telephonic arbitration. To start an arbitration, you or we must do the following things:

(1) Write a Demand for Arbitration. The demand must include a description of the Claim and the amount of damages sought to be recovered. You can find a copy of a Demand for Arbitration at jamsadr.com.

(2) Send three copies of the Demand for Arbitration, plus the appropriate filing fee to:

**JAMS**
**500 North State College Blvd., Suite 600**
**Orange, CA 92868**
**1-800-352-5267**

(3) Send one copy of the demand for arbitration to the other party.

(c) **Special Rules.** (i) In the arbitration proceeding, the arbitrator has no authority to make errors of law, and any award may be challenged if the arbitrator does so. Otherwise, the arbitrator's decision is final and binding on all parties and may be enforced in any federal or state

court that has jurisdiction. (ii) Neither you nor we shall be entitled to join or consolidate claims in arbitration by or against other subscribers or, or arbitrate any claim as a representative member of a class or in a private attorney general capacity. Accordingly, you and we agree that the JAMS Class Action Procedures do not apply to our arbitration. If, however, the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire Section 9 is unenforceable.

## 10. MISCELLANEOUS

(a) **Notice.** Notices to you will be deemed given when personally delivered, addressed to you at your last known address and deposited in the U.S. Mail, which may include inclusion in your billing statements, and sent via Internet to the e-mail address you provided us or sent as satellite to your receiver or delivered where a voice message is left at the telephone number on your account. Your notices to us will be deemed given when we receive them at the address or telephone number on the first page of this Agreement.

(b) **Applicable Law.** The interpretation and enforcement of this Agreement shall be governed by the rules and regulations of the Federal Communications Commission, other applicable federal laws, and the laws of the state and local laws which Service is provided to you. This Agreement is subject to modification if required by such laws. Notwithstanding the foregoing, Section 9 shall be governed by the Federal Arbitration Act.

(c) **Assignment of Account.** We may assign your account or this Agreement and all rights and/or obligations hereunder to any third party without notice, including, without limitation, collection of unpaid amounts, or in the event of an acquisition, corporate reorganization, merger or sale of substantially all of the party's assets to another entity. You hereby consent to such assignment. You must continue making all required payments to us in accordance with your billing statement, unless notified otherwise.

(d) **Other.** This Agreement and any lease, activation, programming, or other contract or commitment Agreement that you entered into in connection with obtaining Receiving Equipment constitutes our entire agreement. No salesperson or other representative is authorized to change it. If any provision is declared by a competent authority to be invalid, that elimination will be deleted or modified to the extent necessary, and the rest of the Agreement will remain enforceable. The terms of this Agreement that expressly or by their nature survive termination shall continue thereafter until fully performed.

**THANK YOU.**

©2007 DIRECTV, Inc. DIRECTV and the Cyclone Design logo are registered trademarks of DIRECTV, Inc.

0207DIRA002.5.11



# DIRECTV. PRIVACY POLICY

**Effective as of May 1, 2006, until replaced**

DIRECTV is dedicated to protecting consumer privacy. This Policy explains how DIRECTV collects, uses, and discloses information about you when you subscribe to our services and you visit our Web sites. Your use or receipt of DIRECTV® products or services (including our Web sites) constitutes acceptance of this Policy.

This Policy explains our practices in the following areas:

1. The nature of the Personally Identifiable Information we collect about you and the way such information is used.

2. The nature, frequency, and purpose of any disclosure of Personally Identifiable Information that we may make, including the types of persons or entities to whom the disclosure may be made.

3. The period of time for which we maintain Personally Identifiable Information about you.

4. How you may obtain access to and correct any Personally Identifiable Information about yourself.

5. Your rights under the Communications Act, 47 U.S.C. § 338(i).

You may also purchase or use products or services provided by other companies that may be delivered through your DIRECTV Receiving Equipment. Please contact or visit the Web sites of the providers of those products or services to obtain copies of their privacy policies.

If you have questions about this Policy or other matters, you may contact us 24 hours a day, any day of the year, by phone (1-800-531-5000), e-mail (directv.com/email) or mail (DIRECTV Privacy Policy, P.O. Box 6550, Greenwood Village, CO 80155-6550).

## I. Types of Information we collect and how we collect it

In discussing the types of information we collect from subscribers and visitors to our Web sites, it is important to distinguish between two categories of information. We use "Customer Information" as a broad, general term that refers to any information relating to you or your DIRECTV service, including Account Information, Service Information, Anonymous Viewing Information, Diagnostic Information, Commerce Information, and Web Site Information. These terms are defined in more detail below in Section A.

---

## IV. Your choices regarding our collection and use of Customer Information

The default privacy preferences, to which you hereby consent if you do not request a change to your settings, do not allow us to collect Personally Identifiable Viewing Information, but do allow us to collect, use, and disclose all Customer Information in manners consistent with this Privacy Policy. You may choose to change your privacy preferences to allow us to collect Personally Identifiable Viewing Information.

Even though Anonymous Viewing Information does not include any Account Information whatsoever, you may request that we block the collection of such information from your DIRECTV Receiver.

You may further opt not to receive communications that we send to you based on your preferences. If you make this choice, you understand that we will not be able to inform you about any upcoming features, improvements, or promotions regarding your DIRECTV service. In all cases, however, we will collect and use your Account Information (including Service Information) and Diagnostic Information for legitimate business purposes.

If you prefer that we not share your Customer Information with affiliated companies or third parties, please call (1-800-531-5000), e-mail (directv.com/email) or mail us (DIRECTV Privacy Policy, P.O. Box 6550, Greenwood Village, CO 80155-6550).

## V. How long we keep Customer Information

We maintain information about you for as long as we provide service to you and longer for related business activities. After information is no longer necessary for our business purposes, we destroy the information unless there is an outstanding request or order to preserve the information.

## VI. Our do not contact policy

We may, from time to time, contact you by mail, e-mail or telephone to tell you about additional products or services that we or third parties may offer. If you do not wish to receive such calls or promotional materials, call (1-800-531-5000), e-mail (directv.com/email) or mail us (DIRECTV Privacy Policy, P.O. Box 6550, Greenwood Village, CO 80155-6550). If you do not wish to receive e-mail, please contact us via e-mail at directv.com/email.

## VII. How we protect the security of Customer Information

We take reasonable steps to protect Customer Information by using security technologies and procedures that limit access to our databases. However, no system is completely secure or error-free. We do not, and cannot, guarantee the complete security of Customer Information.

## VIII. Online credit card transactions

We protect the security of credit card transactions on the Internet by using a secure, encrypted Web server. We maintain credit card information collected during transactions in a secure database at DIRECTV for fraud prevention and accounting and billing purposes. Your credit card information is not available to unauthorized parties while in these databases. Stored information from credit card transactions is not released to third parties except in response to a

---

subpoena or court order.

## IX. Your access to information and rights under the Communications Act

You may obtain access to information we collect about you and correct any errors in such information by contacting us anytime by phone (1-800-531-5000), e-mail (directv.com/email) or mail (DIRECTV Privacy Policy, P.O. Box 6550, Greenwood Village, CO 80155-6550).

The Communications Act, 47 U.S.C. § 338(i), governs our practices concerning the collection and disclosure of personally identifiable information about you. If you believe we have violated the provisions of the Communications Act, you may bring an action for damages, reasonable attorneys' fees, and costs. The DIRECTV Customer Agreement contains our agreement that claims such as these will be resolved by binding arbitration. You received a copy of the DIRECTV Customer Agreement at your first bill. It is also available at directv.com.

## X. Changes to this Privacy Policy

We reserve the right to change this Privacy Policy at any time. If we make a significant change with regard to our collection or use of information about our customers, we will note on the main page of our Web sites that this Policy has been updated and may take additional reasonable steps to notify you about the new or revised Policy, in most cases, we will attempt to notify you in some form 30 days before the effective date of the change.

To comment on or ask about this Policy, call (1-800-531-5000), e-mail (directv.com/email) or mail us (DIRECTV Privacy Policy, P.O. Box 6550, Greenwood Village, CO 80155-6550).

©2007 DIRECTV, Inc. DIRECTV and the Cyclone Design logo are registered trademarks of DIRECTV, Inc. 07/07 B6995CSS-13

052779P4PDLA336

We use the term "Personally Identifiable Viewing Information" to refer to information about your personal viewing habits that we collect only with your express consent. This term is defined in more detail below in Section B.

A. The following are specific types of Customer Information that we collect from customers and visitors to our Web sites:

"Account Information" means information about your DIRECTV service account, including your name, address, social security number, e-mail address, telephone number, what programming packages you subscribe to, consumer credit reports, the model and serial number of your DIRECTV® Receiver, software version used, and your viewing preferences. Account Information does not include any Personally Identifiable Viewing Information. We collect Account Information directly from you when you activate an Account or change your service, as well as from third parties, such as consumer reporting agencies.

"Service Information" means information necessary for us to provide service to your DIRECTV Receiver. Examples of Service Information include your receiver's software version number and the success status of the last attempted service call by your receiver.

"Anonymous Viewing Information" means information about use of your DIRECTV Receiver, that is not associated with or linked to your Account Information. Your DIRECTV Receiver regularly sends Anonymous Viewing Information to us. This information allows us to know, for example, that a customer from a particular city watched a show, but we cannot associate those viewing choices with you. You may request that we block the collection of Anonymous Viewing Information from your DIRECTV Receiver as described in Section IV below.

"Diagnostic Information" means a file with detailed information about the operation of a DIRECTV Receiver. We collect Diagnostic Information from your DIRECTV Receiver for system control and troubleshooting. These logs identify your DIRECTV Receiver and are thus associated with your Account.

"Commerce Information" means Personally Identifiable Information that enables e-commerce partner to fulfill your request to participate in a promotion or transaction. From time to time, we may present on-screen offers or enable you to buy goods and services from us or third parties. Only if you take advantage of such an offer or engage in a transaction, will we collect and send information such as your name and address and your interest in a specific offer or transaction to the sponsor of the promotion or transaction. In addition to fulfilling your request, that commerce partner may also use your Commerce Information to send you other information in which you might be interested consistent with its own privacy policies.

"Web Site Information" means information collected and stored on our Web servers when you become a registered user of, or visit, our Web sites.

If you are a customer and register on our Web sites to access your DIRECTV account, we may collect information that you

provide us (including your e-mail address) and use it in accordance with this Privacy Policy. Whether or not you are a DIRECTV customer, we may collect information about visitors to our Web sites as follows:

Cookies: We use cookies to our Web sites for returning visitors. These cookies remain on your computer and are automatically retrieved when you visit our Web sites at a later time. These cookies contain only information concerning the type of customer and frequently visited pages. No other Customer Information is stored on cookies.

If you are uncomfortable with cookies, you may disable them on your computer. Disabling cookies may affect user functionality but the design of DIRECTV Web sites allows access to most offerings even with disabled cookies. However, won't be able to use DIRECTV's cookie processing, however, won't be able to use DIRECTV's personalized account management functions.

Electronic newsletters: If you subscribe to electronic newsletters from DIRECTV, we keep your e-mail address on file.

Aggregate information about Web site visitors: We create aggregate reports of visitors to our Web sites to measure the performance of our Web sites. These reports do not contain Customer Information.

Links to other Web sites: When you visit our Web sites, you will find many opportunities to link to Web sites of third parties. When you click through to these sites, DIRECTV's Privacy Policy no longer applies. We recommend that you read the privacy policy for any third party Web sites.

B. "Personally Identifiable Viewing Information" means information about the use of your DIRECTV Receiver, if that information is linked to or associated with your Account Information. We do not collect Personally Identifiable Viewing Information unless you give express consent to do so. You may choose to consent to DIRECTV's collection of Personally Identifiable Viewing Information by changing your privacy preferences as provided in Section IV below.

II. Use of Customer Information

We use Customer Information to deliver our service to our customers and to understand what our customers want so we can continue to provide a compelling entertainment service at a good value. Specifically, we use Customer Information for editorial, feedback, marketing and promotion purposes, for statistical analysis, for product development and content improvement, to verify customer qualifications to receive our service, to bill for our service and/or other related business purposes.

Expressly allowing us to collect your Personally Identifiable Viewing Information may help us provide you with a compelling entertainment service. It may help us recommend viewing choices, personalize your viewing experience and select advertisements or other promotions for you that you may be interested in. Also, we may use this information for surveys, audience measurement, and other legitimate business purposes. If you have DIRECTV DVR service, your DIRECTV DVR may use your viewing information to recommend programs for you.

As noted above, we do not collect your Personally Identifiable Viewing Information without your consent. Absent that consent, no "tag" is added to the anonymous viewing file transmitted from a DIRECTV Receiver to us that would enable us to identify the DIRECTV Receiver from which it came.

III. When we share Customer Information with third parties

We share Customer Information with third parties where it is necessary to conduct a legitimate business activity related to serving our customers, including as follows:

Support services: We share Customer Information with providers of bill processing, technical assistance, and other support services. We take reasonable steps to require these third parties to maintain the confidentiality of the Customer Information and require them to adhere to this Privacy Policy.

Third party services: We share Customer Information with third parties in order to coordinate delivery or billing of the services provided by such third parties to your DIRECTV Receiver. We take reasonable steps to require these third parties to maintain the confidentiality of the Customer Information and require them to adhere to this Privacy Policy.

Affiliated companies: We may share Customer Information with affiliated companies of DIRECTV. If we choose to share data in this fashion, we will require our affiliates to honor this Privacy Policy.

Marketing: We may share Customer Information, including programming purchases, with selected media, entertainment, and other similar service providers. These service providers may use this Customer Information to market products or services to you.

We may disclose aggregated Anonymous Viewing Information and any derived analyses to third parties including suppliers, advertisers, broadcasters, research companies and other organizations.

When you elect to participate in a special offer or engage in a transaction with DIRECTV or a third party advertiser or promoter through your DIRECTV Receiver, we will collect and disclose your Commerce Information to the party sponsoring or fulfilling the promotion. This information is disclosed only upon your affirmative response to an offer. In addition to fulfilling your request, that party may also pass your Commerce Information to send you other information in which you might be interested consistent with its own privacy policies.

Legal requirements: We may share Customer Information with third parties to meet legal requirements or where permitted by law to protect our rights and property. For example, we may be asked to disclose certain Customer Information or Personally Identifiable Viewing Information in response to a subpoena or court order. In most cases where disclosure is being made pursuant to legal process, we will provide you with notice of such subpoena or court order so that you have the opportunity to contest in a court proceeding the subpoena or court order.

Sale or transfer of the business: We may share Customer Information with third parties in connection with the sale, transfer, or other assignment of our business. If we are acquired by another company, that company possesses the Customer Information



**TRY DIRECTV PAY PER VIEW TODAY**

# FREE MOVIE

**DIRECTV® Pay Per View is easy.** Watch the biggest hits in drama, comedy, thriller, action, adventure, family and more. The movies come directly to you. No DVD rental store, no mailing, no hassles.

Go to channels 125-199 to order the Pay Per View movie of your choice for free ($3.99 value).



**DIRECTV.**
PAY PER VIEW

## Thank you for choosing DIRECTV. To show our appreciation, here's your coupon for a FREE Pay Per View movie.

**Order a Pay Per View movie with your remote.** Movie selections start at Channel 125. You can also order online at directv.com/movies.

**Enjoy your free movie.** Remember, with the FIRST 5 MINUTES FREE™ feature, you can watch the first five minutes at the movie's scheduled start time before you buy.

**Redeem your $3.99 coupon in three easy steps:**

1. Wait until the Pay Per View charge appears on your bill.
2. Fill out this coupon.
3. Mail coupon along with remittance slip and bill payment. (If you pay by credit card, Auto Bill Pay, or don't pay your bill directly to DIRECTV, mail only the completed coupon to: DIRECTV, Inc., P.O. Box 78626, Phoenix, AZ 85062-8626) Credit will appear on your bill when we receive your coupon.

| DIRECTV Account Number |
| Movie Watched |
| Name |
| Home Phone # |
| Signature |

By signing above, you agree to be bound by the terms and conditions of this coupon and the DIRECTV Customer Agreement. Offer expires 11/28/08.

Cash redemption value 1/100th of a cent. This coupon expires and must be received at DIRECTV by 11/28/08. Coupon is nontransferable, nonrefundable and nonproratable. Void if copied or transferred and where prohibited by law. May not be exchanged or substituted or be reproduced. No more than two coupons can be redeemed per month. Not valid towards Pay Per View events or adult Pay Per View purchases. Any other use constitutes fraud. Good only in the U.S.A. DIRECTV is not responsible for late, lost, misdirected, illegible or mutilated coupons, any phone-assistance fees. Programming, pricing, terms and conditions are subject to change. Not for resale. Valid only for current residential subscribers who make a DIRECTV Pay Per View purchase. Receipt of DIRECTV programming is subject to terms of the DIRECTV Customer Agreement. directv.com/legal and mailed to customers in the first month. ©2008 DIRECTV, Inc. DIRECTV and the Cyclone Design logo are registered trademarks of DIRECTV, Inc. All other trademarks and service marks are the property of their respective owners. 01/08  29489

000000130 0 04 0000 000000000 1 0028 00000399 00000000 0

## YOU MAY BE ELIGIBLE TO RECEIVE A MONTHLY BILL CREDIT FOR UP TO 12 MONTHS.

To receive your bill credit, please **follow these steps within 60 days of activating** your DIRECTV System:

1. **Visit directv.com/rebate**
2. **Enter your account number and zip code to confirm your eligibility and submit your redemption.**
   - Do not manually deduct the bill credit from your monthly bill amount due. Doing so may result in service interruption.
   - Allow 6 to 8 weeks from submission for the first bill credit to appear on your account.
3. **Track your redemption status online at directv.com/rebate, or provide your e-mail address during the redemption process to have status notices sent directly to you.**
4. **If you do not have Internet access, you can contact our Redemption Center at 1-877-286-4808 for assistance.**



REDEMPTION DETAILS. New DIRECTV customers only; on approved credit. Lease or multiple dwelling unit provider activation required. **Offer valid for new customer who acquires a DIRECTV System between 02/27/08 and 06/24/08 and activates a qualifying programming package within 30 days.** Customer must redeem online at www.directv.com/rebate or call 1-877-286-4808 **within 60 days of system activation.** Upon receipt of redemption, DIRECTV will begin to credit the new customer's account for 12 months. Allow 6-8 weeks for processing. If customer subscribes to the qualifying package for 12 consecutive months (without interruption) customer will continue to receive the applicable bill credits. If customer's account is disconnected for any reason, credits will automatically discontinue and will not be reinstated. Credits cannot be transferred or exchanged. Credits not redeemable for cash; any credit balances that may appear on account will continue month-to-month until credit is exhausted. Customer account must remain active and in good standing as determined by DIRECTV in its sole discretion to receive credits. Not valid for purchase by groups, clubs or organizations. Reproductions of redemption form strictly prohibited. DIRECTV not responsible for late, lost, illegible, mutilated, incomplete, misdirected or postage-due mail. LIMIT ONE PROGRAMMING BILL CREDIT PER DIRECTV ACCOUNT. THIS OFFER CANNOT BE COMBINED WITH ANY OTHER PROGRAMMING BILL CREDIT OFFERS. ©2008 DIRECTV, Inc. DIRECTV and the Cyclone Design are registered trademarks of DIRECTV, Inc. 02/08 79177-0          0208REP

## DIRECTV.com makes it easy to pay your DIRECTV bill.

Sign up for Auto Bill Pay and your bill will automatically be paid every month with your credit card.

It's easy. Go to directv.com to register your account. Then follow the simple steps to set up recurring payments.

Or go to directv.com/myaccounthelp and Diane, our online assistant, will show you how.



## directv.com

Register at directv.com and you'll have everything you need to manage your DIRECTV account. With a simplified registration process and improved account management features, it's now easier than ever.

Visit directv.com/myaccounthelp for a quick demo.

## A Simple Guide to Understanding Your Bill

Programming, pricing, terms and conditions subject to change at any time. Receipt of DIRECTV programming subject to terms of DIRECTV Customer Agreement, copy provided at directv.com/legal and in your first bill. ©2008 DIRECTV, Inc. DIRECTV and the Cyclone Design logo are registered trademarks of DIRECTV, Inc. All other trademarks and service marks are property of their respective owners. 25609-1   03/08



# DIRECTV

| ACCOUNT NUMBER | DATE DUE | AMOUNT DUE |
|---|---|---|
| 900000015 | 08/02/07 | $77.49 |

## Summary

Statement Date: 07/15/07
Page 1 of 6
For Service at:
VALUED CUSTOMER
1234 MAIN STREET
JACKSON MS 39209

| | Amount |
|---|---|
| Previous Balance | 77.01 |
| Payments | -77.01 |
| Current Charges & Fees | 86.94 |
| Adjustments & Credits | -14.99 |
| Taxes | 5.54 |
| **Amount Due** | **$77.49** |

## Activity

| Start | End | Description | Amount |
|---|---|---|---|
| 07/10 | | Previous Balance | 77.01 |
| | | Payments - Thank you | -77.01 |

**Current Charges for Service Period 07/15/07 - 08/14/07**     To contact us call 1-800-531-5000

| | | | |
|---|---|---|---|
| 07/15 | 08/14 | PLUS DVR Monthly | 62.99 |
| 07/15 | 08/14 | DIRECTV DVR Service Price included in base package | 0.00 |
| 07/15 | 08/14 | DIRECTV Protection Plan Monthly | 5.99 |
| 06/28 | | PPV: Name of Movie on all receivers | 3.99 |
| 07/05 | | PPV: Name of Movie on receiver 001-000000 | 3.99 |

**Fees**

| 07/16 | Lead Receiver | 4.59 |
|---|---|---|
| 07/16 | Primary Leased Receiver | 4.59 |

**Adjustments & Credits**

| 07/03 | Customer Referral Rewards | -10.00 Credit |
|---|---|---|
| | Primary Leased Receiver | -4.99 Credit |

| Sales Tax | 5.54 |
|---|---|
| **AMOUNT DUE** | **$77.49** |

---

☐ Note any change of address on reverse side
DO NOT WRITE OTHER COMMENTS ON THIS FORM

# DIRECTV

PLEASE FOLD ALONG PERFORATION, DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT

| DATE DUE | ACCOUNT NUMBER | AMOUNT DUE | PAYMENT ENCLOSED |
|---|---|---|---|
| 08/02/07 | 900000015 | $77.49 | STOP-N-CEN |

(601) 000-0000

#XXXXXXX
#1234567890124
AC 1 000005 61002 E A**H004
VALUED CUSTOMER
1234 MAIN STREET
JACKSON MS 39209

To sign up for Auto Pay Service, See Reverse.
Do not send cash. Make check or money order
payable to:

DIRECTV
SEE YOUR BILL
FOR CORRECT MAILING ADDRESS

IdnIIdnIIdnIIdnIIdnIIdnIIdnIIIdnIIdnIII

000000000000000090000000015  3  0026  00003262  00003262  2

---

**Your DIRECTV account number.**
You'll need it when you call us
or sign in at directv.com.

**An overview of your account activity.**

**Your payment.**

**We bill for one month of service at the
beginning of your billing cycle.**

**Detail of each service or PPV charge.**

**Any Fees, including a $4.99 monthly lease
fee for the 2nd and each additional receiver
leased by you in your household.**
Note: DIRECTV waives the Primary (1st) Leased
Receiver fee by issuing a $4.99 credit to offset the
$4.99 charge. (See back of bill for more details)

**Adjustments and any credits to your account.**

**Messages and important updates about
your account appear in these areas.**

**Detach and return this section
with your payment.**

**Write the amount of your payment here.**

**Remember to write your
account number on your check.**

**Payment due date.**

**Be sure this address shows through
the window of the return envelope.**

**Note:** Please make sure to see the back of your
bill for payment option information and answers
to frequently asked questions.



| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| ANNETTE KAHALY and KATHLEEN O'BRIEN, Individually and on Behalf of All Others Similarly Situated, | DIRECTV, INC.; DIRECTV MERCHANDISING, INC.; DIRECTV ENTERPRISES, LLC; DIRECTV HOLDINGS LLC; DIRECTV OPERATIONS LLC; and THE DIRECTV GROUP, INC., |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| HULETT HARPER STEWART LLP 550 West C Street, Suite 1600 San Diego, CA 92101, Tel: 619/338-1133 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes    ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes    ☐ No      ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

CAL. CIVIL CODE SEC. 1770, ET. SEQ.; CIVIL CODE SEC. 1671(a); CAL. BUS. & PROF. CODE SEC. 17200, ET SEQ.; 28 U.S.C. Sec 1332 (CAFA)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☒ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | | | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

SACV08-741

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): CV07-6465 FMC

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☑ A. Arise from the same or closely related transactions, happenings, or events; or

☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☑ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Annette Kahaly - Orange County | Kathleen O'Brien - Florida |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _[signature]_                Date July 7, 2008

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

HULETT HARPER STEWART LLP
BLAKE MUIR HARPER, SBN: 115756
550 West C Street, Suite 1600
San Diego, CA 92101
Telephone: (619) 338-1133

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE KAHALY and KATHLEEN O'BRIEN, Individually and on Behalf of All Others Similarly Situated,                                                   PLAINTIFF(S)<br><br>v.<br><br>DIRECTV, INC.; DIRECTV MERCHANDISING, INC.; DIRECTV ENTERPRISES, LLC; DIRECTV HOLDINGS LLC; DIRECTV OPERATIONS LLC; and THE DIRECTV GROUP, INC.,                                                   DEFENDANT(S). | CASE NUMBER<br><br>SACV08-741 AG(ANx)<br><br><br>SUMMONS |

TO:    DEFENDANT(S): _____

     A lawsuit has been filed against you.

     Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Blake Muir Harper_____, whose address is _550 West C Street, Suit 1600, San Diego, Ca 92101_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

                    Clerk, U.S. District Court

Dated: ____JUL - 7 2008_____      By: _____NATALIE LONGORIA_____
                                             Deputy Clerk

                                             (Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

                                             1198

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Arthur Nakazato.

The case number on all documents filed with the Court should read as follows:

## SACV08- 741 AG (ANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[X] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.