1  HULETT HARPER STEWART LLP
2  BLAKE MUIR HARPER, SBN: 115756
   SARAH P. WEBER, SBN: 239979
3  550 West C Street, Suite 1600
4  San Diego, CA  92101
   Telephone:   (619) 338-1133
5  Facsimile:   (619) 338-1139
6  e-mail:    blake@hulettharper.com
              sweber@hulettharper.com
7
8  Attorneys for Plaintiffs

9            IN THE UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11  ANNETTE KAHALY and                    Case No. SACV08-741 AG(ANx)
12  KATHLEEN O'BRIEN, Individually
    and on Behalf of All Others Similarly  **CLASS ACTION**
13  Situated,
                                          **FIRST AMENDED COMPLAINT**
14             Plaintiffs,                **FOR:**
15
16  v.                                    **(1) VIOLATION OF CALIFORNIA**
                                          **CIVIL CODE SECTION 1770, *ET.***
17  DIRECTV, INC.; DIRECTV                **SEQ.;**
18  MERCHANDISING, INC.; DIRECTV
    ENTERPRISES, LLC; DIRECTV             **(2) VIOLATION OF CALIFORNIA**
19  HOLDINGS LLC; DIRECTV                 **BUSINESS AND PROFESSIONS**
20  OPERATIONS LLC; and THE               **CODE SECTION 17200, *ET. SEQ.*;**
    DIRECTV GROUP, INC.,
21                                        **(3) UNJUST ENRICHMENT; and**
22             Defendants.
                                          **(4) UNLAWFUL ASSESSMENT OF**
23                                        **LIQUIDATED DAMAGES UNDER**
24                                        **CIVIL CODE SECTION 1671(a)**
25                                        **JURY DEMAND**
26
                                          JUDGE:    Honorable Andrew J. Guilford
27                                        CTRM:     10D
28

1        Plaintiffs Annette Kahaly and Kathleen O'Brien (hereinafter "Plaintiffs"),

2  individually and on behalf of all others similarly situated, bring this action against

3  Defendant DirecTV Group, Inc. and certain of its subsidiaries (hereinafter referred

4  to as "DirecTV" or "Defendants") for violations of California's Consumer Legal

5  Remedies Act, Unfair Competition Law, for unjust enrichment, and to void

6  Defendants' unlawful assessment of liquidated damages.  Plaintiffs hereby complain

7  and allege, on information and belief, the following:

8                         **INTRODUCTION**

9       1.     This is a proposed nationwide class action arising out of the

10  Defendants' deceptive and unlawful business acts and practices concerning the sale

11  of satellite television service plans and related equipment.  These practices include

12  failing to disclose adequately that by purchasing DirecTV, consumers are entering

13  into a two-year "programming commitment," and that canceling DirecTV's service

14  before the two-year commitment expires will cause consumers to incur excessive

15  and unreasonable cancellation fees.

16       2.     At all relevant times, the Defendants offered for sale and sold satellite

17  television service plans and related equipment.  The Defendants failed to disclose to

18  consumers who called by telephone for service to be initiated or changed that they

19  were entering a two-year programming contract that could not be canceled without

20  paying an excessive fee that is automatically charged to the consumer's credit or

21  debit card.  Defendants also failed to adequately disclose to such consumers at the

22  time the satellite dish necessary to receive its service is installed that the consumer is

23  entering into a two-year programming contract that prevents the consumer from

24  canceling the service without incurring excessive fees.

25       3.     Additionally, Defendants have engaged, and continue to engage, in the

26  deceptive business practice of providing installation documentation in connection

27  with such transactions that is designed to and does mislead consumers concerning

28  the existence of and term of the service they have purchased and the associated

1   cancellation charge.

2                                    **PARTIES**

3       4.    Plaintiff Annette Kahaly, at all relevant times resided in Orange

4   County, California.  On or about March 30, 2008 Kahaly had DirecTV installed in

5   her apartment.  On or about April 9, 2008 after several unsuccessful attempts to

6   obtain the correct programming Kahaly had orally requested in her initial order with

7   Defendants she canceled the service.  On or about April 23, 2008, Kahaly received

8   her first billing statement from the Defendants, which notified her for the first time

9   of an "Early Cancellation Fee" and that her credit card had already been charged

10  $460.00 as a cancellation fee.

11      5.    Plaintiff Kathleen O'Brien, at all relevant times resided in the State of

12  Florida, County of Pasco.  On or about December 10, 2007, O'Brien's husband

13  called DirecTV to upgrade their existing DirecTV services to high definition ("HD")

14  to accommodate a new HD television he purchased.  On this call, DirecTV did not

15  disclose that by upgrading the account, the O'Briens were entering into a

16  "programming commitment."   The next day, December 11, 2007, O'Brien's

17  husband returned the new television.  On or about December 17, 2007, O'Brien

18  called to cancel DirecTV's service.  At this time O'Brien was notified for the first

19  time that she was under a two-year agreement and that if she cancelled the services

20  she would be charged an early cancellation fee of $440.00. On May 14, 2008, after

21  O'Brien's attempts to dispute the fee, DirecTV deducted $440.00 from her checking

22  account without permission.

23      6.    Defendant DirecTV Group, Inc., directly and through its subsidiaries,

24  provides satellite-based television service in the United States and provides receivers

25  and other equipment needed to access that service.  Some or all of the subsidiaries

26  who engaged in the conduct described in this Complaint are Defendant DirecTV,

27  Inc., a corporation incorporated under the laws of the state of California; Defendant

28  DirecTV Merchandising, Inc., a corporation incorporated under the laws of the state

                                        2

1  of Delaware; Defendant DirecTV Enterprises, LLC, a limited liability company
2  organized under the laws of the state of Delaware; and Defendant DirecTV
3  Operations LLC, a limited liability company organized under the laws of the state of
4  California.   Defendant and all of its subsidiaries have their principal places of
5  business in El Segundo, California.  All Defendants shall hereinafter be referred to
6  collectively as "DirecTV" or "Defendants."

7                    **JURISDICTION AND VENUE**

8       7.     Jurisdiction  and  venue  are  appropriate  because  DirecTV  is
9  headquartered in this District. Furthermore, Defendants, at all times herein relevant
10  conducted, and continue to conduct, business in this District and throughout the state
11  of California and engage in the unfair and deceptive business practices alleged in
12  this Complaint in this district and throughout California.  The Defendants have
13  sufficient minimum contacts with California and intentionally availed themselves of
14  the  laws  of  California  by  advertising  and  conducting  transactions  therein.
15  Specifically,  based  on  information  and  belief,  Defendants'  adoption  and
16  enforcement of the policies described herein, was conceived in, orchestrated from,
17  initiated in, and emanated from El Segundo, California.

18       8.     Plaintiff is informed and believes that she and the Class she seeks to
19  represent are entitled to restitution in an amount greater than five-million dollars
20  ($5,000,000), the Class is larger than 100, and Defendants are citizens of a different
21  state than one or more members of the Class of Plaintiffs, conferring jurisdiction on
22  this Court over this action pursuant to the Class Action Fairness Act of 2005.  28
23  U.S.C. § 1332.

24                    **FACTUAL ALLEGATIONS**

25       9.     DirecTV is a provider of satellite television service in the United
26  States.

27       10.    In early March 2008 Kahaly contacted DirecTV by phone to obtain
28  satellite television services for her new residence.  She requested basic channels,

                              3

1   HBO and Showtime, one regular receiver and one DVR receiver. Kahaly was told
2   that the total monthly costs would be $61.98 for the first three months of service,
3   and $74.98 per month thereafter. During the telephone call, Kahaly was not
4   informed of any contractual requirement to subscribe to the programming for a
5   specified period of time.

6       11.     On March 24, 2008, Kahaly contacted DirecTV, again by phone, to
7   confirm that installation would occur on March 30, 2008. During this call, she was
8   informed her order did not include the services she originally requested and that the
9   cost for the services she wanted would be different than that originally quoted to her.
10  The new quote was $55.99 for the first 12 months, and $67.99 per month thereafter.
11  During this second telephone call, Kahaly was not informed of any long-term
12  programming commitment.

13      12.     On March 30, 2008, a third-party contractor of DirecTV installed the
14  DirecTV equipment at Kahaly's home. After the satellite dish and receivers were
15  installed in her home she was given (1) an invoice for installation services from the
16  contractor, "Connect Television, Inc." and (2) an "Installation/Service Satisfaction
17  Checklist." The contractor handed Kahaly the back of the Installation/Service
18  Satisfaction Checklist to sign, which was a document called the "DirecTV
19  Equipment Lease Addendum." The Installation/Service Satisfaction Checklist and
20  DirecTV Equipment Lease Addendum is attached hereto as Exhibit A.

21      13.     Notwithstanding the facts that the Equipment Lease Addendum was
22  presented on the back of an Installation/Service Satisfaction Checklist and that by its
23  title and the context in which it was presented to Kahaly it appeared to be related to
24  the equipment installation, half-way down the Equipment Lease Addendum page's
25  small print appeared a clause purporting to bind the consumer to a minimum
26  "programming commitment" of 18-months for standard receivers and 24-months for
27  advanced receivers. The clause states: "The programming package(s) must be
28  maintained for a period of not less than (a) eighteen (18) consecutive months for

4

1   accounts with only standard receiver(s), or (b) twenty-four (24) consecutive months
2   for accounts with advanced product(s)/receiver(s) . . . ." A second small print clause
3   in the Equipment Lease Addendum two-thirds down the page further states that if
4   you "fail to maintain your minimum programming commitment . . . you agree that
5   DIRECTV may charge you a prorated fee of up to $360 for standard receivers and
6   up to $480 for advanced products/receivers . . . ." Kahaly did not notice this
7   language and prior to receiving this misleading document, had never been informed
8   of any "programming commitment."

9        14.   In addition, the Equipment Lease Addendum states that it "must be
10   read together with the DirecTV customer agreement (a copy of which is provided to
11   you with your first bill and available at www.directv.com) for all the terms and
12   conditions regarding the provision of the services and your right to use the DirectTV
13   equipment." Kahaly did not even receive these terms and conditions until she
14   received her first bill on April 23, 2008, almost a full month after signing the
15   Equipment Lease Addendum, and after she had already cancelled the service

16        15.   Within one week of having DirecTV installed at her residence, Kahaly
17   again contacted DirecTV to inform them she was not receiving HBO as she had
18   twice previously requested. The DirecTV representative informed Kahaly that the
19   order entered on March 24, 2008 was not correct and that her actual monthly costs
20   would be $84.89 per month for the first three months, and $96.98 per month for the
21   next nine months for the programming she wanted. As before, Kahaly was not
22   informed of any long-term obligation or applicable cancellation fee.

23        16.   On April 9, 2008 Kahaly discovered that she still was not receiving
24   HBO as she had now requested three times. The following day, April 10, 2008,
25   Kahaly called DirecTV and was told that HBO had never been ordered. Frustrated
26   with her inability to obtain the television programming that she wanted, Kahaly
27   immediately cancelled the service. Again, the DirecTV representative did not
28   inform Kahaly of any long-term commitment or cancellation fee.

1       17.    On April 23, 2008 Kahaly received her first billing statement. The
2 statement showed a charge for $460.00 for an "Early Cancellation Fee" that had
3 been automatically charged to Kahaly's credit card. Enclosed with the billing
4 statement was the DirecTV customer agreement, attached hereto as Exhibit B. The
5 convoluted customer agreement contains only two instances of the words
6 "programming commitment" and completely fails to describe the terms of this
7 purported commitment. The first time the words appear comes at page 3 of the fine-
8 print agreement in a section titled "Changes in Contract Terms," which purports to
9 give DirecTV the option to change its contract terms at any time. The provision
10 states, "You always have the right to cancel your Service, in whole or in part at any
11 time, and you may do so if you do not accept any such changed terms or conditions.
12 If you do cancel, you may be charged an early cancellation fee if you entered into a
13 separate *programming commitment* or a deactivation fee." (Emphasis added.) The
14 second time is further down the same page of the agreement in the section titled
15 "Cancellation": "You may cancel Service by notifying us. . . . In addition to any
16 deactivation or change of service fees provided in Section 2 [which *does not include*
17 a description of the Early Cancellation Fee], if you cancel Service or change your
18 Service package, you may be subject to an early cancellation fee if you entered into
19 a separate *programming commitment* with DIRECTV in connection with obtaining
20 Receiving Equipment, and have failed to maintain the required programming
21 package for the required period of time." (Emphasis added.) A third reference to a
22 commitment agreement is found further down in the cancellation section under
23 subsection (e) "Payment Upon Cancellation." There the document states, "You
24 acknowledge that you have provided your credit or debit card account information to
25 us. You understand that you will incur fees and charges as a result of your receipt
26 and use of Service and/or Receiving Equipment, and may incur early cancellation
27 fees and/or equipment non-return fees (as specified in any lease, *programming or*
28 *other service commitment* agreement you entered into in connection with obtaining

6

1   Receiving Equipment) . . . ." (Emphasis added.)   Nowhere in the customer
2   agreement are the terms of the programming commitment directly described.

3       18.   Therefore, the only explanation ever given to Kahaly of the
4   programming commitment that purports to bind her to continue to purchase
5   DirecTV's services for two-years is found in the Equipment Lease Addendum that
6   was provided, in Kahaly's case, weeks after signing up for the service and after the
7   satellite equipment was already installed in her home.   Likewise the excessive early
8   cancellation fee is described only once, in the Equipment Lease Addendum, and
9   does not even appear in the Customer Agreement, which does include a list of 12
10  other administrative fees DirecTV authorized itself to automatically deduct from
11  their customers' credit and debit cards.

12      19.   Additionally, the customer agreement contains an arbitration clause
13  which purports to preclude the consumer from arbitrating his or her claim "as a
14  representative member of a class or in a private attorney general capacity . . ." that is
15  unenforceable under California law.

16      20.   The same day Kahaly received the billing statement and Customer
17  Agreement, April 23, 2008, she called DirecTV and informed the representative that
18  she was never notified of the cancellation fee.   In response, Kahaly was told that she
19  had entered into a two-year contract when she signed-up for DirecTV.   When
20  Kahaly reiterated that she was never informed of the fee, she was told the
21  information was located on the first billing statement, the statement that had
22  prompted her call.   Similarly, the representative informed Kahaly that while
23  DirecTV may have neglected to inform her of the two-year contract when she signed
24  up for the service it was her responsibility to know this information since it is
25  available on the company's website, a website Kahaly had never seen.   Thereafter,
26  and at this DirecTV representative's direction, on April 28, 2008 Kahaly wrote to
27  DirecTV to dispute the cancellation fee already charged to her credit card.

28      21.   As described in the preceding paragraphs, the lengthy programming

7

1  commitment and early cancellation fee were never meaningfully disclosed to Kahaly
2  at any point in her course of dealing with the Defendants until after she received the
3  first billing statement and after the fee was already charged to her. Had Kahaly been
4  notified of the existence and/or requirement of a two-year contract she would not
5  have ordered services from the Defendants. In fact, the residence she ordered
6  services for was a leased apartment that she intended to stay at for only one year.

7      22.    Like Kahaly, Plaintiff Kathleen O'Brien was also unlawfully charged
8  an undisclosed cancellation fee. After purchasing a new HD television, on
9  December 10, 2007 O'Brien's husband, Edmund, called DirecTV and upgraded
10 their existing DirecTV service to HD service. He was not informed that by ordering
11 HD service he was entering O'Brien into a two-year contract for services. The next
12 day, December 11, 2007, Edmund returned the new HD television, leaving no HD
13 television in O'Brien's home and making HD services unnecessary.

14     23.    On or about December 17, 2007, O'Brien called DirecTV to cancel the
15 HD service and also to terminate her DirecTV services entirely. At this time, and for
16 the first time, O'Brien was informed that by upgrading her DirecTV service to HD,
17 she had committed to a new two-year agreement with DirecTV. She was also
18 informed that if she were to cancel the service, she would be charged an early
19 cancellation fee of $440.00. O'Brien was never informed of this information, nor
20 was she provided with any written material disclosing either the new two-year
21 commitment or the potential for an early cancellation fee to be charged.

22     24.    On the December 17, 2007 telephone call O'Brien informed the
23 DirecTV customer service representative that she was financially unable to continue
24 the DirecTV service. The representative suggested a four-month suspension of
25 service, which O'Brien accepted.

26     25.    On or about April 9, 2008 O'Brien received the first statement from
27 DirecTV post the four-month suspension. On or about May 12, 2008, O'Brien
28 called DirecTV seeking to cancel the service. She was again informed that she could

8

1  not cancel without incurring the $440.00 early cancellation fee. The representative,
2  however, said she would "escalate" the issue and call O'Brien once she had
3  determined how to resolve the problem.

4       26.    Before O'Brien received a return call, she found out that $607.25 was
5  deducted from her checking account without her permission for the remaining
6  balance on the DirecTV account ($109.30 for service and $57.96 for
7  "Communications Service Tax") and for the $440.00 early cancellation fee.

8                          **CLASS ALLEGATIONS**

9       27.    Plaintiffs bring this Complaint as a class action pursuant to Rule 23 of
10 the Federal Rules of Civil Procedure on behalf of a class of all consumers in the
11 United States between June 4, 2004 and the present who ordered programming from
12 Defendants, other than through their website, and were charged an "Early
13 Cancellation Fee" that was not adequately disclosed to the consumer at the time of
14 the order (the "Class").

15      28.    This action is properly brought as a class action for the following
16 reasons. The members of the Class are so numerous that separate joinder of each
17 member is impractical. It is estimated that the number of class members is in the
18 thousands. In their report on Form 10-Q filed with the SEC for the quarter ending
19 March 31, 2008, DirecTV represents it has approximately 17 million subscribers.
20 The disposition of their claims in a class action will provide substantial benefits to
21 the parties and the Court. Furthermore, the prosecution of separate actions by
22 individual members of the Class would create a risk of inconsistent or varying
23 adjudications and would necessarily be dispositive of claims owned by non-party
24 class members.

25      29.    The questions of law or fact common to the claims of the
26 representative Plaintiffs and the claims of each member of the Class predominate
27 over any questions of law or fact affecting individual members of the Class. Class
28 representation is superior to other available methods for the fair and efficient

9

SACV08-741 AG(ANx)

1   adjudication of this controversy.

2       30.    Questions of law and/or fact that are common to the claims include,
3   but are not limited to:

4           a.    Whether the Defendants failed to adequately disclose the
5   programming commitment and early cancellation fee.

6           b.    Whether the early cancellation fee is unconscionable.

7           c.    Whether the early cancellation fee is an illegal assessment of
8   liquidated damages.

9           d.    Whether the Defendants' actions constitute unfair or deceptive
10  business practices and/or violations of the Consumer Legal Remedies Act.

11          e.    The amount of restitution and any other applicable relief to
12  which the Class may be entitled.

13          f.    Whether injunctive relief is appropriate and the appropriate
14  terms of such injunctive relief.

15      31.    Plaintiffs' claims are typical of the claims of the Class in that the
16  claims of all members of the Class result from the Defendants' practice of
17  concealing the terms of the services it offers consumers and failing to disclose the
18  relevant program commitment and early cancellation fee.  Plaintiffs will fairly and
19  adequately protect the interests of the Class in that they have no interest antagonistic
20  to those of the other class members, and Plaintiffs have retained attorneys
21  experienced in class action and complex litigation.

22                      **FIRST CAUSE OF ACTION**

23              **(For Violation of the Consumers Legal Remedies Act**

24      32.    Plaintiffs reallege and incorporate by reference the allegations set forth
25  in the preceding paragraphs.

26      33.    Plaintiffs bring this claim individually and on behalf of the class.

27      34.    The Consumer Legal Remedies Act ("CLRA"), California Civil Code
28  §§ 1770, *et seq.*, defines certain unfair methods of competition and unfair or

                                    10

1   deceptive acts or practices which, if undertaken by a person in a transaction intended
2   to result or which results in the sale or lease of goods or services to any consumer,
3   are unlawful. The CLRA provides for, among other remedies, injunctive relief.

4       35.   The policies, acts and practices engaged in by Defendants and alleged
5   in this Complaint were intended to, and did, result in the payment of *undisclosed*,
6   excessive and unreasonable fees by members of the class, and violated and/or
7   continue to violate the CLRA in at least the following respects:

8           a.   Section 1770(a)(5) – representing that goods or services have
9   sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that
10  they do not have or that a person has a sponsorship, approval, status, affiliation or
11  connection that he or she does not have;

12          b.   Section 1770(a)(7) – representing that goods or services are of a
13  particular standard, quality or grade if they are of another;

14          c.   Section 1770(a)(9) – advertising goods or services with intent
15  not to sell them as advertised; and

16          d.   Section 1770(a)(19) – inserting an unconscionable provision in
17  the contract.

18      36.   By reason of the foregoing, Plaintiffs and members of the Class have
19  been harmed. Pursuant to § 1782 of the CLRA, Plaintiffs notified Defendants in
20  writing of the particular violations of the CLRA and demanded Defendants rectify
21  the actions described above by providing complete monetary relief to the Class and
22  agreeing to cease the unlawful business practices alleged in this Complaint. Plaintiff
23  sent this notice by certified mail, return receipt requested, to DirecTV's principal
24  place of business.

25      37.   Defendants failed to adequately respond to Plaintiffs' demand pursuant
26  to § 1782 of the CLRA.

27

28

SACV08-741 AG(ANx)

**SECOND CAUSE OF ACTION**

**(For Violation of Business & Professions Code Sections 17200, et seq.)**

38.     Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs.

39.     Plaintiffs bring this claim individually and on behalf of the Class.

40.     The Unfair Competition Law, California Business & Profession Code §§ 17200, et seq. ("UCL"), defines unfair competition to include any "unlawful," "fraudulent" or "unfair" business act or practice. The Defendants need only violate one of the three provisions to be liable under the UCL. Unlawful business acts are those which violate any federal, state, county, or municipal statute, code or regulation or the common law. The UCL provides for injunctive relief and restitution for violations.

41.     In the course of conducting business, Defendants charged Plaintiffs an improperly disclosed and excessive fee for cancellation of satellite television services pursuant to the terms of a contract that the Plaintiffs never knew they agreed to and that was not adequately disclosed. There is no justification for such acts and practices. Defendants' actions constitute "unlawful" business acts and practices because they violate the CLRA and constitute illegal assessment of liquidated damages under California Civil Code § 1671.

42.     Defendants' actions constitute "fraudulent" business acts and practices under the UCL because they are likely to deceive and have deceived members of the public. The Defendants failed to disclose to consumers that by having satellite television installed in their homes or by upgrading their service with Defendants they were entering a two-year contract that cannot be canceled without paying an excessive fine.

43.     By engaging in the above-described conduct, the Defendants perpetrate "unfair" business acts and practices in that any business justification for failing to adequately disclose a two-year commitment and for excessive cancellation

12

1   fees is outweighed by the gravity of the resulting harm and/or offends public policy,
2   is immoral, unscrupulous, unethical and offensive, and causes substantial injury to
3   consumers.

4                          **THIRD CAUSE OF ACTION**
5                            **(For Unjust Enrichment)**

6       44.    Plaintiffs reallege and incorporate by reference the allegations set forth
7   in the preceding paragraphs.

8       45.    Plaintiffs bring this claim individually and on behalf of the Class.

9       46.    DirecTV has been unjustly enriched because it knowingly gained and
10  retained money in an inequitable manner at the expense of its customers and is thus
11  accountable to the Plaintiffs and the members of the class to restore such money.
12  The Defendants may not in good conscience and equity retain the benefits from its
13  wrongful conduct and those profits belong instead to Plaintiffs and members of the
14  class.  Defendants must disgorge all amounts so wrongfully and unjustly obtained
15  and be enjoined from continuing its deceptive acts and practices.

16                         **FOURTH CAUSE OF ACTION**
17                    **(Unlawful Assessment of Liquidated Damages Under**
                          **California Civil Code Section 1671(d))**
18

19      47.    Plaintiffs reallege and incorporate by reference the allegations set forth
20  in the preceding paragraphs.

21      48.    Plaintiffs bring this claim individually and on behalf of the Class.

22      49.    California Civil Code §1671 declares that a liquidated damages
23  provision in a consumer contract of adhesion is void unless the parties agree on an
24  amount and it would be impractical or extremely difficult to fix the actual amount of
25  damages.

26      50.    DirecTV's Equipment Lease Addendum and customer agreement
27  purport to be a contract for the retail purchase or rental of services primarily for the
28  consumer's personal, family or household purpose.

                                        13

                                                        SACV08-741 AG(ANx)

1        51.     The early cancellation fee described in the Equipment Lease
2  Addendum is a liquidated damage provision intending to compensate DirecTV for a
3  customer's breach (early cancellation) of the purported contract.

4        52.     The early cancellation fee bears no reasonable relationship to the
5  actual cost to the Defendant when a customer terminates its services and, further, it
6  is not impractical or extremely difficult for the Defendant to determine the actual
7  amount of damages caused by the termination of the contract.

8        53.     Based on the foregoing, the Early Cancellation Fee is void as an
9  unlawful assessment of liquidated damages under Civil Code §1671(d).

10                               **PRAYER FOR RELIEF**

11        WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

12        A.     For an order declaring this a class action;

13        B.     For declaratory relief finding that Defendants have engaged in unfair,
14  unlawful, or fraudulent business acts or practices in violation of California Business
15  & Professions Code §§ 17200, *et seq.*

16        C.     For declaratory relief finding Defendants' early cancellation fee is void
17  under California Civil Code § 1671(d);

18        D.     For a temporary restraining order and a preliminary and permanent
19  injunction enjoining Defendant and its officers, directors, agents, distributors,
20  servants, employees, attorneys, and all others in active concert or participation with
21  Defendants during the pendency of this action and permanently thereafter from four
22  years ago;

23        E.     For restitution to all persons from whom Defendants unlawfully,
24  unfairly, or fraudulently took money, including a full refund of all fees improperly
25  charged and accrued interest, in addition to other unjust enrichment of Defendants,
26  in an amount to be proven at trial;

27        F.     For actual damages suffered by Plaintiffs and members of the Class;

28        G.     For punitive damages, to be awarded to Plaintiffs and each class

1 member;

2      H.    For interest at the maximum rate allowed by law;

3      I.    For costs of suit;

4      J.    For Plaintiffs to be awarded attorneys' fees and all litigation expenses

5 pursuant to the California Civil Code § 1780(d) and California Code of Civil

6 Procedure § 1021.5. Alternatively, for all attorneys' fees and all litigation expenses

7 to be awarded pursuant to the substantial benefit doctrine, the common fund

8 doctrine, or any other provision of law; and

9      K.    For such other and further relief as the Court may deem just and proper.

10 **JURY DEMAND**

11      Plaintiffs demand a trial by jury.

12 DATED: August 26, 2008        HULETT HARPER STEWART LLP

13                                     BLAKE MUIR HARPER

                                    SARAH P. WEBER

14

15

16                                     BLAKE MUIR HARPER

17

18                                     550 West C Street, Suite 1600

                                    San Diego, CA  92101

19                                     Telephone:  (619) 338-1133

                                    Facsimile:   (619) 338-1139

20

21                                     Attorneys for Plaintiffs

22

23

24

25

26

27

28

15

# EXHIBIT A

# DIRECTV

## INSTALLATION/SERVICE SATISFACTION CHECKLIST

Welcome to DIRECTV! We want to ensure we meet your service and installation expectations. Please take a moment to examine the list below and place your initials in the space provided to indicate that each item has been fulfilled. If you find an item in the DIRECTV System Education Checklist that has not been explained, please prompt the installer to provide a thorough explanation. Enter "N/A" (not applicable) for any items that are not relevant to your installation/service call.

Please check one:   Installation _____   Service Call _____   Upgrade _____

To be completed by technician:   Job #: _____   Tech ID #: _____

## DIRECTV Installation/Service Checklist

The installer who completed my installation/service call:

___ Called to confirm my appointment the day before the scheduled installation/service call
___ Called the day of the installation/service call to advise he was en route to my home
___ Was on time (arrived within scheduled appointment window)
___ Had proper identification and uniform
___ Performed a site survey with me, indicating where the satellite dish would be positioned
___ Explained the installation process prior to starting any work
___ Explained any additional installation/service call charges before starting work
___ Called a DIRECTV representative and confirmed that programming was active
___ Explained the importance of the telephone hook-up and that I must maintain a working telephone line connected to all my DIRECTV System receivers
___ Ensured installation or service area was clean and orderly upon completion of work
___ Resolved all problems related to service call issue
___ Provided company name and telephone number to contact if there are any problems with the installation/service call
___ Left a copy of the owner's manual and/or Welcome Kit and explained what it covers
___ Conducted a final walk-through showing where all devices/equipment are located

## DIRECTV System Education Checklist

The installer thoroughly explained how to operate my DIRECTV System and remote control including how to:

___ Access and to locate Customer Education channels and local channels
___ Turn the DIRECTV System, television and co-located devices on and off using the remote control
___ Change channels and turn the volume up and down on the DIRECTV System and the remote control
___ Set up parental controls ("Locks and Limits") and favorite channel lists
___ Access and navigate the on-screen programming guide and how to check on-screen signal strength
___ Purchase Pay Per View programming with the remote control
___ Switch between my DIRECTV programming and off-air antenna/cable channels (if applicable)
___ Record DIRECTV programming with the VCR and record and use the DVR feature (if applicable)
___ Reset the DIRECTV receiver
___ Use the input settings for all devices now connected to the TV
___ Compare the picture quality and settings for SD and HD channels (if HD installed)
___ Navigate and use interactive features (if applicable)

Were you completely satisfied with your installation/service call (Please initial one)?   YES _____   NO _____

Thank you for taking the time to complete this checklist. This information is essential for DIRECTV to monitor our customers' installation/service call experience and enables us to continually improve the quality of

# DIRECTV EQUIPMENT LEASE ADDENDUM



☐ Check here if you are a **new** DIRECTV customer

☐ Check here if you are a **current** DIRECTV customer obtaining one or more additional DIRECTV receiver(s)

☐ Check here if this is a Service Call. Note: Lease Addendum is not applicable for Service Calls.

Thank you for choosing DIRECTV. By signing this Equipment Lease Addendum, you agree to abide by the following terms and conditions. You wish to lease from DIRECTV, and DIRECTV is willing to lease to you, one or more DIRECTV receivers and/or recording devices (hereinafter collectively referred to as the "Equipment", which may also include a DIRECTV Access Card). This term "Equipment" does not include the Dish antenna. This EQUIPMENT LEASE ADDENDUM CONTAINS THE TERMS AND CONDITIONS FOR THE LEASE BY DIRECTV OF DIRECTV EQUIPMENT TO YOU, BUT MUST BE READ TOGETHER WITH THE DIRECTV CUSTOMER AGREEMENT (A COPY OF WHICH IS PROVIDED WITH YOUR FIRST BILL AND IS AVAILABLE AT WWW.DIRECTV.COM) FOR ALL OF THE TERMS AND CONDITIONS REGARDING THE PROVISION OF THE SERVICE. BY SIGNING BELOW AND TO THE EXTENT YOU LEASE DIRECTV EQUIPMENT FROM DIRECTV, YOU ARE AGREEING TO THE DIRECTV EQUIPMENT LEASE ADDENDUM. IF YOU DO NOT WISH TO LEASE DIRECTV EQUIPMENT, YOU MUST PURCHASE DIRECTV EQUIPMENT AND DIRECTV STRICTLY IN ACCORDANCE WITH THE TERMS OF THIS EQUIPMENT LEASE ADDENDUM AND THE DIRECTV CUSTOMER AGREEMENT.

**PROGRAMMING AGREEMENT.** Within 30 days of provision of DIRECTV equipment to you, or on the date that the professional installer has installed or is prepared to install your DIRECTV equipment, whichever is sooner, you agree to activate each and every DIRECTV Receiver qualifying international service bundle, which bundle shall include either the DIRECTV BASIC programming package (valued at $29.99 per mo.) or any qualifying international service bundle, which bundle shall include either the DIRECTV BASIC programming package (valued at $9.99 per mo.).

**PROGRAMMING COMMITMENT.** The programming package(s) must be maintained for a period of not less than (b) eighteen (18) consecutive months for accounts with only standard receiver(s), or (b) twenty-four (24) consecutive months for accounts with advanced product(s)/receiver(s) (DVR, HD, or HD DVR, including additional DIRECTV receiver(s)). After you have fulfilled your agreement to lease the required programming package(s), you are not obligated to continue your subscription to DIRECTV programming for any specific duration. Current DIRECTV customers may activate their DIRECTV programming commitment IS SATISFIED. THE PROGRAMMING COMMITMENT YOU MAY HAVE MADE WITH DIRECTV AND IS FULLY ENFORCEABLE UNDER THESE TERMS.

**MONTHLY LEASE FEE.** For a new DIRECTV customer, you will be charged a monthly lease fee in the amount of $4.99 per 2nd and each additional receiver leased by you in your household. For a current customer, you will be charged a monthly fee in the amount of $4.99 for each receiver leased by you in your household, unless you (replace all of your current equipment, in which case, the monthly lease fee will be waived for the 1st receiver. Applicable taxes will apply. LEASE FEE SUBJECT TO CHANGE AT ANY TIME.

**CARE OF EQUIPMENT.** You are responsible for the loss of or any damage to the DIRECTV equipment that you have leased from DIRECTV. You understand and agree that all DIRECTV equipment, including any DIRECTV Access Card, is and remains the property of DIRECTV.

**DIRECTV PROVIDES YOU THE DIRECTV EQUIPMENT "AS IS", AND MAKES NO WARRANTY, EITHER EXPRESSED OR IMPLIED. WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE EXPRESSLY EXCLUDED. DIRECTV IS NOT REGARDING THE DIRECTV EQUIPMENT PROVIDED TO YOU. ALL SUCH WARRANTIES INCLUDING, WITHOUT LIMITATION, THE IMPLIED RESPONSIBLE FOR ANY DIRECTV EQUIPMENT TO YOU. In the event the DIRECTV does not operate, contact DIRECTV at 1-800-531-5000.**

**CONSEQUENCES OF YOUR FAILURE TO ACTIVATE PROGRAMMING OR SATISFY YOUR PROGRAMMING COMMITMENT. If you fail to activate all of your DIRECTV equipment in accordance with this Equipment Lease Addendum, you agree that DIRECTV or an authorized DIRECTV Retailer may charge you a fee, as liquidated damages, of $150 for each receiver that is not activated. If you fail to maintain your minimum programming commitment of 18 months for standard receivers and 24 months for advanced receivers, you agree that DIRECTV may charge you a prorated fee of up to $480 for standard receivers and up to $480 for advanced products/receivers (e.g., DVR, HD, HD DVR, etc.).**

**RETURN OF DIRECTV EQUIPMENT. If you cease to be a DIRECTV customer for any reason (whether voluntarily or involuntarily), or if you disconnect your DVR or HD Receiver-based service (if you are leasing a DVR or HD Receiver, respectively) you must to obtain information from DIRECTV necessary to arrange for a ground or air freight service to pick up and deliver all of your DIRECTV equipment) to DIRECTV. You acknowledge that the DIRECTV equipment belongs to DIRECTV and the DIRECTV equipment, including the access card inserted into each receiver, must be returned to DIRECTV in good working order, normal wear and tear excepted. In the event that all of the DIRECTV equipment is not returned to DIRECTV within thirty (30) days of the termination of your DIRECTV programming service or is damaged when it is returned to DIRECTV, you agree to pay DIRECTV the sum of $55 per each DIRECTV standard receiver, $200 for each DIRECTV DVR Receiver, $240 for each DIRECTV HD Receiver, or $470 for each DIRECTV HD DVR Receiver that is not returned to DIRECTV or that is damaged when it is returned to DIRECTV as compensation for a portion of the expenses incurred by DIRECTV in establishing your account and providing you the DIRECTV equipment for your use. Visit DIRECTV.com or call 1-800-531-5000 for details.**

**ARBITRATION. You and DIRECTV agree that both parties will resolve any dispute arising under this Equipment Lease Addendum, the DIRECTV Customer Agreement or any other addendum thereto, or regarding your DIRECTV programming service, through binding arbitration as fully set forth in the DIRECTV Customer Agreement.**

BY SIGNING BELOW, I HEREBY AUTHORIZE AND AGREE THAT DIRECTV MAY, AT ITS SOLE OPTION, CHARGE THE FEES DESCRIBED HEREIN. I WARRANT THAT I AM 18 YEARS OLD OR OLDER AND THAT ALL INFORMATION SUPPLIED BY OR ABOUT ME IS ACCURATE. I HAVE READ AND AGREE TO THE ABOVE TERMS AND CONDITIONS.

# EXHIBIT B



# DIRECTV.

# CUSTOMER AGREEMENT

Effective as of April 24, 2007, until reviewed

---

THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT AND PAYMENT OF DIRECTV® SERVICE AND IS SUBJECT TO ARBITRATION (SECTION 9). IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE. IF YOU FAIL TO NOTIFY US AND YOU RECEIVE OUR SERVICE, IT WILL BIND YOU TO THESE TERMS AND THEY WILL BE LEGALLY BINDING TO YOU. (SI USTED NO ACEPTA ESTOS TERMINOS, SIRVASE NOTIFICARNOS DE INMEDIATO Y CANCELAREMOS SU SERVICIO. SI USTED NO NOS NOTIFICA Y RECIBE NUESTRO SERVICIO, ESTO LO OBLIGARA A CUMPLIR CON ESTOS TERMINOS.)

## CONTACTING DIRECTV:

You may contact us 24 hours a day, any day of the year by sending us an e-mail at directv.com/email or by writing to:

DIRECTV, Inc.
Customer Service
P.O. Box 6550
Greenwood Village, CO 80155-6550.

You can also call us at 1-800-531-5000 and for our Automated Phone System, e.g., for technical issues — say "technical," for on-screen messages — say the extension or message you are on your TV screen, to pay your bill — say "pay my bill." For programming questions — say the name of the package or service, etc.

If your bill for DIRECTV Service comes from a party other than DIRECTV, please use the contact information provided on your bill for any questions about your DIRECTV Service.

## CUSTOMER AGREEMENT

### 1. OUR SERVICE

These are the terms on which we will provide you Service:

**(a) Program Choices.** You must subscribe to a base package in order to receive additional Service such as premium movie services or sports subscriptions. All programming services have their own rates, terms and conditions. Information about programming is at directv.com.

**(b) Ordering Pay Per View.** You may order Pay Per View Services by using your on-screen guide and remote control, by ordering at directv.com, or by calling us and speaking the name of your event into our Automated

---

Phone System, or by ordering through an agent. If you call an agent to receive your order, the maximum fee may apply (described in section 2). A reduced fee is available for Automated Phone System. To use your remote control to order, your receiver must be continuously connected to a land-based telephone line. Your order is transmitted via the telephone line via the receiver and your remote control or during our hour of the order. Repeated cancellation of previously ordered Pay Per View Services may result in cancellation of your account, restrictions on your ability to order Pay Per View Services, or imposition of additional fees.

**(c) Programming Changes.** You may change your programming selection by notifying us. A fee may apply to such changes (described in Sections 2 & 5(b)). Some programming may be purchased in minimum blocks of one month or multiples of one month.

**(d) Our Programming Choices.** Many changing considerations affect the contents of our programming, including audience and viewer demand for the programming, the cost and our ability to obtain the programming in an efficient manner, and any other factors affecting the unrestricted right to change, delete or add to the programming packages. The selections, programming and packaging of programming are at our discretion. In those packages, our prices, and any other Service we offer, at any time. We will carry all programming that we offer, and our editorial and advertising content in programming is subject to our sole discretion.

**(e) Access Card.** You have received a conditional access card (referred to as the "Access Card") and is our property. You can be about one month in advance. You always have the right to cancel your Service, in whole or in part. If you do not accept the change (see Section 5), a description in the Customer Agreement at Section 2, 5 & 5(b) or other charges may apply. Credits, if any, to your account will be prorated as described in Section 5. If you do not cancel, your continued receipt of our Service will constitute acceptance.

---

**(f) Access Card (cont.).** The Access Card must remain in the receiver in which it was placed. Any modification to the Access Card, including tampering, is prohibited. DIRECTV reserves the right to cancel or replace the Access Card. Tampering with or modifying the Access Card is a violation of federal and state law and may result in criminal or civil action. If the Access Card is lost, damaged, defective or stolen, there is a cost to replace it, which may apply (described in Section 2). Tampering with any device on or into your receiver other than the Access Card is strictly prohibited. DIRECTV reserves the right to cancel or replace the Access Card as an authorized Access Card is prohibited. DIRECTV reserves the right to cancel or replace the Access Card to be returned. If you keep the Access Card to be returned, you may be charged a fee as described in Section 2. Respecting Access Cards on behalf of other persons or for purposes other than receiving DIRECTV Service is prohibited.

**(g) Phone Connections.** For optimal performance of your Receiving Equipment, including ordering with your remote control or receiving certain Services, each of your receivers must be directly connected to the same land-based telephone line. If your receiver is not regularly connected to a land-based telephone line, we may investigate and, if it is determined that the receiver is not at this location identified on your account, we may disconnect the receiver at this location. All your receivers are continuously connected to be same land-based telephone line, we can "clone" programming to your additional TVs and charge you only the fee amount (described in Section 2) for additional TVs. If you provide false information about the location of your receiver, or if the receiver is not regularly connected to a land-based telephone line, we may investigate and, if it is determined that the receiver is not at this location identified on your account, we may disconnect the receiver at this location at this charge you for the full programming subscription price for the receiver.

---

**(h) Mobile Units.** We provide Service to Receiving Equipment installed in motor vehicles, boats and other vehicles. Service to any mobile Receiving Equipment is not available in all areas and it not eligible to be additional TVs. However, it may be subject to local broadcast and other channel restrictions and authorized discount launched fees.

**(i) Private Viewing.** We provide Service only for your private non-commercial use, enjoyment and home viewing. The programming establishment's transmission, or display of our programming or other Service or content to any party in any commercial or public establishment. You may not rebroadcast, transmit or perform the programming, charge admission for its viewing or transmit or distribute it.

**(j) Local Channels.** In certain areas, we provide local channels over-the-air, except as described below. If you live in a local channel area and you receive it, you may not use any of our trademarks. Notwithstanding any other provision of this Agreement, your Service provider may provide local channels to you. We may require a new or additional Receiving Equipment to receive local channels.

**(k) Blackouts.** Certain programming, including sports events, may be blacked out in your local reception area. Blackout restrictions are decided by the sports leagues and the other entities that own the local broadcast rights. You may visit directv.com for more blackout information. If you live outside of your area, you may be subject to local channel restrictions.

**(l) Loss of Programming/Equipment.** You should notify us immediately if your receiver, remote control or receiving antenna dish (referred to collectively as "Receiving Equipment") is lost or stolen. If you notify us within 30 days, we will not charge you for any unauthorized charges that occur within those days. We will not charge you for any unauthorized charges occurring after those less to be reimbursed. When you receive your notice. For leased Receiving Equipment, non-return fees as specified in the Equipment Lease Addendum shall apply.

**(m) Transfer of Receiving Equipment.** We consider you to be responsible for any programming on TV, and the recipient of programming on any of the receivers at your own risk. You are liable for charges incurred by your Receiving Equipment before you notify us of a transfer. Leased Receiving Equipment may not be transferred.

**(n) Your Viewing Restrictions.** It is your responsibility to impose any viewing restrictions on other family members or guests. DIRECTV can provide restrictions on certain programs based on the content of our programming. Please visit directv.com for more applications. You may also take advantage of parental controls, locks and limits and password protection on your account.

**(o) Change of Address.** You must notify us immediately of any change in your name, mailing address, residence address or telephone number.

### 2. PAYMENT

In return for receiving our Service, you promise to pay us as follows:

**(a) Programming.** We will bill in advance, at our rate in effect at the time, for the Service ordered or your monthly programming. Prime Choices Packages are charged monthly. If your Receiving Equipment, with or without your permission, until the Service is canceled. The outstanding balance is due in full each month. We reserve the right, in our sole discretion and at any time, to restrict, suspend or discontinue providing our Service for any reason. We may reduce your service or to terminate Service. Such restrictions at amounts owing to us. We may reduce your ability to restrict at amounts owing to us, which may restrict our ability to minimum service levels. If you do not pay your statements on time, after any applicable grace period.

**(b) Taxes.** You will pay all taxes or other governmental fees and charges, if any, which are assessed.

**(c) Administration Fees.** In order to control the basic charges, which apply to all customers, we charge fees that arise in specific circumstances



(11)  **Ledger Request Fee.** If you request a ledger itemizing
paid payments on your account, we may charge you a fee the
lesser of (i) up to $2.79; or (ii) the maximum amount permitted by
applicable law.

(12)  **Returned Payment Fee.** If any bank or other financial institution
refuses to honor any payment, draft or instrument submitted for
payment to your account, we may charge you a fee the lesser of (i)
up to $25; or (ii) the maximum amount permitted by applicable law. In
addition, if this fee is not a reasonable estimate of the actual charge, finance
charge, time price differential or other such charge or payment of a
similar nature and it is reasonably related to the actual expense we
incur due to unreturned payment.

**Questions About Your Statement.** If you think your statement is incorrect
or if you need more information about it, contact us immediately. Unless
you notify us about any billing error within 30 days after we sent you the
first statement on which the error or problem appeared, your account
balance due, or a nominal credit balance, on your account at the end of a
billing cycle. Statements will show: (1) payments, credits, purchases
and other transactions posted to your account since the last statement;
and (2) the amount due. If you elect to make automatic credit or debit
card payments, you will not receive monthly statements unless you
request that they be sent.

Remember, if your bill for DIRECTV Service comes from a party other
than DIRECTV, please contact that party for the correct information on your bill.

3.  **CUSTOMER INFORMATION**

(a)  **Representations.** You represent that you are at least 18 years of age
and a resident of the United States.

(b)  **Contact Information.** You agree to provide true, accurate, current
and complete information about yourself, and to maintain and
promptly update your contact information to keep it true, accurate
and complete.

(c)  **Online Access.** You are responsible for maintaining the confidentiality
of the password and account username used in your online
account or online billing access. You agree to be responsible for all
activities that occur under your password and account. You agree to
(i) keep your username and password confidential and not share them
with anyone else; (ii) immediately notify DIRECTV of any unauthorized
use of your password and account or any other breach of security; and (iii)
use only your username and password to log into directv.com.

(d)  **Collection Costs.** To the extent permitted by law, you will pay us any
costs and fees we reasonably incur to collect amounts you owe us.

4.  **CHANGES IN CONTRACT TERMS**

We reserve the right to change the terms and conditions on which we offer
Service. If we make any such changes, we will send you a notice of the new
Customer Agreement containing the effective date. You always have the right

**Consumer Reporting Credit.** In order to establish an account with
us, or if you need more information about it, or to verify your creditworthiness, you
will in the discretion obtain and credit reporting agencies. If you are
delinquent in any payment to us, you also authorize us to report any
delinquent or nonpayment to the credit reporting agencies. Due to the
nature of credit card transactions, we reserve the right to require
prepayment for any Service via cashier's check, money order or credit
card, notwithstanding your credit rating, past history or practice.

5.  **CANCELLATION**

(a)  **Term.** The term of this agreement is indefinite and Service will
remain until cancelled. It is effective from its effective date. If you wish
to cancel it, you must do so as provided herein. UNLESS YOU NOTIFY US
THAT YOU WISH TO CANCEL IT, WE WILL AUTOMATICALLY RENEW
SERVICE THAT YOU SUBSCRIBE TO ON A PERIODIC BASIS, INCLUDING
ANY MONTHLY OR SEASONAL PROGRAMMING, AND SEASONAL
SPORTS SUBSCRIPTIONS, AS LONG AS WE CONTINUE TO CARRY
THE SERVICE.

(b)  **Your Cancellation.** You may cancel Service by notifying us. You may
be charged a cancellation fee as described in Section 2 and issued
a credit, if any, as described below. Your notice is effective on the day we
receive it. You will still be responsible for payment of all outstanding
balances accrued through that effective date. In addition to any
cancellation or change of service fees provided in Section 2, if you
cancel Service during a period when you are subject to any
commitment with DIRECTV in connection with obtaining Receiving
Equipment, and have failed to maintain the required programming
package for the required period of time.

For seasonal services you pay once a month or multiple of one
month, if you cancel Service within the first month you only for half
months, not cancel. For example, if you subscribe for a season of
Service from January through December but cancel on March 10, we
will credit you half your fees for January through March.
Additionally, we will not credit seasonal sports subscription after the
season starts.

(c)  **Our Cancellation.** We may cancel your Service at any time if you fail
to pay any amount owing by the expiration of this Agreement, or act abusively
toward our staff. In such case, you will still be responsible for payment
of all outstanding balances accrued through that effective date,
including any cancellation fees as described in Section 2. In addition, we
may cancel your Service if you elect not to accept any changed terms
described to you, as provided in Section 4.

(d)  **Credit Balance.** If you have a credit balance after the close of your
account and issuance of the final bill, we will automatically return your
credit balance to you. DIRECTV credits to you a credit balance. We will not
issue you a refund unless you make a written request for the refund. If
you do not make such a written request for the refund, within one year of
the close of your account, you forfeit any credit balance remaining
on your account and your account balance will be reset to zero.

(e)  **Payment Upon Cancellation.** You acknowledge that you have provided
your credit or debit card account information to us. You understand that
you will incur fees and charges as a result of your creation and use of
Service and/or Receiving Equipment, and may incur early cancellation
fees and/or equipment non-return fees (as specified in any lease,
programming or other service contract agreement) which you entered into
in connection with obtaining Receiving Equipment. By giving us in your

credit or debit card account information, you authorize us to apply this
method of payment in accordance with applicable law, to satisfy any and
all amounts due upon cancellation. You further acknowledge that you are
required to notify us wherever there is any change of credit card information within and
agree to notify us wherever there is any change of credit card information, such
as the change in the account number or the expiration date.

6.  **PERSONAL DATA**

We collect Personally Identifiable Information about our customers ("Personal
Data"). The use and collection of this Personal Data is governed by our
Privacy Policy and, to the extent not inconsistent with this Agreement,
Privacy Policy. If you want a copy of our current Privacy Policy, you can
address: DIRECTV Privacy Policy, P.O. Box 6550, Greenwood Village, CO
80155-6550.

7.  **DIRECTV DVR SERVICE**

DIRECTV DVR Service is separately sold service, at our rates in effect at
the time, available to customers with applicable DIRECTV DVR Service.
DIRECTV DVR Service gives you the ability to use and record television
programs ("Third Party Content"). You understand that DIRECTV does not
guarantee the access to or recording of any particular program, or the length
of any particular recorded program. You agree that your use of the copyrighted
material of any third party that supplies it, is protected by copyright and other
proprietary laws, and may not be reproduced, published, broadcast, rewritten
or redistributed without the written permission of the copyright holder.

(a)  **License.** If you paid a "lifetime service fee," you will not be charged a fee for your
DIRECTV DVR Service, as long as you maintain television programming
service from DIRECTV on the same account. If you discontinue your DIRECTV
DVR Service, or change the service fee for DIRECTV DVR Service.

We generally pass local telephone calls to provide the DIRECTV DVR Service.
You are responsible for such telephone charges and acknowledge and agree
that you will be charged and interconnected and you will not be charged
a fee for DIRECTV DVR Service.

By receiving the DIRECTV DVR Service, you agree to be bound by the following license,
The term "Software" shall include any updates, modified versions, and upgrades
and copies of certain Software made available to you in connection with
licensing by you of any Software provided by DIRECTV from time to time.
The term "End User Documentation" shall mean the documentation and
related explanatory written materials provided to you in connection with
licensing by you of any Software.

(License Grant.) You and our DIRECTV grant to you a non-exclusive
license from and only in conjunction with the use of your Receiving
Equipment.

(b)  **Restrictions.** You may not copy, modify, transfer, disseminate
or publish the Software, or any copy thereof, in whole or in
part. You may not reverse engineer, disassemble, decompile or
translate the Software, or otherwise attempt to derive the source
code of the Software, except to the extent allowed under any
applicable law. Any attempt to transfer any of the rights, duties

or obligations of this license agreement is void. You may not rent, lease, load, resell for profit or distribute the Software, or any part thereof.

(c) Ownership. The Software is licensed, not sold, to you solely for your use under the terms of this license agreement, and DIRECTV and its suppliers reserve all rights not expressly granted to you. You shall own the media, if any, on which Software or End User Documentation is recorded, but DIRECTV and its suppliers retain ownership of all copies of the Software itself.

(d) Reservation of Rights. Except as stated above, this license agreement does not grant to you any intellectual property rights in the Software.

(e) Term. If you breach any term or condition of this license agreement, this license agreement will terminate immediately upon notice to you.

(f) Warranty Disclaimer. NEITHER DIRECTV NOR ANY OF ITS REPRESENTATIVES MAKES OR PASSES ON TO YOU OR OTHER THIRD PARTIES ANY WARRANTY OR REPRESENTATION ON BEHALF OF DIRECTV OR ITS SUPPLIERS (INCLUDING TIVO) WITH RESPECT TO THE SOFTWARE, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE OR NON-INFRINGEMENT OF THIRD PARTY RIGHTS.

(g) Limitation of Liability. IN NO EVENT WILL DIRECTV OR ITS SUPPLIERS BE LIABLE TO YOU WITH RESPECT TO THE SOFTWARE FOR ANY CONSEQUENTIAL, INCIDENTAL OR SPECIAL DAMAGES, INCLUDING LOST PROFITS OR LOST SAVINGS, EVEN IF DIRECTV OR ITS SUPPLIERS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, OR FOR ANY CLAIM BY ANY THIRD PARTY. Some states or jurisdictions do not allow the exclusion or limitation of incidental, consequential or special damages, so the above limitations may not apply to you.

(h) Third-Party Beneficiary. DIRECTV and you expressly acknowledge and agree that TiVo, Inc., a Delaware corporation with its principal place of business at 2160 Gold Street, Alviso, CA 95002, is an intended third-party beneficiary of this license agreement as it relates to TiVo software that may be contained in the Receiving Equipment. These license provisions are made expressly for the benefit of TiVo and are enforceable by TiVo in addition to DIRECTV.

**8.  LIMITS ON OUR RESPONSIBILITY**

(a) Service Interruptions. Service may be interrupted from time to time for a variety of reasons. We are not responsible for any interruptions of Service that occur due to acts of God, power failure or any other cause beyond our reasonable control. However, because we value our customers, for an interruption of a significant length of time that is within our reasonable control, upon your request we will provide what we reasonably determine to be a fair and equitable adjustment to your account to make up for such Service interruption. THIS WILL BE YOUR SOLE REMEDY AND OUR SOLE DUTY IN SUCH CASES.

(b) Disclaimers. EXCEPT AS EXPRESSLY PROVIDED HEREIN, WE MAKE NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, REGARDING ANY SERVICE OR YOUR RECEIVING EQUIPMENT. ALL SUCH WARRANTIES OR REPRESENTATIONS, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NON-INFRINGEMENT ARE DISCLAIMED.

(c) Limitations of Liability. WE ARE NOT RESPONSIBLE FOR ANY CONSEQUENTIAL DAMAGES OR LOSSES RELATING TO THE RECEIVING EQUIPMENT OR ANY SERVICE, WHETHER BASED ON NEGLIGENCE OR OTHERWISE. REGARDLESS OF THE CAUSE, OUR TOTAL LIABILITY FOR DAMAGES OR LOSSES TO YOU AND ANY OTHER PERSONS RECEIVING OUR SERVICE, WILL IN NO EVENT EXCEED THE AMOUNT THAT YOU

HAVE PAID TO US FOR THE SERVICE THAT YOU RECEIVED DURING THE SIX (6) MONTH PERIOD IMMEDIATELY PRIOR TO THE SPECIFIC EVENT THAT GAVE RISE TO THE APPLICABLE DAMAGE OR LOSS. THIS ALLOCATION OF RISK IS REFLECTED IN OUR PRICES. You may have greater rights than described above under your state's laws. You should consult them.

(d) Warranty Services. You agree that this Agreement does not provide for, and the Service does not include, any warranty services or other services that we might provide separately, including, without limitation, any fee-based or other warranty programs.

**9.  RESOLVING DISPUTES**

In order to expedite and control the cost of disputes, you and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows:

(a) Informal Resolution. We will first try to resolve any Claim informally. Accordingly, neither of us may start a formal proceeding (except for Claims described in Section 9(d) below) for at least 60 days after one of us notifies the other of a Claim in writing. You will send your notice to the address on the first page of this Agreement, and we will send our notice to your billing address.

(b) Formal Resolution. Except as provided in Section 9(d), if we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration. The arbitration will be conducted under the rules of JAMS that are in effect at the time the arbitration is initiated (referred to as the "JAMS Rules") and under the rules set forth in this Agreement. If there is a conflict between JAMS Rules and the rules set forth in this Agreement, the rules set forth in this Agreement will govern. ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL. You may, in arbitration, seek any and all remedies otherwise available to you pursuant to your state's law. If you decide to initiate arbitration, you agree to tell us in writing the amount that you would pay to file a lawsuit against us in the appropriate court of law in your state.  Unless we agree to pay your fee for you, you only need to pay an arbitration initiation fee equal to such court filing fee, not to exceed $125; we agree to pay any additional fee or deposit required by JAMS to initiate your arbitration. We also agree to pay the costs of the arbitration proceeding. Other fees, such as attorney's fees and expenses of travel to the arbitration will be paid in accordance with JAMS Rules. The arbitration will be held at a location in your hometown area unless you and we both agree to another location or telephonic arbitration. To start an arbitration, you or we must do the following things:

(1) Write a Demand for Arbitration. The demand must include a description of the Claim and the amount of damages sought to be recovered. You can find a copy of a Demand for Arbitration at jamsadr.com.

(2) Send three copies of the Demand for Arbitration, plus the appropriate filing fee to:

JAMS
500 North State College Blvd., Suite 600
Orange, CA 92868
1-800-352-5267

(3) Send one copy of the demand for arbitration to the other party.

(c) Special Rules. (i) In the arbitration proceeding, the arbitrator has no authority to make errors of law, and any award may be challenged if the arbitrator does so. Otherwise, the arbitrator's decision is final and binding on all parties and may be enforced in any federal or state





# DIRECTV. PRIVACY POLICY

**Effective as of May 1, 2006, until replaced**

DIRECTV is committed to protecting consumer privacy. This Policy explains how DIRECTV collects, uses, and discloses information about those products or services to obtain copies of their privacy policies.

This Policy explains our practices in the following areas:

1. The nature of the Personally Identifiable Information we collect about you and the way we collect this information.
2. The nature of the Personally Identifiable Information that we may make, including the types of persons or entities to whom the disclosure may be made.
3. The period of time for which we maintain Personally Identifiable Information.
4. How you may obtain access to and correct any Personally Identifiable Information about yourself.
5. Your rights under the Communications Act, 47 U.S.C. § 3300.

## Types of Information we collect and how we collect it

IV. **Your Choices Regarding the Collection and Use of Customer Information**

V. **How long we keep Customer Information**

VI. **Our do not contact policy**

VII.

VIII. **Online credit card transactions**

IX. **Your access to Information and rights under the Communications Act**

X. **Changes to this Privacy Policy**

We use the term "Personally Identifiable Viewing Information" to refer to information about personal viewing habits that we collect only with your express consent. This term is defined in more detail below in Section I.

A. The following are specific types of Customer Information that we collect from customers and visitors to our Web sites:

"Account Information" means information about your DIRECTV service account, including your name, address, social security number, e-mail address, telephone number, what programming packages you subscribe to, equipment, and billing information. Account Information does not include any of your DIRECTV Receiver software version number, any Personally Identifiable Viewing Information or Anonymous Viewing Information. We collect Account Information directly from you when you activate or change your account. Information in our files may also include, but is not limited to, a consumer reporting agency.

"Service Information" means information necessary for us to provide service to your DIRECTV Receiver. Examples of Service Information include your receiver's software version number and the success status of the last attempted service call by your receiver.

"Anonymous Viewing Information" means information about use of your DIRECTV Receiver, that is not associated with or linked to your Account Information. Your DIRECTV Receiver regularly sends Anonymous Viewing Information to us. This information allows us to know, for example, that a customer from a particular city watched a show, but we cannot associate those Viewing choices with a customer. You may request that we block logs for a few randomly sampled DIRECTV Receivers for quality control and troubleshooting. These logs identify your DIRECTV Receiver and are thus associated with your Account.

"Diagnostic Information" means is the detailed information about the operation of a DIRECTV Receiver. We collect Diagnostic Information upon request, in the event logs for a few randomly sampled DIRECTV Receivers. These logs identify your DIRECTV Receiver and are thus associated with your Account.

"Commerce Information" means Personally Identifiable information that we collect when you request information to participate in a promotion or transaction. From time to time, we may present on-screen offers or enable you to buy goods and service from us or third parties. Only if you take advantage of such an offer or engage in a transaction will we collect information such as your name and address and your interest in a specific offer or transaction to the sponsor of the promotion or transaction. In addition to fulfilling your request, that commerce partner may also use your Commerce Information to send you other information in which you might be interested consistent with its own privacy policies.

"Web Site Information" means information collected and stored on our web servers when you become a registered user of, or visit, our Web sites.

If you are a customer and register on our Web sites to access your DIRECTV account, we may collect information that you

provide us (including your e-mail address) and use it in accordance with this our Privacy Policy. Whether or not you are a DIRECTV customer, we may collect information about visitors to our Web site as follows:

Cookies: We use cookies to our Web sites for returning visitors. These cookies remain on your computer and are automatically retrieved when you visit our Web site at a later time. These cookies contain very limited information concerning the type of customer and frequently visited pages. No other Customer Information is stored on cookies.

If you are uncomfortable with cookies, you may disable them on your computer. Disabling cookies may affect user functionality but the design of DIRECTV Web sites allow access to most offerings with cookies disabled. Visitors who have disabled cookies on their browser won't be able to use DIRECTV's personalized account management function.

Electronic newsletters: If you subscribe to electronic newsletters from DIRECTV, we keep your e-mail address on file.

Aggregate information about Web site visitors: We create aggregate reports of visitors to our Web sites to measure the performance of our sites. These reports do not contain Customer Information.

Links to other Web sites: When you visit our Web sites, you will find every opportunities to link to Web sites of third parties. When you click through to these other Web sites, any Personally Identifiable Viewing Information you give is your express consent to us so. However, unless you give us your express consent to us so, no longer applies. We recommend that you read the privacy policy for any third party Web site.

B. "Personally Identifiable Viewing Information" means information about the use of your DIRECTV Receiver, if that information is linked to or associated with your Account Information. We do not collect Personally Identifiable Viewing Information unless you give us your express consent to do so. You may choose to consent to DIRECTV's collection of Personally Identifiable Viewing Information by changing your privacy preferences as described in Section I below.

II.

Use of Customer Information

We use Customer Information to deliver our service to our customers and to understand what our customers want so we can continue to provide a compelling customer service and a good value. Specifically, we use Customer Information for editorial feedback, marketing and promotion purposes, for statistical analysis, for product development and content improvement, to verify customer qualifications to receive our service, to bill for our service and for other related business purposes.

Expressly allowing us to collect your Personally Identifiable Viewing Information may help us provide you with more relevant service, it may help us to recommend viewing choices, personalize your viewing experience and select advertisements or other promotions for you that you may be interested in. Also, we may use this information for surveys, audience measurement, and other legitimate business purposes. If you allow us to collect DIRECTV DVR service, your DIRECTV DVR may use your viewing information to recommend programs for you.

As noted above, we do not collect your Personally Identifiable Viewing Information without your consent. Absent your consent, no "tag" is added to the anonymous Viewing file transmitted from a DIRECTV Receiver to us that would enable us to identify the DIRECTV Receiver from which it came.

II.   When we share Customer Information with Third parties

We share Customer Information with third parties when it is necessary to coordinate a legitimate business activity related to serving our customers, including the following circumstances:

Subcontractors: We share Customer Information with providers of bill processing, technical assistance, and other support services. In each of these instances, we require these third parties to maintain the confidentiality of the Customer Information and require them to adhere to this Privacy Policy.

Third party partners: We share Customer Information with third parties to coordinate delivery or billing of the services provided by such third parties to you (such as where we take reasonable steps to require these third parties to maintain the confidentiality of the Customer Information and require them to adhere to this Privacy Policy).

Affiliated companies: We share Customer Information with third parties in connection with offering of some of the services we provide. We will require our affiliates to honor this Privacy Policy.

Marketing: We may share Customer Information, including programming purchases, with those third parties whose products or services we believe may be of interest to you. We may share provide this Customer Information to market products or services to you.

We may disclose aggregated Anonymous Viewing Information and any derived analysis to bid parties including suppliers, advertisers, broadcasters, research companies and other organizations.

When you elect to participate in a special offer or engage in a transaction with DIRECTV or a third party advertiser or promoter through your DIRECTV Receiver, we will collect and disclose your Commerce Information to the party sponsoring the offer or promotion. This information is disclosed only upon your response to an offer. In addition to fulfilling your request, that party may also use your Commerce Information to send you other information in which you might be interested consistent with its own privacy practices.

Legal requirements: We may share Customer Information with third parties to meet legal requirements or when permitted by law to protect our rights and property. For example, we may be asked to disclose certain Customer Information or Personally Identifiable Viewing Information in response to a subpoena or court order. In most cases where disclosure is in response to legal process, we will provide notice to you at the address or e-mail address providing notice and opportunity to respond, and we will, if we are provided the opportunity to respond, in a court proceeding file the subpoena or court order.

Sale or transfer of the business: We may share Customer Information with third parties in connection with the sale, transfer, or other assignment of our business. If we are acquired by another company, that company will possess the Customer Information



## Thank you for choosing DIRECTV. To show our appreciation, here's your coupon for a FREE Pay Per View movie.

**Order a Pay Per View movie** with your remote. Movie selections start at Channel 125. You can also order online at directv.com/movies.

**Enjoy your free movie.** Remember, with the FIRST 5 MINUTES FREE™ feature, you can watch the first five minutes at the movie's scheduled start time before you buy.

**Redeem your $3.99 coupon in three easy steps:**
1. Wait until the Pay Per View charge appears on your bill.
2. Fill out this coupon.
3. Mail coupon along with remittance slip and bill payment. If you pay by credit card, Auto Bill Pay, or don't pay your bill directly to DIRECTV, mail only the completed coupon to: DIRECTV, Inc., P.O. Box 78626, Phoenix, AZ 85062-8626}  Credit will appear on your bill when we receive your coupon.

| | |
|---|---|
| DIRECTV Account Number | |
| Movie Watched | |
| Name | |
| Home Phone # | |
| Signature | |

By signing above, you agree to be bound by the terms and conditions of this coupon and the DIRECTV Customer Agreement, filler expires 11/30/08.

Coupon redemption value 1/100th of a cent. This coupon expires and must be received at DIRECTV by 11/30/08. Coupon is nontransferable, nonrefundable and noncancelable. Void if copied or transferred and where prohibited by law. May not be exchanged or substituted for or reproduced. No more than two coupons can be redeemed per month. One retail towards Pay Per View events or adult Pay Per View purchases. Any other one constitutes fraud. Good only in the U.S.A. DIRECTV is not responsible for late, lost, misdirected, illegible or mutilated coupons, phone restrictions lost. Programming, pricing, terms and conditions are subject to change. Not for resale. Valid only for current residential subscribers who enter a DIRECTV Pay Per View purchase. Receipt of DIRECTV programming is subject to terms of the DIRECTV Customer directv.com/legal and subject to customers in the first month. ©2008 DIRECTV, Inc. DIRECTV and the Cyclone Design logo are registered trademarks of DIRECTV, Inc. All other trademarks and service marks are the property of their respective owners. 65JUN 29409

000000130  0  04  0000  000000000  1  0028  00000399  00000000  0

## YOU MAY BE ELIGIBLE TO RECEIVE A MONTHLY BILL CREDIT FOR UP TO 12 MONTHS.

To receive your bill credit, please follow these steps within 60 days of activating your DIRECTV System.

1. **Visit directv.com/rebate**

2. **Enter your account number and zip code to confirm your eligibility and submit your redemption.**
   - Do not manually deduct the bill credit from your monthly bill amount due. Doing so may result in service interruption.
   - Allow 6 to 8 weeks from submission for the first bill credit to appear on your account.

3. **Track your redemption status online at directv.com/rebate,** or provide your e-mail address during the redemption process to have status notices sent directly to you.

4. **If you do not have Internet access, you can contact our Redemption Center at 1-877-266-4808** for assistance.



REDEMPTION DETAILS: New DIRECTV customers only; no approved credit. Lease or rebate dwelling unit; provider activation required. Offer valid for new customers who complete a DIRECTV System between 02/22/08 and 06/24/08 and authorize a qualifying programming package within 30 days. Customer must redeem online at www.directv.com/rebate or call 1-877-266-4808 within 60 days of system activation. Upon receipt of redemption, DIRECTV will begin to credit the new customer's account for 12 months. Allow 6-8 weeks for process customer activation to the qualifying package for 12 consecutive months (without interruption) customer will continue to receive the applicable bill credits. If customer's account is disconnected for any reason, credits will automatically discontinue and will not be reinstated. Credit transferred or exchanged. Credits not automatic for cash; any credit balances that may appear on account will continue month-to-month until credit is exhausted. Customer account must remain active and in good standing, as determined by DIRECTV in its sole discretion, to receive credit for purchases by groups, clubs or organizations. Reproductions of redemption form directly prohibited. DIRECTV not responsible for late, lost, illegible, misdirected, incomplete, misdirected or postage due mail. LIMIT ONE PROGRAMMING BILL CREDIT PER DIRECTV ACCOUNT. THIS OFFER NOT COMBINED WITH ANY OTHER PROGRAMMING BILL CREDIT OFFERS. ©2008 DIRECTV, Inc. DIRECTV and the Cyclone Design are registered trademarks of DIRECTV, Inc. R2.08 29677-0

**DIRECTV.com makes it easy to pay your DIRECTV bill.**

Sign up for Auto Bill Pay and your bill will automatically be paid every month with your credit card.

It's easy. Go to directv.com to register your account. Then follow the simple steps to set up recurring payments.

Or go to directv.com/myaccounthelp and Diane, our online assistant, will show you how.

**directv.com**

Register at directv.com and you'll have everything you need to manage your DIRECTV account. With a simplified registration process and improved account management features, it's now easier than ever.

Visit directv.com/myaccounthelp for a quick demo.



**A Simple Guide to Understanding Your Bill**





1

2

3

**PROOF OF SERVICE**
*Annette Kahaly, et al. v. DirecTV, Inc., et al.*
CASE NO: SACV08-741 AG(ANx)

4

5

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action. I am employed in the County of San Diego, State of California. My business address is: 550 West C Street, Suite 1600, San Diego, CA 92101.

6

7

8

9

That on August 26, 2008, I served the following document(s) entitled: **FIRST AMENDED COMPLAINT FOR: (1) VIOLATION OF CALIFORNIA CIVIL CODE SECTION 1770, *ET. SEQ.*; (2) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, *ET. SEQ.*; (3) UNJUST ENRICHMENT; and (4) UNLAWFUL ASSESSMENT OF LIQUIDATED DAMAGES UNDER CIVIL CODE SECTION 1671(a)** on ALL INTERESTED PARTIES in this action.

10

11

12

13

14

■ **BY MAIL**: By placing a true copy thereof in a sealed envelope addressed as listed below, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service. The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in San Diego, California, on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

15

16

■ **BY ELECTRONIC MAIL**: I caused transmission of a PDF copy of the foregoing document(s) this date via electronic mail, to the parties indicated below.

17

18

19

20

21

Robyn E. Bladow
Shaun Paisley
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, CA 90017
Telephone:    (213) 680-8400
Facsimile:    (213) 680-8500
Email: spaisley@kirkland.com
           rbladow@kirkland.com

22

23

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 26, 2008, at San Diego, California.

24

25

*Anita Villanueva*
ANITA VILLANUEVA

26

27

28

SACV08-741 AG(ANx)