Blake Muir Harper (SBN: 115756)
Sarah P. Weber (SBN: 239979)
**HULETT HARPER STEWART LLP**
550 West C Street, Suite 1600
San Diego, CA 92101
Telephone:  (619) 338-1133
Facsimile:   (619) 338-1139
Email:      blake@hulettharper.com
            sweber@hulettharper.com

*Interim Lead Class Counsel for Plaintiffs*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: DIRECTV EARLY CANCELLATION FEE LITIGATION | Master Case No. 08-cv-741 AG (ANx) **CONSOLIDATED CLASS ACTION COMPLAINT** |
| This Document Relates To:  All Actions | **DEMAND FOR JURY TRIAL** |

Plaintiffs Annette Kahaly, Joseph Lombardi, John Mulea, Kathleen O'Brien, Roberta and Edward Pifer, and Maureen Van Meter, on behalf of themselves and all others similarly situated, allege the following against Defendant DirecTV, Inc., based on personal knowledge, information and belief, and their counsels' investigation and research:

1

## INTRODUCTION

1.     This proposed nationwide class action arises out of Defendant's deceptive and unlawful business acts and practices concerning the sale of satellite television service plans and lease of related equipment. These practices include failing to disclose or inadequately disclosing that by subscribing to DirecTV service (new customers), or modifying their DirecTV service (existing customers), consumers are automatically enrolled into new programming commitment periods of 18 or 24 months that are subject to an early cancellation fee of up to $480.

2.     Even if DirecTV adequately disclosed all of its purported terms of service, the early cancellation fee is an invalid liquidated damages clause and as such is void and unenforceable.

3.     Plaintiffs, on behalf of themselves and the proposed Classes as initially defined herein, allege statutory claims under Cal. Civ. Code § 1671(d); Cal. Bus. & Prof. Code §§ 17200 *et seq.*; Cal. Civ. Code §§ 1750 *et seq.*; 15 U.S.C. §§ 1667 *et seq.*, 28 U.S.C. §§ 2201 *et seq.*; and for Money Had and Received and Unjust Enrichment. Plaintiffs seek compensatory and punitive damages, restitution, and injunctive and declaratory relief as set forth herein.

## JURISDICTION AND VENUE

4.     This Court has personal jurisdiction over the parties in this case. Defendant is a California corporation with headquarters in California within this District.

5.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from Defendant; there are more than 100 Class members nationwide; and the aggregate amount in controversy exceeds $5,000,000.

6.     Venue is proper in this District under 28 U.S.C. § 1391(a) because some Plaintiffs are residents and citizens of this District; Defendant maintains its headquarters within this District; a substantial part of the events or omissions giving rise to the claims

CLASS ACTION COMPLAINT

occurred within this District; and Defendant has caused harm to Class members residing within this District.

## APPLICATION OF CALIFORNIA LAW

7.     California law applies to the claims and issues asserted herein.  Plaintiffs seek damages and equitable relief on behalf of themselves and all other United States residents similarly situated, including residents of California, under the laws of the State of California.

8.     All of Defendant's relevant business, including the formulation and execution of the unlawful practices alleged herein, occurred in, or emanated from California, where Defendant has its principal place of business.   Accordingly, California has significant contacts and/or a significant aggregation of contacts to the claims asserted by Plaintiffs and all Class members.

9.     California has a materially greater interest than any other State in regulating unlawful conduct by DirecTV, which conducted its unlawful practices out of its principal place of business in California, and in enforcing the rights and remedies granted to United States consumers, including California residents, under the California laws invoked by this Complaint.  These rights and remedies further strong fundamental public policies of the State of California.

## PARTIES

### Defendant

10.    Defendant DirecTV, Inc., provides satellite-based television service in the United States and provides receivers and other equipment needed to access that service. DirecTV Inc. incorporated in California and maintains its headquarters in El Segundo, California.

11.    Defendant is referred to throughout this Complaint as "DirecTV" or "Defendant."

/ / /

/ / /

**Individual and Representative Plaintiffs**

12.     Plaintiff Annette Kahaly is a citizen of California and has resided in Orange County, California at all relevant times.  In March 2008, Plaintiff subscribed to DirecTV's satellite service.  DirecTV failed to disclose and/or inadequately disclosed that its provision of service was subject to a commitment period or early cancellation fee. Plaintiff did not sign any document presented as an agreement to a commitment period and early cancellation fee.  Following numerous attempts, DirecTV was unable to provide the correct programming Plaintiff requested and on or about April 9, 2008, Plaintiff cancelled her DirecTV service.  Shortly thereafter DirecTV charged an early cancellation fee of $460.00 to her credit card.  Plaintiff has suffered injury in fact and has lost money or property as a result of the unlawful conduct alleged herein.

13.     Plaintiff Joseph Lombardi is a citizen of Florida and has resided there at all relevant times.  In December 2007, Plaintiff Lombardi subscribed to DirecTV's satellite service.  DirecTV failed to disclose and/or inadequately disclosed that its provision of service was subject to a commitment period and an early cancellation fee.  Plaintiff did not sign any document purporting to be an agreement with DirecTV.  On or about September 2008, Plaintiff cancelled his DirecTV service. Shortly thereafter DirecTV charged an early cancellation fee of $160.00 to Plaintiff's credit card.  Plaintiff Lombardi has suffered injury in fact and has lost money or property as a result of the unlawful conduct alleged herein.

14.     Plaintiff John Mulea is a citizen of California and has resided in San Jose, California at all relevant times.  In or around 2003, Plaintiff Mulea subscribed to DirecTV's satellite service.  DirecTV failed to disclose and/or inadequately disclosed that its provision of service was subject to a commitment period and an early cancellation fee. Plaintiff did not sign any document purporting to be an agreement with DirecTV.  In February 2008, Plaintiff called DirecTV and requested a replacement receiver for one that had malfunctioned.  DirecTV failed to disclose and/or inadequately disclosed to Plaintiff that as a result of the request for a replacement receiver, Plaintiff's service was

CLASS ACTION COMPLAINT

subject to a new commitment period and early cancellation fee. Nor did Plaintiff receive
and/or sign any document purporting to be an agreement with DirecTV. In November
2008, after approximately five years as a DirecTV customer, Mr. Mulea cancelled his
service. Shortly thereafter, DirecTV assessed an early cancellation fee of $200 to
Plaintiff's account. Plaintiff Mulea has suffered an injury in fact and has lost money or
property as a result of the unlawful conduct alleged herein.

15. Plaintiff Kathleen O'Brien is a citizen of Florida and has resided there at all
relevant times. In or around 2004, Plaintiff subscribed to DirecTV's satellite service.
DirecTV failed to disclose and/or inadequately disclosed that its provision of service was
subject to a commitment period and an early cancellation fee. Plaintiff did not sign any
document purporting to be an agreement with DirecTV. In December 2007, Plaintiff's
husband requested a programming upgrade to include high definition ("HD") channels.
DirecTV failed to disclose and/or inadequately disclosed to Plaintiff and her husband that
as a result of the request for HD channels, Plaintiff's service was subject to a new
commitment period and early cancellation fee. Nor did Plaintiff receive and/or sign any
document purporting to be an agreement with DirecTV. Approximately one week later,
Plaintiff called DirecTV to cancel her service. Shortly thereafter, DirecTV charged
Plaintiff an early cancellation fee of $440.00 to her debit card. Plaintiff O'Brien has
suffered injury in fact and has lost money or property as a result of the unlawful conduct
alleged herein.

16. Plaintiffs Roberta and Edward Pifer are Virginia citizens and resided there at all
relevant times. In or around 1999, Plaintiffs subscribed to DirecTV's satellite service.
DirecTV failed to disclose and/or inadequately disclosed that its provision of service was
subject to a commitment period and an early cancellation fee. Plaintiffs did not sign any
document purporting to be an agreement with DirecTV. In May 2008, Plaintiffs
requested a replacement box for one that had failed to function after approximately eight
years of service. DirecTV failed to disclose and/or inadequately disclosed to Plaintiffs
that as a result of the request for a replacement box, Plaintiffs' service was subject to a

new commitment period and early cancellation fee. Nor did Plaintiffs sign any document purporting to be an agreement with DirecTV. In or around August 2008, Plaintiffs cancelled their DirecTV service. Shortly thereafter, DirecTV charged an early cancellation fee of $400.00 to Plaintiffs' credit card. Plaintiffs Roberta and Edward Pifer have suffered injury in fact and have lost money or property as a result of the unlawful conduct alleged herein.

17. Plaintiff Maureen Van Meter is a California citizen, and resided in Desert Hot Springs, California at all relevant times. In or around October 2001, Plaintiff subscribed to DirecTV's satellite service. DirecTV failed to disclose and/or inadequately disclosed that its provision of service was subject to a commitment period and an early cancellation fee. Plaintiff's original receiver box failed to function after seven years of service. Plaintiff then requested a standard replacement box and a second standard box for another television. DirecTV failed to disclose and/or inadequately disclosed to Plaintiff that as a result of the requests for a replacement box and a second receiver box, Plaintiff's service was subject to a new commitment period and early cancellation fee. Nor did Plaintiff sign any document presented as an agreement to a new commitment period and early cancellation fee. In or around July 2008, Plaintiff cancelled her DirecTV service. Shortly thereafter, DirecTV charged early cancellation fees of $276.46 to Plaintiff's debit card. Plaintiff Van Meter has suffered injury in fact and has lost money or property as a result of the unlawful conduct alleged herein.

## COMMON FACTUAL ALLEGATIONS

### DirecTV's Satellite Service

18. DirecTV is a satellite television service provider. DirecTV is the nation's largest provider of "direct to home" digital television services and transmits to over 16.8 million subscribers throughout the United States, or approximately 17% of the market for multichannel video programming.

CLASS ACTION COMPLAINT

19.     DirecTV uses standardized marketing and sales messages to promote its services. DirecTV also uses standardized materials to enroll customers into its subscriptions.

20.     To receive DirecTV's service, customers contact DirecTV or one of its agents. At the time they order DirecTV's service, customers provide a credit card or debit card number.

21.     DirecTV's customers choose from various service packages which are channels that DirecTV groups together and sells at different price points such as "the Family™ package," "the Choice™ package," or "the Premier™ package." Other programming offerings are seasonal, such as the "NFL Sunday Ticket.™"

22.     In addition to, or instead of DirecTV's standard set-top receiver, customers may select a newer high-definition (HD) receiver, digital video recording (DVR) receiver, or combination HD/DVR receiver. Customers may obtain the receivers directly from DirecTV or from one of its authorized resellers or retailers. The customer's receiver is connected to an outdoor antenna which is typically affixed to their residence.

23.     DirecTV retains ownership rights to the equipment that it provides to its customers. Upon the cancellation of service, DirecTV demands the return of such equipment or requires them to pay a significant amount of money for the equipment. DirecTV may then reuse returned equipment for future customers.

24.     After customers receive the necessary equipment and begin receiving satellite service, DirecTV sends them a "Customer Agreement," which is a standardized adhesion contract that purports to govern the terms of DirecTV's provision of service. DirecTV customers have no opportunity to negotiate the terms of the Customer Agreement and DirecTV fails to inform its customers of the material terms of the Customer Agreement at the time service is established.

25.     Buried in the fine print of the Customer Agreement is a provision which states in relevant part: "You may cancel Service by notifying us . . . if you cancel your Service

---

7

package, you may be subject to an early cancellation fee if you entered into a separate programming commitment with DIRECTV in connection with obtaining Receiving Equipment, and have failed to maintain the required programming package for the required period of time."

26.     The "separate programming commitment" referenced in the Customer Agreement is buried in a separate document titled, "Equipment Lease Addendum." Consumers do not receive the Equipment Lease Addendum alongside or at the same time as the Customer Agreement, however, and the Equipment Lease Addendum is printed on the reverse side of a document titled, "Installation/Service Satisfaction Checklist." The Installation/Service Satisfaction Checklist is presented to the customer by DirecTV or its agents after they install the receiving equipment in the customer's home. In other words, the Equipment Lease Addendum is neither presented as an essential document governing the terms of DirecTV's provision of service, nor is it accompanied by the Customer Agreement that it states it must be read in conjunction with.

27.     Whether an existing customer receives the Equipment Lease Addendum or not, its terms purport to apply to existing customers after such persons request a change in service such as a different service package, service at a new address, replacement equipment for malfunctioning receiving equipment, or additional equipment, i.e., to receive programming on a television in another room.

28.     Buried in the fine print of the Equipment Lease Addendum is a provision which states in relevant part: "The programming package(s) must be maintained for a period of not less than (a) eighteen (18) consecutive months (for accounts with standard receiver(s)), or (b) twenty-four (24) consecutive months (for accounts with advanced product(s)/receiver(s)-digital video record (DVR), high definition receiver (HD) or high definition digital video recorder (HD DVR), including additional DIRECTV receiver(s)). After you have fulfilled your agreement to the required programming package(s), you are not obligated to continue your subscription to DIRECTV programming for any specific

duration. Current DIRECTV customers may activate additional receivers with their existing DIRECTV programming package." The provision also warns customers that the programming commitment is separate and different from any other programming commitment they may have made with DirecTV and is fully enforceable under those terms.

## DirecTV's Early Cancellation Fee ("ECF")

29. DirecTV operates in an intensely competitive market. DirecTV competes with the Dish Network, another major direct-to-home television satellite service provider, which has over 13 million subscribers.

30. DirecTV also competes with cable television companies. According to the National Cable and Telecommunications Association's Mid-Year 2007 Industry Overview, cable lines pass by 100% of U.S. television households. Cable companies account for approximately 66% of the market for multichannel video programming and possess the competitive advantage of "bundling" related services such as cable television, broadband Internet, and telephone service at a discount to the consumer.

31. DirecTV also faces competition from emerging technologies, such as telephone companies' use of fiber optic networks to provide video programming and Internet-based video broadcasts.

32. The seasonal and special offers and discounts offered by DirecTV and its competitors contribute to the "churn" experienced by multichannel video programming providers. Churn refers to the turnover in customer base that occurs when subscribers switch service providers. DirecTV has one of the lowest levels of customer churn in its industry.

33. To reduce churn, DirecTV imposes the early cancellation fee ("ECF") buried in the Equipment Lease Addendum, which DirecTV does not provide to customers, if at all, until after the customer initiates service. The ECF can be as high as $480 to consumers who cancel their service during the commitment period set forth in the Equipment Lease

9

Addendum. The ECF, however, is not designed to compensate DirecTV for any actual damages arising from the subscriber's cancellation of DirecTV's service. Instead, the ECF is a penalty designed to lock-in DirecTV's existing subscribers to its service and deter them from switching to other service providers to obtain lower rates or better satellite, cable, or internet television service.

34. Even customers who have been with DirecTV for many years are subject to the ECF. DirecTV automatically enrolls existing customers into new commitment periods of 18 or 24 months when they merely request a change in service such as a different programming package or a different, additional, or replacement receiver (the receivers have an expected lifespan of 4-5 years). Customers who cancel during these new commitment periods are assessed the ECF.

35. Indeed, DirecTV aggressively promotes its new HD, DVR, and HD/DVR receivers to existing customers as a means of additional revenue. Aside from the monthly lease fees, DirecTV uses the set-top receivers to lure existing subscribers unknowingly into new commitment periods. Thus, long-time subscribers are locked into new commitments of 18 to 24 months when they need to replace old, malfunctioning equipment to continue receiving the service.

36. DirecTV admits that "increasing the penetration levels of customers purchasing HD and DVR services" is part of its strategy for reducing churn and a cornerstone of its overall competitive strategy.

37. As a policy and practice, DirecTV either fails to disclose or fails to adequately disclose that a change in service will result in a new commitment period.

38. Customers typically learn of the commitment periods only when they inform DirecTV that they wish to downgrade, disconnect, or cancel their service during the commitment period set forth in DirecTV's records. At that time, DirecTV notifies the customer of the commitment period and that it will enforce the commitment period by assessing the ECF.

CLASS ACTION COMPLAINT

39.   DirecTV imposes the ECF regardless of the reason for cancellation, such as moving to a new address, the inability to establish service, or poor service.  DirecTV also imposes the ECF in instances where it is the party choosing to cancel service because, for example, it deems a subscriber a bad credit risk.

40.   DirecTV collects the ECF by withdrawing the money directly from subscriber's bank accounts or by placing charges on subscriber's credit or debit card accounts without the subscriber's authorization.  Where DirecTV is unsuccessful in collecting the ECF in this manner because, for example, the subscriber successfully disputes the withdrawal or charge, DirecTV institutes collections efforts against the consumer.

41.   Through its scheme of automatically enrolling new and existing customers into undisclosed commitment periods subject to an undisclosed ECF, DirecTV successfully keeps its customers on the hook.

42.   DirecTV's 2007 Annual Report touts "significant progress in reducing average monthly churn—the percentage of customers who disconnect their service each month—to an eight year low of 1.51%."

43.   DirecTV's ECF permits it to collect significant revenues as a result of: (1) the payment of the ECF themselves; and (2) revenue generated by locking-in subscribers to its service for the duration of the commitment periods.

**DirecTV Settled a 22 State Attorney Generals' Investigation Regarding
Its Failure to Disclose the Material Terms of Customer Agreements**

44.   In December 2005, DirecTV settled an unfair business practices investigation by 22 state attorneys general regarding "free" trials, service packages, promotional equipment offers, and other similar issues.   DirecTV entered an Assurance Of Voluntary Compliance / Assurance Of Discontinuance ("Voluntary Assurance"), a copy of which is attached as Exhibit A.

45.   The Voluntary Assurance directly addresses DirecTV's behavior with regard to its hidden long-term contracts and early cancellation fees.  DirecTV is obligated to

"clearly and conspicuously" disclose, both orally and in writing, all material terms of a transaction for equipment or services, whether made through DirecTV or a retailer.

46.     The Voluntary Assurance also affords consumers the right to cancel service without penalty or cost should DirecTV fail to clearly and conspicuously apprise them of material terms of its service, or should the consumer discover he or she is unable to receive adequate satellite reception.

47.     The Voluntary Assurance does not affect private actions in any way, by its express terms. Indeed, violation of the Voluntary Assurance is prima facie evidence of a violation of a participating State's consumer protection statute.

## FRAUDULENT CONCEALMENT

48.     Plaintiffs are consumers who obtained satellite television service from DirecTV, and purchased or leased receivers from DirecTV for that purpose. Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at DirecTV responsible for its practice of concealing the commitment period and the early cancellation fee from Plaintiffs and consumers. DirecTV necessarily is in possession of all of this information.

49.     Plaintiffs' claims arise out of DirecTV's fraudulent concealment of the ECF. To the extent that Plaintiffs' claims arise from DirecTV's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiffs base their claims. Plaintiffs allege that at all relevant times, including specifically at the time they ordered DirecTV service and receivers, DirecTV knew that Plaintiffs and Class members would be subject to a long-term contract and early cancellation fee, and that DirecTV failed to disclose these material facts to the Plaintiffs and Class members prior to their ordering or activating DirecTV service or equipment.

50.     The terms concealed and/or not disclosed by DirecTV to Plaintiffs and the Class are material in that a reasonable person would have considered them important in deciding whether or not to subscribe to DirecTV service, or to purchase or lease a receiver.

51. DirecTV knew that the commitment period and ECF were material terms of its service that consumers would want to know in advance of ordering or activating DirecTV service, or ordering, leasing or activating new receivers.

52. DirecTV had a duty to disclose the commitment period and ECF to Plaintiffs and Class members prior to completing the transaction which allegedly triggered these contractual obligations.

53. Plaintiffs make the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to DirecTV:

    a. Who: DirecTV concealed the commitment period and ECF from Plaintiffs and the Class. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those individuals at DirecTV responsible for such decisions.

    b. What: DirecTV knew and fraudulently concealed or intentionally failed to disclose the material facts that purchasing or leasing a receiver would activate a long-term service contract with a provision for early cancellation Penalties.

    c. When: DirecTV concealed this material information at all times, starting no later than 1999, continuing through the time of Plaintiffs' purchase of the service and/or receivers, and on an ongoing basis continuing to this day. DirecTV only discloses the ECF after the relevant transaction has been completed, or when subscribers, such as Plaintiffs here, seek to cancel service.

    d. Where: DirecTV concealed this material information in its communication with Plaintiffs (until after it assessed the ECF against them), and the Class. Further, while this information appears on the Equipment Lease Addendum, this document was not given to Plaintiffs at the time of initiating service. On information and belief, the Addendum is supplied to Class members, if at all, only after DirecTV service and equipment has been purchased/leased,

installed, and activated, and is furnished under the pretense that it is a work order sign-off, certifying only that the service had been installed to Class members' satisfaction. Similarly, the disclosures on DirecTV's website are intended to escape the notice of Plaintiffs and the Class, most of whom order service and equipment by telephone, and are not directed to the website for additional terms of service at the time of their initiating transactions.

e. How: DirecTV concealed this material information by not disclosing it to Class members, or by disclosing the terms in a document offered under false pretenses after the relevant transaction had been completed, as described in the preceding paragraph. DirecTV concealed these terms even though it knew this information and knew that it would be important to a reasonable consumer in deciding whether to order and activate DirecTV service and/or equipment.

f. Why: DirecTV concealed this material information for the purpose of inducing Plaintiffs and Class members to subscribe to DirecTV service and/or lease a receiver. Had DirecTV disclosed the truth, Plaintiffs (and reasonable consumers) would not have subscribed to DirecTV and/or leased receivers.

54. Plaintiffs and the Class justifiably acted or relied upon to their detriment the concealed and/or non-disclosed facts as evidenced by their subscription to DirecTV service, and/or their purchase or lease of receivers. Had they known of the hidden contract terms, Plaintiffs and Class members would not have subscribed to DirecTV service, and would not have purchased or leased DirecTV's receivers.

**TOLLING**

55. Discovery Rule: The causes of action alleged herein accrued upon discovery of the fraudulently concealed contract terms and ECFs. Because DirecTV systematically conceals these material terms, Plaintiffs and members of the Class did not discover and could not have discovered them until DirecTV asserted the rights conferred upon it by

these hidden terms, usually by charging the ECF against an unsuspecting consumer. Moreover, Plaintiffs and Class members had no reason to conduct an investigation into these hidden terms, and a reasonable and diligent investigation would not have revealed them.

56. <u>Fraudulent Concealment</u>: Any applicable statutes of limitation have been tolled by DirecTV's knowing and active concealment of these material terms, and denial of the facts as alleged herein, which concealment is ongoing. Plaintiffs and the Class have been kept ignorant of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiffs and members of the Class could not reasonably have discovered the hidden, material terms including the term commitment and attendant ECF. In addition, DirecTV continues to sell and lease its receivers without disclosing the hidden terms.

57. <u>Estoppel</u>: DirecTV was and is under a continuous duty to disclose to the Plaintiffs and Class the hidden term commitment and the ECFs. DirecTV knowingly, affirmatively, and/or actively concealed these terms, which concealment is ongoing. DirecTV continues to sell and lease its receivers without disclosing the hidden terms. Furthermore, Plaintiffs and Class members reasonably relied upon DirecTV's knowing, affirmative, and/or active concealment. Based on the foregoing, DirecTV is estopped from relying on any statutes of limitation in its defense of this action.

## CLASS ALLEGATIONS

58. This action has been brought, and may be properly maintained, under Federal Rules of Civil Procedure 23(a)(1)-(4), 23(b)(3).

59. Plaintiffs bring this action as a class action on behalf of themselves and all others similarly situated as members of two Classes, initially defined as follows:

> **(a)    All former DirecTV customers nationwide who DirecTV charged an early cancellation fee ("Penalty Class").**

CLASS ACTION COMPLAINT

**(b)    All DirecTV customers nationwide whose DirecTV
service is subject to an early cancellation fee
("Commitment Class").**

Excluded from the above Classes is Defendant; any entity in which Defendant has a controlling interest; any of Defendant's officers, directors, or employees; the legal representatives, heirs, successors, and assigns of Defendant; and any judge to whom this case is assigned and his or her immediate family.

60.    **Numerosity**—Fed. R. Civ. P. 23(a) (1): The members of the Classes are so numerous and widely dispersed that joinder of them in one action is impractical. Millions of individuals subscribe to DirecTV's service and members of the Penalty Class are likely to number in the tens of thousands. The precise numbers of Class members are unknown to Plaintiffs, but each Class member should be readily identifiable from information and records in DirecTV's possession and control.

61.    **Existence and Predominance of Common Questions of Law and Fact**—Fed. R. Civ. P. 23(a)(2); 23(b)(3): Common questions of law and fact exist as to all members of each Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a. Whether DirecTV has a practice of imposing ECFs of up to $480 on subscribers who cancel DirecTV service;

    b. Whether the ECF DirecTV imposes is invalid under Cal. Civ. Code § 1671(d);

    c. Whether DirecTV failed to disclose or adequately disclose material information to subscribers, such as the commitment periods and ECFs;

    d. Whether DirecTV's conduct as alleged herein violated Cal Civ. Code §§ 1750, *et seq.*;

    e. Whether DirecTV's conduct as alleged herein is unlawful, unfair or deceptive in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

f. Whether DirecTV's conduct as alleged herein violated 15 U.S.C. §§ 1667, *et seq.*;

g. Whether DirecTV's conduct as alleged herein constituted money had and received;

h. Whether as a result of the conduct alleged herein, DirecTV has unjustly enriched itself; and

i. Whether Plaintiff and Class members are entitled to damages, restitution, injunctive relief and declaratory relief.

62. **Typicality**—Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of the claims of the Classes as DirecTV Plaintiffs' service was subject to an ECF and Plaintiffs were each charged the ECF.

63. **Adequacy of Representation**—Fed. R. Civ. P. 23(a)(4): Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of Class members they seek to represent. Plaintiffs have retained competent and experienced class action counsel who intend to vigorously prosecute this action. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

64. **Superiority**—A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the Class members is impracticable. Even if individual Plaintiffs and the other Class members could afford individual litigation, the courts could not. The amount at stake for each consumer is such that individual litigation or arbitration would be inefficient and cost prohibitive. Additionally, the adjudication of this controversy through a class action will avoid the possibility inconsistent and potentially conflicting adjudication of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

///
///
///

# CAUSES OF ACTION

## COUNT I
### Violation of California Civil Code § 1671
### (on behalf of each Plaintiff and all Class members)

65.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

66.     It is neither impractical nor extremely difficult for DirecTV to determine the actual amount of damages occasioned by a customer's early cancellation of the purported contract.

67.     DirecTV's ECFs bear no reasonable relationship to the actual costs incurred by DirecTV when customers cancel their service. Rather, the ECFs are intended as a penalty to dissuade Class members from cancelling DirecTV's service.

68.     Based on the foregoing, the early cancellation fee is an invalid liquidated damages provision. DirecTV's imposition of the early cancellation fee violates Cal. Civ. Code section 1671(d) and is unlawful, void, and unenforceable under this statute.

69.     Plaintiffs and Class members have suffered harm as a proximate result of the violations of law and wrongful conduct of DirecTV as alleged herein. Pursuant to Cal. Civ. Code section 1671(d), Plaintiffs, individually and on behalf of the Classes, seek an order of this Court declaring the early cancellation clause contained in the Lease Addendum void and preliminarily and permanently enjoining DirecTV from further enforcement and collection of early cancellation fees as alleged herein.

70.     Plaintiffs also seek an order requiring DirecTV to:

   a.  Immediately cease its unlawful practices;

   b.  Make full restitution of all money wrongfully obtained; and

   c.  Disgorge all ill-gotten revenues and/or profits.

/ / /
/ / /

**COUNT II**
**Violation of the Unfair Competition Law,**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.***
**(on behalf of each Plaintiff and Penalty Class members only)**

71.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

72.     The acts and practices engaged in by Defendant, and described herein, constitute unlawful, unfair, and/or fraudulent business practices in that:  (a) Defendant's practices, as described herein, violate Cal. Civ. Code § 1671(d), the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*, and the Consumer Leasing Act, 15 U.S.C. §§ 1667 *et seq.*; (b) Defendant's practices, as described herein, constitute money had and received; (c) the justification for Defendant's conduct is outweighed by the gravity of the consequences to Plaintiffs and Penalty Class members; (d) Defendant's conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiffs and Class members; and/or (e) Defendant's conduct constitutes fraudulent, untrue or misleading actions in that such conduct has a tendency to deceive a reasonable person, including Plaintiffs and Class members.

73.     Plaintiffs and Penalty Class members have suffered injury in fact and have lost money and/or property as a result of Defendant's unfair competition, as more fully alleged herein.

74.     Defendant's unlawful, unfair, and fraudulent business practices include, but are not limited to, the following:

    a.  violation of the Voluntary Assurance;

    b.  imposing an ECF of up to $480 that is unreasonable, invalid and unfair and hence a penalty; and

    c.  failing to disclose or adequately disclose material information, including the commitment periods and ECFs.

75.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and Class members are therefore entitled to equitable relief, including restitution of all monies paid to DirecTV

by the imposition of the ECF, disgorgement of all profits accruing to DirecTV because of its unlawful, unfair and fraudulent business practices, a permanent injunction enjoining DirecTV from its unlawful, unfair, and fraudulent business activities as alleged herein, and appropriate declaratory relief as described herein.

## COUNT III
### Violation of the Consumers Legal Remedies Act,
### Cal. Civ. Code §§ 1750 *et seq.*
### (on behalf of each Plaintiff and all Class members)

76.   Plaintiffs incorporate by reference and reallege all paragraphs alleged herein.

77.   Defendant is a "person" within the meaning of Civil Code sections 1761(c) and 1770, and provides "services" within the meaning of Civil Code sections 1761(b) and 1770.

78.   Defendant's customers, including Plaintiffs and Class members, are "consumers" within the meaning of Civil Code sections 1761(d) and 1770. Each payment for DirecTV's service by each Plaintiff and other Class members constitutes a "transaction" within the meaning of Civil Code sections 1761(e) and 1770.

79.   Defendant violated § 1770(a)(14)'s proscription against representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law, both by concealing the commitment periods and ECFs from consumers, and from assessing the fee against Plaintiffs and Class members.

80.   Defendant violated § 1770(a)(19) by inserting unconscionable provisions in the Customer Agreement, including clauses that purport to force consumers to settle all disputes only by arbitration, and to waive any right to bring a suit as a "representative member of a class or in a private attorney general capacity."

81.   Under California law, Defendant has a duty to disclose the long-term programming commitment and early cancellation fee to Plaintiffs and Class members prior to completing the transaction which allegedly triggered these contractual obligations.

CLASS ACTION COMPLAINT

82. The facts concealed by Defendant were material, in that a reasonable person would have considered them important in deciding whether or not to subscribe to DirecTV service, and/or purchase or lease receivers.

83. Defendant's concealment and deceptive practices, in violation of the CLRA, were designed to induce Plaintiffs and the members of the Class to subscribe to DirecTV service, and to lease its receivers.

84. Defendant intended to do the act that was deceptive and/or fraudulent, namely, to market DirecTV service, and to market, distribute, sell and lease receivers, without disclosing the material terms of service described herein.

85. Plaintiffs and the Class suffered actual damages as a direct result of Defendant's concealment and/or omissions in violation of the CLRA, as evidenced by Defendant's assessment of early cancellation fees.

86. To this day, DirecTV continues to violate the CLRA by concealing material terms of its service agreements, by imposing undisclosed contracts, and by assessing unreasonable early cancellation fees.

87. Plaintiffs Annette Kahaly, Kathleen O'Brien, Roberta and Edward Pifer, and Maureen Van Meter, on behalf of themselves and all Class members, have complied with California Civil Code section 1782(a) by serving a preliminary notice before filing a complaint for damages under the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. Copies of Plaintiffs' notices are attached as Exhibit B. Defendant has failed to remedy its conduct as demanded in Plaintiffs' preliminary notices.

88. Additionally, on January 9, 2009, counsel for John Mulea served DirecTV with notice of its alleged violations of the CLRA by certified mail, return receipt requested. (See Exhibit B.) On January 15, 2009, counsel for Joseph Lombardi served DirecTV with notice of its alleged violations of the CLRA by certified mail, return receipt requested. (See Exhibit B.) If DirecTV fails to provide appropriate relief for its violations of the CLRA within 30 days of receipt of their respective letters, Plaintiffs

1  Mulea and Lombardi will join the other Plaintiffs' request for compensatory and

2  exemplary damages, pursuant to Cal. Civ. Code §§ 1780, 1782(b).

3      89.    Pursuant to the provisions of Cal. Civ. Code § 1780, Class members seek

4  compensatory and punitive damages, restitution, injunctive relief as requested herein, and

5  any other relief this Court deems appropriate.

## COUNT IV
### Money Had And Received
**(on behalf of each Plaintiff and Penalty Class members only)**

9      90.    Plaintiffs repeat and reallege the allegations contained in each of the paragraphs

10  of this complaint as if fully set forth herein.

11      91.    Defendant has received, and continues to receive, money it collected from

12  Plaintiffs and Penalty Class members by charging its ECF after they canceled

13  Defendant's service.

14      92.    Defendant's non-payment of debt owed to Plaintiffs and members of the

15  Penalty Class supports claims in assumpsit for money had and received.

## COUNT IV
### In the Alternative, Unjust Enrichment
**(on behalf of each Plaintiff and Penalty Class members only)**

19      93.    Plaintiffs repeat and reallege the allegations contained in each of the paragraphs

20  of this complaint as if fully set forth herein. Plaintiffs plead this count in the alternative

21  should Plaintiffs' other Counts fail or be dismissed.

22      94.    Defendant has been enriched by their unfair and fraudulent acts and omissions

23  alleged herein in the State of California where Defendant resides.

24      95.    These unfair and fraudulent acts and omissions allowed Defendant to

25  unlawfully receive monies that would not have been obtained but for Defendant's acts

26  and omissions.

27      96.    Plaintiffs and the other Class members subscribed to DirecTV satellite

28  television service. Plaintiffs and the other Class members purchased the service without

Defendant disclosing or adequately disclosing that Plaintiff and Class members would

incur an unfair and unreasonable ECF to cancel service. Defendant is thus enriched by the profits gained by the enforcement of its illegal ECF.

97. Plaintiffs and each Penalty Class member spent money to cancel their DirecTV service.

98. Defendant lacks any legal justification for having engaged in a course of fraudulent acts and omissions as alleged herein at Plaintiffs' and the Penalty Class' expense.

99. No other remedy at law can adequately compensate Plaintiffs and the Class for the damages occasioned by Defendant's conscious choice to engage in a course of fraudulent acts and omissions.

## COUNT VI
### Declaratory Relief Under 28 U.S.C. §§ 2201 *et seq.*
### (on behalf of Plaintiff individually and all Class members)

100. Plaintiffs repeat and reallege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

101. An actual controversy has arisen and now exists between Plaintiffs, on the one hand, and Defendant on the other, concerning their respective rights and duties in that Plaintiffs contend, and DirecTV denies, that:

    a. the ECF is a penalty and void under Cal. Civ. Code § 1671(d);

    b. DirecTV's failure to disclose or failure to adequately disclose the Customer Agreement and/or Lease Addendum constitutes a breach of the Voluntary Assurance;

    c. the purported contracts between DirecTV and Class members are invalid and unenforceable as those purported contracts cannot be performed within one year and are not evidenced by a signed writing, pursuant to Cal. Civ. Code § 1624;

CLASS ACTION COMPLAINT

d. DirecTV is not entitled to enforce the terms of the Customer Agreement and/or the Lease Addendum including the commitment period, the ECF, and/or the binding arbitration clause; and

e. DirecTV's attempts to impose its ECF on Plaintiffs and Class members constitutes unlawful, unfair, and deceptive business practices.

## COUNT VII
### Violation of the Consumer Leasing Act, 15 U.S.C. §§ 1667-1667e
### (on behalf of Plaintiff individually and all Class members)

102. Plaintiffs repeat and reallege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

103. The receiver lease, as represented in the Equipment Lease Addendum, is a "consumer lease" as defined in 15 U.S.C. § 1667(1).

104. Plaintiffs and Class members are "lessees" as defined in 15 U.S.C. § 1667(2).

105. DirecTV is a "lessor" as defined in 15 U.S.C. § 1667(3).

106. DirecTV's satellite television receivers are "personal property" as defined in 15 U.S.C. § 1667(4).

107. The receiver leases are not incidental to DirecTV programming service, because:

a. the leases are specified in the Equipment Lease Addendum, a document that is independent of and separate from the base Customer Agreement;

b. the leases independently trigger additional service commitments beyond those initially agreed to by subscribers, if any;

c. pursuant to the lease, lessees are subject to an additional fee of $150 for each receiver they fail to activate; and

d. pursuant to the lease, lessees are subject to an additional fee ranging between $55 and $470 for each receiver that is not returned to DirecTV when the subscriber cancels service.

108. DirecTV violated 15 U.S.C. § 1667a(9) by failing to disclose to Plaintiffs and Class members, prior to the consummation of their leases, a dated written statement that

24

identified accurately and in a clear and conspicuous manner the amount or method of determining the early cancellation fee.

109. DirecTV violated 15 U.S.C. § 1667b(b), because the early cancellation fee identified in its Equipment Lease Addendum is not reasonable in light of the anticipated or actual harm caused by the delinquency, default, or early cancellation, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy.

110. DirecTV's practices, as described in the preceding paragraphs, do not constitute good faith compliance with the Consumer Leasing Act, 15 U.S.C. § 1667, *et seq.*, or any official federal regulations, agency interpretations, or agency approvals issued pursuant to the Act.

111. DirecTV's practices, as described in the preceding paragraphs, do not constitute unintentional violations or bona fide errors, as described in 15 U.S.C. § 1640(c).

112. Pursuant to 15 U.S.C. § 1640(a)(1), Plaintiffs and the Class seek statutory damages as well as compensatory damages in the amount of all actual damages they sustained due to DirecTV's violations of the Act, including but not limited to the amount of the early cancellation fees assessed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and the proposed Classes as follows:

A. For an order certifying the proposed Classes herein under Federal Rule of Civil Procedure 23(a) and (b)(3) and appointing Plaintiffs, Interim Lead Class Counsel, and Interim Class Counsel to represent said Classes under Federal Rule of Civil Procedure 23(g);

B. A declaration that DirecTV is financially responsible for notifying Class members of the pendency of this suit;

C. For an order pursuant to Cal. Bus. & Prof. Code §§ 17200 *et seq.* and Cal. Civ. Code §§ 1750 *et seq.* requiring DirecTV to: (1) end the practice of enrolling customers in

commitment periods and imposing ECFs without adequate disclosures; (2) end its
practice of imposing ECFs that are unlawful; (3) end its collection efforts to obtain
unpaid ECFs; and (3) reverse all negative credit reports made to credit reporting agencies
for failure to pay ECFs;

D. For an order pursuant to Cal. Bus. & Prof. Code §§ 17200 *et seq.* and the claim for
unjust enrichment awarding restitution to Class members who have paid ECFs;

E. Monetary damages, including, but not limited to any compensatory, incidental, or
consequential damages in an amount to be determined at trial, together with prejudgment
interest at the maximum rate allowable by law;

F. Statutory damages in the maximum amount provided by law;

G. Punitive damages in accordance with proof and in an amount consistent with
applicable precedent;

H. For an order awarding Plaintiffs and Class members the reasonable costs and
expenses of suit, including their attorneys' fees; and

I. For any further relief that the Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury for all claims so triable.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

CLASS ACTION COMPLAINT

DATED: January 16, 2009

Respectfully submitted,

**HULETT HARPER STEWART LLP**

By: _____
Blake Muir Harper (CA Bar No. 115756)

Sarah P. Weber (CA Bar No. 239979)
550 West C Street, Suite 1600
San Diego, CA 92101
Telephone: (619) 338-1133
Facsimile: (619) 338-1139

*Interim Lead Class Counsel for Plaintiffs*

Douglas G. Thompson (pro hac forthcoming)
Tracy D. Rezvani (pro hac forthcoming)
**FINKELSTEIN THOMPSON LLP**
1050 30th Street, N.W.
Washington, D.C. 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090

Rosemary M. Rivas (CA Bar No. 209147)
Daniel T. LeBel (CA Bar No. 246169)
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Jonathan D. Selbin (CA Bar No. 170222)
**LIEFF, CABRASER, HEIMANN
& BERNSTEIN, LLP**
780 Third Avenue, 48th Floor
New York, NY 10017-2024
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

CLASS ACTION COMPLAINT

Kristen E. Law (CA Bar No. 222249)
Nimish R. Desai (CA Bar No. 244953)
**LIEFF, CABRASER, HEIMANN**
  **& BERNSTEIN, LLP**
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008


Paul M. Weiss (pro hac forthcoming)
George K. Lang (pro hac forthcoming)
Jamie E. Weiss (pro hac forthcoming)
Jeffrey A. Leon (pro hac forthcoming)
Michael J. Lotus (pro hac forthcoming)
**FREED & WEISS LLC**
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
Telephone: (312) 220-0000

*Interim Class Counsel for Plaintiffs*


Brian S. Kabateck (CA Bar No. 152054)
~~Richard L. Kellner (CA Bar No. 171416)~~
Alfredo Torrejos (CA Bar No. 222458)
**KABATECK BROWN KELLNER LLP**
644 So. Figueroa Street
Los Angeles, California 90017
Telephone: (213) 217-5000
Fax: (213) 217-5010


Jonathan Shub (CA Bar No. 237708)
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, Pennsylvania 19102
Telephone: (215) 564-2300

CLASS ACTION COMPLAINT

Richard J. Burke (pro hac forthcoming)
**RICHARD J. BURKE LLC**
1010 Market Street, Suite 650
St. Louis, Missouri 63101
Telephone: (314) 880-7000

James E. Cecchi (pro hac forthcoming)
**CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN**
5 Becker Farm Rd.
Roseland, New Jersey 07068
Telephone: (973) 994-1700

Eric Stoppenhagen (pro hac forthcoming)
**LAW OFFICE OF
 ERIC STOPPENHAGEN**
285 Avenue C, Suite #MB
New York, New York 10009

Anthony L. Vitullo (pro hac forthcoming)
**FEE, SMITH, SHARP & VITULLO, LLP**
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 75240

*Plaintiffs' Counsel*

Exhibit A

IN THE MATTER OF: §
§
DIRECTV, INC. §
§
*Respondent* §

## ASSURANCE OF VOLUNTARY COMPLIANCE / ASSURANCE OF DISCONTINUANCE

This Assurance of Voluntary Compliance / Assurance of Discontinuance ("Assurance" or "AVC") is entered into between the States of Delaware, Florida, Georgia, Idaho, Illinois, Kansas, Maryland, Massachusetts, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oregon, Pennsylvania, Tennessee, Texas, Vermont, and West Virginia ("States" or "Attorneys General") by their respective Attorneys General, and DIRECTV, Inc. ("DIRECTV").

1.     DIRECTV, Inc., is a corporation organized under the laws of the State of California, with its principal place of business at 2230 East Imperial Highway, El Segundo, California, 90245.

2.     DIRECTV is in the business of providing certain audio and video programming services to its subscribers via direct broadcast satellites. Subscribers need certain hardware and equipment to receive DIRECTV's signals. DIRECTV hardware and receiving equipment is manufactured by separate companies, and is sold and installed both directly by DIRECTV and by Retailers.

### DEFINITIONS

3.     The following definitions are to be used for the purposes of this agreement.

4.     A "material fact," "material condition," "material term," or any similar phrase or combination of words or phrases is any fact that if known, would have been important to a consumer making a purchasing decision.

5.     A statement is "clear and conspicuous" if: (a) it is disclosed in such size, color, contrast, location, duration, or audibility that it is readily noticeable, readable, and

understandable; (b) it does not contradict or is not inconsistent with any other information with which it is presented; and (c) it is presented in close proximity to any information it materially modifies, in a manner readily noticeable, readable, and understandable, and is not obscured in any manner. In addition, in the case of an audio or oral disclosure, it must be delivered in a volume and cadence sufficient for a consumer to hear and comprehend it; in the case of a visual disclosure, it must be of a size and shade, and shall appear on the screen for a duration, sufficient for a consumer to read and comprehend it; and in the case of a print advertisement or promotional material, including without limitation point of sale display or brochure materials directed to consumers, it must be of a type size and location sufficiently noticeable for a consumer to read and comprehend and in a print that contrasts with the background against which it appears.

6.     "Eligible Complaints" are written requests or demands from DIRECTV customers residing in the States for refunds or other relief received by either their Attorneys General or DIRECTV from January 1, 2001, through the date within one hundred fifty (150) days from the Effective Date of this Assurance, and based on the matters addressed by this Assurance.

7.     "Retailer" means one or more persons, a corporation, a partnership, or other entity, as the case may be, who enters into an agreement with DIRECTV which permits the person or entity to advertise or promote DIRECTV service in connection with the person's or entity's sale of DIRECTV equipment.

8.     "Local Channel" means a publicly available free television channel that is currently licensed by the Federal Communications Commission to broadcast in a particular Designated Market Area except that such term excludes those channels that are cable only that must be offered by cable companies under the terms of their franchise agreements.

9.     The "Effective Date" of this Assurance shall be the 12th day of December, 2005.

## STATES' POSITION

### Background

10.     Since 1994, DIRECTV has provided direct broadcast satellite programming services to residential and business customers.

11.     DIRECTV creates and directly places advertising for its direct broadcast satellite services in different media in many states.  Certain of its advertising materials promote different packages or programming services or receiving equipment.

12.     DIRECTV also creates approved electronic "advertising slicks" and distributes them to Retailers who are permitted, by contract, to promote DIRECTV service to market DIRECTV equipment to their own retail customers.   It has been the practice of DIRECTV:

     a.     To require Retailers to insert their own business names and contact information into the ads, in order to provide notice to consumers regarding the identity of the entity who placed the advertising; and

     b.     To allow Retailers to format the advertising and determine the size and placement of such advertising.

13.     DIRECTV also allows Retailers to create and generate their own advertising materials which promote DIRECTV service and DIRECTV equipment, subject to specific guidelines provided by DIRECTV.

14.     The Attorneys General have investigated DIRECTV's consumer advertising materials from August 2000 to the date of the entry of this Assurance, including, but not limited to, advertising by print, television, radio, Internet websites, brochures and other direct mail.  The Attorneys General have also reviewed and investigated other related practices such as sales practices, including, but not limited to, sales of sports programming, billing practices, the use of programming commitments, installation issues, and practices in general related to the provision of programming and services to consumers.

15.   DIRECTV has advertised offers for new subscribers providing free or discounted DIRECTV equipment if the new subscriber committed to subscribe to a specific level of programming for one year.   Most of these promotions also included free system installation.  DIRECTV has also advertised free or discounted programming offers, such as "4 Free Months of DIRECTV's Best Programming Packages," and Free Premium Channels with purchase of Sports Packages.  Furthermore, DIRECTV has promoted the availability of Local Channels in particular advertisements.

16.   Included in the advertisements were material disclosures in smaller print.  These disclosures specified restrictions and additional charges, including, but not limited to, receiver activation requirements, liquidated damages for breach of programming commitments, programming fees for additional receivers, the unavailability in some areas of Local Channels, and limitations on the availability of games included in sports packages.

**Allegations**

17.   The Attorneys General allege that certain material disclosures made in advertisements were not clear and conspicuous and violate the consumer protection and trade practice statutes of the States, specifically in that DIRECTV failed to clearly and conspicuously disclose all material terms and conditions associated with an offer or sale of equipment or services, such as:

a.   That there may be additional charges associated with offers for equipment involving the use of more than one receiver;

b.   The material limitations or modifications in equipment offers, including minimum commitment terms for DIRECTV service;

c.   That all Local Channels may not be available in all areas in advertisements promoting the availability of Local Channels; and

d.   Blackout restrictions associated in advertisements promoting sports packages.

## DIRECTV'S POSITION

18.　DIRECTV denies each allegation in paragraph 17. Moreover, DIRECTV believes that its advertising materials have always been accurate and complete and have always disclosed clearly and conspicuously all material terms and conditions. As a matter of corporate policy, DIRECTV maintains a customer driven focus, and believes it always has adhered to, and continues to adhere to, business practices that follow the highest ethical standards.

19.　DIRECTV has cooperated with the States during the inquiry of the Attorneys General. DIRECTV denies it has engaged in unlawful or otherwise inappropriate business practices. DIRECTV agrees to this Assurance, so that this matter may be resolved amicably, without further cost or inconvenience to the States, their citizens, or DIRECTV.

## NON-ADMISSION

20.　This Assurance of Voluntary Compliance shall not be considered an admission of any violation of any wrongdoing or a violation of any law, statute or rule by DIRECTV. It is also agreed that this Assurance shall not be used in any proceeding as an admission by DIRECTV that it has violated any law, rule, or regulation.

## TERMS OF ASSURANCE

### General Disclosure Of Material Terms In Advertising

21.　DIRECTV shall, in all advertising it creates, clearly and conspicuously disclose to consumers all material terms and conditions associated with the specific offer or sale of DIRECTV equipment or DIRECTV services as advertised.

22.　DIRECTV shall not misrepresent, expressly or by implication, or through the use of "clarifying" small print, any term or condition of an offer for any of its products or services. In advertising material stating prices for DIRECTV service, DIRECTV equipment, or installation, DIRECTV shall clearly and conspicuously disclose all material terms and conditions associated with that offer.

the requirements of this Assurance. Appropriate action will include retraining, and other disciplinary action, up to and including termination. DIRECTV shall cooperate with the States' requests for information regarding such actions, including, but not limited to, providing the States with a list of all Retailers against which it took such actions.

25.     DIRECTV shall not be considered to be out of compliance with these monitoring procedures in the event any Retailer misrepresents its activities to DIRECTV or conceals the true nature of its activities, so long as DIRECTV takes reasonable steps to ascertain the truth and terminates its contracts with Retailers engaged in misrepresentations to DIRECTV.

## Provision Related to Programming Charges for Additional Receivers

26.     When advertising or promoting an offer for DIRECTV equipment involving the use of more than one receiver so that DIRECTV service can be viewed independently on more than one television within the consumer's home, DIRECTV shall clearly and conspicuously disclose any and all additional monthly charges for each and every additional receiver.

## Provisions Related to Equipment Offers

27.     When advertising or promoting an offer for DIRECTV equipment in conjunction with the sale of DIRECTV service or other goods, DIRECTV shall clearly and conspicuously disclose any material limitations or modifications including, as applicable, any commitment to a minimum term of DIRECTV service required to accept the offer. The consequences of terminating the commitment early such as the maximum amount of money DIRECTV may charge for early termination of the minimum term must also be disclosed clearly and conspicuously.

28.     In responding to consumer requests to obtain free or discounted DIRECTV equipment, DIRECTV shall clearly and conspicuously disclose to the consumer any material obligation on the part of the consumer to activate the DIRECTV equipment or

maintain certain levels of DIRECTV service.

**Provision Related to Local Channels**

29.    When advertising or offering Local Channels, if Local Channels are not available in all areas where the advertisement will reasonably appear, DIRECTV shall clearly and conspicuously disclose that Local Channels or some Local Channels are not available in all areas. In a national advertisement, a disclosure such as "Local Channels not available in all areas," or words of similar meaning would satisfy the provisions of this paragraph, if applicable. Similarly, in a local advertisement, a disclosure such as "some Local Channels may not be available," or words of similar meaning, along with a clear and conspicuous disclosure of which Local Channels are or are not available, would also satisfy the provisions of this paragraph, if applicable.

**Sports Blackouts**

30.    When advertising or offering DIRECTV premium sports packages, DIRECTV shall clearly and conspicuously disclose that blackouts may apply or that not all games are available.

**Disclosure of Material Terms During a Sales Transaction**

31.    During a sale of equipment by DIRECTV, it shall clearly and conspicuously disclose to consumers all material terms and conditions of the DIRECTV equipment being purchased or to be purchased. As part of this process, customer service representatives shall confirm with the customer the DIRECTV equipment selected, its price, and other material facts, including any applicable service activation requirements or time frames.

32.    In connection with the offer and sale of DIRECTV equipment by Retailers, DIRECTV shall require such Retailers to clearly and conspicuously disclose in writing, or where written disclosures are impracticable, orally, prior to the sale of the DIRECTV equipment, any material terms and conditions applicable to the purchase and activation

## Monitoring of Retailer Advertising

23.    When DIRECTV sends advertising copy to its Retailers, DIRECTV shall clearly and conspicuously notify its Retailers that such copy must be used in a manner consistent with DIRECTV's policies and procedures, which will be consistent with the terms of this AVC. DIRECTV shall monitor Retailers' advertisements of DIRECTV equipment or DIRECTV services in accordance with the provisions of paragraph 24 below. If and when DIRECTV learns that any Retailer is acting in violation of the requirements of this AVC, DIRECTV shall immediately take action to enforce its contractual rights with such Retailer as described below.

24.    DIRECTV asserts that Retailers can, of their own accord and without knowledge of and approval by DIRECTV, undertake activities alleged to be contrary to the terms of this AVC. While DIRECTV asserts that it does not have the ability to control these separate and independent companies, it does have the ability to monitor and enforce its contractual rights, up to and including termination of any Retailer found to be in breach of its contract with DIRECTV. DIRECTV hereby agrees to the following monitoring and enforcement procedures related to the separate and independent marketing activities of Retailers:

    a.    Within thirty (30) days of the Effective Date of this Assurance, DIRECTV shall notify its current Retailers in writing of the advertising requirements set forth in this Assurance;

    b.    DIRECTV shall also notify its current Retailers, as well as all future Retailers, in writing, that Retailers must comply with the requirements set forth in this Assurance and all of DIRECTV's procedures concerning advertising; and

    c.    DIRECTV shall investigate complaints made to it by consumers or regulatory agencies pertaining to Retailers' advertising, and shall take appropriate action against any Retailer it has found to be in violation of

that may be imposed by DIRECTV, such as any required activation agreement or programming commitment, including the terms thereof, and the consumer's right to terminate their DIRECTV service, if any, and all material terms and conditions of any applicable equipment return policies or cancellation policies. Further, in those instances where only oral disclosures were provided above, DIRECTV shall require Retailers to clearly and conspicuously disclose such terms and conditions in writing to a consumer prior to beginning the installation of the purchased equipment.

33. Within a reasonable time, not to exceed seventy-two (72) hours, of any equipment sales transaction DIRECTV completes with a consumer, DIRECTV shall send to the consumer a letter or other written communication clearly and conspicuously confirming the material terms of the equipment purchase, including any required activation agreement or programming commitment, and the consumer's right to terminate their DIRECTV service, if any, and all material terms and conditions of any applicable equipment return policies or cancellation policies. If within fifteen (15) days of mailing this letter or written communication, a consumer complains to DIRECTV that the terms in the communication are different from those given at the time of sale, and DIRECTV is unable to resolve that consumer's complaint regarding those terms, DIRECTV shall clearly and conspicuously disclose and provide that consumer with the right to cancel his or her agreement with DIRECTV and, upon the return of DIRECTV's equipment at no cost to the consumer, to have no future obligation to DIRECTV.

**Disclosure of Material Terms During Initial Activation**

34. During the initial activation of DIRECTV service, DIRECTV shall clearly and conspicuously disclose to consumers all material terms and conditions of the DIRECTV service being purchased or to be purchased. As part of this process, customer service representatives shall confirm with the consumer the DIRECTV service selected, its price, and other material facts. As part of this confirmation, DIRECTV will remind consumers to read their first bill, which shall clearly and conspicuously disclose all of the material

terms and conditions associated with their DIRECTV service.

35.    DIRECTV will utilize a standard procedure to ensure all material terms are disclosed to consumers when they choose to activate their DIRECTV service, and that such activation is done in compliance with the law and with the terms of this Assurance. Upon request by any of the States, DIRECTV shall furnish a copy of such training program and materials to the requesting State.

**Retailer Installation**

36.    DIRECTV shall, no later than thirty (30) days after the Effective Date of this Assurance, implement a policy and adopt written procedures to formally respond to and resolve consumer installation complaints relating to installations completed by Retailers and any independent installers retained by such Retailers. Consumers who have an installation or signal reception issue within sixty (60) days of installation and who complain to DIRECTV will initially be requested to contact their Retailers in an attempt to resolve the matter to the consumer's satisfaction. However, in the event a consumer indicates that such an effort would be non-productive, or if the consumer again contacts DIRECTV concerning the same installation or signal reception issue, then DIRECTV shall schedule and complete a service appointment, at no cost to the consumer, in an attempt to resolve the issue. If DIRECTV is unable to correct the installation or signal reception issue, DIRECTV shall clearly and conspicuously disclose and provide that consumer with the right to cancel his or her agreement with DIRECTV and, upon the return of DIRECTV's equipment at no cost to the consumer, to have no future obligation to DIRECTV.

## ELIGIBLE COMPLAINT RESOLUTION

**Complaints**

37.    The Attorneys General may provide DIRECTV, to the extent not already provided, with copies of Eligible Complaints.

38.    Within ninety (90) days of receiving or identifying Eligible Complaints, or notice

from a state that such complaints have previously been provided, DIRECTV shall, to the extent such complaints have not already been resolved, make restitution or other appropriate relief to each consumer who made the Eligible Complaint. DIRECTV shall also request that its collection agencies correct any negative entries made on the credit profiles of such consumers.

39.   In satisfying the requirements above, DIRECTV shall pay restitution to the consumers who made unresolved Eligible Complaints on or before the Effective Date of this Assurance in the following manner:

   a.   For consumers who paid DIRECTV a fee for not timely activating their DIRECTV equipment and complained regarding that fee, DIRECTV shall pay restitution to the consumer equal to the full amount of any fee paid by the consumer to DIRECTV;

   b.   For consumers who paid DIRECTV for Local Channels but did not receive all Local Channels, and complained regarding such failure, DIRECTV shall pay restitution to the consumer equal to the full amount paid for the Local Channels;

   c.   For consumers who participated in a "free programming" offer, and were assessed any liquidated damages, or fees for terminating their DIRECTV services before satisfying any minimum programming requirement, and complained regarding such assessments, DIRECTV shall pay restitution to the consumer equal to the amount paid by the consumer as liquidated damages, or fees; and

   d.   For all complaints addressed above, DIRECTV shall deliver a check by first class mail in the required amount to each consumer identified using a letter and envelope agreed to by the parties. No other materials may be included with this mailing.

40.   For any consumer who made an Eligible Complaint not addressed by the above

paragraphs, DIRECTV shall make a restitution offer in the form of a monetary payment, an account credit, or other appropriate relief as determined by the scope of the complaint.

41.　For any consumer rejecting the restitution offer made under paragraph 40 above, DIRECTV shall make restitution, if any, in a reasonable amount and form as determined by the Administrator pursuant to paragraph 43 herein.

42.　DIRECTV shall clearly and conspicuously disclose to the consumer, by mailing to the consumer at the time of the restitution offer in paragraph 40 above, a claims notice informing the consumer of DIRECTV's restitution offer and explaining that if the consumer elects to reject the restitution offer and have his or her claim against DIRECTV decided by the Administrator, he or she must return the claim form postmarked within thirty (30) days of its receipt. The claims notice shall also inform the consumer that DIRECTV may treat a consumer's failure to respond to the restitution offer as acceptance of that offer. The claims notice shall also describe the procedure described in this Assurance for pursuing a claim with the Administrator. Before mailing any claims notice to a consumer, DIRECTV shall run the address it has for each consumer through the National Change of Address System and update any addresses it has for the consumer. If a claims notice is returned as undeliverable to DIRECTV, DIRECTV shall attempt to locate the consumer by (i) mailing the claims notice to any forwarding address provided by the United States Postal Service for the consumer; (ii) mailing the claims notice to any additional addresses for the consumer contained in DIRECTV's business records; and/or (iii) contacting the consumer at any phone number, e-mail address, or facsimile number that is contained in DIRECTV's business records regarding the consumer.

**Administrator**

43.     DIRECTV shall choose and retain a neutral third-party (the "Administrator") to manage and administer a dispute resolution program. For the purpose of protecting the proprietary and customer information to be provided to it by DIRECTV, the Administrator shall enter into a contractual relationship with DIRECTV. The selection of the Administrator and any successor administrator shall be subject to the approval of the States, and such approval cannot be unreasonably withheld.

44.     Within two hundred and sixty (260) days of entry of this Assurance, DIRECTV shall provide to each of the States an alphabetical list of each and every consumer who resides in that state that DIRECTV has identified, and whose complaint has not otherwise previously been resolved, and to whom DIRECTV made restitution pursuant to paragraphs 37 through 43 herein by stating the amount of the restitution or other appropriate relief sent to each consumer and the consumer's mailing address. Additionally, DIRECTV shall provide to each of the States an alphabetical list of each and every consumer who resides in that State that DIRECTV has identified as ineligible for restitution pursuant to paragraphs 37 through 43 herein by stating the reason for ineligibility and the consumer's mailing address, including those consumers whom DIRECTV could not locate to provide a claims notice pursuant to paragraph 42.

45.     All restitution and costs associated with and assessed by the Administrator shall be paid by DIRECTV.

46.     The following provisions shall apply regarding the Administrator:

      a.     The Administrator shall be responsible for, among other things, the collection of all complaints and supporting documents necessary for determination of restitution to consumers entitled by this Assurance to the dispute resolution program. The Administrator shall request from DIRECTV and the consumer all information he/she deems necessary to make a full and fair restitution decision. The Administrator shall conduct

a paper review of the complaints and supporting documentation. The strict rules of evidence shall not apply to the Administrator's review. *Ex parte* communication with the Administrator will not be allowed pertaining to any specific complaint or as to the criteria used in evaluating each complaint;

b.  The Administrator is an Officer of the Court and is responsible for the coordination of the dispute resolution program with the full and complete cooperation of all parties to this Assurance. The Administrator's restitution determination shall be binding only on the Attorneys General and DIRECTV;

c.  At the conclusion of the dispute resolution program, the Administrator shall provide a report to the Attorneys General and DIRECTV, in a format and medium to be agreed upon by the parties, setting forth the number of complaints received from DIRECTV, each consumer's name and mailing address, the resolution, restitution amount, restitution form, and such other information as the parties may specify; and

d.  The Administrator shall resolve all complaints subject to the dispute resolution program by the end of twelve (12) months from the date of this Assurance.

47.  A representative of the Administrator shall meet and confer with representatives of the States and DIRECTV if necessary in order to monitor and audit the dispute resolution program properly. Problems that arise concerning the implementation of the dispute resolution program may be resolved by agreement between the States, DIRECTV and the Administrator.

## Modification of Certain Operational Provisions

48.    If DIRECTV has developed alternative procedures for complying with the disclosure and/or notice requirements of paragraphs 31, 32, 33, and 34 of this Assurance, and the alternative procedures are designed to be at least as effective in the aggregate in providing clear and conspicuous disclosures required herein, then DIRECTV may substitute those alternative procedures after providing at least thirty (30) days advance notice to the States explaining the alternative procedures.

## Costs and Fees

49.    Within thirty (30) calendar days of the Effective Date of this Assurance, DIRECTV shall pay FIVE MILLION U.S. DOLLARS ($5,000,000.00), to be divided and paid by DIRECTV directly to each Signatory Attorney General in an amount to be designated by and in the sole discretion of the States, as part of the consideration for the termination of their respective investigations under the State consumer protection laws, as cited in the footnote to paragraph 17 above, regarding the subject matter of this Assurance. Said payment shall be used by the States as and for attorneys' fees and other costs of investigation and litigation, or for future public protection purposes, or to be placed in, or applied to, the consumer protection enforcement fund, consumer education, litigation or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto, or for other uses permitted by state law, at the sole discretion of each Signatory Attorney General.  In no event shall any portion of this payment be characterized as the payment of a fine, civil penalty or forfeiture by DIRECTV to any state.

## GENERAL PROVISIONS

50.    To the extent that any changes in DIRECTV's business practices or advertising are made to conform to the terms of this Assurance, such changes shall not constitute any form of evidence or admission by DIRECTV, explicit or implicit, of wrongdoing or failure to comply with any federal or state statute or regulation or the common law.

51.    Nothing contained in this Assurance of Voluntary Compliance shall be construed to create, waive, or limit any private right of action.

52.    The signatory Attorneys General shall not institute any proceeding or take any action under their specific consumer protection statutes against DIRECTV for any conduct prior to the Effective Date of this Assurance that is specifically based on the allegations contained in paragraph 17 subparagraphs a. through d. of this Assurance, or any other matters addressed herein.

53.    This Assurance shall be governed by the laws of each of the States and is subject to court approval in certain States.

54.    DIRECTV represents that it has fully read and understood this Assurance, that it understands the legal consequences involved in signing this Assurance (including that in certain states, a violation of this Assurance is punishable by contempt, and in others, a violation of this Assurance is prima facie evidence of a violation that State's consumer protection statute).

55.    DIRECTV represents and warrants that it is represented by legal counsel, that it is fully advised of its legal rights in this matter, and that the person signing below is fully authorized to act on its behalf.

56.    This Assurance shall bind DIRECTV, and its successors, employees, officers and directors.

57.    DIRECTV shall provide a copy of this Assurance or an accurate summary of the terms of this Assurance to its senior executive officers who have managerial responsibility for the matters subject to this Assurance.

58.    DIRECTV shall comply with the terms of this Assurance within ninety (90) days following the Effective Date, or within the time frames otherwise set by this Assurance. However, the parties may agree to modify any deadlines or time frames established by this AVC.

59.    Except as otherwise provided herein, this Assurance shall be modified as to any

State or DIRECTV only by a written instrument signed by or on behalf of the Attorney General of that State and signed by or on behalf of DIRECTV and, where the Assurance is filed with the Court, entered by the Court.

60.     Neither DIRECTV nor anyone acting on its behalf shall state or imply or cause to be stated or implied that the States, Attorneys General, or any governmental unit of the States has approved, sanctioned, or authorized any practice, act, advertising material, or conduct of DIRECTV.

61.     Nothing in this Assurance shall be construed as a waiver of or limitation on DIRECTV's right to defend itself from or to make agreements in any action, state, or federal claim, suit or proceeding relating to the existence, subject matter or terms of this Assurance.

62.     If any clause, provision or section of this Assurance shall, for any reason, be held illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall not affect any other clause, provision or section of this Assurance, and this Assurance shall be construed and enforced as if such illegal, invalid or unenforceable clause, section or provision had not been contained herein.

63.     Any notices, complaints, or other documents required by this Assurance to be sent by the States to DIRECTV shall be sent to the following individuals at the following addresses:

> General Counsel/Law Department
> 2230 East Imperial Hwy
> El Segundo, CA 90245,

> Clayton S. Friedman, Esq.
> Buchalter, Nemer, Fields & Younger
> 18400 Von Karman Avenue, Suite 800
> Irvine, CA 92612

Any notices, complaints, or other documents required by this Assurance to be sent

by DIRECTV to the States shall be sent to the names and addresses provided to DIRECTV by the States.

64.   As consideration for the relief agreed to herein, if any of the Attorneys General determine that DIRECTV has failed to comply with any of the terms of this Assurance, and if in that Attorney General's sole discretion the failure to comply does not threaten the health or safety of the citizens of that State, that Attorney General will notify DIRECTV in writing of such failure to comply and DIRECTV shall then have ten (10) business days from receipt of such written notice to provide a good faith written response to the Attorney General's determination.   The response shall include an affidavit containing, at a minimum, either:

   a.   A statement explaining why DIRECTV believes it is in full compliance with the Assurance; or

   b.   A detailed explanation of how the alleged violation(s) occurred; and

      i.   A statement that the alleged breach has been cured and a description of the action taken by DIRECTV to cure the breach; or

      ii.   A statement that the alleged breach cannot be reasonably cured within ten (10) days from receipt of the notice, but (1) DIRECTV has begun to take corrective action to cure the alleged breach; (2) DIRECTV is pursuing such corrective action with reasonable and due diligence; and (3) DIRECTV has provided the Attorney General with a detailed and reasonable time table for curing the alleged breach.

65.   Nothing herein shall prevent the Attorney General from agreeing to provide DIRECTV with additional time beyond the ten (10) business day period to respond to the notice.

66.   Nothing in this Assurance shall be construed to limit the authority of the Attorneys General to protect the interests of their States or the people of their States.

67.     Nothing herein shall prevent or restrict the use of this Assurance by any of the States in any action against DIRECTV for contempt or failure to comply with any provision of this Assurance after the Effective Date.

68.     Nothing herein shall be construed to limit the authority of the Attorneys General to initiate a proceeding for any contempt or other sanctions for failure to comply, or to compromise the authority of the court to punish as contempt any violation of this Assurance.

69.     DIRECTV will not participate directly or indirectly in any activity to form a separate entity or corporation which engages in acts prohibited in this Assurance or for any other purpose which would otherwise circumvent any part of this Assurance or the spirit or purposes of this Assurance.

70.     Time shall be of the essence with respect to each provision of this Assurance that requires action to be taken by either party within a stated time period or upon a specified date.

71.     Except for any other formal agreements existing between any of the States and DIRECTV, this Assurance sets forth the entire agreement between the parties, and there are no representations, agreements, arrangements, or understandings, oral or written, between the parties relating to the subject matter of this Assurance which are not fully expressed herein or attached hereto.

72.     Footnotes and attachments to this Assurance are and shall be considered a part of the Assurance.

73.     The headings of various sections of the Assurance are for convenience only and shall not affect the meaning or content thereof.

74.     This Assurance shall not be construed against the "drafter" because both DIRECTV and the Attorneys General participated in the drafting of this Assurance.

AGREED THIS _____ DAY OF _____, 2005.

For DIRECTV, Inc.

BY:

---------------------,

-------------------------

Counsel:

_____

**ATTORNEY FOR DIRECTV, INC.**

# Exhibit B

# HULETT HARPER STEWART
### LLP

*550 West C Street, Suite 1600*
*San Diego, California 92101*
*office 619.338.1133*
*fax 619.338.1139*
*www.hulettharperstewart.com*

July 7, 2008

Chase Carey
President and CEO
The DirecTV Group, Inc.
2230 East Imperial Highway
El Segundo, CA 90245

**VIA REGISTERED MAIL RETURN RECEIPT**

Re: *Kahaly, et al. v. DirecTV, Inc.*

Dear Mr. Carey:

We represent Annette Kahaly and Kathleen O'Brien. These individuals intend to file an action against your company, DirecTV Inc., seeking damages for violations of, *inter alia*, the California Consumer Legal Remedies Act ("CLRA") unless the practices described in this letter are not stopped and fully remedied. This action relates to your company's practice of failing to adequately disclose to consumers who purchase DirecTV or upgrade service by telephone that they are entering into a two-year programming contract that cannot be cancelled without paying an excessive fee, which is often automatically deducted from the consumer's credit or debit card or checking account.

As detailed in the attached complaint, the practices at issue constitute violations of, *inter alia*, California Civil Code sections 1770, *et seq.*, known as the Consumer Legal Remedies Act. Among the provisions of the CLRA violated by the conduct complained of in this letter are California Civil Code sections 1770(a)(5), 1770(a)(7), 1770(a)(9), and 1770(a)(19).

Pursuant to California Civil Code section 1782, we hereby demand on behalf of our clients and all other similarly situated individuals that you immediately correct and remedy the violations of Civil Code sections 1770, *et seq.*, by refunding to them and each affected consumer amounts collected as "early cancellation fees" and ceasing your deceptive practice of failing to disclose the existence of the two year contract and early cancellation fees.

After 30 days from the date of your receipt of this letter, if you have not indicated your intent to fully rectify and remedy these violations on behalf of all affected consumers, we will amend the complaint to seek the additional remedies authorized by California Civil Code section 1782.

In order to satisfy the requirements of California Civil Code section 1782, you must:

(1)  Cease your present practice of failing to disclose the existence of the two-year contract and early cancellation fees;

(2)  Alternatively, cease your requirement that consumers enter into the two-year or 18-month agreement and cease charging consumers the early cancellation fee; and

(3)  Refund all amounts collected as "early cancellation fees" to all affected consumers.

Of course, if you believe that complete remedial measures should be accomplished through additional or different steps, feel free to so advise us.

We look forward to your response.

Sincerely yours,

/S/ Blake M. Harper

BLAKE M. HARPER
BMH/smm

Enclosures

# FREED & WEISS LLC

ATTORNEYS AT LAW

111 WEST WASHINGTON STREET, SUITE 1331
CHICAGO, ILLINOIS 60602
TELEPHONE (312) 220-0000
FACSIMILE (312) 220-7777
WEBSITE www.freedweiss.com

GEORGE K. LANG
DIRECT LINE: (312) 855-2628
E-MAIL: george@freedweiss.com

January 15, 2009

**VIA CERTIFIED MAIL**

DirecTV, Inc.
230 East Imperial Highway
El Segundo, California 90245

> Re: *Lombardi v. DirecTV, Inc.*
> United States District Court, Central District of California

To Whom It May Concern:

On behalf of Plaintiff Joseph Lombardi and all others similarly situated, this letter is to notify DirecTV, Inc. ("DirecTV") that it has violated the California Consumers Legal Remedies Act ("CLRA") by employing or committing methods, acts, or practices declared unlawful by Cal. Civ. Code § 1770. *See* Cal. Civ. Code § 1782(a) and (b). Pursuant to Cal. Civ. Code § 1780(d), Plaintiff Lombardi has initiated an action in the United District Court, Central District of California, for injunctive relief against DirecTV. Within thirty (30) days after the date of this notice, Plaintiff Lombardi will amend his complaint to include a request for damages unless DirecTV makes an appropriate remedy to Plaintiff Lombardi and members of the proposed Class, as defined in Plaintiff Lombardi's Class Action Complaint, Paragraph 15, enclosed with this letter.

The unlawful acts committed by DirecTV, in violation of the CLRA, include charging early cancellation fees based on an invalid liquidated damages clause and failing to inform consumers that requesting a change in service will subject them to a new commitment period.

DirecTV's actions violate Sections 1770(a)(9), (14), and (19) of the CLRA, which prohibits advertising goods or services with intent not to sell them as advertised; representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and inserting an unconscionable provision in the contract. As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff Lombardi and members of the proposed Class are entitled to a full refund of the money they paid for the early termination fees.

Pursuant to Cal. Civ. Code § 1782(b), DirecTV may, within thirty (30) days of the date of this letter, avoid a potential action for damages under the Consumers Legal Remedies Act brought by Plaintiff Lombardi by agreeing to correct, repair and rectify its unlawful acts by: (1) providing all members of the proposed Class as defined in Paragraph 15 of the Complaint with notice of this action and the name of Plaintiff Lombardi's attorneys; (2) providing Plaintiff and the Penalty Class with a full refund of all early cancellation fees paid to DirecTV; (3) reversing all negative credit reports made to credit reporting agencies against consumers based on their failure to pay the early cancellation fees; and (4) terminating its practices of imposing early cancellation fees and automatically enrolling consumers in new commitment periods due to changes in service.

Sincerely,

George K. Lang

Enc.:    Class Action Complaint

*NRD*

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

ATTORNEYS AT LAW

KRISTEN E. LAW
PARTNER

EMBARCADERO CENTER WEST
275 BATTERY STREET, 30TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3339
TELEPHONE: (415) 956-1000
FACSIMILE: (415) 956-1008
mail@lchb.com
www.lchb.com

NEW YORK
NASHVILLE

January 9, 2009

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Chase Carey
President and Chief Executive Officer
The DirecTV Group, Inc.
2230 East Imperial Highway
El Segundo, CA 90245

Larry D. Hunter
Executive Vice President,
General Counsel and Secretary
The DirecTV Group, Inc.
2230 East Imperial Highway
El Segundo, CA 90245

Re:   Notice and Demand Letter Re: DirecTV Hidden Early Termination Fees

Dear Messrs Carey and Hunter:

Together with our co-counsel, Fee, Smith, Sharp & Vitullo, LLP, we represent John Mulea. Pursuant to the California Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.* (specifically, §§ 1782(a)(1) and (2)), Mr. Mulea, on behalf of himself and all other similarly situated consumers nationwide (collectively, the "Class"), through his undersigned counsel, hereby notifies you that The DirecTV Group, Inc. and its subsidiaries, including DirecTV, Inc., DirecTV Merchandising, Inc., DirecTV Enterprises, LLC, DirecTV Holdings LLC, and DirecTV Operations LLC (collectively, "DirecTV"), are alleged to have violated the CLRA by marketing, advertising and selling its satellite television service while concealing material terms of the service from consumers, including long-term contract commitments of up to 2 years, and early termination fees ranging above $500. We hereby demand that within 30 days of your receipt of this letter, DirecTV refund or drop the early termination fees assessed against Mr. Mulea and all other affected consumers in the United States, and cease enforcement of these hidden terms.

Mr. Mulea is a resident of San Jose, CA. In November, 2008, Mr. Mulea decided to discontinue DirecTV service after approximately five years as a customer. In response, DirecTV charged Mr. Mulea a $200 early termination fee. DirecTV claims that Mr. Mulea agreed to an eighteen-month programming commitment when he activated a new receiver in February 2008, which he obtained to replace an original receiver which had malfunctioned. When Mr. Mulea called to report the broken receiver, DirecTV told him they would replace it. The programming commitment and early termination fee were not disclosed to Mr. Mulea at that time or at any other point. In fact, the very first mention of these terms was when Mr. Mulea called DirecTV to cancel his service in November.

Online postings reveal that many other individuals have been wronged by DirecTV's practice of concealing the programming commitment and termination fee. Indeed, DirecTV appears to be in direct violation of the Assurance of Voluntary Compliance/Assurance of Discontinuance it entered in response to an investigation by 22 state attorneys general in 2005.

DirecTV's unfair business practices have caused significant financial consequences for our client and consumers throughout the country. DirecTV's active concealment of these material contract terms, including the early termination fee, is highly deceptive and is violative of the CLRA in the following ways:

1.   DirecTV violated § 1770(a)(14) because it failed to adequately disclose the early termination fee, and because the fee provision is an unlawful liquidated damages provision pursuant to Cal. Civ. Code § 1671.

2.   DirecTV violated § 1770(a)(19) by inserting unconscionable provisions in its Customer Agreement, including clauses that purport to force consumers to settle all disputes only by arbitration, and to waive any right to bring a suit as a "representative member of a class or in a private attorney general capacity."

Pursuant to § 1782 of the CLRA, and based on the foregoing, we hereby demand that within thirty (30) days of receiving this letter, DirecTV agree to refund or drop the early termination fee assessed against Mr. Mulea and others like him, and to cease enforcement of the hidden contract terms.

Please be advised that should DirecTV refuse this demand, Mr. Mulea will seek monetary damages for themselves and the Class, as well as an award of injunctive relief, restitution, punitive damages, attorneys' fees and costs, and any other relief a court deems proper.

As Mr. Mulea is now represented by counsel, I ask that you direct all of your correspondence directly to me. If you have any questions regarding this notice and demand, feel free to contact me at (415) 956-1000.

Very truly yours,

Kristen E. Law

KEL:wp
cc:   Jonathan D. Selbin
      Nimish R. Desai
      Anthony Vitullo

796139.1

KRISTEN E. LAW
PARTNER

## LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

ATTORNEYS AT LAW

EMBARCADERO CENTER WEST
275 BATTERY STREET, 30TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3339
TELEPHONE: (415) 956-1000
FACSIMILE: (415) 956-1008
mail@lchb.com
www.lchb.com

NEW YORK
NASHVILLE

November 6, 2008

## VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Chase Carey
President and Chief Executive Officer
The DirecTV Group, Inc.
2230 East Imperial Highway
El Segundo, CA 90245

Larry D. Hunter
Executive Vice President,
General Counsel and Secretary
The DirecTV Group, Inc.
2230 East Imperial Highway
El Segundo, CA 90245

Re:     Notice and Demand Letter Re: DirecTV Hidden Early Termination Fees

Dear Messrs Carey and Hunter:

Together with our co-counsel, Fee, Smith, Sharp & Vitullo, LLP, we represent Roberta and Edward Pifer. Pursuant to the California Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.* (specifically, §§ 1782(a)(1) and (2)), the Pifers, on behalf of themselves and all other similarly situated consumers nationwide (collectively, the "Class"), through their undersigned counsel, hereby notify you that The DirecTV Group, Inc. and its subsidiaries, including DirecTV, Inc., DirecTV Merchandising, Inc., DirecTV Enterprises, LLC, DirecTV Holdings LLC, and DirecTV Operations LLC (collectively, "DirecTV"), are alleged to have violated the CLRA by marketing, advertising and selling its satellite television service while concealing material terms of the service from consumers, including long-term contract commitments of up to 2 years, and early termination fees ranging above $500. We hereby demand that within 30 days of your receipt of this letter, DirecTV refund the early termination fees assessed against the Pifers and all other affected consumers in the United States, and cease enforcement of these hidden terms.

Roberta and Edward Pifer are residents of Sterling, Virginia. In August, 2008, the Pifers decided to discontinue DirecTV service after almost 10 years as customers. In response, DirecTV charged a $400 early termination fee to Plaintiffs' credit card without their authorization. DirecTV claims the Pifers agreed to a two-year programming commitment when they activated a new receiver in May 2008, which was purchased to replace an original receiver which malfunctioned. The programming commitment and early termination fee were not disclosed to the Pifers when they called DirecTV's toll-free number to order the receiver, or when they later called to activate it. An email to the Pifers confirming their purchase did not mention these terms either. In fact, the very first mention of these terms was when the Pifers called DirecTV to cancel their service in August.

Online postings reveal that many other individuals have been wronged by DirecTV's deceptive practice of concealing the programming commitment and termination fee. Indeed, DirecTV appears to be in direct violation of the Assurance of Voluntary Compliance/Assurance of Discontinuance it entered in response to an investigation by 22 state attorneys general in 2005.

DirecTV's unfair business practices have caused significant financial consequences for our clients and consumers throughout the country. DirecTV's active concealment of these material contract terms, including the early termination fee, is highly deceptive and is violative of the CLRA in the following ways:

1.  DirecTV violated § 1770(a)(14) because it failed to adequately disclose the early termination fee, and because the fee provision is an unlawful liquidated damages provision pursuant to Cal. Civ. Code § 1671.

2.  DirecTV violated § 1770(a)(19) by inserting unconscionable provisions in its Customer Agreement, including clauses that purport to force consumers to settle all disputes only by arbitration, and to waive any right to bring a suit as a "representative member of a class or in a private attorney general capacity."

Pursuant to § 1782 of the CLRA, and based on the foregoing, we hereby demand that within thirty (30) days of receiving this letter, DirecTV agree to refund the early termination fee paid by Plaintiffs and others like them, and to cease enforcement of the hidden contract terms.

Please be advised that should DirecTV refuse this demand, Mr. and Mrs. Pifer will seek monetary damages for themselves and the Class, as well as an award of injunctive relief, restitution, punitive damages, attorneys' fees and costs, and any other relief a court deems proper.

If you have any questions regarding this notice and demand, feel free to contact me at (415) 956-1000.

Very truly yours,

Kristen E. Law

KEL:wp
cc:     Jonathan D. Selbin
        Nimish R. Desai
        Anthony Vitullo

786992.1



FINKELSTEIN
THOMPSON LLP

Reply to San Francisco, California

Writer's Direct E-mail: dlebel@finkelsteinthompson.com

October 23, 2008

**VIA CERTIFIED MAIL**

DirecTV, Inc.
230 East imperial Highway
El Segundo, California 90245

     Re:    *Van Meter v. DirecTV, Inc.*
             United States District Court, Central District of California

To Whom It May Concern:

     On behalf of Plaintiff Maureen Van Meter and all others similarly situated, this letter is to notify DirecTV, Inc. ("DirecTV") that it has violated the California Consumers Legal Remedies Act ("CLRA") by employing or committing methods, acts, or practices declared unlawful by Cal. Civ. Code § 1770. *See* Cal. Civ. Code § 1782(a) and (b). Pursuant to Cal. Civ. Code § 1780(d), Plaintiff Van Meter has initiated an action in the United District Court, Central District of California, for injunctive relief against DirecTV. Within thirty (30) days after the date of this notice, Plaintiff Van Meter will amend her complaint to include a request for damages unless DirecTV makes an appropriate remedy to Plaintiff Van Meter and members of the proposed Classes, as defined in Plaintiff Van Meter's Class Action Complaint, Paragraph 30, enclosed with this letter.

     The unlawful acts committed by DirecTV, in violation of the CLRA, include charging early cancellation fees based on an invalid liquidated damages clause and failing to inform consumers that requesting a change in service will subject them to a new commitment period.

     DirecTV's actions violate Sections 1770(a)(9), (14), and (19) of the CLRA, which prohibits advertising goods or services with intent not to sell them as advertised; representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and inserting an unconscionable provision in the contract. As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff Van Meter and members of the proposed Classes are entitled to a full refund of the money they paid for the early termination fees.

1050 30TH STREET, NW • WASHINGTON, DC 20007 • PHONE: 202.337.8000 • FAX: 202.337.8090 • TOLL-FREE: 877.337.1050

100 BUSH STREET • SUITE 1450 • SAN FRANCISCO, CA 94104 • PHONE: 415.398.8700 • FAX: 415.398.8704 • TOLL-FREE: 877.800.1450

WWW.FINKELSTEINTHOMPSON.COM



Pursuant to Cal. Civ. Code § 1782(b), DirecTV may, within thirty (30) days of the date of this letter, avoid a potential action for damages under the Consumers Legal Remedies Act brought by Plaintiff Van Meter by agreeing to correct, repair and rectify its unlawful acts by: (1) providing all members of the proposed Classes as defined in Paragraph 30 of the Complaint with notice of this action and the name of Plaintiff Van Meter's attorneys; (2) providing Plaintiff and the Penalty Class with a full refund of all early cancellation fees paid to DirecTV; (3) reversing all negative credit reports made to credit reporting agencies against consumers based on their failure to pay the early cancellation fees; and (4) terminating its practices of imposing early cancellation fees and automatically enrolling consumers in new commitment periods due to changes in service.

Sincerely,


Daniel T. LeBel


Enc.:   Class Action Complaint


# FINKELSTEIN THOMPSON LLP

October 23, 2008

**VIA CERTIFIED MAIL**


DirecTV, Inc.
2730 Gateway Oaks Dr., Suite 100
Sacramento, California 95833

      Re:   *Van Meter v. DirecTV, Inc.*
           United States District Court, Central District of California

To Whom It May Concern:

On behalf of Plaintiff Maureen Van Meter and all others similarly situated, this letter is to notify DirecTV, Inc. ("DirecTV") that it has violated the California Consumers Legal Remedies Act ("CLRA") by employing or committing methods, acts, or practices declared unlawful by Cal. Civ. Code § 1770. *See* Cal. Civ. Code § 1782(a) and (b). Pursuant to Cal. Civ. Code § 1780(d), Plaintiff Van Meter has initiated an action in the United District Court, Central District of California, for injunctive relief against DirecTV. Within thirty (30) days after the date of this notice, Plaintiff Van Meter will amend her complaint to include a request for damages unless DirecTV makes an appropriate remedy to Plaintiff Van Meter and members of the proposed Classes, as defined in Plaintiff Van Meter's Class Action Complaint, Paragraph 30, enclosed with this letter.

The unlawful acts committed by DirecTV, in violation of the CLRA, include charging early cancellation fees based on an invalid liquidated damages clause and failing to inform consumers that requesting a change in service will subject them to a new commitment period.

DirecTV's actions violate Sections 1770(a)(9), (14), and (19) of the CLRA, which prohibits advertising goods or services with intent not to sell them as advertised; representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and inserting an unconscionable provision in the contract. As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff Van Meter and members of the proposed Classes are entitled to a full refund of the money they paid for the early termination fees.

1050 30TH STREET, NW • WASHINGTON, DC 20007 • PHONE: 202.337.8000 • FAX: 202.337.8090 • TOLL-FREE: 877.337.1050

100 BUSH STREET • SUITE 1450 • SAN FRANCISCO, CA 94104 • PHONE: 415.398.8700 • FAX: 415.398.8704 • TOLL-FREE: 877.800.1450

WWW.FINKELSTEINTHOMPSON.COM



Pursuant to Cal. Civ. Code § 1782(b), DirecTV may, within thirty (30) days of the date of this letter, avoid a potential action for damages under the Consumers Legal Remedies Act brought by Plaintiff Van Meter by agreeing to correct, repair and rectify its unlawful acts by: (1) providing all members of the proposed Classes as defined in Paragraph 30 of the Complaint with notice of this action and the name of Plaintiff Van Meter's attorneys; (2) providing Plaintiff and the Penalty Class with a full refund of all early cancellation fees paid to DirecTV; (3) reversing all negative credit reports made to credit reporting agencies against consumers based on their failure to pay the early cancellation fees; and (4) terminating its practices of imposing early cancellation fees and automatically enrolling consumers in new commitment periods due to changes in service.

Sincerely,


Daniel T. LeBel


Enc.:   Class Action Complaint