HULETT HARPER STEWART LLP
BLAKE MUIR HARPER, SBN: 115756
SARAH P. WEBER, SBN: 239979
525 B Street, Suite 760
San Diego, CA  92101
Telephone:    (619) 338-1133
Facsimile:    (619) 338-1139
e-mail:       blake@hulettharper.com
              sweber@hulettharper.com

Interim Lead Counsel for Plaintiffs
[Additional Counsel Listed on Signature Page]

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| IN RE DIRECTV EARLY CANCELLATION FEE LITIGATION | MASTER FILE NO. CV08-741 AG (ANx) |
| | **PLAINTIFFS' OPPOSITION TO DIRECTV'S MOTION TO DISMISS CLAIMS AND TO STRIKE ALLEGATIONS IN PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT** |
| This Document Relates To: | |
| All Actions. | |

DATE:     May 4, 2009
TIME:     10:00 a.m.
JUDGE:    Hon. Andrew J. Guilford
CTRM:     10D

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................. 1

II.   BACKGROUND ............................................................................. 2

III.  LEGAL STANDARD ...................................................................... 4

IV.   ARGUMENT .................................................................................. 5

    A.    Plaintiffs Have Adequately Stated a Claim Under the Consumer Leasing Act .................................................................................. 5

        1.    DirecTV's Equipment Lease Addendum Falls Within the Plain Language of the CLA ................................................. 5

        2.    DirecTV's Lease of Receivers Is a Separate Transaction that Is Not Incidental to the Lease of Satellite Television Service ....................................................................................... 8

        3.    DirecTV's Good Faith Affirmative Defense Does Not Provide a Basis for Dismissal ...................................................... 10

    B.    Defendant's Motion to Dismiss Plaintiffs' Claims for Declaratory Relief for Violation of the Assurance and to Strike References to the Assurance Should be Denied ................................. 11

    C.    DirecTV's Choice of Law Provision Is Unenforceable..................... 15

    D.    Plaintiff Mulea's Claims for Unjust Enrichment and Money Had and Received Are Proper ................................................................. 15

V.    CONCLUSION .............................................................................. 16

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

*Adair v. City of Kirkland*,
   185 F.3d 1055 (9th Cir. 1999) .............................................................. 9

5

*Bell Atlantic Corp. v. Twombly*,
6
   550 U.S. 544 (2007) ............................................................................... 4

7

*Carmichael v. Nissan Motor Acceptance Corp. Union City Nissan*,
8
   291 F.3d 1278 (11th Cir. 2002) ............................................................ 5

9

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
10
   467 U.S. 837 (1984) ............................................................................... 6

11

*Corr. USA v. Dawe*,
12
   504 F. Supp. 2d 924 (E.D. Cal. 2007) ................................................ 4

13

*Ford Motor Credit Co. v. Milhollin*,
14
   444 U.S. 555 (1980) ........................................................................... 7, 8

15

*Mancini v. Ins. Corp.*,
   2008 U.S. Dist. LEXIS 43954
16
   (S.D. Cal. May 29, 2008) ................................................................. 5, 14

17

*McCune v. Oregon Sr. Servs. Div.*,
18
   894 F.2d 1107 (9th Cir. 1990) .............................................................. 9

19

*McKell v. Washington Mutual, Inc.*,
20
   142 Cal. App. 4th 1457 (2006) .......................................................... 14

21

*Oncale v. Sundowner Offshore Servs.*,
22
   523 U.S. 75 (1998) ................................................................................. 7

23

*Orange County Dept of Educ. v. A.S.*,
   567 F. Supp. 2d 1165 ............................................................................ 4

24

*People v. E.W.A.P., Inc.*,
25
   106 Cal. App. 3d 315 (1980) .............................................................. 13

26

*Prouty v. Gores Tech. Group*,
27
   121 Cal. App. 4th 1225 (2004) .......................................................... 12

28

ii

1
2

*Resolution Trust Corp v. Heiserman*,
   839 F. Supp. 1457 (D. Colo. 1993) ................................................................ 10

*Santiago v. Northern Mariana Islands*,
   1990 U.S. Dist. LEXIS 5517 (D. N. Mar. I. 1990) ...................................... 11

*Scott v. Jones*,
   964 F.2d 314 (4th Cir. 1992) ......................................................................... 6

*Shell v. Schmidt*,
   126 Cal. App. 2d 279 (1954) ........................................................................ 12

*Smith v. Arthur Andersen L.L.P.*,
   175 F. Supp. 2d 1180 (D. Ariz. 2001) ......................................................... 10

*State Farm Fire & Casualty Co. v. Superior Court*,
   45 Cal. App. 4th 1093 (1996) ....................................................................... 14

*Torres v. Banc One Leasing Corp.*,
   226 F. Supp. 2d 1345 (N.D. Ga. 2002) .......................................................... 8

*Weibolt Stores, Inc. v. Schottenstein*,
   111 B.R. 162 (N.D. Ill. 1990) ...................................................................... 11

*Williams v. Gerber Prods. Co.*,
   523 F.3d 934 (9th Cir. 2008) .......................................................................... 4

*Ysasi v. Nucentrix Broadband Networks, Inc*
   205 F. Supp. 2d 683 (S.D. Tex. 2002).......................................................... 10

*Zigas v. Superior Court*,
   120 Cal. App. 3d 827 (1981) ........................................................................ 12

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   § 1601 ............................................................................................................ 5
   § 1640 ............................................................................................................ 7
   § 1640(a) ....................................................................................................... 15
   § 1667 ........................................................................................................ 1, 4
   § 1667(1) ....................................................................................................... 6
   § 1667(4) ....................................................................................................... 6

iii

Business & Professions Code
   § 17200 ..................................................................................................... 4
   § 17500 ..................................................................................................... 4

California Civil Code
   § 1559 ..................................................................................................... 12
   § 1624 ..................................................................................................... 4
   § 1671 ..................................................................................................... 4
   § 1750. ..................................................................................................... 4

iv

I.      **INTRODUCTION**

Defendant DirecTV, Inc. ("DirecTV") moves to dismiss certain of the Plaintiffs' claims on various grounds.  DirecTV also moves to strike from the Consolidated Class Action Complaint ("Complaint") all references to DirecTV's violation of an "Assurance of Voluntary Compliance" ("Assurance")entered into by it and the attorneys general of 22 states that directly concerns the conduct at issue in this case.  Defendant's motion should be denied.

First, as a legal matter, the Plaintiffs' Consumer Leasing Act, 15 U.S.C. §1667, *et seq.* ("CLA"), claims are not, as DirecTV argues, foreclosed by the staff commentary on the Federal Reserve Board regulations published under that statute. Rather, the clear and unambiguous language of the statute applies to the equipment leases challenged here.

Second, DirecTV cannot demonstrate that the Plaintiffs' claims concerning the Assurance of Voluntary Compliance, entered into by DirecTV and the attorneys general of 22 states, and concerning the very conduct at issue here, are improper. Plaintiffs are unquestionably the intended third party beneficiaries of the Assurance and therefore, have standing to enforce its terms.  Further, DirecTV's violations of the terms of that agreement are directly relevant to the claims asserted by the Plaintiffs under the CLA and California's consumer protection laws.

Third, the choice of law provision contained in DirecTV's customer agreement contains an unconscionable class action waiver and, therefore, is not enforceable against Plaintiffs Lombardi, O'Brien and the Pifers.  Because the choice of law provision is not an enforceable contract, it does not preclude these Plaintiffs' claims under California law.

Finally, Plaintiff Mulea has now paid the early termination fee assessed against him by DirecTV in order to avoid any negative effect to his credit, mooting DirecTV's motion to dismiss Mulea's claim for money had and received.  Plaintiffs respectfully

1

1   request an opportunity to amend the Complaint in order to reflect this change.

2   **II.    BACKGROUND**

3       The case concerns DirecTV's practice of failing to adequately disclose, or

4   failing to disclose at all, the existence of long-term programming commitments in

5   equipment lease documents and the attendant steep cancellation fees – up to $480 –

6   that it assesses (by automatically deducting the fee from the customer's debit or

7   credit card) if the service is cancelled for any reason, including DirecTV's own

8   failure to provide the services it promises.  Complaint ¶¶ 1, 12-17, 38-40.

9       DirecTV imposes the long term programming commitment in three ways:

10  when a new customer initiates service; when an existing customer modifies his

11  service, for example when the customer upgrades to high definition (HD) receiver or

12  to a digital video recording receiver (DVR); or when a customer orders a

13  replacement receiver for any reason, for example where an existing receiver

14  malfunctions.  Complaint ¶¶ 24-28.  In the first scenario the customer is not even

15  informed of the existence of the term of the programming commitment and early

16  cancellation fee until *after* the satellite equipment is installed in the home.  *Id*.

17  Moreover, the disclosure is buried in fine print on the reverse side of a document

18  titled "Installation/Service Satisfaction Checklist" that is presented to the customer

19  by DirecTV, or a third party installation contractor, after they install the receiving

20  equipment in the customer's home. *Id*.

21      The document containing the disclosure is titled "Equipment Lease

22  Addendum," which on its face appears to indicate that it is a lease of equipment and

23  not an agreement for a lengthy programming commitment.  Complaint ¶ 28.  That

24  document provides: "The programming package(s) must be maintained for a period

25  of not less than (a) eighteen (18) consecutive months (for accounts with only

26  standard receiver(s)), or (b) twenty-four (24) consecutive months (for accounts with

27  advanced product(s)/receiver(s)) . . . ."  *Id*.  Further, the consumer does not receive

28  the Customer Agreement that DirecTV claims governs the terms of the DirecTV's

2

1  provision of service until they receive their first monthly bill.  Complaint ¶¶ 24-25.

2      For customers who upgrade their service, the service commitment and
3  attendant early cancellation fee are imposed without any disclosure whatsoever at
4  the time the customer makes the change to his or her service.  The very first time the
5  customer learns of the imposition of the commitment period, if at all, is when he or
6  she receives the Customer Agreement in the next monthly bill.  As alleged in the
7  Complaint, these customers are not alerted to the existence of the early cancellation
8  fee until they cancel their services, and in some instances not until the fee is
9  deducted from their debit or credit card.  Complaint ¶¶ 38-40.

10     Plaintiffs also allege that DirecTV's failure to provide customers with the
11 material terms of its receiver leases prior to the consummation of the lease violates
12 the CLA.  Complaint ¶¶ 1, 33-34, 37-38, 53, 101.  The equipment lease, which
13 creates the separate programming commitment and early cancellation fee, subjects
14 the customer to an additional fee of $150 for each receiver that is not activated and a
15 fee, ranging between $55 and $470, for each receiver that is not returned to DirecTV
16 when the subscriber cancels.  Complaint ¶ 107.

17     DirecTV has a history of these unlawful disclosure practices.  In fact, the
18 disclosures made by DirecTV in its advertisements were the subject of a large scale
19 investigation by the attorneys general of 22 states that resulted in an Assurance in
20 2005 requiring that DirecTV "clearly and conspicuously" disclose to consumers all
21 material terms of its consumer transactions.  Complaint ¶¶ 44-47.  The attorneys
22 general alleged that DirecTV's disclosures "were not clear and conspicuous" and
23 violated the consumer protection and trade practice statutes of those States.  Ex. A. to
24 Plaintiffs' Consolidated Class Action Complaint ¶ 17.  The Assurance specifically
25 concerns DirecTV's failure to clearly and conspicuously disclose all material terms,
26 such as "[t]he material limitations or modifications in equipment offers, *including*
27 *minimum commitment terms for DirecTV service . . ." Id.* (emphasis added).

28     In addition to alleging DirecTV violated the terms of the Assurance, Plaintiffs

3

also allege that DirecTV's conduct violates California's statute of frauds (Cal. Civ. Code § 1624), California's prohibition of excessive liquidated damages in consumer contracts (Cal. Civ. Code § 1671), the California Unfair Business Practices Act (Bus. & Prof. Code §§ 17200, *et seq.* and 17500, *et seq.*), the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*), the federal Consumer Leasing Act (15 U.S.C. §§ 1667, *et seq.*), and finally California's common law prohibitions against money had and received and unjust enrichment. Complaint ¶¶ 65-112. For these violations, Plaintiffs and the proposed class seek damages, restitution and declaratory and injunctive relief. Complaint at 25-26.

The case was originally filed by Plaintiffs Annette Kahaly and Kathleen O'Brien on July 7, 2008. Thereafter, three additional related complaints were filed against DirecTV and by motion of the Plaintiffs in those four cases they were consolidated by the Court's Order on December 19, 2008. On January 20, 2009, the Plaintiffs filed their Consolidated Complaint, which Defendant now challenges by this motion to dismiss and strike certain allegations.

**III.   LEGAL STANDARD**

"In resolving a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the Plaintiff and accept all well-pleaded factual allegations as true." *Orange County Dept of Educ. v. A.S.*, 567 F. Supp. 2d 1165, 1167, *citing Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *see also Williams v. Gerber Prods. Co.*, 523 F.3d 934, 937 (9th Cir. 2008). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged." *Corr. USA v. Dawe*, 504 F. Supp. 2d 924, 929 (E.D. Cal. 2007) (*citing Retail Clerks Int'l Ass'n v. Shermerhorn*, 373 U.S. 746, 753 n.6, 83 S. Ct. 1461, 10 L. Ed. 2d 678 (1963)).The court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In ruling on a motion to strike "[w]here

4

the motion involves background or historical material, it should not be granted unless the material is prejudicial to the opponent. Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike" *Mancini v. Ins. Corp.*, No. 07cv1750-L(NLS), 2008 U.S. Dist. LEXIS 43954, *3-*4 (S.D. Cal. May 29, 2008).

## IV.   ARGUMENT

### A.   Plaintiffs Have Adequately Stated a Claim Under the Consumer Leasing Act

DirecTV moves to dismiss Count VII of Plaintiffs' Complaint, violation of the CLA, by claiming an exemption from the scope of the CLA and good faith compliance with that exemption. Both of these arguments raise questions of fact and, therefore, DirecTV's motion to dismiss Plaintiffs' Consumer Leasing Act claim must be denied.

#### 1.   DirecTV's Equipment Lease Addendum Falls Within the Plain Language of the CLA

The CLA was passed by Congress in 1976 as an amendment to the Truth-in-Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq*. "The CLA extended the TILA's disclosure requirements to consumer leases" and

> Congress articulated the purpose behind the CLA as one of assurance of meaningful disclosure: 'It is the purpose of this subchapter to assure a meaningful disclosure of the terms of leases of personal property for personal, family, or household purposes so as to enable the lessee to compare more readily the various lease terms available to him, limit balloon payments in consumer leasing, enable comparison of lease terms with credit terms where appropriate, and to assure meaningful and accurate disclosures of lease terms in advertisements. 15 U.S.C. § 1601(b). The CLA specifies the disclosures the lessor must provide to the lessee at the time of entering into a consumer lease.

*Carmichael v. Nissan Motor Acceptance Corp. Union City Nissan*, 291 F.3d 1278, 1280 (11th Cir. 2002).

Plaintiffs allege that DirecTV violated the CLA: (1) by failing to provide the required written disclosures prior to consummation of the receiver leases (Complaint ¶ 108) and (2) by imposing a penalty for early termination of the lease that is not reasonable in light of the anticipated or actual harm caused by that termination (Complaint ¶ 109).  Plaintiffs also allege that the Equipment Lease Addendum is a "consumer lease," defined in the CLA as

> a contract in the form of a lease or bailment for the use of ***personal property*** by a natural person for a period of time exceeding four months, and for a total contractual obligation not exceeding $25,000, primarily for personal, family, or household purposes, whether or not the lessee has the option to purchase or otherwise become the owner of the property at the expiration of the lease, except that such term shall not include any credit sale as defined in section 103(g) [15 USCS § 1602(g)].  Such term does not include a lease for agricultural, business, or commercial purposes, or to a government or governmental agency or instrumentality, or to an organization.

15 U.S.C. §1667(1) (emphasis added).  The CLA defines personal property as "any property which is not real property. . . ."  15 U.S.C. §1667(4).  The receiver lease offered by DirecTV is a lease for the use of personal, and not real, property for a period of time exceeding four months; therefore, the CLA applies.

Where a statutory definition is clear and unambiguous, there is no basis to look to legislative history, interpreting regulations or any other agency document to modify that definition.  *See generally, Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 106 S. Ct. 2224, 90 L. Ed. 2d 841 (1984) (deference to reasonable agency interpretation permissible only where the statute is ambiguous).   Indeed, where an agency carves out an exception not expressly contemplated by the statutory definition, courts run the risk of countermanding Congress by deferring to that agency interpretation.  *See, e.g., Scott v. Jones*, 964 F.2d 314, 317 (4th Cir. 1992) (rejecting FTC's staff commentary interpretation that created an exception to a statutory definition, where it "runs counter to the plain meaning of the statutory language.  We cannot defer to an agency interpretation that

6

1  defeats an express Congressional command.") (*citing Estate of Thompson v.*

2  *Commissioner*, 864 F.2d 1128, 1134 (4th Cir. 1989).

3      These same principles apply to the CLA.  In discussing the Federal Reserve

4  Board's interpretation of the Truth In Lending Act (which shares a damages

5  provision with the CLA, 16 U.S.C. § 1640), the Court explained: "At the threshold,

6  therefore, interpretation of TILA and Regulation Z demands an examination of their

7  express language; *absent a clear expression*, it becomes necessary to consider the

8  implicit character of the statutory scheme" and staff commentaries.  *Ford Motor*

9  *Credit Co. v. Milhollin*, 444 U.S. 555, 560, 100 S. Ct. 790, 63 L. Ed. 2d 22 (1980)

10 (emphasis added).

11     Accordingly, here, where there is not the slightest ambiguity in the

12 Congressional definition of "consumer lease" (and, critically, where DirecTV has

13 offered none), the proper approach is to apply the clear Congressional definition,

14 recognizing that "statutory prohibitions often go beyond the principal evil to cover

15 reasonably comparable evils, and it is ultimately the provisions of our laws . . . by

16 which we are governed."  *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 79,

17 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998).[1]

18     Yet, even if one does go beyond the statute, the regulations promulgated

19 pursuant to the statute support Plaintiffs' position.  As noted by DirecTV, Regulation

20 M reiterates the definition of a consumer lease and states that it does not apply to "a

21 lease transaction of personal property which is incident to the lease of real property. . .

22 12 C.F.R. 213.2.  Here, there is no question that the receiver was not a "lease

23 transaction which is incident to the lease of real property" and DirecTV has provided

24 no basis to support application of this exemption.  Thus, neither the statute nor the

25 regulations promulgated thereunder stand as a bar to Plaintiffs' claims.

26     To find support for DirecTV's position, one must go beyond the statute,

27 ─────────
[1]  Here, of course, the Court is decidedly in the realm of the principal evil the
28 Consumer Leasing Act was meant to deter – leases with unclear or hidden anti-
consumer provisions.

7

beyond the official regulations, and to the Staff Commentary to Regulation M, which states:

> The following leases of personal property are deemed incidental to a service and thus are not subject to the regulation:
>
> i. Home entertainment systems requiring the consumer to lease equipment that enables a television to receive the transmitted programming….

12 C.F.R. Pt. 213, Supp. I at ¶ 7.  As explained by the Supreme Court in *Ford Motor Credit,* 444 U.S. 555, however, the commentary has no effect where the statute is clear.  *See also Torres v. Banc One Leasing Corp*., 226 F. Supp. 2d 1345, 1348 (N.D. Ga. 2002) (commentary is "controlling authority in this Court if the statutes or regulations are not clear in their intent")  (emphasis added), *aff'd in part and vacated in part and remanded by Baez v. Banc One Leasing Corp*., 348 F.3d 972 (11th Cir. 2003).  The logic of this rule becomes apparent when one considers the Commentary.

On its face the commentary bears no relationship to either the statute or the regulation it seeks to explain.  There is no indication in the statute or the regulation of Congressional or administrative intent to exempt leases that are incidental to service, only to exempt leases that are "incident to the lease of real property."  The application of the staff commentary to exempt DirecTV from the consumer safeguards created by the CLA is, therefore, procedurally improper and an affront to the statutory text.  The Court need not and should not grant this interpretation any consideration, let alone any deference.  The Court must instead apply the clear statutory definition and deny DirecTV's motion.

> **2.    DirecTV's Lease of Receivers Is a Separate Transaction that Is Not Incidental to the Lease of Satellite Television Service**

Even if this Court determines that the Federal Reserve Board's staff

8

commentary to Regulation M overrides or otherwise modifies the Congressional definition, DirecTV's argument nevertheless fails because it raises questions of fact, and because it is wrong on the merits.  As a general matter, the applicability of statutory exemptions raise questions of fact.  *See Adair v. City of Kirkland*, 185 F.3d 1055, 1060 (9th Cir. 1999) (interpreting Fair Labor Standards Act); *McCune v. Oregon Sr. Servs. Div.*, 894 F.2d 1107, 1109 (9th Cir. 1990) (same).

Here, DirecTV's argument rests on the assumption that its lease of receivers is incidental to its provision of satellite service.  Preliminarily, the regulations do not define incidental, presenting a question of fact as to what that term means and whether it describes the circumstances presented here.  Moreover, Plaintiffs contend DirecTV's lease of equipment to receive satellite television is not incidental to DirecTV's provision of services.

First, the Equipment Lease Addendum is an entirely separate transaction entered into by the consumer.  DirecTV's contract for the terms of its satellite television service, the "Customer Agreement," does not govern the receiver rental or any of the terms associated with that rental.  Complaint ¶ 25.  Instead, the programming activation agreement and a separate programming term commitment are in a document called the "Equipment Lease Addendum."

Second, this independent lease agreement creates affirmative obligations that clearly demonstrate it is not incidental to DirecTV's service.  Most importantly, the equipment lease triggers the programming commitment that is the subject of the Plaintiffs' other claims.  Any time a customer leases a new receiver for whatever purpose (e.g. to upgrade service or to replace a broken receiver), and regardless of how long they have been DirecTV customers, that transaction creates a new programming commitment.  Complaint ¶¶ 1, 14-16.  Under these circumstances, where the equipment lease is determinative of a customer's service commitment, the lease cannot reasonably be described as "incidental" to an underlying service. Rather, the common sense interpretation of the staff commentary is that equipment

9

is incidental to a service contract when the lease begins and ends with a preexisting agreement for the "transmitted programming," such that the equipment lease merely effectuates the underlying service commitment.

At the very least, then, Plaintiffs' Complaint raises a question of fact as to whether the leases are "incidental" under the meaning of the Commentary, assuming for the sake of argument that it even applies. Accordingly, DirecTV's reliance on the staff commentary is not only procedurally improper, it is also wrong on the merits.

Finally, the Southern District of Texas case relied on by DirecTV in support of its position is distinguishable. The plaintiff in *Ysasi v. Nucentrix Broadband Networks, Inc* alleged the defendants violated the CLA by failing to "make certain representations 'clearly and conspicuously' with respect to their *remote control leases*." 205 F. Supp. 2d 683, 685 (S.D. Tex. 2002) (emphasis added). Procedurally, the court did not address the issues discussed above concerning the clear language of the statute and regulation, in contrast to the staff's commentary, and substantively, the court did not address the Equipment Lease Addendum at issue here. Moreover, there is no indication in that case that the lease of the remote control, or any other equipment, modified or extended the underlying service agreements, as the receiver leases do here.

### 3. DirecTV's Good Faith Affirmative Defense Does Not Provide a Basis for Dismissal

Finally, DirecTV also argues that it cannot be held liable under the CLA because the statute does not impose liability on parties who rely in good faith on the CLA, its rules, regulations, and interpretations thereof. The Court need not even consider the merits of this argument, because it presents no basis to dismiss Plaintiffs' Complaint. "The essential determination of whether the Individual Defendants acted in 'good faith, is a question of fact that cannot be decided in the context of a motion to dismiss." *Smith v. Arthur Andersen L.L.P.*, 175 F. Supp. 2d 1180, 1204 (D. Ariz. 2001). *See also Resolution Trust Corp v. Heiserman*, 839 F.

10

Supp. 1457, 1463 (D. Colo. 1993) (a ruling on the applicability of the business judgment rule is a question of fact, inappropriate for consideration on a motion to dismiss); *Weibolt Stores, Inc. v. Schottenstein*, 111 B.R. 162, 174 (N.D. Ill. 1990) (same).[2]   Whether DirecTV acted in good faith in complying with the applicable regulations is a question of fact that cannot be resolved at this stage.

Even assuming this argument is properly brought on a motion to dismiss, Plaintiffs have nevertheless alleged facts to prevent dismissal on these grounds. (Complaint ¶ 110.)   As alleged in the Complaint, DirecTV's practice does not constitute good faith compliance with the staff commentary, which exempts only "incidental" leases, as described above.   DirecTV could not have in good faith considered its lease of receivers as "incidental" to its satellite service.   If anything, DirecTV acts in bad faith by using the equipment lease to surreptitiously extend and create service commitments as part of its aggressive customer retention program (Complaint ¶¶ 34-36, 41-42), while at the same time claiming its receiver leases are "incidental" in order to escape liability under the CLA.

For these reasons DirecTV's motion to dismiss the Plaintiffs' claim for violation of the CLA should be denied.

**B.**      **Defendant's Motion to Dismiss Plaintiffs' Claims for Declaratory Relief for Violation of the Assurance and to Strike References to the Assurance Should be Denied**

DirecTV argues that Plaintiffs cannot obtain declaratory relief that DirecTV's business practices – failure to disclose, or adequately disclose, the terms of the Customer Agreement and Lease Addendum – constitute a breach of DirecTV's Voluntary Assurance with the attorneys general because (1) Plaintiffs are not parties

---

[2]   Indeed, federal courts have explained that good faith defenses are typically not even appropriate for summary judgment.   *See Santiago v. Northern Mariana Islands*, No. 89-0010, 1990 U.S. Dist. LEXIS 5517, *1 n.1, (D. N. Mar. I. 1990) ("To the extent that the issue of the defense of 'good faith' was raised, the Court believes resolution of this issue is inappropriate on a motion for summary judgment.   Summary judgment is generally inappropriate when issues of motive, intent, and other subjective feelings and reactions are material.") (*citing Adickes v. S. H. Kress 7 Co.*, 90 S. Ct. 1598 (1970)).

11

1   to the Assurance or intended third party beneficiaries and (2) the California attorney

2   general was not a participant in the Assurance.

3       DirecTV's first argument, that the Plaintiffs are not intended third party

4   beneficiaries, is flatly wrong.  California Civil Code section 1559 provides that

5   when a contract is "expressly made for the benefit of a third person" it may be

6   enforced by him.  Cal. Civ. Code §1559.  Express intent is determined on a case by

7   case basis and exists where there is intent that the obligation created by the contract

8   inure to the third party's benefit.  *Prouty v. Gores Tech. Group*, 121 Cal. App. 4th

9   1225, 1232-33, 18 Cal. Rptr. 3d 178 (2004); *Zigas v. Superior Court*, 120 Cal. App.

10  3d 827, 837, 174 Cal. Rptr. 806 (1981) ("Standing to sue as a third-party beneficiary

11  to a government contract depends on the intent of the parties as manifested by the

12  contract and the circumstances surrounding its formation.")  "It is not required that

13  the third party beneficiary be specifically named as a beneficiary." *Shell v. Schmidt*,

14  126 Cal. App. 2d 279, 290 (1954).

15      In *Zigas*, tenants of an apartment building brought an action against the landlord

16  for charging rents above the limits set in a financing agreement with the federal

17  government.  120 Cal. App. 3d at 831.  The landlord argued on appeal that the tenants

18  did not have standing to enforce the agreement between the landlord and the federal

19  government.  The California Court of Appeal disagreed, finding that the tenants were

20  clearly the express and intended beneficiaries of the agreement and could, therefore,

21  maintain a third-party beneficiary action against the landlord. *Id*. at 837-39.

22      Similarly, the Plaintiff class of consumers here are quite clearly the intended

23  beneficiaries of the Assurance.  As alleged in the Complaint, the Assurance is the

24  settlement between Defendant DirecTV and 22 state attorneys general concerning

25  those states' investigation into DirecTV's disclosure practices.  Complaint ¶¶ 44-45.

26  The Assurance specifically affords consumers the right to cancel service without

27  penalty or cost should DirecTV fail to clearly and conspicuously apprise them of the

28  material terms of its service.  *Id*. at ¶ 46; see also Complaint, Ex. A (Assurance)

12

¶¶ 33, 36.  There is no question that the Assurance was created for the sole purpose of benefiting consumers, and the Plaintiffs here clearly fall within that class of intended beneficiaries.[3]

DirecTV's second argument, that the Assurance has no effect in California because the California attorney general is not a participant to the agreement is also incorrect and DirecTV's citation to the preamble does not support this proposition. The preamble merely states that the Assurance "is entered into between the States of Delaware, Florida, Georgia, Idaho, Illinois, Kansas, Maryland, Massachusetts, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oregon, Pennsylvania, Tennessee, Texas, Vermont and West Virginia . . . by their respective Attorney General, and DirecTV, Inc."  Neither the preamble, nor any other portion of the Assurance, purports to limit the protections it creates only to consumers in those named states.  Further, DirecTV points to no legal authority to support this contention.

DirecTV also contends that its violation of the Assurance cannot form the basis of Plaintiffs unlawful claim under the California Unfair Competition Law.  It is well established that any law or regulation – federal, state, statutory, regulatory or common law – can serve as a predicate for a violation of the unlawful prong of the UCL, even where the predicate law does not allow a private right of action.  *See People v. E.W.A.P., Inc*., 106 Cal. App. 3d 315, 319, 165 Cal. Rptr. 73, 75 (1980) ("the purpose of the [addition of the unlawful prong] was to 'extend the meaning of unfair competition to anything that can properly be called a business practice and that at the same time is forbidden by law.'") (*quoting Barquis v. Merchants Collection Assn*., 7 Cal. 3d 94, 112-113 (1972))

DirecTV's argument, however, misconstrues the Complaint.  The Plaintiffs UCL claim does not rest solely on DirecTV's violation of the Assurance as a claim

---

[3]   Additionally, named Plaintiffs Joseph Lombardi and Kathleen O'Brien are citizens of Florida, a participant State in the Assurance.  *See* Complaint ¶13.

under that law's "unlawful" prong.  Rather, the Complaint alleges that violation of the Assurance, among other things, constitute "unlawful, *unfair, and fraudulent business practices*."  Complaint at ¶ 74.  "[A]n 'unfair' business practice occurs when that practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1104, 53 Cal. Rptr. 2d 229 (1996) (*citing People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530, 206 Cal Rptr. 164 (1984)); *see also McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1473, 49 Cal. Rptr. 3d 227 (2006) ("The determination whether a business practice is unfair involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer.  In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  (quotations and citations omitted)).  DirecTV's repeated violations of the Assurance, as alleged in the Complaint, constitutes an unfair business practice because it offends the established public policies represented by the terms of the Assurance and because the harm to the victims of these practices outweigh any reason or justification of such conduct that DirecTV may have.

Regardless of their basis to give rise to a UCL claim these allegations are also material to the case and directly relevant to any analysis of Plaintiffs' claims and DirecTV has not provided an adequate basis to warrant striking them.  *See Mancini,* 2008 U.S. Dist. LEXIS 43954 at *3-*4 (background or historical material should not be stricken unless prejudicial to the opponent).

In fact, the Assurance addresses the very same conduct that Plaintiffs allege violates California's laws and, therefore, bears directly on the issues in the complaint.  *See Mancini*, 2008 U.S. Dist. LEXIS 43954, at *7-*8 (denying motion to strike allegations concerning other lawsuits against the defendant because the allegations were relevant to its "pattern and practice of bad faith . . . ) Moreover, the liability

14

provision of the CLA expressly provides that the court "shall consider . . . he frequency and persistence of failures of compliance by the creditor." 15 U.S.C. § 1640(a).

For these reasons the Court should deny the Defendant's motion to dismiss and motion to strike references to the Assurance at paragraphs 44-47, 74 and 101(b) of the Complaint.

### C.  DirecTV's Choice of Law Provision Is Unenforceable

As discussed in detail in the Plaintiffs' Opposition to DirecTV's Motion to Dismiss or Stay Proceedings Pending Arbitration and to Compel Arbitration submitted concurrently herewith, and which the Plaintiffs hereby incorporate by reference, DirecTV's choice of law provision is not enforceable against Plaintiffs Lombardi, O'Brien and the Pifers.

### D.  Plaintiff Mulea's Claims for Unjust Enrichment and Money Had and Received Are Proper

DirecTV's sole argument with regard to Plaintiff Mulea's common law claims for unjust enrichment and money had and received is that Mulea had not yet, at the time of filing the original Complaint, paid the $200 fee assessed against him for "early cancellation" of his DirecTV satellite service.  Motion at 11.

As of the date of filing this Memorandum, Plaintiff Mulea has paid the $200 fee.  While Plaintiff Mulea maintains that the fee was assessed in violation of the law, he has paid the fee in full for the singular purpose of avoiding adverse effects to his credit score.

Mulea's payment of the $200 early cancellation fee moots DirecTV's argument regarding his unjust enrichment and money had and received claims. Plaintiffs, therefore, respectfully request that this Court deny DirecTV's motion in this regard and grant leave for Plaintiffs to amend their Complaint to include the fact of Plaintiff Mulea's payment.

1  **V.    <u>CONCLUSION</u>**

2         For the reasons stated above, Plaintiffs respectfully request that the Court

3  deny DirecTV's motion to dismiss and to strike certain allegations in the Complaint.

4  DATED: April 6, 2009                HULETT HARPER STEWART LLP

5                                      BLAKE MUIR HARPER
                                       SARAH P. WEBER
6

7
                                          */s/ Sarah P. Weber*
8

9                                      SARAH P. WEBER

10                                     525 B Street, Suite 760
11                                     San Diego, CA  92101
                                       Telephone:  (619) 338-1133
12                                     Facsimile:   (619) 338-1139

13
                                       Interim Lead Counsel for Plaintiffs
14

15                                     FINKELSTEIN THOMPSON LLP
                                       ROSEMARY M. RIVAS
16                                     DANIEL T. LEBEL
17                                     100 Bush Street, Suite 1450
                                       San Francisco, CA  94104
18                                     Telephone:  (415) 981-4800
19                                     Facsimile:   (415) 981-4846
                                       e-mail:
20                                            rrivas@finkelsteinthompson.com
21                                            dlebel@finkelsteinthompson.com

22                                     FINKELSTEIN THOMPSON LLP
23                                     DOUGLAS G. THOMPSON, JR.
                                       TRACY D. REZVANI
24                                     1050 30th Street, NW
25                                     Washington, DC  20007
                                       Telephone:  (202) 337-8000
26                                     Facsimile:   (202) 337-8090
                                       e-mail:
27                                            dthompson@finkelsteinthompson.com
                                              trezvani@finkelsteinthompson.com
28

                                          16

1
2
3
4
5
6
7

FREED & WEISS LLC
PAUL M. WEISS
JAMIE E. WEISS
GEORGE K. LANG
111 West Washington Street, Suite 1331
Chicago, IL  60602
Telephone:  (312) 220-0000
Facsimile:   (312) 220-7777
e-mail:       paul@freedweiss.com
                  jamie@freedweiss.com
                  george@freedweiss.com

8
9
10
11
12
13

LIEFF CABRASER HEIMANN
  & BERNSTEIN LLP
KRISTEN E. LAW
NIMISH R. DESAI
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008
e-mail:       klaw@lchb.com
                  ndesai@lchb.com

14
15
16
17
18
19

LIEFF CABRASER HEIMANN
  & BERNSTEIN LLP
JONATHAN D. SELBIN
780 Third Avenue, 48th Floor
New York, NY  10017-2024
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592
e-mail:       jselbin@lchb.com

20
21

Interim Class Counsel, Plaintiffs' Executive
Committee

22
23
24
25
26

RICHARD J. BURKE LLC
RICHARD J. BURKE
1010 Market Street, Suite 650
St. Louis, MO  63101
Telephone:  (314) 880-7000
Facsimile:   (314) 880-7777
e-mail:       rich@richardjburke.com

27
28

17

CARELLA BYRNE BAIN GILFILLAN
  CECCHI STEWART & OLSTEIN
JAMES E. CECCHI
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  (973) 994-1700
Facsimile:   (973) 994-1744
e-mail:       jcecchi@carellabyrne.com

LAW OFFICE OF ERIC STOPPENHAGEN
ERIC STOPPENHAGEN
285 Avenue C, Suite #MB
New York, NY  10009
Telephone:  (646) 594-8669
Facsimile:   (949) 258-5379

KABATECK BROWN KELLNER LLP
BRIAN S. KABATECK
RICHARD L. KELLNER
ALFREDO TORRIJOS
644 S. Figueroa Street
Los Angeles, CA  90017
Telephone:  (213) 217-5000
Facsimile:   (213) 217-5010
e-mail:       bsk@kbklawyers.com
             rlk@kbklawyers.com
             at@kbklawyers.com

SEEGER WEISS LLP
JONATHAN SHUB
1515 Market Street, Suite 1380
Philadelphia, PA  19102
Telephone:  (215) 564-2300
Facsimile:   (215) 851-8029
e-mail:       jshub@seegerweiss.com

Attorneys for Plaintiff Joseph Lombardi

18

1

2
        FEE SMITH SHARP & VITULLO LLP
        ANTHONY L. VITULLO

3
        Three Galleria Tower
        13155 Noel Road, Suite 1000

4
        Dallas, TX  75240

5
        Telephone:  (972) 934-9100
        Facsimile:   (972) 934-9200

6
        e-mail:       lvitullo@feesmith.com

7
        Attorneys for Plaintiffs Roberta and

8
        Edward Pifer

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19