1  Melissa D. Ingalls (State Bar No. 174861)
   mingalls@kirkland.com
2  Robyn E. Bladow (State Bar No. 205189)
   rbladow@kirkland.com
3  Shaun Paisley (State Bar No. 244377)
   spaisley@kirkland.com
4  KIRKLAND & ELLIS LLP
   777 South Figueroa Street
5  Los Angeles, California  90017
   Telephone:   (213) 680-8400
6  Facsimile:   (213) 680-8500

7  Attorneys for Defendant DIRECTV, Inc.

8

                    UNITED STATES DISTRICT COURT
9
                   CENTRAL DISTRICT OF CALIFORNIA
10

11

12  IN RE: DIRECTV EARLY                )  CASE NO. 08-CV-741 AG (ANx)
    CANCELLATION FEE LITIGATION         )
13                                      )  MEMORANDUM OF POINTS AND
                                        )  AUTHORITIES IN SUPPORT OF
14                                      )  DIRECTV'S MOTION TO DISMISS
                                        )  OR STAY PROCEEDINGS
15                                      )  PENDING ARBITRATION AND
    This Document Relates to:           )  TO COMPEL ARBITRATION
16                                      )
    PAUL CANNON and CHRISTINE           )
17  SCHUESSLER,                         )
                                        )  Judge:       Hon. Andrew J. Guilford
18                   Plaintiffs.        )  Hearing Date: September 21, 2009
                                        )  Hearing Time: 10:00 a.m.
19                                      )  Courtroom:   10D
                                        )
20  _____)

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................. 1

    A. Cannon Agreed To Arbitrate Disputes With DIRECTV. ......................... 2

    B. Schuessler Agreed To Arbitrate Disputes With DIRECTV. .................... 4

III. THIS COURT SHOULD COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS IN ACCORDANCE WITH THE PARTIES' ARBITRATION AGREEMENTS. .................................................................................................. 6

    A. The Customer Agreement Governs The Relationship Between DIRECTV And Plaintiffs. ........................................................................ 7

    B. The Customer Agreements Between Plaintiffs And DIRECTV Contain An Arbitration Clause. ................................................................ 8

    C. Plaintiffs' Claims Against DIRECTV Are Covered By Their Arbitration Provisions. ........................................................................... 8

    D. The Arbitration Clauses Are Binding And Enforceable Under The Laws of the Plaintiffs' Home States. ...................................................... 9

        1. The law of Plaintiffs' home states governs the enforceability of the arbitration clause................................................................ 10

            a. The Plaintiffs' home states have a substantial relationship to the parties and their contracts, and there is a reasonable basis for choosing Plaintiffs' home states' laws to apply................................................ 11

            b. California does not have a fundamental policy interest in having its laws apply to out-of-state residents engaged in transactions in their home states. ..................... 12

            c. California does not have a materially greater interest than Plaintiffs' home states of New York and Illinois in determining the enforceability of their arbitration agreements. ....................................................................... 13

        2. Cannon's arbitration agreement with DIRECTV is enforceable under New York law. ............................................... 16

            a. Cannon did not lack a meaningful choice in agreeing to arbitrate disputes like this one with DIRECTV. ............ 16

            b. The parties' arbitration agreement does not unreasonably favor DIRECTV. ........................................... 18

        3. Schuessler's arbitration agreement with DIRECTV is

enforceable under Illinois law. ...................................................20

    a.    Schuessler's arbitration agreement is not procedurally unconscionable. ...................................................20

    b.    Schuessler's arbitration agreement is not substantively unconscionable. ...................................................22

IV.    CONCLUSION...................................................24

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*ABF Capital Corp. v. Berglass,*
130 Cal. App. 4th 825 (2005) .................................................................... 11

*Advanced Med. and Alternative Care v. N.Y. Energy Savings Corp.,*
No. 9693/08, 2008 WL 5235390 (N.Y. Sup. Ct. Dec. 15, 2008) ...................... 17

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
475 U.S. 643 (1986) ............................................................................ 7, 9

*Bess v. DIRECTV, Inc.,*
885 N.E.2d 488 (Ill. App. 2008) ................................................................. 21

*Bischoff v. DIRECTV, Inc.,*
180 F. Supp. 2d 1097 (C.D. Cal. 2002) .......................................................... 7

*Boomer v. AT &T Corp.,*
309 F.3d 404 (7th Cir. 2002) ...................................................................... 7

*Brower v. Gateway 2000, Inc.,*
676 N.Y.S.2d 569 (N.Y. App. Div. 1998) ................................................. 17, 18

*Coneff v. AT & T Corp.,*
620 F. Supp. 2d 1248 (W.D. Wash. 2009) ..................................................... 15

*Crandall v. AT & T Mobility, LLC,*
Civil No. 07-750-GPM, 2008 WL 2796752 (S.D. Ill. July 18, 2008) .............. 24

*Dees v. Billy,*
394 F.3d 1290 (9th Cir. 2005) ..................................................................... 6

*Discover Bank v. Super. Ct.,*
134 Cal. App. 4th 886 (2005) .................................................................... 12

*Gillman v. Chase Manhattan Bank, N.A.,*
534 N.E.2d 824 (N.Y. 1988) ............................................................... 16, 18

*Harris v. The DIRECTV Group, Inc.,*
No. 07 C 3650, 2008 WL 342973 (N.D. Ill. Feb. 5, 2008) ........................ 21, 23

*Hayes v. County Bank,*
811 N.Y.S.2d 741 (N.Y. App. Div. 2006) ...................................................... 20

*Heiden v. Galva Foundry Co.,*
584 N.E.2d 518 (Ill. App. Ct. 1991) ............................................................. 9

*Howie v. Atl. Home Inspection, Inc.,*
No. 02-379, 2003 WL 23162330 (Va. Cir. Ct. June 17, 2003) .......................... 16

*In re Jamster Mktg. Litig.*,
  No. 05-CV-0819 JM (CAB), 2008 WL 4858506 (S.D. Cal. Nov. 10,
  2008) ............................................................................................................ 13, 15

*Johnson v. Chase Manhattan Bank USA, N.A.*,
  Index No. 603101/02, 2004 WL 413213, 5 (N.Y. Sup. Ct. Feb. 27,
  2004) ............................................................................................................ 7, 17

*Jones v. Star Credit Corp.*,
  298 N.Y.S.2d 264 (N.Y. Sup. Ct. 1969) ...................................................... 16

*Kinkel v. Cingular Wireless LLC*,
  857 N.E.2d 250 (Ill. 2006) ............................................................ 20, 22, 23

*Klussman v. Cross Country Bank*,
  134 Cal. App. 4th 1283 (2005) ........................................................ 12, 13, 14

*Maxwell v. Fid. Fin. Servs., Inc.*,
  907 P.2d 51 (Ariz. 1995) ............................................................................. 22

*McGinnis v. T-Mobile USA, Inc.*,
  No. C08-1062, 2008 WL 2858492 (W.D. Wash. July 22, 2008) ............... 14, 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ....................................................................................... 6, 8

*Oestreicher v. Alienware Corp.*,
  322 Fed. Appx. 489 (9th Cir. 2009) ............................................................ 14

*Omstead v. Dell, Inc.*,
  533 F. Supp. 2d 1012  (N.D. Cal. 2008) ..................................................... 10

*Pivoris v. TCF Fin. Corp.*,
  No. 07 C 2673, 2007 WL 4355040 (N.D. Ill. Dec. 7, 2007) ...................... 24

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967) ...................................................................................... 7

*Ramette v. AT&T Corp.*,
  812 N.E.2d 504 (Ill. App. Ct. 2004) ...................................................... 7, 22

*Ranieri v. Bell Atl. Mobile*,
  759 N.Y.S.2d 448 (N.Y. App. Div. 2003) ............................................ 16, 18, 19

*Razor v. Hyundai Motor Am.*,
  854 N.E.2d 607 (Ill. 2006) .......................................................................... 20

*Schreiber v. K-Sea Transp. Corp.*,
  814 N.Y.S.2d 124 (N.Y. App. Div. 2006) ................................................... 10

*Smith Barney, Inc. v. Hause*,
  655 N.Y.S.2d 489 (N.Y. App. Div. 1997) .................................................... 8

*Sparling v. Hoffman Constr. Co.*,
  864 F.2d 635 (9th Cir. 1988) ....................................................................... 6

*The Andersons, Inc. v. Walker*,
    573 F. Supp. 2d 1065 (C.D. Ill. 2008) ...................................................10

*Tsadilas v. Providian Nat'l Bank*,
    786 N.Y.S.2d 478 (N.Y. App. Div. 2004) ...........................................19

*Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*,
    457 F.3d 1106 (9th Cir. 2006) .............................................................10

*Wash. Mut. Bank, F.A. v. Super. Ct.*,
    24 Cal. 4th 906 (2001) ..................................................................11, 12

*Zobrist v. Verizon Wireless*,
    822 N.E.2d 531 (Ill. App. Ct. 2004) .....................................................20

**STATUTES**

9 U.S.C. § 2 ...............................................................................................7, 10

9 U.S.C. § 3 .................................................................................................6, 7

9 U.S.C. § 4 ....................................................................................................6

**OTHER AUTHORITIES**

83 Am. Jur. Proof of Facts 3d 1, § 72 (2008) ..........................................19

Restatement (Second) of Conflict of Laws § 187 ......................................11

## I.     INTRODUCTION

Plaintiffs Paul Cannon ("Cannon") and Christine Schuessler ("Schuessler") (collectively, "Plaintiffs") were DIRECTV subscribers whose relationships with DIRECTV have always been governed by the DIRECTV Customer Agreement. Pursuant to that agreement, Plaintiffs and DIRECTV agreed to resolve their disputes through binding arbitration. They also agreed that the laws of the state in which Plaintiffs received their DIRECTV service—New York for Cannon and Illinois for Schuessler—would govern the parties' relationship.

Rather than commence arbitration pursuant to their Customer Agreements, Plaintiffs have joined several other claimants in a consolidated action on behalf of themselves, a putative nationwide class of consumers (excluding Florida and Virginia), and putative Florida and Virginia classes of consumers, challenging the prorated fee they incurred after they chose not to fulfill their agreements to purchase DIRECTV programming for a certain period of time. But Plaintiffs cannot proceed in this Court because they contractually agreed to resolve all disputes with DIRECTV, including this one, through binding arbitration. Plaintiffs' arbitration agreements are enforceable under the laws of New York and Illinois. Therefore, under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-4, this Court should enforce the parties' arbitration agreement by compelling arbitration of Plaintiffs' claims, and should dismiss the First Amended Consolidated Complaint ("Complaint") insofar as it states claims on Plaintiffs' behalf.

## II.    BACKGROUND

To obtain digital television services from DIRECTV, a potential subscriber first acquires, typically from DIRECTV or an independent equipment dealer, the equipment necessary to receive DIRECTV's satellite signal. *See* Declaration of Valerie McCarthy (McCarthy Decl.) ¶ 2. The potential customer then becomes a subscriber by electing to receive various of DIRECTV's services. After the equipment is installed, DIRECTV activates the subscriber's services, and the customer

1    begins to receive programming.  *Id.*

2         The relationship between DIRECTV and each customer is governed by a

3    written contract (the "Customer Agreement") that is available on DIRECTV's website

4    and is mailed to each customer along with his or her first billing statement.  *Id.* ¶¶ 3, 4.

5    The Customer Agreement sets forth the parties' rights and obligations and explains the

6    terms and conditions of subscribing to DIRECTV.  *Id.* ¶ 3.

7         **A.    Cannon Agreed To Arbitrate Disputes With DIRECTV.**

8         Cannon, a New York resident, began subscribing to DIRECTV's services on or

9    about May 12, 2001, at which time DIRECTV's Customer Agreement was available

10   on DIRECTV's website, www.directv.com.  *Id.* ¶¶ 3, 6.  DIRECTV mailed Cannon

11   his first billing statement on or about May 13, 2001, and included with his first

12   statement a copy of the DIRECTV Customer Agreement then in effect.  *Id.* ¶ 6, Ex. A

13   (1999 Customer Agreement).  That Customer Agreement specified that Cannon would

14   accept its terms if he continued to receive, and did not cancel, DIRECTV's services.

15   Ex. A, Intro.  The Customer Agreement further provided that it could be replaced by

16   subsequent, updated Customer Agreements, and that Cannon would accept the

17   updated terms of any subsequent Customer Agreement in the same manner—by

18   continuing to accept DIRECTV services.  *Id.*, § 4.  Cannon's Customer Agreement

19   with DIRECTV also contained an arbitration provision.  *Id.*, § 8.  After receiving the

20   Customer Agreement, Cannon did not dispute any of its terms or conditions and did

21   not cancel his DIRECTV services.  McCarthy Decl. ¶ 6.

22        Over the next several years, Cannon received updated Customer Agreements

23   with his September 13, 2001 and May 13, 2006 billing statements.  *Id.* ¶ 7; Ex. B

24   (2001 Customer Agreement); Ex. D (2006 Customer Agreement).  These updated

25   Customer Agreements also contained arbitration provisions substantially similar to

26   those contained in Cannon's original Customer Agreement.  Exs. B, § 8, D, § 9.  After

27   receiving the 2001 and 2006 Customer Agreements, Cannon neither disputed any of

28   their terms or conditions, nor canceled his DIRECTV services.  McCarthy Decl. ¶ 7.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In October 2006, Cannon cancelled his DIRECTV service.  *Id.* ¶ 7.  Then, in March 2009, Cannon again reactivated his DIRECTV service.  *Id.* ¶ 8.  Cannon's equipment was installed on April 25, 2009, and in connection with the installation of his equipment, he signed the DIRECTV Equipment Lease Addendum.  *Id.*; *see also* Ex. F.  In connection with obtaining this new equipment and installation, Cannon agreed to purchase a minimum level of DIRECTV programming for twenty-four months, or, in the alternative, to pay a prorated fee for early cancellation.  Ex. F.  He also confirmed his agreement to arbitrate his disputes with DIRECTV according to the terms of his DIRECTV Customer Agreement.  *Id.* ("You and DIRECTV agree that both parties will resolve any dispute arising under this Equipment Lease Addendum, the DIRECTV Customer Agreement or any other addendum thereto, or regarding your DIRECTV programming service, through binding arbitration as fully set forth in the DIRECTV Customer Agreement.").  Cannon did not object to the terms of the Lease Addendum and proceeded to activate his DIRECTV receiver on April 25, 2009.  McCarthy Decl. ¶ 8.

Cannon's Customer Agreement with DIRECTV requires him to arbitrate "any legal or equitable claim relating to this Agreement, any addendum, or your Service" and to arbitrate on an individual basis.  Ex. D, § 9(b)-(c)(ii) ("Neither you nor we shall be entitled to join or consolidate claims . . . as a representative member of a class.").  The Customer Agreement further provides that the arbitration provision "shall be governed by the Federal Arbitration Act."  *Id.* § 10(b).  The Customer Agreement has always specified that the state in which the customer received service would govern the agreement.  Exs. A-B § 9(b), D § 10(b).

Cannon later chose not to fulfill his programming commitment and instead canceled his service on May 1, 2009.  *Id.* ¶ 9.  Because Cannon canceled his service before fulfilling the programming commitment associated with the new receiver, DIRECTV assessed a prorated early cancellation fee as contemplated by Section 5(b) of the Customer Agreement, and as confirmed in the Lease Addendum.  *Id.*; Ex. D, §

-3-

5(b); Ex. F.

**B.     Schuessler Agreed To Arbitrate Disputes With DIRECTV.**

Schuessler, an Illinois resident, began subscribing to DIRECTV's services on or about March 28, 2003, at which time DIRECTV's Customer Agreement was available on DIRECTV's website, www.directv.com.  *Id.* ¶¶ 3, 10.  DIRECTV mailed Schuessler her first billing statement on or about March 29, 2003, and included with her first statement a copy of the DIRECTV Customer Agreement then in effect.  *Id.* ¶ 10, Ex. B.  Schuessler's Customer Agreement with DIRECTV specified that Schuessler would accept its terms by accepting, and not canceling, DIRECTV's services.  Ex. B, Intro.  The Customer Agreement further provided that it could be replaced by subsequent, updated Customer Agreements, and that Schuessler would accept the updated terms of any subsequent Customer Agreement in the same manner—by continuing to accept DIRECTV services.  *Id.*, § 4.  Schuessler's Customer Agreement with DIRECTV also contained an arbitration provision.  *Id.*, § 8.  After receiving the Customer Agreement, Schuessler did not dispute any of its terms or conditions and did not cancel her DIRECTV services.  McCarthy Decl. ¶ 10.

Over the next several years, Schuessler received updated Customer Agreements along with her October 29, 2004 and May 29, 2006 billing statements.  *Id.* ¶ 11; Exs. C & D.  These updated Customer Agreements also contained arbitration provisions substantially similar to her original Customer Agreement.  Exs. C & D, § 9.  After receiving the 2004 and 2006 Customer Agreements, Schuessler neither disputed any of their terms or conditions, nor canceled her DIRECTV services.  McCarthy Decl. ¶ 11.

In May of 2007, Schuessler received an updated DIRECTV Customer Agreement with her monthly billing statement.  *Id.* ¶ 11.  Like its predecessors, the 2007 Customer Agreement made clear how Cannon would accept any updated terms—by continuing to accept service from DIRECTV:

**THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS**

-4-

**OF YOUR RECEIPT AND PAYMENT OF DIRECTV® SERVICE
AND IS SUBJECT TO ARBITRATION (SECTION 9).  IF YOU DO
NOT ACCEPT THESE TERMS, PLEASE NOTIFY US
IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE.  IF
YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL
MEAN THAT YOU ACCEPT THESE TERMS AND THEY WILL BE
LEGALLY BINDING.**

Ex. E, Intro. (bold/capital emphasis in original).  After receiving the 2007 Customer Agreement, Schuessler did not dispute any updated terms or conditions or cancel her DIRECTV services.  McCarthy Decl. ¶ 11.  The 2007 Customer Agreement contains the same arbitration provision to which Schuessler previously agreed, requiring her to arbitrate "any legal or equitable claim relating to this Agreement, any addendum, or your Service" and to arbitrate these claims on an individual basis.  Ex. E, § 9(b)-(c)(ii).  The Customer Agreement also specified that Schuessler's home state's laws would govern the agreement.  *Id.*, § 10(b).

After almost five years of subscribing to DIRECTV services, and agreeing to the terms and conditions of receiving those services, Schuessler decided to upgrade her account by adding a HD-DVR receiver to her service.  McCarthy Decl. ¶ 12.  As with the other Plaintiffs, Schuessler agreed to a programming commitment in connection with her activation of the upgraded receiving equipment, and the possibility of a fee in the event she decided not to fulfill that commitment.  On March 13, 2008, Schuessler activated the new HD-DVR receiver.  *Id.*

Instead of fulfilling her programming commitment, Schuessler chose to cancel her DIRECTV service on January 9, 2009.  McCarthy Decl. ¶ 11.  Because Schuessler canceled her service before fulfilling the programming commitment associated with the new receiver, DIRECTV assessed a prorated early cancellation fee as contemplated by Section 5(b) of the Customer Agreement.  *Id.* ¶ 13; Ex. E, § 5(b).

On June 9, 2009, Cannon and Schuessler joined in filing a consolidated putative

class action complaint against DIRECTV in this court,[1] disregarding their agreements to arbitrate disputes like this one.

## III.   THIS COURT SHOULD COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS IN ACCORDANCE WITH THE PARTIES' ARBITRATION AGREEMENTS.

Because the FAA reflects a strong policy favoring arbitration of disputes, arbitration provisions governed by the FAA are to be liberally enforced.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (stating that the FAA is "a congressional declaration of a liberal federal policy favoring arbitration agreements").  Section 3 of the FAA provides that, when a plaintiff sues "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court "shall" stay the action until arbitration is completed in accordance with the terms of the parties' agreement.  *See* 9 U.S.C. § 3.  Although Section 3 refers to staying proceedings, dismissal is appropriate when none of the plaintiffs' claims remains to be resolved and there is no reason to stay the proceedings pending the arbitration.  *See Dees v. Billy*, 394 F.3d 1290, 1292 (9th Cir. 2005); *see also Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (upholding dismissal of action where all claims were subject to arbitration).  Section 4 of the FAA, in turn, empowers the Court to compel arbitration according to the parties' agreement.  *See* 9 U.S.C. § 4.  When a contract contains an arbitration clause and the dispute comes within the scope of that clause, a federal court must compel arbitration and dismiss or stay the action pending arbitration, unless the party opposing arbitration proves that the agreement is

---

[1] Cannon and Schuessler are two of five new plaintiffs added in the First Amended Consolidated Complaint filed by original Plaintiffs Annette Kahaly, Joseph Lombardi, John Mulea, Kathleen O'Brien, Roberta and Edward Pifer, and Maureen Van Meter. Following this Court's dismissal of California claims asserted by Lombardi, O'Brien, and the Pifers (Dkt. No. 66), DIRECTV renewed its motion to compel arbitration of those plaintiffs' amended claims under Florida and Virginia law on June 26, 2009 (Dkt. No. 81).  That motion has now been fully briefed and argued.

1  unenforceable.  *See* 9 U.S.C. §§ 2-4; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,

2  388 U.S. 395, 400 (1967).  Here, the contracts between Plaintiffs and DIRECTV

3  contain agreements to arbitrate, and Plaintiffs' claims come within the provisions'

4  broad scope.  Because the agreements are valid and enforceable, this Court should

5  compel arbitration and dismiss or stay these proceedings as they relate to these

6  Plaintiffs.

7  **A.      The Customer Agreement Governs The Relationship Between**

8  **          DIRECTV And Plaintiffs.**

9           An agreement that becomes effective when the customer opts to continue

10  accepting service after an opportunity to review and reject the agreement is binding.

11  *See Johnson v. Chase Manhattan Bank USA, N.A.*, Index No. 603101/02, 2004 WL

12  413213, at *1, 5 (N.Y. Sup. Ct. Feb. 27, 2004) (consumer accepted terms and

13  conditions of credit card agreement by using credit card after receiving the agreement

14  in the mail); *Ramette v. AT&T Corp.*, 812 N.E.2d 504, 515 (Ill. App. Ct. 2004)

15  (customer's silence and continued use of long-distance service after receiving

16  agreement in the mail constituted acceptance of the agreement, including arbitration

17  clause); *see also Boomer v. AT &T Corp.*, 309 F.3d 404, 414-16 (7th Cir. 2002)

18  (same); *Bischoff v. DIRECTV, Inc.*, 180 F. Supp. 2d 1097, 1103-04 (C.D. Cal. 2002)

19  (holding that DIRECTV subscriber accepted terms of Customer Agreement, including

20  arbitration provision, that was mailed to him after he subscribed over the telephone).

21           In this case, DIRECTV mailed both Plaintiffs the Customer Agreement with

22  their first bills, and each time DIRECTV updated the Customer Agreement while

23  Plaintiffs were customers, DIRECTV provided the updated version to them as well.

24  *See* McCarthy Decl. ¶¶ 6-7, 10-11.  Plaintiffs manifested their acceptance of their

25  Customer Agreements and their terms, including the arbitration provision and choice-

26  of-law provision, when they decided to accept—instead of cancel—DIRECTV

27  services after receiving the Customer Agreement.  Accordingly, the Customer

28  Agreements governed Plaintiffs' relationships with DIRECTV at the time they opted

-7-

not to fulfill their programming commitments and instead incur early cancellation fees, and therefore govern this dispute.

### B. The Customer Agreements Between Plaintiffs And DIRECTV Contain An Arbitration Clause.

Plaintiffs' Customer Agreements with DIRECTV contain an arbitration provision, which is set off in its own separate paragraph beneath the bold-print, capital letter heading "**RESOLVING DISPUTES**", and provides that all disputes "relating to" the Customer Agreement, any addendum, or to DIRECTV services, and not resolved informally, are subject to binding arbitration:

> In order to expedite and control the cost of disputes, you and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows:
>
> . . .
>
> [I]f we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration.  The arbitration will be conducted under the rules of JAMS that are in effect at the time the arbitration is initiated . . . and under the rules set forth in this Agreement.

Exs. D-E, § 9(b).  Having shown the existence of an arbitration agreement, the next inquiry is whether Plaintiffs' claims here fall within its scope.

### C. Plaintiffs' Claims Against DIRECTV Are Covered By Their Arbitration Provisions.

Given the strong policy favoring arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone*, 460 U.S. at 24-25; *see also Smith Barney, Inc. v. Hause*, 655 N.Y.S.2d 489, 491 (N.Y. App. Div. 1997) (when courts determine "whether the parties decided to submit a certain question to arbitration a presumption exists in favor of resolving any ambiguity in favor of arbitration"); *Heiden v. Galva Foundry Co.*, 584 N.E.2d 518,

522 (Ill. App. Ct. 1991) (noting that "[d]oubts regarding the scope of arbitrable issues ought to be resolved in favor of arbitration").  The arbitration clauses here extend to "any legal or equitable claim relating to this Agreement, any addendum, or [Plaintiffs'] service."  Exs. D-E, § 9.  When parties use such expansive phrasing, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Plaintiffs' claims here relate to both their Customer Agreements and their DIRECTV service.  First, Plaintiffs allege that DIRECTV's assessment, collection, or "imposition" of early cancellation fees violate California's Unfair Competition Law and Consumers Legal Remedies Act, New York's Deceptive Acts and Practices law, and Illinois' Consumer Fraud and Deceptive Business Practices Act, and/or constitute unjust enrichment, money had and received, and an unlawful liquidated damages assessment.  *See, e.g.*, Compl. ¶¶ 73, 77, 89, 110, 134, 141, 144.  These claims "relate to" the Customer Agreements because the Agreements include a section related to the cancellation of service, which explains that Plaintiffs can be charged an early cancellation fee.  *See* Exs. D-E, § 5(b).  Second, Plaintiffs' claims also "relate to" their DIRECTV service because, among other reasons, it was Plaintiffs' cancellation of their DIRECTV programming service that triggered the assessment of the fees.  Plaintiffs also seek declaratory relief regarding the parties' rights and obligations under the Customer Agreement (Compl. ¶ 150), a claim which, by definition, "relates to" the Agreement.  Because Plaintiffs' claims "relate to" their DIRECTV service and their Customer Agreements, the claims fall within the scope of the parties' arbitration agreements.

**D.     The Arbitration Clauses Are Binding And Enforceable Under The Laws Of The Plaintiffs' Home States.**

Once the arbitration proponent has established that there is a valid arbitration agreement and that the dispute comes within the agreement's scope, the party

opposing arbitration has the burden of proving why the matter should not be arbitrated. *See Schreiber v. K-Sea Transp. Corp.*, 814 N.Y.S.2d 124, 134 (N.Y. App. Div. 2006) (noting that the party opposing arbitration "bears the ultimate burden of proving that the contract is unenforceable"); *The Andersons, Inc. v. Walker*, 573 F. Supp. 2d 1065, 1070 (C.D. Ill. 2008) (noting that "the party opposing arbitration bears the burden of establishing that the arbitration clause should not be enforced"). The FAA is clear that arbitration provisions may not be judged more harshly than other contracts. *See* 9 U.S.C. § 2 (arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). Thus, arbitration agreements will be enforced unless they are invalid under state law principles of contract formation applicable to all contracts.

Plaintiffs allege that the arbitration provisions contained in their Customer Agreements are unconscionable—and thus unenforceable—in part because they include an express waiver of class action procedures in arbitration. *See* Compl. ¶ 80. But New York and Illinois law, which, as explained below, govern this dispute, both enforce arbitration provisions like those at issue here.

### 1.     The law of Plaintiffs' home states governs the enforceability of the arbitration clause.

DIRECTV and Plaintiffs agreed that the law of Plaintiffs' home states—New York for Cannon and Illinois for Schuessler—would govern the "interpretation and enforcement" of the Customer Agreement. *See* Exs. D-E, § 10(b). As a federal court sitting in diversity jurisdiction, this Court applies California choice-of-law principles to determine whether or not to give force to the parties' contractual choices of New York law or Illinois law. *See Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1111 (9th Cir. 2006). In so determining, "California courts follow Restatement (Second) of Conflict of Laws ("Restatement") § 187(2), which reflects a strong policy favoring the enforcement of such provisions." *Omstead v. Dell, Inc.*, 533 F. Supp. 2d 1012, 1014 (N.D. Cal. 2008). Under the Restatement standard,

choice-of-law agreements should be enforced unless either (a) "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or (b) "application of the law of the chosen state would be contrary to a fundamental public policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue . . . ."  Restatement § 187(2).  The Restatement standard, and the strong policy favoring the enforcement of choice-of-law provisions, apply equally to all contracts, including consumer contracts of adhesion.  *See Wash. Mut. Bank, F.A. v. Super. Ct.*, 24 Cal. 4th 906, 917 (2001).  Accordingly, the Ninth Circuit recently enforced, under the same Restatement test, a substantially identical choice-of-law provision in the T-Mobile customer agreement, which also selects the law of the customer's home state to apply.  *See In re Detwiler*, No. 08-72823, 2008 WL 5213704, at *1-2 (9th Cir. Dec. 12, 2008).

> **a.    The Plaintiffs' home states have a substantial relationship to the parties and their contracts, and there is a reasonable basis for choosing Plaintiffs' home states' laws to apply.**

Plaintiffs cannot dispute that their home states of New York and Illinois have a substantial relationship to the parties and the transactions in question, and are a reasonable choice.  That Cannon is a New York resident (Compl. ¶ 18) and Schuessler is an Illinois resident (Compl. ¶ 20) is by itself sufficient to provide a reasonable basis for the parties' choices of New York and Illinois law.  *See ABF Capital Corp. v. Berglass*, 130 Cal. App. 4th 825, 834-35 (2005) ("That one of the parties resides in a foreign state gives the parties a reasonable ground for choosing that state's law.").

Moreover, both Cannon and Schuessler activated their DIRECTV receivers in their home states (McCarthy Decl. ¶¶ 6, 10), received their DIRECTV service in their home states (Compl. ¶¶ 18, 20), received their DIRECTV bills in their home states, and entered into their Customer Agreements in their home states (McCarthy Decl. ¶¶

6, 10-11).  Furthermore, DIRECTV does business throughout New York and Illinois.  *Id.* ¶ 2.

Having shown a substantial relationship and a reasonable basis for the chosen law, the burden shifts to Plaintiffs to prove both that a fundamental policy interest is implicated and that California has a materially greater interest than the chosen states in determining the enforceability of their arbitration agreements.

> **b.      California does not have a fundamental policy interest in having its laws apply to out-of-state residents engaged in transactions in their home states.**

Plaintiffs cannot meet their burden of establishing that applying New York or Illinois law would violate a fundamental policy of California.  *See Wash. Mut.*, 24 Cal. 4th at 917 (after substantial relationship is established, burden shifts to party opposing choice-of-law provision).  Although California would not enforce the arbitration provision here, and the contractually chosen states of New York and Illinois would, the existence of a conflict by itself does not satisfy the "fundamental" policy aspect of the Restatement test.  *See Klussman v. Cross Country Bank*, 134 Cal. App. 4th 1283, 1294 (2005) (requiring "an evaluation of whether this conflict implicates a fundamental public policy in California.").  In fact, California courts enforce contractual choice-of-law provisions even when the law of the chosen state would enforce a class action waiver that would otherwise be unenforceable under California law.  *See Discover Bank v. Super. Ct.*, 134 Cal. App. 4th 886, 892-93 (2005) (upholding Delaware choice-of-law provision even though Delaware law enforces class arbitration waivers and California law often does not).

To the extent California courts have found that California has a fundamental policy in protecting the ability to assert claims on behalf of putative classes, those cases have been limited to claims brought by and on behalf of California residents.  *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1084 (9th Cir. 2009) (California's public policy against consumer class action waivers "applies to ***California residents*** bringing

-12-

class action claims under California consumer law. ***As to such California resident plaintiffs*** . . . California public policy is violated by forcing such plaintiffs to waive their rights to a class action and remedies under California consumer law."); *Klussman*, 134 Cal. App. 4th at 1297-98 (holding that application of Delaware law enforcing class action waivers would be contrary to a fundamental policy of California where "plaintiffs seek to represent only California residents, not a nationwide class" and where "the adhesion contract concerns California consumers").

Here, Cannon is a New York resident whose dealings with DIRECTV took place entirely in New York, and Schuessler is an Illinois resident whose dealings with DIRECTV all occurred in Illinois. Accordingly, this Court should not extend any "fundamental" California policy interest to the enforcement of an arbitration clause agreed to by these out-of-state consumers in their home states under their home states' laws. Because no fundamental policy interest is implicated here, the parties' choice of law should be enforced, and the Court need not reach the "materially greater interest" prong of the test.

> **c.** **California does not have a materially greater interest than Plaintiffs' home states of New York and Illinois in determining the enforceability of their arbitration agreements.**

Nor can Plaintiffs show, as they must, that California has a materially greater interest than New York or Illinois in determining the enforceability of the arbitration provisions at issue. In California, factors relevant to assessing the materially greater interest aspect of the Restatement test include the place of negotiation of the contract, the place of performance of the contract, the location where the alleged wrong occurred, and the residence of the parties. *See In re Jamster Mktg. Litig.*, No. 05-CV-0819 JM (CAB), 2008 WL 4858506, at *3 (S.D. Cal. Nov. 10, 2008). Here, Cannon entered into his contract with DIRECTV in New York, performed his contract (made payment and received service) in New York, and incurred the allegedly wrongful

1  early cancellation fee in New York.  Similarly, Schuessler entered into and performed

2  her contract with DIRECTV in Illinois, and incurred the early cancellation fee that she

3  now contests in Illinois.  None of the relevant Restatement factors therefore weighs in

4  favor of the application of California law.

5         Indeed, the only factor even arguably weighing in favor of California is

6  DIRECTV's California domicile, but this factor is offset by Plaintiffs' status as New

7  York and Illinois residents.  Nonetheless, Plaintiffs will argue that California's interest

8  in regulating the conduct of its resident corporations, including DIRECTV, materially

9  outweighs the interests of both New York and Illinois in their consumers.  But that is

10 the wrong inquiry under the Restatement test.  The question is whether California has

11 a materially greater interest in the particular issue—the enforceability of the

12 arbitration provisions—not whether it has interests in controlling corporate actors.

13 *See McGinnis v. T-Mobile USA, Inc.*, No. C08-1062, 2008 WL 2858492, at *3 (W.D.

14 Wash. July 22, 2008) (noting that "[t]he issue is not whether Washington has a

15 materially greater interest in using the Washington CPA to control the actions of its

16 corporate citizens in Georgia than Georgia has in protecting its resident consumers

17 under the Georgia FBPA.  Rather, it is whether Washington has a materially greater

18 interest than Georgia does in determining what type of arbitration provisions are valid

19 . . . .").

20        In any event, California courts have rejected the argument that regulating

21 corporations is a significant interest under the Restatement test, let alone one that

22 renders California's interests materially greater than those of the consumer's home

23 state.  *See, e.g., Oestreicher v. Alienware Corp.*, 322 Fed. Appx. 489, 491 (9th Cir.

24 2009) (holding that consumer's home state had greater interest than corporation's

25 home state because the corporation's home state's interest "while not inconsequential,

26 is limited to enforcement of contractual provisions made by one of its corporate

27 citizens"); *Klussman*, 134 Cal. App. 4th at 1299 (one state's interest in "more general

28 matters of corporate regulation" was materially outweighed by that of another state

with "a number of significant contacts with the subject matter of [the] action").

Indeed, courts have consistently recognized that when consumers enter into standardized contracts with businesses for goods and services delivered to the consumer's home state, the consumer's home state is the state with the greater interest. *See Detwiler*, 2008 WL 5213704, at *1 (concluding that Florida, the consumer's home state, was "the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the residence of one of the parties" and dismissing Washington's interests as the state of defendant's incorporation); *McGinnis*, 2008 WL 2858492, at *3 (holding that the interest of consumer's home state "outweighs whatever interest [the defendant's state of incorporation] Washington has" in the issues); *In re Jamster Mktg. Litig.*, 2008 WL 4858506, at *3 (holding that all of the relevant factors in the materially greater interest analysis "weigh in favor of applying the law of plaintiffs' residence").[2]

Here, Plaintiffs cannot meet their heavy burden of establishing that California has a materially greater interest than either New York or Illinois in deciding whether arbitration agreements agreed to by New York and Illinois residents are enforceable. Accordingly, this Court should enforce the parties' contractual choice of law and

---

[2] Ignoring *McGinnis* and purporting to distinguish *Detwiler*, a district court in Washington recently decided, under Washington law and against the great weight of authority, that a corporation's home state had a materially greater interest than the consumer's home state selected by the parties to govern their contract, relying solely on the "domicile" factor of the test. *Coneff v. AT & T Corp.*, 620 F. Supp. 2d 1248, 1253-54 (W.D. Wash. 2009). The only basis on which *Coneff* "distinguishes" *Detwiler* is that the *Detwiler* plaintiff contacted and received documents from the corporation on a number of occasions. *Id.* *Coneff* nowhere explains the relevance of this fact, which was not a factor relied upon or even mentioned by the Ninth Circuit in the *Detwiler* choice-of-law analysis, and, in any event, the Plaintiffs here have had multiple contacts with DIRECTV. *See* Section II.A-B, *supra*. Moreover, if, as *Coneff* suggests, courts may simply dismiss all other Restatement factors as "hav[ing] no compelling effect" and consider the corporation's domicile alone as dispositive (*Coneff*, 620 F. Supp. 2d at 1255), the multi-factor materially greater interest analysis would be rendered meaningless, as would the threshold "reasonable basis" part of the Restatement test. *Coneff* is currently on appeal. *See* Notice of Appeal (Dkt. No. 202), Case No. C06-944 RSM (W.D. Wash.).

apply New York and Illinois law to determine the enforceability of the parties' arbitration agreements.

### 2. Cannon's arbitration agreement with DIRECTV is enforceable under New York law.

Under New York law, an unconscionable contract is "one which 'is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'"  *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988) (citations omitted). Generally, New York law requires the party attempting to invalidate a contract for unconscionability to establish both that he lacked a meaningful choice in entering the contract (procedural unconscionability), and that the contract terms were unreasonably favorable to the other party (substantive unconscionability).[3]  *Id.*  Cannon cannot meet this burden here.

### a. Cannon did not lack a meaningful choice in agreeing to arbitrate disputes like this one with DIRECTV.

Under New York law, procedural unconscionability occurs when a party lacks a meaningful choice about whether to enter into the contract in question.  *Id.* Determining whether a contract is procedurally unconscionable "requires an examination of the contract formation process."  Factors relevant to the analysis include "whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power."  *Id.*; *see also Ranieri v. Bell Atl. Mobile*, 759 N.Y.S.2d 448, 449 (N.Y. App. Div. 2003).

---

[3] Excluded from this general rule are the few "exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone."  *Gillman*, 534 N.E.2d at 829.  *See, e.g., Jones v. Star Credit Corp.* 298 N.Y.S.2d 264 (N.Y. Sup. Ct. 1969) (extreme substantive unconscionability alone enough to invalidate contract where business deceived a family receiving welfare into agreeing to purchase a $300 refrigerator for over $1400).

Here, nothing about the formation of the agreement to arbitrate suggests that it is procedurally unconscionable.  DIRECTV did not hide the arbitration provision in fine print, and the terms of the arbitration agreement are not unduly complex.  To the contrary, the Customer Agreement notifies the customer in the Introduction in bold, capitalized text that the Agreement contains an arbitration provision.  *See, e.g.,* Ex. D, Intro. (stating that the Agreement is "**SUBJECT TO ARBITRATION (SECTION 9).**").  The arbitration provision itself has always been set off in its own section under the capitalized, bolded, stand-alone heading "**RESOLVING DISPUTES**."  *See* Exs. A-B, § 8(b); Ex. D, § 9(b).  And this section has also always emphasized in capitalized, bolded lettering, and in plain language, the meaning of the arbitration agreement:  "**ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL.**"  *See id.*; *Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569, 573 (N.Y. App. Div. 1998) (no procedural unconscionability where arbitration clause was in same size print as rest of the agreement); *Advanced Med. & Alternative Care, P.C. v. N.Y. Energy Savings Corp.*, No. 9693/08, 2008 WL 5235390, at *5 (N.Y. Sup. Ct. Dec. 15, 2008) (same).

Nor can there be any argument here that DIRECTV deceived or pressured Cannon into accepting the arbitration provision.  The very first sentence of the Customer Agreement expressly notified Cannon that if he did not want to be bound by its terms, he could notify DIRECTV immediately so that his service could be canceled.  *See* Ex. A, Intro.  Cannon had the opportunity to review the Agreement's terms, including the arbitration provision, both on DIRECTV's website and then with his billing statements, and could have rejected them, but instead he chose to continue receiving service.  Like the millions of other adults in the United States who contract for consumer services in this way, Cannon made the free choice to select DIRECTV as his television programming provider and accepted the terms and conditions of that service, including the arbitration provision.  *See Johnson*, 2004 WL 413213, at *1, 5.

Though Cannon will likely argue that there was a disparity in bargaining power

-17-

because DIRECTV drafted the Customer Agreement, "[i]nequality of bargaining power alone does not invalidate a contract . . . when the purchase can be made elsewhere." *Ranieri*, 759 N.Y.S.2d at 449.  In this case, DIRECTV is not the only provider of satellite television service.  If Cannon did not want to agree to arbitration disputes with DIRECTV, he could have chosen to cancel his DIRECTV service once he received his initial Customer Agreement, and subscribe to a different television service instead.  *See id.*, 759 N.Y.S.2d at 449 ("It does not avail plaintiff to argue that the arbitration provision is unconscionable without offering evidence that he could not have chosen another service provider."); *Brower*, 676 N.Y.S.2d at 572 (rejecting argument that consumer is in a "take it or leave it" bargaining position and noting that "if any term of the agreement is unacceptable to the consumer, he or she can easily buy a competitor's produce instead . . . and reject Gateway's agreement by returning the merchandise").

The arbitration clause at issue here is not procedurally unconscionable.  Because New York law generally requires a showing of both procedural and substantive unconscionability, the parties' arbitration agreement should be enforced unless Cannon can establish this is an "exceptional case" in which the arbitration clause "is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Gillman*, 534 N.E.2d at 829.  Cannon cannot do so here.

### b.     The parties' arbitration agreement does not unreasonably favor DIRECTV.

A contract is substantively unconscionable under New York law if its terms are so "unreasonably favorable to one party" given their "commercial context" that they are too grossly unfair to be enforced.  *Id.* at 792.

Here, the terms under which the parties agreed to arbitrate are fair.  The agreement mutually binds both DIRECTV and Cannon to arbitrate on an individual basis all claims that arise between them.  *See* Ex. D, § 9(b) ("[A]ny Claim either of us

asserts will be resolved only by binding arbitration.").  Moreover, the arbitration agreement defrays the costs of arbitration for the customer, ensuring that he or she will pay no more than a maximum $125 filing fee, if that.  *See id*; Paisley Decl., Ex. 1 (offering to pay arbitration initiation fee for Cannon, as anticipated by § 9(b) of the Customer Agreement).  The arbitration agreement also ensures that the arbitration is convenient and affordable by providing that it take place in the customer's hometown area and be governed by the laws of the customer's home state.  Ex. D, §§ 9(b), 10(b).  And to the extent Cannon incurs attorneys' fees in connection with arbitrating the dispute, he may still seek recovery of those fees, just as he would in court, because the arbitration clause does not limit potential remedies.  Ex. D, § 9(b).  Finally, the terms are not unreasonable in this "commercial context"—use of arbitration clauses is a standard practice in consumer contracts.  *See* 83 AM. JUR. PROOF OF FACTS 3D 1, § 72 (2008) ("Arbitration is often incorporated into consumer, employment, health care, franchise, baking, credit card, financial, insurance, telecommunication service agreements and other contracts.").  The arbitration agreement, therefore, does not unreasonably favor DIRECTV, is commercially reasonable, and is not substantively unconscionable.

Cannon may argue that the arbitration clause is substantively unconscionable because it contains a class action waiver, requiring arbitration on an individual basis.  But New York law enforces arbitration provisions like the one contained in Cannon's Customer Agreement.  *See Ranieri*, 759 N.Y.S.2d at 449 (finding no substantive unconscionability where arbitration agreement contained class action waiver, and compelling arbitration of plaintiff's New York Deceptive Acts and Practices claims based on recognition of "the strong public policy favoring arbitration . . . and the absence of a commensurate policy favoring class actions") (citations omitted); *Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480 (N.Y. App. Div. 2004) (enforcing arbitration agreement with class action waiver as "neither unconscionable nor violative of public policy" and noting that "[e]ven if plaintiff cannot bring a class

action, the Attorney General of the State of New York can bring an action to enforce [New York's Deceptive Acts and Practices law]") (citations omitted); *Hayes v. County Bank*, 811 N.Y.S.2d 741, 743 (N.Y. App. Div. 2006) (finding no substantive unconscionability and enforcing arbitration agreement where plaintiff was precluded from pursuing a class action).  The parties' arbitration agreement is not therefore substantively unconscionable.

Cannon and DIRECTV agreed to arbitrate disputes like this one, and that arbitration agreement is neither procedurally nor substantively unconscionable. Therefore, the Court should enforce the parties' agreement according to its terms.

### 3.     Schuessler's arbitration agreement with DIRECTV is enforceable under Illinois law.

In Illinois, a contract is unconscionable if it is "'improvident, oppressive, or totally one-sided, but mere disparity of bargaining power is not sufficient grounds to vitiate contractual obligations.'"  *Zobrist v. Verizon Wireless*, 822 N.E.2d 531, 540 (Ill. App. Ct. 2004) (quoting *Streams Sports Club, Ltd. v. Richmond*, 457 N.E.2d 1226, 1232 (1983)) (internal citations omitted).  A finding of unconscionability under Illinois law may be based on procedural unconscionability, substantive unconscionability, or a combination of the two.  *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 263 (Ill. 2006).  Schuessler cannot establish either here.

#### a.     Schuessler's arbitration agreement is not procedurally unconscionable.

Illinois courts have defined procedural unconscionability as occurring "where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it."  *Id.* at 264 (quoting *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006)).  Factors relevant to procedural unconscionability include:  (1) the manner in which the contract was entered into; (2) whether each party had a reasonable opportunity to understand the terms of the contract; and (3) whether important terms were hidden in a maze of fine print.  *Id.*

-20-

While the arbitration agreement was drafted by DIRECTV and was contained in a preprinted, standard form, any resulting "disparity" in the parties' relative bargaining positions cannot by itself render the agreement unenforceable. *Id.* at 266 (noting that standard-form contracts of adhesion "are a fact of modern life" and that "[c]onsumers routinely sign such agreements to obtain credit cards, rental cars, land and cellular telephone service, home furnishings and appliances, loans, and other products and services"). Some other indicia of procedural unconscionability must therefore be present to render an agreement unenforceable.

As with Cannon, nothing in the formation of Schuessler's arbitration provision suggests that the agreement was the result of procedural unconscionability. Schuessler had the opportunity to review and understand the Customer Agreement's terms, including the arbitration provision, before agreeing to be bound by them, both on DIRECTV's website and then with her billing statements. Like Cannon's arbitration provision, Schuessler's arbitration provision was not hidden in a "maze of fine print." To the contrary, its existence is disclosed in the Customer Agreement's introduction, and the provision itself is set off in its own section under a capitalized, bolded, heading, with more capitalized and bolded text emphasizing the effect of the agreement. *See, e.g.,* Ex. E, Intro., § 9(b). Indeed, one Illinois court has already concluded that the same arbitration agreement at issue here is not procedurally unconscionable based on the conspicuousness of these disclosures. *See Harris v. The DIRECTV Group, Inc.*, No. 07 C 3650, 2008 WL 342973, at *4 (N.D. Ill. Feb. 5, 2008) (holding that arbitration agreement in 2006 Customer Agreement was not procedurally unconscionable, and distinguishing case that had found aspects of procedural unconscionability in an earlier version of DIRECTV Customer Agreement); *see also Bess v. DIRECTV, Inc.*, 885 N.E.2d 488, 495-96 (Ill. App. 2008) (enforcing arbitration agreement in 2001 DIRECTV Customer Agreement, despite finding a "degree of procedural unconscionability"). Schuessler had the opportunity to review these terms and chose to continue accepting DIRECTV's service, and was

-21-

legally bound to the terms and conditions of her Customer Agreement.  *See Ramette*, 812 N.E.2d at 515.

Furthermore, satellite television services are not a necessity, such that Schuessler was under any compulsion to subscribe to DIRECTV's services.  And DIRECTV is not the only provider of satellite television service.  If Schuessler was unwilling to agree to the terms of DIRECTV's arbitration agreement, she could have chosen to cancel her DIRECTV service as expressly stated in her Customer Agreement, and subscribe to a different television service instead.

Schuessler's arbitration agreement with DIRECTV is not procedurally unconscionable.  To meet her burden of proof under Illinois unconscionability law, Schuessler must establish that the parties' arbitration agreement is so substantively unconscionable as to render the arbitration clause unenforceable.

### b.       Schuessler's arbitration agreement is not substantively unconscionable.

Under Illinois law, the following factors give rise to a finding of substantive unconscionability:  (1) "terms so one-sided as to oppress or unfairly surprise an innocent party", (2) "an overall imbalance in the obligations and rights imposed by the bargain", and (3) "significant cost-price disparity."  *Kinkel*, 857 N.E.2d at 267 (quoting *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51, 58 (Ariz. 1995)).

As explained above in Section III.D.2.B, the terms of the parties' arbitration agreement are not one-sided or likely to oppress or surprise Schuessler.  The agreement mutually binds both DIRECTV and Schuessler to arbitrate on an individual basis all claims that arise between them.  *See* Ex. E, § 9(b) ("[A]ny Claim either of us asserts will be resolved only by binding arbitration.").  Furthermore, the arbitration agreement defrays the costs of arbitration for the customer, ensuring that he or she will pay no more than a maximum $125 filing fee, if that.  *See id*; Paisley Decl., Ex. 2 (offering to pay arbitration initiation fee for Schuessler, as anticipated by the § 9(b) of the Customer Agreement).  The arbitration agreement also ensures that the arbitration

is convenient and affordable by providing that it take place in the customer's hometown area and be governed by the laws of the customer's home state.  Ex. E, §§ 9(b), 10(b).  And to the extent Schuessler incurs attorneys' fees in connection with arbitrating the disputes, she may seek recovery of those fees, just as she would in court, because the arbitration clause does not limit potential remedies.  Ex. E, § 9(b).

While Schuessler will likely argue that the class action waiver renders the arbitration clause here substantively unconscionable, these same arguments directed at the same arbitration provision have already been rejected under Illinois law.  In *Harris*, 2008 WL 342973, at *5, the court enforced the arbitration provision in the DIRECTV Customer Agreement, including the class action waiver.  The *Harris* court concluded that the DIRECTV provision was unlike the arbitration provision in the Cingular Wireless customer agreement—which had been held unconscionable in *Kinkel*—in a number of ways.  First, unlike in Kinkel, DIRECTV's arbitration provision disclosed the costs of arbitration to the consumer.  *Id.*  Second, while in *Kinkel* it was "an absolute certainty that [plaintiff] would not be made whole" given the costs of arbitration compared with the potential recovery, the potential recovery in *Harris* exceeded the costs of arbitrating.  *Id.*  Third, DIRECTV's arbitration provision did not contain other unfair features that were present in the Cingular provision, such as limitations on remedies and confidentiality provisions.  *Id.*

The circumstances in *Harris* are indistinguishable from those here.  The arbitration provision in question is identical.  Moreover, Schuessler's costs of arbitrating this dispute is virtually nothing, given that DIRECTV has offered to pay her arbitration initiation fee and the arbitration will take place in her hometown area.  *See* Paisley Decl., Ex. 2; Ex. E, § 9(b).  Her potential recovery, by contrast, is several hundred dollars plus attorneys' fees, ensuring that she has the incentive to proceed in individual arbitration, as she agreed to do.  *See Harris*, 2008 WL 342973, at *5 (N.D. Ill. Feb. 5, 2008) (noting that the DIRECTV arbitration provision was not unconscionable because Harris "could obtain more than the $125 cost of arbitration

-23-

*plus* attorney's fees") (emphasis in original); *see also Crandall v. AT & T Mobility, LLC*, Civil No. 07-750-GPM, 2008 WL 2796752, at *5 (S.D. Ill. July 18, 2008) (enforcing class action waiver in arbitration clause because "Plaintiffs have not shown that their inability to pursue these claims on a class-wide basis effectively denies them legal recourse"); *Pivoris v. TCF Fin. Corp.*, No. 07 C 2673, 2007 WL 4355040, at *6 (N.D. Ill. Dec. 7, 2007) (enforcing class action waiver in arbitration agreement because "the arbitration clause does not appear to impose limitations that would preclude her from obtaining a remedy . . . in a cost-effective manner").

Because Schuessler can seek to vindicate her statutory rights in arbitration, the parties' agreement to arbitrate is not substantively unconscionable under Illinois law. Accordingly, the Court should enforce the parties' agreement according to its terms.

## IV.   CONCLUSION

Cannon and Schuessler both agreed to arbitrate, not litigate, this dispute. Accordingly, DIRECTV respectfully requests that the Court dismiss or stay their actions and compel them to arbitration.

DATED:  August 31, 2009                KIRKLAND & ELLIS LLP

By:____/s/ Robyn E. Bladow_____
        Robyn E. Bladow

Attorneys for Defendant DIRECTV, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2009, I have electronically filed the:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECTV'S MOTION TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION AND TO COMPEL ARBITRATION**

with the Clerk of the Court by using the CM/ECF system, which will automatically send an e-mail notification of such filing to the attorneys of record who are registered CM/ECF users.

Plaintiffs Carolyn Forbes, Louis M. Wilson, Paul Cannon, Tara Murray and Christine Schuessler have been served through Interim Lead Class Counsel.

Executed August 31, 2009, at Los Angeles, California.

KIRKLAND & ELLIS LLP

By: _____ /s/ Robyn E. Bladow _____
      Robyn E. Bladow

777 South Figueroa Street
Los Angeles, CA 90017
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500
E-Mail:       rbladow@kirkland.com

Attorneys for Defendant DIRECTV, Inc.