JS-6/O

STAYED

# UNITED  STATES  DISTRICT  COURT

# FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| In re: DIRECTV EARLY<br>CANCELLATION FEE LITIGATION | **CASE NO. SACV 08-0741 AG (ANx)**<br><br>**ORDER GRANTING MOTION TO<br>COMPEL ARBITRATION** |

This class action challenges a television service provider's assessment of early cancellation fees.  Defendant DirecTV, Inc. ("Defendant") has filed a motion ("Motion") to compel arbitration of claims brought by Plaintiffs Roberta Pifer, Edward Pifer, Joseph Lombardi, and Kathleen O'Brien.  After considering all papers and arguments submitted, the Court GRANTS the Motion.

## BACKGROUND

Defendant provides satellite-based television services to consumers nationwide.  As part of its services, Defendant leases receiver boxes and other necessary equipment to its customers. This putative nationwide class action, brought on behalf of current and former customers of Defendant, challenges Defendant's practice of assessing an early cancellation fee to customers who cancel their service before their commitment periods have ended.  Plaintiffs assert that

1   Defendant unlawfully fails to disclose or inadequately discloses that by subscribing to DirecTV

2   services or modifying existing DirecTV service contracts, customers are automatically enrolled

3   into programming commitment periods of 18 or 24 months that are subject to early cancellation

4   fees of up to $480.  Even if DirecTV adequately disclosed those terms, Plaintiffs allege, the early

5   cancellation fee is an invalid liquidated damages clause. The following facts are taken from the

6   pleadings in this case.  The essential facts relevant to this Motion are not in dispute.

7          Plaintiff Joseph Lombardi ("Lombardi") is a Florida citizen.  (First Amended

8   Consolidated Class Action Complaint ("FAC") ¶ 12.)  In December 2007, Lombardi subscribed

9   to Defendant's satellite services.  (*Id.*)  Defendant failed to disclose or inadequately disclosed

10  that Lombardi's service contract was subject to a commitment period or early cancellation fee.

11  (*Id.*)  Lombardi never signed any document presented as an agreement to a commitment period

12  or an early cancellation fee.  (*Id.*)  In September 2008, Lombardi cancelled his service.  (*Id.*)

13  Defendant charged an early cancellation fee of $160 to his credit card.  (*Id.*)

14         Plaintiff Kathleen O'Brien is a Florida citizen.  (FAC ¶ 14.)  In 2004, O'Brien subscribed

15  to Defendant's satellite services.  (*Id.*)  Defendant failed to disclose or inadequately disclosed

16  that O'Brien's service contract was subject to a commitment period or early cancellation fee.

17  (*Id.*)  O'Brien never signed any document presented as an agreement to a commitment period or

18  early cancellation fee.  (*Id.*)  In December 2007, Plaintiff's husband requested a programming

19  upgrade to include high definition channels.  (*Id.*)  Defendant failed to disclose or inadequately

20  disclosed to Plaintiff and her husband that because they had requested a programming upgrade,

21  their service contract was subject to a new commitment period and early cancellation fee.  (*Id.*)

22  O'Brien did not receive any document purporting to be an agreement with Defendant.  (*Id.*)

23  Approximately one week later, O'Brien cancelled her service.  (*Id.*)  Defendant charged an early

24  cancellation fee of $440 to her debit card.  (*Id.*)

25         Plaintiffs Roberta and Edward Pifer (the "Pifers") are Virginia citizens.  (FAC ¶ 15.)  In

26  1999, the Pifers subscribed to Defendant's satellite services.  (*Id.*)  Defendant failed to disclose

27  or inadequately disclosed that the Pifers' service contract was subject to a commitment period or

28  early cancellation fee.  (*Id.*)  The Pifers never signed any document presented as an agreement to

1   a commitment period or early cancellation fee.  (*Id.*)  In May 2008, the Pifers requested a

2   replacement box for one that had malfunctioned.  (*Id.*)  Defendant failed to disclose or

3   inadequately disclosed to the Pifers that because they had requested a replacement box, their

4   service contract was subject to a new commitment period and early cancellation fee.  (*Id.*)  The

5   Pifers did not sign any document purporting to be an agreement with Defendant.  (*Id.*)  In

6   August 2008, the Pifers cancelled their service.  (*Id.*)  Defendant charged an early cancellation

7   fee of $400 to their credit card.  (*Id.*)

8          Plaintiffs' relationships with Defendant were governed by a standardized Customer

9   Agreement.  That Customer Agreement was mailed to each Plaintiff with the first bill for

10  services, and every time the Customer Agreement was updated, an updated version was provided

11  to Plaintiffs.  (*See* McCarthy Decl. ¶¶ 6, 7, 11, 13, 14.)  Plaintiffs' Customer Agreements

12  contained an arbitration provision.  The provision appears in its own paragraph under a bold-

13  print, capital-letter "RESOLVING DISPUTES" heading, and provides that all disputes "relating

14  to" the Customer Agreement, any addendum, or to DirecTV services, and not resolved

15  informally, are subject to binding arbitration:

16

17          In order to expedite and control the cost of disputes, you and we

18          agree that any legal or equitable claim relating to this Agreement,

19          any addendum, or your Service (referred to as a "Claim") will be

20          resolved as follows:

21          . . .

22          [I]f we cannot resolve a Claim informally, any Claim either of us

23          asserts will be resolved only by binding arbitration.  The arbitration

24          will be conducted under the rules of JAMS that are in effect at the

25          time the arbitration is initiated . . . and under the rules set forth in this

26          Agreement.

27

28  (Customer Agreement § 9(b).)  The "RESOLVING DISPUTES" section of the Customer

3

1   Agreement also contains a class action waiver, providing that "[n]either you nor we shall be

2   entitled to join or consolidate claims in arbitration by or against other individuals or entities, or

3   arbitrate any claim as a representative member of a class or in a private attorney general

4   capacity."  (Customer Agreement § 9(c).)  The Customer Agreement further provides that the

5   law of Plaintiffs' home states governs "interpretation and enforcement" of the agreement.

6   (Customer Agreement § 10(b).)

7        Based on these facts and others, Plaintiffs Lombardi, O'Brien, Roberta Pifer, and Edward

8   Pifer, together with other named plaintiffs, have brought five claims against Defendant: (1)

9   violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; (2)

10   violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; (3)

11   money had and received; (4) unjust enrichment; and (5) declaratory relief.  Plaintiffs Lombardi

12   and O'Brien have brought one claim under Florida law: a claim for violation of Florida's

13   Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*  And

14   Plaintiffs Roberta and Edward Pifer have brought a claim under Virginia law: a claim for

15   violation of Virginia's Consumer Protection Act ("VCPA"), Va. Code § 50.1-196, *et seq.*

16        Defendant now moves to compel arbitration of all claims brought by Plaintiffs Lombardi,

17   O'Brien, and the Pifers.

18

19   **LEGAL STANDARD**

20

21        While trends emerging in recent cases suggest that courts are limiting the traditional

22   policy of broad enforcement of arbitration clauses, cases embracing that policy remain good law.

23   *See, e.g.*, *Hoffman v. Citibank (South Dakota) N.A.*, 546 F.3d 1078 (9th Cir. 2008) (reversing

24   district court's order compelling arbitration and remanding for further analysis).

25        Section 2 of the Federal Arbitration Act ("FAA") "embodies the national policy favoring

26   arbitration and places arbitration agreements on equal footing with all other contracts."  *Buckeye*

27   *Check Cashing, Inc. v. Cardegna*, 126 S. Ct. 1204, 1207 (2006).  The FAA "leaves no place for

28   the exercise of discretion by a district court, but instead mandates that district courts shall direct

4

1    the parties to proceed to arbitration on issues as to which an arbitration agreement has been

2    signed." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991)

3    (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).  "With the enactment of

4    the FAA, Congress precluded states from singling out arbitration provisions for suspect status,

5    requiring instead that such provisions be placed upon the same footing as other contracts." *Ting*

6    *v. AT&T*, 319 F. 3d 1126, 1147 (9th Cir. 2003) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517

7    U.S. 681, 687 (1996)).  Under the FAA, the Court's role is "limited to determining (1) whether a

8    valid arbitration agreement exists and, if it does, (2) whether the agreement encompasses the

9    dispute at issue." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir.

10   2000).

11          The FAA states that a court can declare an arbitration agreement invalid "upon such

12   grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Federal

13   courts apply the appropriate state's laws to determine whether a contract can be revoked on

14   grounds of unconscionability.  *See Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th

15   Cir. 2002).  When a court has determined that the action is referable to arbitration under a valid

16   agreement, the court "shall on application of one of the parties stay the trial of the action until

17   such arbitration has been had in accordance with the terms of the agreement, providing the

18   applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. § 3.

19

20   **ANALYSIS**

21

22          Plaintiffs appear to concede that their claims fall within the scope of the arbitration

23   provision contained in the Customer Agreements, but assert that under California law, the

24   provision is void and unenforceable.  Defendant counters that Florida and Virginia law should

25   govern in determining whether the arbitration clauses are enforceable, and conclude that the

26   clauses are enforceable under both Florida and Virginia law.  The Court addresses each issue in

27   turn.

28

1
2    **1.    GOVERNING LAW**
3
4         Again, Plaintiffs' Customer Agreements state that the laws of Plaintiffs' home states
5    governs any disputes between the parties.  Because this suit was filed in the Central District of
6    California, the Court must apply California's choice-of-law rules to determine whether to
7    enforce that choice-of-law provision.  *See Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002)
8    ("When a federal court sits in diversity, it must look to the forum state's choice of law rules to
9    determine the controlling substantive law.").  In making such a determination,  "California
10   courts apply the principles set forth in § 187 of the Restatement, which reflects a strong policy
11   favoring enforcement of such provisions."  *Omstead v. Dell, Inc.*, 473 F. Supp. 2d 1018, 1023
12   (N.D. Cal. 2007) (citing *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-65 (1992)).
13   Under the Restatement test, choice-of-law provisions like the one here should be enforced
14   unless: (1) "the chosen state has no substantial relationship to the parties or the transaction and
15   there is no other reasonable basis for the parties' choice"; or (2) "application of the law of the
16   chosen state would be contrary to a fundamental policy of a state which has a materially greater
17   interest than the chosen state in the determination of the particular issue."  Restatement (Second)
18   of Conflict of Laws ("Restatement") § 187(2) (2008).  The Restatement's strong policy favoring
19   enforcement of choice-of-law provisions applies equally to all contracts, including standardized
20   consumer contracts like the one here.  *See Wash. Mut. Bank, F.A. v. Superior Ct.*, 24 Cal. 4th
21   906, 917-18 (2001); *see also In re Detwiler*, No. 08-72823, 2008 WL 5213704, at *1-2 (9th Cir.
22   Dec. 12, 2008) (upholding choice-of-law provision in standardized T-Mobile customer
23   agreement; *McGinnis v. T-Mobile USA, Inc.*, No. C08-106Z, 2008 WL 2858492, at *3-4 (W.D.
24   Wash. July 22, 2008) (relying on district court's decision in *Detwiler* to uphold same T-Mobile
25   choice-of-law provision and compel arbitration).
26        Here, O'Brien and Lombardi are residents of Florida, and the Pifers are residents of
27   Virginia.  It is clear that Florida and Virginia have substantial relationships to the parties and
28   transactions at issue.  *See ABF Capital Corp. v. Berglass*, 130 Cal. App. 4th 825, 834 (2005)

6

("That one of the parties resides in a foreign state gives the parties a reasonable ground for choosing that state's law.").  Plaintiffs assert, instead, that application of Florida or Virginia law to Plaintiffs' claims would be contrary to a fundamental policy of California, which has a materially greater interest than either Florida or Virginia in Plaintiffs' claims.  The Court disagrees.

Putting aside the issue of whether application of Florida or Virginia law would violate a fundamental public policy of California's, Plaintiffs simply cannot show that California has a materially greater interest than either Florida or Virginia in the issues raised here.  In determining which state has a materially greater interest in a case, California courts consider the place of negotiation of the contract, the place of performance of the contract, the location where the alleged wrong occurred, and the residence of the parties.  *See In re Jamster Mktg. Litig.*, No. 05-cv-0819 JM (CAB), 2008 WL 4858506, at *3 (S.D. Cal. Nov. 10, 2008).  Here, as Defendant points out, Lombardi and O'Brien entered into their contracts in Florida, made payments and received services in Florida, and incurred early cancellation fees in Florida.  Similarly, the Pifers entered into their contract in Virginia, made payments and received services in Virginia, and incurred their early cancellation fee in Virginia.  While DirecTV is domiciled in California, Plaintiffs are, again, residents of Florida and Virginia.  Moreover, Plaintiffs have amended their pleadings to bring Florida and Virginia claims on behalf of Florida and Virginia classes.  *See Hoffman*, 546 F.3d at 1085 n. 5 (noting that "the instant case is distinguishable from the two cited by the district court [where California did not have a materially greater interest] because it was brought by a *California* resident, on behalf of a *California-only* class, under a *California* statute for an allegedly deceptive practice whose injury was felt in *California*") (emphasis in original).

Plaintiffs argue that California's interest in regulating the conduct of its resident corporations, like DirecTV, outweighs Florida's and Virginia's interests in this lawsuit.  But in *Klussman v. Cross Country Bank*, 134 Cal. App 4th 1283, 1299 (2005), the court found that one state's interest in "more general matters of corporate regulation" was materially outweighed by the interests of another state with "a number of significant contacts with the subject matter of

1  [the] action." Other courts have held that when consumers enter into standardized contracts with

2  businesses for goods and services to be delivered to the consumer's home state, the consumer's

3  home state is the state with the greater interest. *See Detwiler*, 2008 WL 5213704, at *1

4  (concluding that Florida, the consumer's home state, was "the place of contracting, the place of

5  negotiation, the place of performance, the location of the subject matter, and the residence of one

6  of the parties" and dismissing the interests of Washington, where the defendant was

7  incorporated); *McGinnis*, 2008 WL 2858492, at *3 (holding that the interest of the consumer's

8  home state "outweighs whatever interest Washington [where defendant was incorporated] has"

9  in the issues); *Jamster*, 2008 WL 4858506, at *3 (holding that all of the relevant factors in the

10  materially greater interest analysis "weigh in favor of applying the law of plaintiffs' residence").

11        While Plaintiffs cite *Hoffman* to support their proposition that California's interests here

12  outweigh Florida's and Virginia's, *Hoffman* focuses primarily on whether application of South

13  Dakota law in that case would violate a fundamental public policy of California, and does not

14  discuss which state had a materially greater interest in the plaintiffs' claims. *See Hoffman*, 546

15  F.3d at 1083. Plaintiffs also cite *Coneff v. AT&T Corp.*, 620 F. Supp. 2d 1248, 1256 (W.D.

16  Wash. 2009), for its holding that Washington's interest in "regulating the conduct of businesses

17  that reside in [the] state" was materially greater than the interests of the plaintiffs' states of

18  residence. But *Coneff* is distinguishable. The plaintiffs in *Coneff* were current or former

19  customers of AT&T Wireless who alleged that, after Cingular Wireless merged with AT&T

20  Wireless, Cingular deliberately degraded the AT&T network in an effort to induce customers to

21  transfer to Cingular plans. *Coneff*, 650 F. Supp. 2d at 1250. In finding that the *Detwiler* decision

22  was not controlling in *Coneff*, the district court noted that the *Coneff* plaintiffs "did not have

23  extensive contacts or negotiations with the Defendants," while the plaintiff in *Detwiler* "had

24  contact with the telecommunications provider 11 times over a period of six years, and had

25  received several guides regarding her agreement." *Id.* at 1255. Here, the Court cannot find that

26  Plaintiffs "did not have extensive contacts or negotiations with the Defendants," and follows the

27  *Detwiler* decision in finding that Plaintiffs' home states have a greater material interest in

28  Plaintiffs' claims than does California.

Again, it is clear that both Florida and Virginia have "substantial relationships" to the parties and transactions at issue here, and Plaintiffs cannot demonstrate that California has a materially greater interest in the issues here than does Florida or Virginia.  Accordingly, the Court will enforce the choice-of-law provision contained in the Customer Agreements and apply the laws of Florida and Virginia to determine whether the arbitration provisions here are enforceable.

## 2.    ENFORCEABILITY UNDER FLORIDA AND VIRGINIA LAW

Plaintiffs correctly concede that if the "choice-of-law clause calling for the application of Florida law to the Pifers' claims and Virginia law to Lombardi's and O'Briens claims is enforced, DirecTV's arbitration and class action waiver clauses are likely to be enforced as well."  (Opp'n 6:13-16.)

Under Florida law, only contracts found to be "monstrously harsh" or "shocking to the conscience" will be voided for unconscionability.  *Garrett v. Janiewski*, 480 So. 2d 1324, 1326 (Fla. Dist. Ct. App. 1985).  Florida law requires proof of both procedural and substantive unconscionability.  *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284 (Fla. Dist. Ct. App. 2003).  Similarly, under Virginia law, unconscionability is "a narrow doctrine" that invalidates only the most inequitable of contracts.  *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001) (enforcing arbitration clause under Virginia law).  An unconscionable contract under Virginia law is one that no person "in his [or her] senses and not under a delusion would make, on the one hand, and as no fair [person] would accept, on the other."  *Howie v. Atlantic Home Inspection, Inc.*, No. CL02-379, 2003 WL 23162330, at *4 (Va. Cir. Ct. June 17, 2003) (internal quotation omitted).

Here, Plaintiffs have not provided any evidence of unconscionability under either Florida or Virginia law.  After a thorough review of the record, the Court cannot conclude that the Customer Agreements in this case were unconscionable under Florida or Virginia law.  The arbitration provisions within Plaintiffs' Customer Agreements are thus enforceable.

**3.      CONCLUSION**

Because California does not have a materially greater interest than either Florida or Virginia in applying its laws to Plaintiffs' claims here, the Court finds that Florida and Virginia law should apply here.  Under both Florida and Virginia law, the arbitration clauses in the parties' Customer Agreements are valid and enforceable, and Defendant's motion to compel arbitration is GRANTED.

**DISPOSITION**

Because the arbitration clause contained in the parties' Customer Agreements is valid and enforceable under both Florida and Virginia law, Defendant's Motion to Compel Arbitration is GRANTED.  Under  9 U.S.C. § 3, the claims of Plaintiffs Lombardi, O'Brien, Roberta Pifer, and Edward Pifer are stayed pending the conclusion of the arbitration.

IT IS SO ORDERED.

DATED: September 9, 2009

_____
Andrew J. Guilford
United States District Judge