HULETT HARPER STEWART LLP
BLAKE MUIR HARPER, SBN: 115756
SARAH P. WEBER, SBN: 239979
LINDSAY J. FOSTER, SBN: 254008
525 B Street, Suite 760
San Diego, CA  92101
Telephone:   (619) 338-1133
Facsimile:   (619) 338-1139
e-mail:       blake@hulettharper.com
              sweber@hulettharper.com
              lindsay@hulettharper.com

Interim Lead Counsel for Plaintiffs
[Additional Counsel Listed on Signature Page]

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| IN RE DIRECTV EARLY CANCELLATION FEE LITIGATION | MASTER FILE NO. CV08-741 AG (ANx) |
| This Document Relates To:<br><br>All Actions. | **PLAINTIFFS' OPPOSITION TO DIRECTV'S MOTION TO DISMISS CLAIMS IN PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |

DATE:     October 19, 2009
TIME:     10:00 a.m.
JUDGE:   Hon. Andrew J. Guilford
CTRM:    10D

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>**TABLE OF CONTENTS**</u>

I.     INTRODUCTION ........................................................................... 1

II.    BACKGROUND ............................................................................ 1

III.   LEGAL STANDARD .................................................................... 3

IV.    ARGUMENT ................................................................................. 4

     A.    California Law Governs Plaintiffs' Substantive Claims ..................... 4

          1.    Illinois, New Jersey, New York and Oregon Law Conflict with Fundamental Policies of California Law ............................ 5

          2.    California has a Materially Greater Interest than Illinois, New Jersey, New York or Oregon in having its Law Applied ........................................................................................... 9

     B.    Plaintiff Murray's and Schuessler's Claims for Unjust Enrichment and Under the Consumer Protection Statutes of Their Home States (in the Alternative to Their California State Law Claims) Are Proper ...................................................... 15

     C.    Plaintiffs Have Alleged Sufficient Facts to Show that the ETF Is a Penalty and Not An Alternative Contract ........................................ 16

          1.    The ETF Is Intended to Compensate DirecTV for the Consumer's Breach of the Programming Commitment ........... 18

          2.    The ETF Does Not Contemplate an Element of Free Rational Choice By the Consumer ............................................. 21

          3.    This Court Should Decline to Follow *Hutchinson v. AT&T Internet Services* and *Schneider v. Verizon Internet Services* ................................................................................. 24

V.     CONCLUSION ............................................................................ 25

# <u>Table of Authorities</u>

Page(s)

CASES

*Alicea v. Circuit City Stores, Inc.*,
   534 F. Supp. 2d 432 (S.D.N.Y. 2008) ...................................................... 8

*Allen v. Smith*,
   94 Cal. App. 4th 1270, 114 Cal. Rptr. 2d 898 ............................... 22, 23

*America Online, Inc. v. Sup. Ct.*,
   90 Cal. App. 4th 1, 108 Cal. Rptr. 2d 699 (2001) ................................. 7

*Application Group, Inc., v. Hunger Group Inc.*,
   61 Cal. App. 4th 881 (1998) ............................................................... 7, 9

*Avery v. State Farm Mutual Auto Ins. Co.*,
   216 Ill. 2d 100, 835 N.E.2d 801 (2005) (Illinois Consumer Fraud Act
   cannot be used extraterritorially) ........................................................... 8

*Ayyad v. Sprint Spectrum, L.P.*,
   No. RG 03-12151, slip op. (Cal. Sup. Ct. Dec. 4, 2008) ............ 17, 21, 22, 23

*Ballard v. Equifax Check Serv.*,
   158 F. Supp. 2d 1163 (E.D. Cal. 2001) ................................................. 5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................... 4

*Blank v. Borden*,
   11 Cal. 3d 963, 115 Cal. Rptr. 31, 524 P.2d 127 (1974) .............. *passim*

*Bradley v. Health Coalition*,
   687 So.2d 329 (Fla. Dist. Ct. App. 1997) ....................................... 18, 24

*Bramhall v. ICN Med. Labs., Inc.*,
   284 Or. 279, 586 P.2d 1113 (1978) ..................................................... 13

*Cardonet, Inc. v. IBM Corporation*,
   No. C-06-06637 RMW, 2007 U.S. Dist. LEXIS 14519
   (N.D. Cal. Feb. 14, 2007) ...................................................................... 7

*Clothesrigger, Inc. v. GTE Corp.*,
   191 Cal. App. 3d 605, 236 Cal. Rptr. 605 (1987) .............................. 12

*Coneff v. AT&T Corp.*,
  620 F. Supp. 2d 1248 (W.D. Wa. 2009).............................................................. 12

*Cont'l Airlines, Inc. v. Mundo Travel Corp.*,
  412 F. Supp. 2d 1059 (E.D. Cal. 2006)................................................................ 9

*Coquille Mill & Tug Co. v. Robert Dollar Co.*,
  132 Or. 453, 285 P. 244 (1930).....................................................................18, 23

*Corr. USA v. Dawe*,
  504 F. Supp. 2d 924 (E.D. Cal. 2007) ................................................................ 4

*Cortland Glass Co., Inc. v. Dormitory Auth. State of N.Y.*,
  No. 35517, 2004 WL 3211481 (N.Y. Sup. 2004) ............................................. 13

*Dajani v. Dell, Inc.*,
  No. C 08-5285 SI, 2009 WL 815352 (N.D. Cal. Mar. 26, 2009) ....................... 8

*Darius v. Garate*,
  401 F.3d 1060 (9th Cir. 2005)............................................................................. 4

*Diamond Multimedia Sys., Inc. v. Sup. Ct*,
  19 Cal. 4th 1036, 80 Cal. Rptr. 2d 828, 968 P.2d 539 (1999).....................11, 14

*Fletcher v. United States*,
  303 F. Supp. 583 (N.D. Ind. 1969)................................................................... 17

*Garrett v. Coast & S. Fed. Sav. & Loan Ass'n*,
  9 Cal. 3d 731, 108 Cal. Rptr. 845, 511 P.2d 1197 (1973)............................. *passim*

*Global Crossing Bandwith, Inc. v. OLS, Inc.*,
  566 F. Supp. 2d 196 (W.D.N.Y. 2008) ............................................................... 6

*Goshen v. Mut. Life Ins. Co.*,
  98 N.Y. 2d 314, 774 N.E.2d 1190 (2002) ........................................................ 13

*Guthman v. Moss*,
  150 Cal. App. 3d 501, 198 Cal. Rptr. 54 (1984)................................................ 5

*Hutchinson v. AT&T Internet Servs., Inc.*,
  CV07-3674 SVW, 2009 U.S. Dist. LEXIS 53937
  (C.D. Cal. May 5, 2009).............................................................................24, 25

iii

*In re Cmty. Med. Ctr.*,
  623 F.2d 864 (3d Cir. 1980) ........................................................................ 18, 23

*In re Detwiler*,
  No. 08-72823, 2008 WL 5213704 (9th Cir. Dec. 12, 2008) ............................ 15

*In re Jamster Mkg. Litig.*,
  No. 05-0819, 2008 WL 4858506 (S.D. Cal. Nov. 10, 2008) ............................ 15

*Klussman v. Cross Country Bank*,
  134 Cal. App. 4th 1283, 36 Cal. Rptr. 3d 728 (2005) ...................................... 14

*Loud v. Collins*,
  12 Cal. App. 786 (1910) ................................................................................ 10

*LTR Rental Co. v. Simmons*,
  40 Or. App. 577, 595 P.2d 1283-84 (1979) ...................................................... 6

*Makastchian v. Oxford Health Plans, Inc.*,
  281 A.D. 2d 197, 721 N.Y.S.2d 351 (2001) ...................................................... 8

*Matter v. Garay*,
  89 N.J. 104, 444 A.2d 1107 (1982) ................................................................ 13

*Mazza v. Am. Honda Motor Co.*,
  254 F.R.D. 610 (C.D. Cal. 2008) ................................................................ 8, 12

*McGinnis v. T-Mobile USA, Inc.*,
  No. 08-106Z, 2008 WL 2858492 (W.D. Wash. July 22, 2008) ........................ 15

*Melt Franchising, LLC v. PMI Enters., Inc.*,
  No. CV 08-4148 PSG, 2009 WL 32587 (C.D. Cal. Jan. 2, 2009) ...................... 8

*Morris v. Redwood Empire Bancorp*,
  128 Cal. App. 4th 1305, 27 Cal. Rptr. 3d 797 (2005) .............................. 16, 17, 25

*Nedlloyd Lines B.V. v. Superior Court*,
  3 Cal. 4th 459, 11 Cal. Rptr. 2d 330 (1992) .................................................... 4

*Northwest Mut. Life Ins. Co. v. Uniondale Realty Assocs.*,
  816 N.Y.S.2d 831 (2006) ............................................................................ 18, 23

*Omstead v. Dell, Inc.*,
  473 F. Supp. 2d 1018 (N.D. Cal. 2007) ............................................................ 9

iv

*Orange County Dep't of Educ. v. A.S.*,
   567 F. Supp. 2d 1165 (C.D. Cal. 2008).................................................................4

*Parkinson v. Hyundai Motor Amer.*,
   No. 06-345 AHS, 2008 WL 5233200 (C.D. Cal. Dec. 12, 2008) ........................8

*Pav-Saver Corp. v. Vasso Corp.*,
   143 Ill. App. 3d 1013, 493 N.E.2d 423 (1986) ...................................................6

*Ridgley v. Topa Thrift & Loan Ass'n*,
   17 Cal. 4th 970, 73 Cal. Rptr. 2d 378, 953 P.2d 484 (1998)..............................16

*River E. Plaza, L.L.C. v. Variable Annuity Life Ins. Co.*,
   498 F.3d 718 (7th Cir. 2007)........................................................................18, 24

*Ruwe v. Cellco P'ship*,
   613 F. Supp. 2d 1191 (N.D. Cal. 2009)........................................................17, 18

*Schneider v. Verizon Internet Servs., Inc.*,
   No. 08-cv-07856, Dkt. No. 37 (C.D. Cal. Mar. 18, 2009) .................................25

*Sperry v. Crompton Corp.*,
   8 N.Y. 3d 204, 863 N.E.2d 1012 (2007) ...........................................................13

*Sybron Corp. v. Clark Hosp. Supply Corp.*,
   76 Cal. App. 3d 896, 143 Cal. Rptr. 306 (1978) ................................................21

*Talbott v. Miller*,
   232 Va. 289, 350 S.E.2d 596 (1986).............................................................18, 24

*Towantic Energy, LLC v. GE*,
   No. 04-00446 JF, 2004 U.S. Dist. LEXIS 15385
   (N.D. Cal. Aug. 2, 2004) ....................................................................................17

*Wasserman's v. Township of Middletown*,
   137 N.J. 238, 645 A.2d 100 (1994)......................................................................6

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 224, 110 Cal. Rptr. 2d 145 (2001) ......................................8, 12

*Western Camps, Inc. v. Riverway Ranch Enters.*,
   70 Cal. App. 3d 714, 138 Cal. Rptr. 918 (1977).............................................17, 22

*Williams v. Gerber Prods. Co.*,
  523 F.3d 934 (9th Cir. 2008) .................................................................. 4

*Zerbetz v. Alaska Energy Ctr.*,
  708 P.2d 1270 (Alaska 1985) ................................................................ 17

S<small>TATUTES</small>, R<small>ULES</small> & R<small>EGULATIONS</small>

28 U.S.C.
  § 1292(b) ................................................................................................ 3

California Business & Prof. Code
  § 17200 ............................................................................................ 3, 7

California Civil Code
  § 1626 .................................................................................................. 10
  § 1671 ............................................................................................... 5, 6
  § 1671(b) ............................................................................................... 7
  § 1671(d) ...................................................................................... *passim*
  § 1750 .................................................................................................... 3
  § 1751 .................................................................................................... 7
  § 1780 .................................................................................................... 8
  § 1780(a) (4) ......................................................................................... 8
  § 1781(a) ............................................................................................... 8

S<small>ECONDARY</small> A<small>UTHORITIES</small>

*Restatement (Second) of Conflict of Laws*
  § 187 ............................................................................................... 6, 10
  § 187(2) ................................................................................................. 4
  § 188: .................................................................................................. 10
  § 188 ............................................................................................. 10, 11

## I.   <u>INTRODUCTION</u>

Defendant DirecTV, Inc. ("DirecTV") moves to dismiss certain of the Plaintiffs' claims on various grounds.  Defendant's motion should be denied.

First, DirecTV's choice-of-law clause is unenforceable with respect to Plaintiffs Louis Wilson and Carolyn Forbes, Tara Murray, Paul Cannon and Christine Schuessler and does not preclude these Plaintiffs' claims under California law.  The choice of law clause results in the application of foreign law that conflicts with the fundamental policies of California, namely, its policies against the oppressive use of liquidated damages clauses and its remedies for consumers.  California is the State with the materially greater interests in this case and whose interests would be the most seriously impaired if its laws did not apply.

Second, the Plaintiffs' complaint adequately alleges that the Defendant's Early Termination Fee (ETF) is an unenforceable penalty and not, as DirecTV contends, merely an alternative means of performance.  The complaint establishes that the ETF is designed to penalize DirecTV's customers for cancelling their service and to force them to remain with DirecTV for an extended period of time in order to prevent "churn."  Additionally, the determination of this factual question is inappropriate at this stage of the litigation.

Finally, Plaintiffs Murray and Schuessler have now paid the ETFs assessed against them by DirecTV.  Plaintiffs, therefore, respectfully request an opportunity to amend the Complaint in order to reflect these facts.

## II.   <u>BACKGROUND</u>

The case concerns DirecTV's practice of failing to adequately disclose, if at all, the existence of long-term programming commitments in equipment lease documents and the attendant steep ETFs – up to $480 – that it assesses (by automatically deducting the fee from the customer's debit or credit card) if the service is cancelled for any reason, including DirecTV's own failure to provide the services it promises.  *See, e.g.*, First Amended Consolidated Class Action Complaint ("FAC") ¶ 1.

DirecTV imposes the long term programming commitment in three ways: when a new customer initiates service; when an existing customer modifies his service, for example when the customer upgrades to a high definition receiver; or when a customer orders a replacement receiver for any reason, for example where an existing receiver malfunctions.  FAC ¶¶ 27-31, 37-38.  In the first scenario the customer is not informed of the existence of the term of the programming commitment and ETF until *after* the satellite equipment is installed in the home.  *Id.* Moreover, the disclosure is buried in fine print on the reverse side of a document titled "Installation/Service Satisfaction Checklist" that is presented to the customer after they install the receiving equipment in the customer's home.  *Id.*  The document containing the disclosure is titled "Equipment Lease Addendum" ("ELA"), which on its face appears to be a lease of equipment and not an agreement for a lengthy programming commitment.  FAC ¶ 29.  That document provides: "The programming package(s) must be maintained for a period of not less than (a) eighteen (18) consecutive months (for accounts with only standard receiver(s)), or (b) twenty-four (24) consecutive months (for accounts with advanced product(s)/receiver(s)) . . . ."  *Id.* at 31.

For customers who upgrade their service, the service commitment and attendant ETF are imposed without any disclosure whatsoever at the time the customer makes the change to his or her service.  These customers are not alerted to the existence of the ETF until they cancel their services, and in some instances not until the fee is deducted from their debit or credit card accounts.  FAC ¶¶ 13, 37-38.

Plaintiffs also allege that the ETF is an invalid penalty under California Civil Code § 1671(d), which presumes liquidated damages in consumer contracts are invalid. FAC ¶¶ 70-75.  DirecTV imposes the ETF to reduce the turnover that occurs when customers switch service providers.  FAC ¶ 36.  The ETF is not designed to compensate DirecTV for any actual damages arising from the customer's cancellation of services.  *Id.*  Rather, the fee is a penalty designed to lock-in

2

1   customers and deter them from switching to other service providers.  *Id.*

2   Plaintiffs also allege that DirecTV's conduct violates California's Unfair

3   Competition Law, Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL"), California's

4   Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* (the "CLRA"), and

5   the common law prohibitions against money had and received and unjust

6   enrichment.   FAC ¶¶ 76-93, 139-48.   In the event Defendant's choice of law

7   provision is deemed controlling, non-California resident Plaintiffs Cannon, Wilson,

8   Forbes, Murray and Schuessler have alternatively alleged violations of their home

9   states consumer protection laws.  FAC ¶¶ 94-138.  For these violations, Plaintiffs

10  and the proposed class seek damages, restitution and declaratory and injunctive

11  relief.  FAC Prayer for Relief at 33-34.

12  The case was originally filed by Plaintiffs Annette Kahaly and Kathleen

13  O'Brien on July 7, 2008.   Thereafter, three additional cases were filed against

14  DirecTV and were consolidated by the Court's Order.  On January 20, 2009, the

15  Plaintiffs filed their Consolidated Complaint, which Defendant challenged by its

16  first motion to dismiss and to strike on March 6, 2009.  DirecTV simultaneously

17  filed a motion to compel arbitration against Plaintiffs Lombardi, O'Brien and the

18  Pifers.   After oral argument, on the Court granted in part and denied in part the

19  Defendant's motion to dismiss and denied the Defendant's motion to compel

20  arbitration as moot.    On June 9, 2009 Plaintiffs filed their First Amended

21  Consolidated Class Action Complaint and on August 10, 2009 DirecTV filed the

22  instant motion to dismiss.   Defendant renewed its motion to compel arbitration

23  against Plaintiffs O'Brien, Lombardi and the Pifers on June 26, 2009 and on

24  September 9, 2009 the Court granted that motion. On September 19, 2009 Plaintiffs

25  O'Brien, Lombardi and the Pifers filed a Petition for Certification of the Court's

26  September 9th Order for Appeal Pursuant to 28 U.S.C. § 1292(b).

27  **III.   LEGAL STANDARD**

28  "In resolving a Rule 12(b)(6) motion, the Court must construe the complaint

3

in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true." *Orange County Dep't of Educ. v. A.S.*, 567 F. Supp. 2d 1165, 1167 (C.D. Cal. 2008) (citing *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996)); *see also Williams v. Gerber Prods. Co.*, 523 F.3d 934, 937 (9th Cir. 2008). "Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged." *Corr. USA v. Dawe*, 504 F. Supp. 2d 924, 929 (E.D. Cal. 2007) (citing *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6, 83 S. Ct. 1461, 10 L. Ed. 2d 678 (1963)). The court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

## IV.   **ARGUMENT**

### A.   **California Law Governs Plaintiffs' Substantive Claims**

Although DirecTV's Customer Agreement includes a choice-of-law clause stating that the law of the consumer's home state applies, that clause is unenforceable in this case; rather, California law should be applied to Plaintiffs' substantive claims. In deciding whether to enforce a choice-of-law provision, California courts follow *Restatement (Second) of Conflict of Laws* § 187(2) (1971). Under this analysis, the court must first determine "whether the chosen state has a substantial relationship to the parties or their transaction, or . . . whether there is any other reasonable basis for the parties' choice of law." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466, 11 Cal. Rptr. 2d 330, 334 (1992). If either of these requirements is satisfied, the second inquiry is whether the "chosen state's law is contrary to a fundamental policy of California." *Id.* If so, "the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue . . . .'" *Id.* (citation omitted). This same analysis applies in federal court. *See Darius v. Garate*, 401 F.3d 1060, 1062 (9th Cir. 2005) ("'[I]n diversity cases federal courts must apply the choice-of-law rules of the forum state.'").

4

**1.** **Illinois, New Jersey, New York and Oregon Law Conflict with Fundamental Policies of California Law**

    **a.** **Civil Code Section 1671(d) Reflects California Fundamental Policy**

While there is no bright-line definition of a "fundamental policy," it "may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power." Restatement § 187 comment g. California Civil Code § 1671(d), which also underlies Plaintiffs' UCL and CLRA claims, embodies California's fundamental policy to protect consumers against the oppressive use of liquidated damages clauses.

Under Civil Code § 1671(d), a liquidated damages clause in a retail purchase or rental contract for personal, family or household purposes is void, unless the proponent of the clause can show two elements. *Ballard v. Equifax Check Serv.*, 158 F. Supp. 2d 1163, 1174 (E.D. Cal. 2001). First, it must be "impracticable or extremely difficult to fix the actual damage." *Id.* Second, the amount of liquidated damages must "represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained," which is determined at the outset. *Id.* If either if these elements are absent, the liquidated damages clause is void. The proponent of the liquidated damages clause has the burden to show it is valid. *Id.* at 1173.

Civil Code § 1671 is based on the December 1973 recommendation by the California Law Revision Commission (the "Commission"). *Recommendation and Study Relating to Liquidated Damages*, 11 Cal. L. Revision Comm'n Reports 1201 (1973) (Ex. A to the Declaration of Sarah P. Weber ("Weber Decl."), filed concurrently herewith); *Guthman v. Moss*, 150 Cal. App. 3d 501, 510, 198 Cal. Rptr. 54 (1984). In its recommendation, the Commission stated that while liquidated damages may serve useful and legitimate functions, there are inherent dangers in their use:

There is the risk that a liquidated damages provision will be used oppressively by a party able to dictate the terms of an agreement. And

5

1     there is the risk that such a provision may be used unfairly against a

2     party who does not fully appreciate the effect of the provision.  The

3     Commission believes that the use of liquidated damages provisions is

4     beneficial and should be encouraged, subject to limitations to protect

5     against the oppressive use of such provisions.

6 11 Cal. L. Rev. Comm'n at 1209.

7     Section 1671(d)'s declaration presumptively voiding liquidated damages

8 clauses in consumer contracts reflects California's fundamental policy to protect

9 consumers against the oppressive use of superior bargaining power.  *See*

10 *Restatement, supra*, § 187.  In *It's Just Lunch Int'l LLC*, No. EDCV 08-367-VAP,

11 2008 WL 4683637, at * 3 (C.D. Cal. Oct. 21, 2008), the court held that California's

12 Franchise Investment Law expressed a fundamental policy because it was intended

13 to protect franchisees against franchisors who may have superior bargaining power.

14 Similarly here, Section 1671 is intended to protect persons against the oppressive

15 use of superior bargaining power and thus reflects a fundamental policy.

16     To prevail on their claims that DirecTV's ETFs are illegal under California

17 law, Plaintiffs do not have the burden of proof.  Cal. Civ. Code § 1671(d).   In

18 contrast, under Illinois, New Jersey, New York and Oregon law, such liquidated

19 damages provisions are presumed valid, regardless of whether a consumer contract is

20 involved, and the burden is on the challenger to prove otherwise.  *See Pav-Saver*

21 *Corp. v. Vasso Corp.*, 143 Ill. App. 3d 1013, 493 N.E.2d 423 (1986) (burden of

22 proving that liquidated damages clause is void rests with party resisting its

23 enforcement); *LTR Rental Co. v. Simmons*, 40 Or. App. 577, 580, 595 P.2d 1283-84

24 (1979) (challenger of liquidated damages clause bears burden of proving invalidity);

25 *Wasserman's v. Township of Middletown*, 137 N.J. 238, 645 A.2d 100, 108 (1994)

26 (challenger bears the burden of establishing the invalidity of the stipulated amount);

27 *Global Crossing Bandwith, Inc. v. OLS, Inc.*, 566 F. Supp. 2d 196, 202 (W.D.N.Y.

28 2008) ("A liquidated damages clause . . . will be upheld by a court, unless . . . [t]he

6

1   party challenging the liquidated damages provision bears the burden of proving that

2   the provision constitutes a penalty.").

3       The burden of proving a liquidated damage clause's validity is not minor or

4   insignificant, but substantive. According to the Commission, the burden of proving the

5   reasonableness of a liquidated damages clause is one of the "significant benefits of the

6   use of a liquidated damages provision, which is to simplify any litigation that may arise

7   out of a breach of contract." 11 Cal. L. Rev. Comm'n at 1209-10. If the difference

8   were insignificant, the California legislature could have placed the burden on the

9   challenger, as it did with respect to non-consumer contracts. Cal. Civ. Code § 1671(b).

10      **b.      The UCL and the CLRA Reflect Fundamental Policy**

11           **of California Law**

12       California's consumer protection statutes also implicate fundamental policy.

13   *See Application Group, Inc., v. Hunger Group Inc.*, 61 Cal. App. 4th 881, 907-08

14   (1998) (holding that the UCL claim embodied fundamental California policy because

15   the underlying predicate claim involved a covenant not to compete which violated

16   fundamental policy); *Cardonet, Inc. v. IBM Corporation*, No. C-06-06637 RMW,

17   2007 U.S. Dist. LEXIS 14519, at *16 (N.D. Cal. Feb. 14, 2007) ("Whether a § 17200

18   claim implicates fundamental California policy depends on the predicate violation.").

19   Here, Plaintiffs' claims for unlawful and unfair business practices under the UCL are

20   based, in part, on Civil Code § 1671(d) (FAC ¶ 77). Further, Plaintiffs' claim for

21   violation of the CLRA, namely, the prohibition against unconscionable contract

22   provisions, is partly based on Civil Code § 1671(d). FAC ¶ 84. Accordingly, Illinois,

23   New York, New Jersey and Oregon law conflict with the UCL and the CLRA as well.

24       The CLRA's remedies and provisions also embody California fundamental

25   policy favoring the availability by consumer class actions. *See* Civ. Code § 1751

26   (warning that "any waiver by a consumer of the provisions of this title is contrary to

27   public policy and shall be unenforceable and void"); *America Online, Inc. v. Sup.*

28   *Ct.*, 90 Cal. App. 4th 1, 18, 108 Cal. Rptr. 2d 699, 713 (2001) (holding that a forum

1  selection clause impairing the availability of class actions and remedies such
2  punitive damages violates important California public policies).  Under § 1781(a) of
3  the CLRA, "[a]ny consumer . . . may, if the unlawful method, act, or practice, has
4  caused damage to other consumers similarly situated, bring an action on behalf of
5  himself and such other consumers to recover or obtain other relief as provided for in
6  Section 1780."  Based on this CLRA provision, a number of courts have certified
7  nationwide classes for damages under the CLRA.  *See Wershba v. Apple Computer,*
8  *Inc.*, 91 Cal. App. 4th 224, 244, 110 Cal. Rptr. 2d 145 (2001); *Mazza v. Am. Honda*
9  *Motor Co.*, 254 F.R.D. 610, 626-28 (C.D. Cal. 2008); *Parkinson v. Hyundai Motor*
10 *Amer.*, No. 06-345 AHS, 2008 WL 5233200, at *20 (C.D. Cal. Dec. 12, 2008).

11     Illinois and New York consumer protection statutes, however, are
12 geographically limited and conflict with the CLRA's sweeping class action remedies
13 which allow consumers to bring a lawsuit for damages on behalf of all others
14 similarly situated.  *See Avery v. State Farm Mutual Auto Ins. Co.*, 216 Ill. 2d 100,
15 185, 835 N.E.2d 801, 853 (2005) (Illinois Consumer Fraud Act cannot be used
16 extraterritorially); *Alicea v. Circuit City Stores, Inc.*, 534 F. Supp. 2d 432, 435
17 (S.D.N.Y. 2008) (plaintiff cannot seek damages on behalf of consumers nationwide
18 under N.Y. Gen. Bus. Law § 349).  Finally, New York law also conflicts with the
19 CLRA's provisions allowing punitive damages under Cal. Civ. Code § 1780(a) (4).
20 *See Makastchian v. Oxford Health Plans, Inc.*, 281 A.D. 2d 197, 198, 721 N.Y.S.2d
21 351, 353 (2001) (punitive damages are impermissible in class actions under N.Y.
22 Gen. Bus. Law § 349).

23     All of the cases DirecTV cites in support of its motion are distinguishable
24 because they did not implicate California fundamental policy, much less the policies
25 involved here.  *See Dajani v. Dell, Inc.*, No. C 08-5285 SI, 2009 WL 815352, at *3
26 (N.D. Cal. Mar. 26, 2009) (no meaningful differences between California and Texas
27 law that implicated California's fundamental policies); *Melt Franchising, LLC v.*
28 *PMI Enters., Inc.*, No. CV 08-4148 PSG, 2009 WL 32587, at *2-*3 (C.D. Cal.

Jan. 2, 2009) (defendant could not show California's fundamental policy violated by application of Massachusetts law); *Cont'l Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059, 1065 (E.D. Cal. 2006) (no contention that Virginia law was contrary to any California fundamental policy interest); *Omstead v. Dell, Inc.*, 473 F. Supp. 2d 1018, 1025 (N.D. Cal. 2007) (same).

### 2. California has a Materially Greater Interest than Illinois, New Jersey, New York or Oregon in having its Law Applied

The final Nedlloyd prong is to determine which State has a materially greater interest in having its law applied. In analyzing this prong, a court should "first examine the respective 'governmental interests' of the chosen and forum states and then determine the extent to which those interests would be impaired by application of the other state's laws." *Application Group*, 61 Cal. App. 4th at 898. Under this approach, a court can decline to enforce the choice-of-law provision "if the interests of the forum state are 'materially greater' than those of the chosen state" and the forum state's interests would be "more seriously impaired by enforcement of the parties' contractual choice-of-law provision . . . ." *Id.* at 898-99.

In its analysis, the Court should examine the 'relevant contacts' of the parties with California, Illinois, New Jersey, New York and Oregon "in connection with the analysis of the interest of the involved state in the issues, the character of the contract and the relevant purposes of the contract law under consideration." *Id.* at 903. In contract cases under California law, these "relevant contacts" include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.*

### a. California has Significant Contacts in the Issues Involved

The *Application Group* factors show that California's interests in this matter are greater than those of Illinois, New Jersey, New York and Oregon.

9

<u>Place of contracting</u>:   Assuming the Customer Agreement constitutes a contract, the place of contracting was California.  The place of contracting is the place of occurrence of the last act necessary to give a contract binding effect under the forum's rules of offer and acceptance.   Restatement § 188 comment on Subsection (2).[1]   Under California law, a contract in writing takes effect upon delivery.  Cal. Civ. Code § 1626.  Thus, the deposit of a contract at a post office in California constitutes delivery in California.  *Loud v. Collins*, 12 Cal. App. 786, 790 (1910).  Since the contract was purportedly formed by the customers' inaction, the last act necessary to effectuate the Customer Agreement was performed by DirecTV at its California locus of operations.  *See* Declaration of Valerie McCarthy (Docket No. 95), at ¶ 3 (stating that the Customer Agreement is mailed to each customer).  This factor supports the application of California law.

<u>Place of negotiating of the contract</u>:   DirecTV unilaterally drafted the Customer Agreement from its headquarters in California and consumers were not given any opportunity to negotiate the terms, thereby creating a take-it-or-leave-it scenario.  According to *Restatement (Second) Conflict of Laws* § 188 (1981), "[A]

---

[1]  *Restatement* § 187 references *Restatement* § 188: "The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." *Restatement, supra*, § 187(2).

*Restatement* § 188 says in part: "In the absence of an effective choice of law by the parties (*see* § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.   These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.*, Subdivision (2).

1   state has an obvious interest in the conduct of negotiations and in the agreement

2   reached." *Id.*, Comment on Subsection (2).   This factor therefore supports the

3   application of California law.

4           Place of performance/location of the subject matter of the contract:  While the

5   Plaintiffs received their satellite service in Illinois, New Jersey, New York and

6   Oregon, the quality of the satellite service is not the subject of the complaint.

7   Rather, Plaintiffs' complaint arises from DirecTV's unlawful assessment of an early

8   cancellation fee following termination of Plaintiffs' service.  DirecTV's misconduct

9   with regard to collection of the early cancellation fees pursuant to the Customer

10  Agreement emanated from DirecTV's California headquarters.  These factors favor

11  California, or at most, these factors are neutral.

12          Domicile, residence, nationality, place of incorporation and place of business of

13  the parties:  DirecTV is a Delaware corporation with its principal place of business in

14  California.  Plaintiffs are residents of Illinois, New Jersey, New York and Oregon.

15          Based on the above, California has more contacts with the claims in this case

16  than the home states of these Plaintiffs (place of contracting, place of negotiation,

17  place of performance and domicile).

18                                             * * *

19          Arguably, California, Illinois, New Jersey, New York and Oregon each have a

20  fundamental interest in regulating business within their states, and in preventing the

21  employment of unfair and deceptive practices, including the oppressive use of

22  superior bargaining power.   California, however, has the additional interest of

23  protecting citizens nationwide from unfair business practices emanating from

24  California.  *See Diamond Multimedia Sys., Inc. v. Sup. Ct*, 19 Cal. 4th 1036, 1064,

25  80 Cal. Rptr. 2d 828, 968 P.2d 539 (1999) ("California also has a legitimate and

26  compelling interest in preserving a business climate free of fraud and deceptive

27  practices" . . . and a legitimate interest in "extending state-created remedies to out-

28  of-state parties harmed by wrongful conduct occurring in California.").

11

This interest trumps the interest of other states whose laws are *less protective* of its consumers than the forum state's laws.   *See Mazza*, 254 F.R.D. at 623 ("California's more favorable laws 'may properly apply to [the] benefit of nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery.'"); *Wershba*, 91 Cal. App. 4th at 241 (same); *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 616, 236 Cal. Rptr. 605, 616 (1987) (holding that trial court erred in stating that California has no interest in providing nonresident plaintiffs greater protection than their home states provide).

In *Coneff v. AT&T Corp.*, 620 F. Supp. 2d 1248, 1256 (W.D. Wa. 2009), the court invalidated a home-state choice-of-law clause similar to DirecTV's here, finding that Washington state has a materially greater interest in regulating the conduct of business within Washington than the states of plaintiffs' residence.   In *Coneff*, the defendant was incorporated in Washington and maintained its business operations in Washington, including its legal department.   *Id.* at 1254.   Here, DirecTV is headquartered in California, maintains its operations in California and presumably California is where DirecTV formulated its early cancellation fee policies.[2]   Accordingly, the Court should find that California has a materially greater interest in this litigation than Illinois, New Jersey, New York, and Oregon.

> **b.    California's Interests Would Be More Seriously Impaired by the Application of Illinois, New Jersey, New York and Oregon Law Than Would Be the Interests of those States by Application of California Law**

If California law were applied, the interests of Illinois, New Jersey, New York

---

[2]  Although the court in *Coneff* determined that the plaintiffs "did not have extensive contacts or negotiations with the Defendants," the court also focused on the fact that the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, had no compelling effect in the case before it.   *Id.* at 1255.   Here, however, an examination of the place of contracting, the place of negotiation, the place of performance and the location of the subject matter support the application of California law.

12

1  and Oregon would be impaired very little, if at all.  California law provides substantial

2  rights to consumers harmed by unfair business practices, including the oppressive use

3  of superior bargaining power in consumer contracts as set forth in Civil Code

4  § 1671(d) that Illinois, New Jersey, New York and Oregon do not provide.

5  The interest embodied in the laws of Illinois, New Jersey, New York and

6  Oregon on liquidated damages is to allow a non-breaching party to avoid the cost

7  and difficultly of judicially proving damages.  *See, e.g., Matter v. Garay*, 89 N.J.

8  104, 114, 444 A.2d 1107, 1112 (1982); *Cortland Glass Co., Inc. v. Dormitory Auth.*

9  *State of N.Y.*, No. 35517, 2004 WL 3211481, at *2 (N.Y. Sup. 2004); *Bramhall v.*

10  *ICN Med. Labs., Inc.*, 284 Or. 279, 286, 586 P.2d 1113 (1978).  Here, however, the

11  non-breaching party – DirecTV – is not headquartered in those States, but is

12  headquartered in California.  Therefore, Illinois, New Jersey, New York and Oregon

13  interests would not be impaired at all if their laws did not apply.

14  With regard to Illinois and New York, whose consumer protection statutes are

15  geographically limited and do not provide relief for all consumers impacted by a

16  defendant's unlawful conduct, their interest is to avoid sizable litigation against

17  businesses.  *See, e.g., Goshen v. Mut. Life Ins. Co.*, 98 N.Y. 2d 314, 325, 774 N.E.2d

18  1190, 1196 (2002).  Here, however, DirecTV is headquartered in California and

19  therefore the interests of Illinois and New York are not impaired at all.

20  With regard to New York's prohibition on punitive damages in class action

21  cases, its interest is obviously to protect defendants from harsh results or huge

22  punitive damages awards.  *See, e.g., Sperry v. Crompton Corp.*, 8 N.Y. 3d 204, 210,

23  863 N.E.2d 1012, 1014 (2007).  Again, however, DirecTV is not headquartered in

24  New York, but California; therefore New York's interests would not be impaired at

25  all if its laws did not apply.

26  In contrast, applying the laws of Illinois, New Jersey, New York and Oregon,

27  will seriously impair California's interests in deterring misconduct by corporations

28  headquartered within its State and preserving a strong business climate.  *See*

13

1   *Diamond*, 19 Cal. 4th at 1054-55 ("[E]xtending [California law] to any person

2   affected by the proscribed forms of manipulative conduct has a far greater deterrent

3   impact than limiting a defendant's exposure to civil liability for in-state transactions

4   would have done.").

5          Plaintiffs submit that the Court's Orders of May 4, 2009 and September 9,

6   2009 are inapplicable here.  With regard to the May 4, 2009 Order, the Court held

7   that Plaintiffs Lombardi, O'Brien and the Pifers failed to show why Florida and

8   Virginia law would be contrary to California fundamental policy or why California

9   has a materially greater interest than Florida or Virginia in the claims raised.  May 4,

10  2009, Order at 11.  In contrast here, Plaintiffs have made the requisite showing.

11         With regard to the September 9, 2009 Order, the Court emphasized the fact

12  that Plaintiffs Lombardi, O'Brien and the Pifers brought claims only under Florida

13  and Virginia law.  September 9, 2009, Order at 7.  Lombardi, O'Brien and the

14  Pifers, however, did not assert claims under California's UCL and CLRA because

15  the May 4th Order determined that DirecTV's choice of law provision precluded

16  them from doing so.  In contrast here, Plaintiffs allege claims under California law,

17  implicating California's interest in this litigation and have demonstrated herein that

18  the choice of law provision is not enforceable against these Plaintiffs.

19         Further, Plaintiffs respectfully submit that the holding of *Klussman v. Cross*

20  *Country Bank*, 134 Cal. App. 4th 1283, 1299, 36 Cal. Rptr. 3d 728 (2005), does not

21  support the validation of DirecTV's choice of law provision.  In *Klussman*, the court

22  held that California law, rather than the law of the corporation's state, applied.  The

23  rule established by *Klussman* is not that a state's interest in "more general matters of

24  corporate regulation" is materially outweighed by the interests of another state with

25  "a number of significant contacts with the subject matter of [the] action," but rather

26  that California's interest in ensuring its consumers can vindicate their rights is

27  materially greater than other states' interests in allowing their resident businesses to

28  cheat consumers through the use of one-sided agreements.  *Id.* at 1299.  Similarly

14

1  here, California's interest in providing greater protection to consumers, deterring
2  misconduct by resident corporations and preserving a strong business climate
3  outweighs the interests of Illinois, New Jersey, New York and Oregon in providing
4  consumers with less protection.

5  Finally, Plaintiffs also respectfully submit that the cases cited in the Court's
6  September 9, 2009, Order are distinguishable from the facts here and do not
7  preclude the Court from invalidating the choice of law provision now.  In those
8  cases, either the contract at issue was formed outside California or the conduct
9  complained of emanated from outside California.  *In re Detwiler*, No. 08-72823,
10  2008 WL 5213704, at *1 (9th Cir. Dec. 12, 2008) (concluding under Washington
11  law, not California law, that the place of contracting and the place of negotiation
12  took place in the plaintiff's home state of Florida); *McGinnis v. T-Mobile USA, Inc.*,
13  No. 08-106Z, 2008 WL 2858492 (W.D. Wash. July 22, 2008) (conclusory analysis
14  under Washington law, not California law); *In re Jamster Mkg. Litig.*, No. 05-0819,
15  2008 WL 4858506 (S.D. Cal. Nov. 10, 2008) (in suit against T-Mobile, which
16  resides in Washington State and Delaware, California did not have an interest in the
17  litigation because the transactions took place outside of California's borders).  Based
18  on the foregoing, California law is appropriately applied to Plaintiffs' substantive
19  claims and DirecTV's motion to dismiss should be denied.

20  **B.     Plaintiff Murray's and Schuessler's Claims for Unjust Enrichment
21          and Under the Consumer Protection Statutes of Their Home
        States (in the Alternative to Their California State Law Claims)
22          Are Proper**

23  DirecTV's sole argument with regard to Plaintiffs Murray's and Schuessler's
24  common law claims for unjust enrichment and money had and received is that they had
25  not yet, at the time of filing the FAC, paid the fees assessed against them for "early
26  cancellation" of their DirecTV satellite service.  As of the date of filing this
27  Memorandum, Plaintiffs Murray and Schuessler have paid DirecTV's ETFs of $175
28  and $280, respectively.  While Plaintiffs Murray and Schuessler maintain that these

15

fees were assessed illegally, they paid the fees in full to avoid adverse effects to their credit scores. Plaintiffs' payment of these fees moots DirecTV's arguments. Plaintiffs, therefore, respectfully request that this Court deny DirecTV's motion in this regard and grant leave for Plaintiffs to amend the FAC to allege the payment of DirecTV's ETFs.

### C. Plaintiffs Have Alleged Sufficient Facts to Show that the ETF Is a Penalty and Not An Alternative Contract

In addition to its deceptive and unlawful business practice of concealing the existence of the programming commitments DirecTV imposes on its customers, the attendant ETF is also an invalid liquidated damage provision. DirecTV contends that the ETF is merely an alternative means of performance. California law, however, does not support this argument.[3]

Whether a provision is a liquidated damages clause subject to invalidation under California Civil Code § 1671(d) depends on its true substance and operation. *See Morris v. Redwood Empire Bancorp,* 128 Cal. App. 4th 1305, 1314, 27 Cal. Rptr. 3d 797, 802 (2005) ("to determine the legality of a provision, we examine its true function and operation, not the manner in which it is characterized in the contract"); *Garrett v. Coast & S. Fed. Sav. & Loan Ass'n*, 9 Cal. 3d 731, 737, 108 Cal. Rptr. 845, 511 P.2d 1197 (1973) ("We have consistently ignored form and sought out the substance of arrangements which purport to legitimate penalties and forfeitures."); *Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal. 4th 970, 979, 73 Cal. Rptr. 2d 378, 953 P.2d 484 (1998) (same). Further, "contracts having characteristics of adhesion must be carefully scrutinized in order to insure that provisions therein which speak of alternative performance but in fact exact a penalty are not enforced . . . ." *Blank v. Borden*, 11 Cal. 3d 963, 972, 115 Cal. Rptr. 31, 524 P.2d 127 (1974).

---

[3]   As a threshold matter, given the manner in which DirecTV imposes the programming commitment, there is some question as to the formation of a contract between DirecTV and the Plaintiffs and class members through the Equipment Lease Addendum. *See, e.g.*, FAC ¶¶ 27-31. At this stage of the litigation, however, Plaintiffs assume that a valid contract was formed.

The determination of whether a contract is a true "alternative contract or whether buyer promised a single performance but provided for liquidated damages in case of a breach" requires an examination of the contracting parties' intentions. *Fletcher v. United States*, 303 F. Supp. 583, 585 (N.D. Ind. 1969); *see also Ruwe v. Cellco P'ship*, 613 F. Supp. 2d 1191, 1197 (N.D. Cal. 2009) (denying motion to dismiss and holding "the most prudent approach is to ascertain the substance of the parties' arrangements" before determining whether the fee at issue was alternate performance or liquidated damages); *Ayyad v. Sprint Spectrum, L.P.*, No. RG 03-12151, slip op. at 12-13 (Cal. Sup. Ct. Dec. 4, 2008)[4] (after trial finding cell phone company had "not met its burden of establishing that that the predominant effect of the ETF provisions was to provide consumers with an alternative means of performing their contracts"); *Zerbetz v. Alaska Energy Ctr.*, 708 P.2d 1270, 1281 (Alaska 1985) (remanding dispute as to whether termination clause in an employment contract was a liquidated damages clause or an alternative contract).

Thus, whether the parties entered into a contract for alternative performance, as opposed to the imposition of a liquidated damages clause by DirecTV, requires a determination by the trier of fact that is inappropriate at this stage of the litigation.[5] *See Towantic Energy, LLC v. GE*, No. 04-00446 JF, 2004 U.S. Dist. LEXIS 15385, at *11 (N.D. Cal. Aug. 2, 2004) (whether or not a termination fee is an option, rather than a liquidated damage provision "requires the Court to determine whether the termination fee was in fact 'freely negotiated'" which is an issue of fact.); *Western*

---

[4]  Plaintiffs' Request for Judicial Notice in Opposition to Defendant's Motion to Dismiss ("RJN"), Weber Decl., Ex. B.

[5]  The case that Defendant cites for the proposition that "[t]he question of whether a contractual provision is an unenforceable liquidated damages provision is one for the court," *Morris v. Redwood Empire Bancorp*, concerned the legal issue of whether a termination fee could be considered a liquidated damage provision where "the conduct triggering the payment" did not breach the contract and not the more factually nuanced question of the existence of an option contract present here. *Morris*, 128 Cal. App. 4th at 1314.  Further, unlike *Morris*, here a breach of the programming commitment results in the imposition of the ETF.

17

1   *Camps, Inc. v. Riverway Ranch Enters.*, 70 Cal. App. 3d 714, 727, 138 Cal. Rptr. 918

2   (1977) (Determining character of purported liquidated damage provision after trial

3   and noting that "[i]n the interpretation of contracts, the paramount consideration is the

4   intention of the contracting parties as it existed at the time of contracting . . . This

5   intention must be ascertained from the words used, after taking into consideration the

6   entire contract and the circumstances under which it was made.") (internal quotations

7   and citations omitted).[6]   The question that must be resolved here is whether the FAC

8   sufficiently alleges the existence of a liquidated damages provision.   The answer is

9   yes.   Whether such will be proven at trial is irrelevant at this juncture.

10              **1.      The ETF Is Intended to Compensate DirecTV for the
                          Consumer's Breach of the Programming Commitment**

11

12          The courts have "define[d] liquidated damages as 'an amount of compensation

13   to be paid in the event of a breach of contract, the sum of which is fixed and certain

14   by agreement.'"   *Ruwe*, 613 F. Supp. 2d at 1196 (citing *Chodos v. W. Publ'g Co.*, 292

15   F. 3d 992, 1002 (9th Cir. 2002)).   "Performance cannot be said to be in the alternative

16   where breach of a former covenant is necessary to give effect to a later covenant."

17   *Garrett*, 9 Cal. 3d at 738, n.6 (citing *Stewart v. Bedeil*, 79 Pa. 336, 339 (1875)).   A

18   _____

19   [6]   The cases cited by Defendant in support of its argument that the laws of the
     Plaintiffs' home states would not find the ETF is a liquidated damage provision also

20   indicate that this determination is made upon a factual inquiry into the intentions of
     the party and the substance of the agreement, and is accordingly not an appropriate

21   determination at this stage of litigation. *See Coquille Mill & Tug Co. v. Robert Dollar
     Co.*, 132 Or. 453, 285 P. 244, 249 (1930) (Oregon Supreme Court analyzed the

22   intentions of the parties at the time of contracting); *In re Cmty. Med. Ctr.*, 623 F.2d
     864, 867 (3d Cir. 1980) (examining the factual findings of the court below that the

23   purpose of minimum monthly charge provision under New Jersey law); *Northwest
     Mut. Life Ins. Co. v. Uniondale Realty Assocs.*, 816 N.Y.S.2d 831, 837 (2006)

24   (examining the sophistication of the contracting parties and the history of prepayment
     premiums in the context of  mortgage obligations); *River E. Plaza, L.L.C. v. Variable*

25   *Annuity Life Ins. Co.*, 498 F.3d 718, 720 (7th Cir. 2007) (determination made after
     bench trial); *Bradley v. Health Coalition*, 687 So.2d 329, 332 (Fla. Dist. Ct. App.

26   1997) (analyzing the substance of a noncompetition agreement); *Talbott v. Miller*, 232
     Va. 289, 350 S.E.2d 596, 597 (1986) (on appeal of motion to set aside trial verdict

27   considering the contracting parties original intentions).

28
                                        18

provision is one for liquidated damages and not alternate performance when "'the only purpose and effect of the formal alternative is to hold over [the obligor] the larger liability as a threat to induce prompt payment of the lessor sum.'" *Blank*, 11 Cal. 3d at 971 (quoting McCormick, *Damages* (1935) § 154, p. 618).

*Garrett*, the leading California case on these issues, supports Plaintiffs' interpretation of the ETF as a liquidated damage provision. *Garrett* concerned late payment fees on promissory notes secured by deeds of trust in favor of defendant savings and loan. 9 Cal. 3d at 734. The notes contained provisions that stated if the borrower defaulted on payment, the note holder had the right to "charge additional interest . . . on the unpaid principal balance" of the note from the date of default to the date that payment curing the default was received. *Id.* at 735. Plaintiff borrowers challenged the late payments as unlawful liquidated damages. The defendant lender argued that the provision merely gave the "borrower an *option of alternative performance* of his obligation," stating if the borrower "makes timely payments, interest continues at the contract rate; if, however, the borrower *elects* not to make such payments, interest charges for the loan are to be increased during the period of *optional* delinquency." *Id.* (emphasis added).

The California Supreme Court rejected this argument, holding "when it is manifest that a contract expressed to be performed in the alternative is in fact a contract contemplating but a single, definite performance with an additional charge contingent on the breach of that performance, the provision cannot escape examination in light of pertinent rules relative to the liquidation of damages." *Id.* at 738 (citations omitted). In finding the charge was a penalty, not alternate performance, the court also noted that if the provision "is designed to exceed substantially the damages suffered by the lender" the provision "is an invalid attempt to impose a penalty inasmuch as its primary purpose is to compel prompt payment through the threat of imposition of charges bearing little or no relationship to the amount of the actual loss." *Id.* at 740; *see also Blank*, 11 Cal. 3d at 971

19

1   (noting that a provision is for liquidated damages and not alternate performance
2   when "the only purpose and effect of the formal alternative is to hold over [the
3   obligor] the larger liability as a threat to induce prompt payment of the lessor sum")
4   (quoting McCormick, *Damages* (1935) § 159, p. 618).   That is precisely the
5   situation here.   As Plaintiffs allege, the purpose of ETF is to force DirecTV's
6   customers to remain with them for an extended period of time and bears no
7   relationship to the actual damages the company sustains when a customer leaves.
8   FAC ¶¶ 36, 71-73.

9        The ELA imposes a long term programming commitment and under the ELA a
10  breach of this prior covenant triggers the ETF. Docket No. 1 (Original Complaint), Ex.
11  A; FAC ¶¶ 31, 36.  DirecTV argues that these provisions give the customer an option to
12  either purchase programming for the remainder of the term of the programming
13  commitment or pay the ETF.  The FAC, however, alleges that the ETF is not a mere
14  alternative means of performance, but rather is an invalid penalty.  FAC ¶¶ 36, 71-73.
15  Further, DirecTV's adhesive contract was imposed on Plaintiffs and other consumers
16  like them often without disclosure of the programming commitment and ETF.  *See,*
17  *e.g.*, FAC ¶¶ 1, 27-31.  Given this fact, it is unlikely that Plaintiffs and other consumers
18  like them viewed the contract as an "option" contract. *Cf. Blank*, 11 Cal. 3d at 972
19  (finding withdrawal from sale clause in an exclusive right to sell real estate contract
20  was an alternative means of performance but recognizing that the contract was not
21  adhesive and that the party seeking to "enforce the clause [did not enjoy] a vastly
22  superior bargaining position at the time the contract was entered into").

23       Further, Plaintiffs' allegations are analogous to *Garrett*.  Here, the ELA
24  contemplates a single, definite performance (completion of an 18-month or two-year
25  programming commitment) with a charge (the ETF) that is contingent on a breach of
26  that performance.  In *Garrett*, the court concluded that a "reasonable interpretation
27  of the clause providing for imposition of an increased interest rate" was that the
28  bank agreed to a certain interest rate and then, "realizing that the borrowers might

20

1  fail to make timely payment," the bank imposed a provision requiring an additional

2  sum as damages for a breach of the contract in that manner.  *Garrett*, 9 Cal. 3d at

3  738.   Likewise as alleged in the FAC, DirecTV recognized the need to retain

4  customers in light of stiff competition among television providers and imposed the

5  programming commitment and the attendant ETF for breach of that commitment as

6  a penalty to "lock-in DirecTV's existing subscribers to its service and deter them

7  from switching to other service providers . . . ."  FAC ¶ 36.

8        **2.      The ETF Does Not Contemplate an Element of Free Rational**
9        **Choice By the Consumer**

10       Another factor that courts consider in determining whether a provision is a

11  true alternative contract or a penalty disguised as such is "whether at its inception

12  the contract offered the terminating party 'a realistic rational choice in the future

13  between two alternative performances.'"  *Ayyad,* slip op. at 13 (quoting *Blank*, 11

14  Cal. 3d at 971 and citing *Morris*, 128 Cal. App. 4th at 1314); *see also Sybron Corp.*

15  *v. Clark Hosp. Supply Corp.*, 76 Cal. App. 3d 896, 901, 143 Cal. Rptr. 306 (1978)

16  ("While an alternative promise to pay money when it presents a conceivable choice

17  is valid . . . if a contract is made by which a party engages himself either to do a

18  certain act or to pay some amount which at the time of the contract no one would

19  have considered an eligible alternative, the alternative promise to pay is

20  unenforceable as a penalty.") (quoting McCormick, *Damages* (1935) § 154 at 618.)

21       The California Supreme Court addressed this point in *Blank*.   The Court

22  concluded that the payment was an option because the clause presented the seller with a

23       a true option or alternative: if, during the term of an exclusive-right-to-

24       sell contract, the owner changes his mind and decides that he does not

25       wish to sell the subject property after all, he retains the power to

26       terminate the agent's otherwise exclusive right through the payment of

27       a sum certain set forth in the contract.

28  *Blank*, 11 Cal. 3d at 970.  Here, no such "bargained-for" "true option or alternative"

21

1   exists at the time of contracting: the programming commitment and ETF are

2   imposed on the consumer through a contract of adhesion and without full disclosure

3   of the existence of either the programming commitment or the ETF.   *Compare*

4   *Western Camps*, 70 Cal. App. 3d at 727 (finding a $60,000 payment for termination

5   of a sublease was a "bargained-for, alternative performance . . . not a provision for

6   liquidated damages . . . ") *with Allen v. Smith*, 94 Cal. App. 4th 1270, 1280, 114 Cal.

7   Rptr. 2d 898 (security deposit under residential sales agreement constitutes

8   liquidated damages because buyer did not have complete discretion to decide

9   whether to proceed with the purchase).   Thus, DirecTV's argument that its

10   customers are given a rational choice at the inception of the contract between

11   fulfilling the commitment or paying the ETF is disingenuous.[7]

12       The *Ayyad* opinion is also analogous.   *See* Weber Decl., Ex. B.   In a case

13   involving an ETF substantially similar to DirecTV's, Sprint argued that its ETF was

14   an alternative means of performance.   After trial, the court rejected that argument

15   and found the ETF to be a liquidated damage clause.   *Ayyad*, slip op. at 12-13.   In

16   addition to noting that "[t]he existence of a contract breach precludes a finding that

17   the ETF was an alternative means of performance" the *Ayyad* court also held that

18   because the ETF clause permitted Sprint to terminate the contractual commitment

---

20   [7]   In support of its argument, DirecTV cites an unpublished California Court of
     Appeal opinion, *Pickens v. Blockbuster, Inc.*, A102626, 2004 Cal. App Unpub.
21   LEXIS 1641 (Feb. 24, 2004).   *Pickens* determined that the defendant's late fee was a
     valid alternative means of performance because it presented the customer with a
22   rational choice at the inception of the contract:

23       Given that the initial [video] rental fee is a sunk cost, rational people would
         be presented with a choice between keeping the video and watching it for a
24       fee equal to our less than the initial rental fee, or returning it and making a
         second trip to re-rent it for an equal or higher price on a future occasion, or
25       foregoing watching it altogether . . . .   This is not a case in which no rational
         person would choose to pay the greater liability.
26
27   *Id*. at *9-*10.   Unlike *Pickens*, the consumer's choice here is not rationale.   They
     must either continue with DirecTV's service or pay the ETF. If the consumer is
28   unhappy with DirecTV's service for any reason they are either forced to remain with
     DirecTV or face a stiff penalty.

22

period early, the ETF clause "did not give customers a rational choice of paying the ETF or completing the contract. . . ." *Id.* at 13; *see also Allen*, 94 Cal. App. 4th at 1280 (no option because contract did not provide buyer with complete discretion to decide whether to proceed with the purchase).

Likewise, the language of DirecTV's ETF provision does not limit imposition of the fee to a breach of the programming commitment by the consumer.  The provision states "if you fail to maintain your minimum programming commitment . . . you agree that DirecTV may charge you a prorated fee of up to $360 for standard receivers and up to $480 for advanced products/receivers . . . ." Docket No. 1 (Original Complaint), Ex. A.  DirecTV's Customer Agreement also does not address this question.  *Id.*  Since DirecTV's Customer Agreement and ELA do not foreclose DirecTV from imposing the ETF when it cancels the service before the expiration of the programming commitment, no true alternative means of performance exists here and the ETF should be construed as a liquidated damage provision and invalidated under California Civil Code § 1671(d).

Should this Court find the choice of law provision precludes the non-California plaintiffs' claims under § 1671(d), DirecTV concedes that the same principles apply to the analysis under the laws of the Plaintiffs' home states.  The cases DirecTV cites from the other jurisdictions do not support its argument that those states would determine the ETF is an option and not a liquidated damages provision.  None of these cases present factual situations analogous to that here.  *See Coquille Mill & Tug Co. v. Robert Dollar Co.*, 132 Or. 453, 285 P. 244, 249-52 (1930) (interpreting a logging contract where logger was required to pay $0.25/thousand feet of shortage to property owner as a liquidated damage provision, not alternative means of performance); *In re Cmty. Med. Ctr.*, 623 F.2d 864, 867 (3d Cir. 1980) (finding minimum monthly payment clause to be alternative means of performance because no breach of contract required for imposition of fee); *Northwest Mut. Life Ins. Co. v. Uniondale Realty Assocs.*, 816 N.Y.S.2d 831, 835-37 (2006) (discussing liquidated

23

1    damages and alternative means of performance within context of prepayment of

2    mortgage claim but making no determination as to which category the provision

3    belonged); *River E. Plaza, L.L.C. v. Variable Annuity Life Ins. Co.*, 498 F.3d 718, 722

4    (7th Cir. 2007) (finding a prepayment provision in a commercial mortgage agreement

5    did not constitute a liquidated damages provisions); *Bradley v. Health Coalition, Inc.*,

6    687 So.2d 329, 332 (Fla. Dist. Ct. App. 1997) (analyzing the substance of a non-

7    competition agreement and finding an "ordinary liquidated damages clause"); and

8    *Talbott v. Miller*, 232 Va. 289, 350 S.E.2d 596, 599 (1986) (no discussion of

9    difference between alternative means of performance and liquidated damages).

10            **3.      This Court Should Decline to Follow *Hutchinson v. AT&T***

11                    ***Internet Services* and *Schneider v. Verizon Internet Services***

12           The two orders from sister courts of this District should not be followed by this

13   Court. Both orders are currently on appeal to the 9th Circuit.  *See* RJN, Weber Decl.,

14   Exs. C and D.  While the provisions at issue in those cases are similar to the ETF here,

15   their rational is not well reasoned and runs contrary to California law.  *Hutchinson v.*

16   *AT&T Internet Servs., Inc.*, CV07-3674 SVW, 2009 U.S. Dist. LEXIS 53937 (C.D.

17   Cal. May 5, 2009), involved an ETF charged to plaintiffs for cancelling their internet

18   service two weeks before the term's expiration. *Id.* at *3.  In determining that an option

19   was given to the consumer, the court examined *Blank* and *Garrett* but concluded that

20   the provision at issue was more similar to that in *Blank* because it provided the

21   customer with two "realistic and rational choices" rather than create an obligation for a

22   "single definite performance" by the customer. *Id.* at *13-*16.

23           As discussed above, the terms of DirecTV's ELA contemplate a single

24   performance (completion of the programming commitment) and a penalty for breach

25   of that obligation (the ETF).  The fact that an "agreement *may* be construed . . . to

26   vest in one party an option to perform" does not validate the agreement where "if it

27   were not so construed" it "would result in a penalty" *Garrett*, 9 Cal. 3d at 737.  "To

28   so hold would be to condone a result which, although directly prohibited by the

                                              24

1   Legislature, may nevertheless be indirectly accomplished through the imagination of
2   inventive minds." *Id.*  DirecTV's ETF illustrates this point and *Hutchinson* does not
3   justify a different conclusion.  The fact that DirecTV (and AT&T in *Hutchinson*)
4   frame the penalty as a choice the consumer makes does not transform the contract
5   into one for an option.  To so find subverts the legislative policy embodied in
6   section 1671(d) to protect consumers from such penalties.  *See* Ex. A to Weber Decl.
7   at 1209 ("There is a risk that liquidated damages provisions will be used
8   oppressively by a party able to dictate the terms of an agreement.").

9       *Schneider v. Verizon Internet Servs., Inc.*, No. 08-cv-07856, Dkt. No. 37 (Order
10  Granting Defendants' Motion to Dismiss) (C.D. Cal. Mar. 18, 2009) likewise does not
11  provide guidance.  Judge Real stated that Verizon's ETF was a valid alternative means
12  of performance and cited to *Morris* and *Blank*, neither of which support such a
13  conclusion.  *Morris*, however, dealt with the issue of whether a fee constitutes a
14  liquidated damages provision when the imposition is not the result of a breach of
15  contract.  *Morris*, 128 Cal. App. 4th at 1315 ("Because the agreement expressly allows
16  the merchant to terminate at any time, imposition of the fee is not dependent upon any
17  breach of contract and is therefore not a liquidated damage.").  As discussed *supra* at
18  Section IV.C.2, *Blank* is not analogous to the ETF presented here.  Further, Judge Real
19  noted that the consumers there had the additional choice of entering into a month-to-
20  month service contract without the ETF.  This fact is not present here.

21  **V.**   **CONCLUSION**

22      For the reasons stated above, Plaintiffs respectfully request that the Court
23  deny DirecTV's motion to dismiss in its entirety.

24  DATED: September 28, 2009          HULETT HARPER STEWART LLP
25                                     BLAKE MUIR HARPER
                                       SARAH P. WEBER
26                                     LINDSAY J. FOSTER
27
                                        */s/ Sarah P. Weber*
28                                     SARAH P. WEBER
                                            25

1

2 525 B Street, Suite 760
San Diego, CA  92101
3 Telephone:   (619) 338-1133
Facsimile:    (619) 338-1139
4

5 Interim Lead Counsel for Plaintiffs

6

7 FINKELSTEIN THOMPSON LLP
ROSEMARY M. RIVAS
8 DANIEL T. LEBEL
100 Bush Street, Suite 1450
9 San Francisco, CA  94104
Telephone:   (415) 981-4800
10 Facsimile:    (415) 981-4846
e-mail:
11
12      rrivas@finkelsteinthompson.com
     dlebel@finkelsteinthompson.com
13

14 FINKELSTEIN THOMPSON LLP
DOUGLAS G. THOMPSON, JR.
15 TRACY D. REZVANI
1050 30th Street, NW
16 Washington, DC  20007
Telephone:   (202) 337-8000
17 Facsimile:    (202) 337-8090
e-mail:
18      dthompson@finkelsteinthompson.com
19      trezvani@finkelsteinthompson.com

20 FREED & WEISS LLC
PAUL M. WEISS
21 GEORGE K. LANG
JAMIE E. WEISS
22 JEFFREY A. LEON
MICHAEL J. LOTUS
23 111 West Washington Street, Suite 1331
Chicago, IL  60602
24 Telephone:   (312) 220-0000
Facsimile:    (312) 220-7777
25 e-mail:     paul@freedweiss.com
jamie@freedweiss.com
26 george@freedweiss.com
27

28

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIEFF CABRASER HEIMANN
  & BERNSTEIN LLP
KRISTEN E. LAW
NIMISH R. DESAI
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
e-mail:       klaw@lchb.com
              ndesai@lchb.com

LIEFF CABRASER HEIMANN
  & BERNSTEIN LLP
JONATHAN D. SELBIN
780 Third Avenue, 48th Floor
New York, NY  10017-2024
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592
e-mail:       jselbin@lchb.com

Interim Class Counsel, Plaintiffs' Executive
Committee

RICHARD J. BURKE LLC
RICHARD J. BURKE
1010 Market Street, Suite 650
St. Louis, MO  63101
Telephone:  (314) 880-7000
Facsimile:  (314) 880-7777
e-mail:       rich@richardjburke.com

CARELLA BYRNE BAIN GILFILLAN
  CECCHI STEWART & OLSTEIN
JAMES E. CECCHI
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  (973) 994-1700
Facsimile:  (973) 994-1744
e-mail:       jcecchi@carellabyrne.com

SACV08-741 AG(ANx)

1    LAW OFFICE OF ERIC STOPPENHAGEN
2    ERIC STOPPENHAGEN
     285 Avenue C, Suite #MB
3    New York, NY  10009
     Telephone:  (646) 594-8669
4    Facsimile:   (949) 258-5379

5

6    KABATECK BROWN KELLNER LLP
     BRIAN S. KABATECK
7    RICHARD L. KELLNER
     ALFREDO TORRIJOS
8    644 S. Figueroa Street
9    Los Angeles, CA  90017
     Telephone:  (213) 217-5000
10   Facsimile:   (213) 217-5010
11   e-mail:        bsk@kbklawyers.com
12                  rlk@kbklawyers.com
                    at@kbklawyers.com
13

14   SEEGER WEISS LLP
     JONATHAN SHUB
15   1515 Market Street, Suite 1380
16   Philadelphia, PA  19102
     Telephone:  (215) 564-2300
17   Facsimile:   (215) 851-8029
18   e-mail:        jshub@seegerweiss.com

19
     Attorneys for Plaintiff Joseph Lombardi
20

21   FEE SMITH SHARP & VITULLO LLP
     ANTHONY L. VITULLO
22   Three Galleria Tower
     13155 Noel Road, Suite 1000
23   Dallas, TX  75240
24   Telephone:  (972) 934-9100
     Facsimile:   (972) 934-9200
25   e-mail:        lvitullo@feesmith.com

26
     Attorneys for Plaintiffs Roberta and
27   Edward Pifer

28

                    28

**PROOF OF SERVICE**

*In re DirecTV, Inc., et al.*
CASE NO: CV08-741 AG(ANx)

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action. I am employed in the County of San Diego, State of California. My business address is: 525 B Street, Suite 760, San Diego, CA 92101.

That on September 28, 2009, I served the following document(s) entitled: **PLAINTIFFS' OPPOSITION TO DIRECTV'S MOTION TO DISMISS CLAIMS IN PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** on ALL INTERESTED PARTIES in this action.

☒   **BY MAIL**: By placing a true copy thereof in a sealed envelope addressed as listed below, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service. The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in San Diego, California, on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐   **BY CM/ECF Electronic Service:** I caused such document to be served via the Court's (NEF) electronic filing system on all registered parties.

☐   **BY FAX:** I transmitted a copy of the foregoing document this date via telecopier to the above referenced counsel, I caused the machine to print a transmission record of the transmission.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on September 28, 2009, at San Diego, California.

*/s/ Sarah P. Weber*
SARAH P. WEBER